UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 MAY 28 P 4: 11

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION, SOLUTIA, INC.<br>and MONSANTO COMPANY,<br>Defendants.<br><br>PHARMACIA CORPORATION and MONSANTO<br>CORPORATION,<br>Third-Party Plaintiffs,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>Third-Party Defendant. | CIVIL ACTION NO: 04-10180 RGS |

**BOSTON EDISON COMPANY'S OPPOSITION TO, AND MOTION TO STRIKE DEFENDANT, PHARMACIA CORPORATION'S MOTION FOR LEAVE TO FILE A THIRD-PARTY COMPLAINT; OR, IN THE ALTERNATIVE, FOR ITS SEVERANCE AND SEPARATE TRIAL**

Proposed third-party defendant, Boston Edison Company ("Edison"), hereby opposes the Motion by Defendant, Pharmacia Corporation ("Pharmacia"), for Leave to File a Third-Party Complaint (the "Motion").

**I.    Introduction**

Pursuant to F.R.Civ.P. 14(a), Pharmacia seeks to add Edison as a third-party defendant on the basis of an alleged contractual duty to indemnify its predecessor. To the extent any duty lies, as alleged, it relates not to the statutory contamination claims that Plaintiff, Mystic Landing,

1083801v1

LLC makes ("Mystic"), but rather to the violation of a restrictive covenant governing the use of the subject property herein. No contrary use has taken place, and thus no violation has occurred. Pharmacia's indemnification claim, at present, fails every legal test. Pharmacia has no basis on which to file any claim against Edison and Edison respectfully requests this Court to declare as much now.

Alternatively, should the Court choose to allow the Motion, Edison requests that this Court sever Pharmacia's claims against it and address them only after the conclusion of the main dispute. The dissimilarity of issues, taken together with their complexity and the substantial, additional costs that would result, are too great. Edison would be unnecessarily burdened and suffer undue prejudice by having to litigate amongst the remaining parties. Transparent in its attempt, Pharmacia seeks to use the costs of litigation as leverage to force Edison to become a source of potential funds for a settlement of the response action required; or, the clean-up. For the reasons stated below, this Court should foreclose that attempt.

## II.   Summary of Argument

This Court should reject Pharmacia's Motion for three primary reasons. First, Edison owes no duty to indemnify Pharmacia under the facts pled. Mystic has sued Pharmacia and others under M.G.L. c. 21E, § 4a for costs alleged to exceed $17,000,000 to remediate a certain parcel of land[1] which Mystic alleges Pharmacia, and its predecessor-in-interest, polluted over a period of nearly fifty (50) years (the "Property"). Pharmacia seeks to implead Edison, not on the theory that Edison is a joint tortfeasor, but rather on the basis that Mystic intends to use the Property in violation of a restrictive covenant appearing in a deed executed in 1983 by Edison and Monsanto. Pharmacia's argument will be that Mystic is bound by a restrictive covenant

---

[1] The subject Property includes approximately 35 acres of land located in Everett and Boston at Alford Street and Broadway. Prior to 1983, the Property was owned by Monsanto Company ("Monsanto"), one of Pharmacia's predecessors-in-interest, during which time it was used for industrial and manufacturing purposes.

which prevents Mystic from using the Property "for retail business, for multi or single family residential purposes," such that if Mystic does not use the Property in violation of the restrictive covenant, then Pharmacia cannot be liable for any clean-up. Conspicuous by its absence, however, is any allegation by Mystic that it intends to use the Property in violation of the restrictive covenant.

Indeed, nowhere in Mystic's Complaint or in its demand letter to Pharmacia under M.G.L. c. 21E, §4A, does Mystic allege, infer or otherwise refer to an intent to develop or use the Property as such, in violation of the restrictive covenant, nor does Pharmacia in its Counterclaim against Mystic or Third-Party Complaint against Modern Continental Construction Company, Inc. ("Modern Continental") allege some hypothetical or prospective violation of the covenant. Rather, Pharmacia seeks contribution against Mystic and Modern Continental for contribution under Chapter 21E, §4 and CERCLA §113(f).[2]

Second, even assuming the Court finds that the condition of the Property's soil and the use of the parcel are not severable issues, the Motion is not yet ripe. As stated, Pharmacia has not alleged that Mystic has taken any action which violates the restrictive covenant. In point of fact, Pharmacia alleges a *possible future action* by Mystic which, *if* it occurs, would trigger a duty by Edison to indemnify Pharmacia. Notwithstanding Edison's denial of such a duty, Pharmacia alleges that Edison <u>already</u> breached a contract to indemnify because, according to Pharmacia, Mystic publicly announced plans to construct 537 residential units at the site. There is no citation by Pharmacia to that announcement, nor do Mystic or Modern Continental allege

---

[2] Pharmacia's causes of action are based on statutory liability, on the theory that each were owners of the "site at a time of disposal or storage of oil and/or hazardous materials at the site and/or because it, or another whose actions are imputed to [either Mystic or Modern Continental] or for whose actions [they are] legally responsible, directly or indirectly transported to the site, disposed of or stored at the site and/or arranged by contract or otherwise for such transport, storage or disposal of tunnel muck and/or materials that contained oil or hazardous materials and/or were intermixed with soil containing oil or hazardous materials."

such an intent to develop.

In addition, whereas Pharmacia seeks contribution from Mystic and Modern Continental under Chapter 21E and CERCLA, as above, it does not make such a claim against Edison despite Edison having been a former owner of the Property. Pharmacia's allegation of the Mystic announcement is a thinly-veiled attempt by Pharmacia to impose upon Edison, in whole or in part, its financial burden for remediation of the site. The theoretical violation to which Pharmacia refers may never come to pass. Mystic may opt to utilize the Property in a way which does not violate the covenant. Until such violation actually occurs, Pharmacia has no claim against Edison.

Third, the complexity and demands on the time and resources of the Court and parties that would result should Edison be joined far outweigh any benefits to involving Edison now. The Court and existing parties are already presented with a complex environmental matter without Edison's inclusion. The five parties to this case have accused each other of polluting the Property over a period of nearly fifty (50) years. The degree of investigation, discovery, time, and other resources which must be dedicated to allocating blame for these environmental conditions, and the response costs necessary to remedy it, already is staggering. If Edison is added, complex real estate issues will be presented[3], to say nothing of the additional resources which will be demanded as a result of fourth-party actions Edison will be forced to file. The burdens facing this Court by the prospect of yet additional parties is too great to be practicable.

---

[3] Owing to the extent of title documentation spanning nearly twenty years, involving numerous successors-in-title, on not just the subject property but also adjoining Property, the parties are sure to take different positions on the scope of any indemnity, and whether the restrictive use covenants or conditions are either enforceable, or have been released or waived. By way of just one example, Edison will argue that the language of the indemnity supports an interpretation that the parties did not intend for the indemnity to cover such statutory environmental claims as those at issue herein. Mystic, and certain predecessors-in-title who are successors to Edison, will posit that the burden benefit of the restrictions ran with the Property, such that Mystic's predecessors-in-title had the power to waive them. If the use restrictions were waived, then Pharmacia cannot enforce them and thus there is no restriction left to be violated and therefore nothing to indemnify against. This theory or interpretation is just one that will be advanced, depending on the party answering.

Edison's connection to this dispute is far too tenuous and relates not to environmental liability, but rather a remote indemnity clause having nothing to do with such claims.

### III. Procedural Background

In its Complaint, Plaintiff, Mystic, alleges that Defendants, Pharmacia, Monsanto and Solutia, Inc. ("Solutia"), contaminated the Property and, as a result, are liable to Mystic under M.G.L. c. 21E, §4a for the necessary response costs of clean-up. (Complaint, at ¶4). The Complaint does not assert that Edison bears any remediation responsibility. On February 9, 2004, Pharmacia and Monsanto filed their Answer and Counterclaims which alleged, *inter alia*, that Mystic contributed to the hazardous condition at the Property for which Mystic claims said Defendants are responsible. They did not allege as an affirmative defense that Mystic had breached any covenant pertaining to the use of the land. In that same pleading, Pharmacia brought a third-party complaint against Modern Continental Construction Company ("Modern"), alleging that Modern likewise contributed to the contamination of the Property.

On May 14, 2004, Pharmacia filed its Motion, claiming that, because of the use Mystic *might* make of the Property (i.e., the construction of a residential development), Edison owes Pharmacia a contractual duty to indemnify Pharmacia for all past, present, and future damages associated with this case, including the clean-up costs sought by Mystic.

### IV. Discussion

As noted above, the Court should deny the Motion because, (1) Edison owes no duty of indemnification to Pharmacia under the present circumstances; (2) the Motion is not ripe; (3) the added complexity and resources demanded by Edison's presence in this case outweighs any benefit of impleading Edison; and, (4) unfair and substantial prejudice to Edison would result. "In determining the propriety of an impleader request, [the] court must look at whether the

plaintiff or potential third-party defendant will suffer prejudice, whether the impleaded claim will complicate matters at time of trial, whether [the] third-party claim has merit, and whether granting leave to implead will impose significant additional costs on the parties." Greene Line Mfg. Corp. v. Fibreboard Corp., 130 F.R.D. 397, 400 (N.D. Ind. 1990). (See also, Perez Cruz v. Fernandez Martinez, 551 F.Supp. 794, 799 (D.C. Puerto Rico 1982) and Kopan v. George Washington University, 67 F.R.D. 36, 38 (D.C. 1975) - each for the proposition that the court should consider, among other things, prejudice to the plaintiff, complication of the issues at trial, likelihood of causing delay, and additional expense to the parties, and, Lehman v. Revolution Portfolio, LLC, 166 F.3d 389, 393 (1st Cir. 1999) - impleader should be allowed for only colorable claims that do not cause undue delay or otherwise prejudice the ongoing proceedings.) A court has wide discretion to permit or deny a motion under Rule 14(a), and that decision is reviewed under an abuse of discretion standard. Id. at 393. Further, a court has the power to deny a third-party claim if that claim "is obviously unmeritorious and can only delay or prejudice disposition of a plaintiff's claim." Perez Cruz, 551 F.Supp. at 798-99.

### A. Edison Owes No Duty to Pharmacia Under Any Of The Facts Pled Or The Plain Language Of The 1983 Covenant to Indemnify.

Rule 14 only permits the filing of a third-party complaint when "the third-party's liability is in some way depending on the outcome of the main claim or when the third-party is secondarily liable to the defendant." First Nat. Bank of Strasburg v. Platte Valley State Bank, 107 F.R.D. 120, 123 (D.C. Colo 1985) (denying motion to implead third-party where third-party defendant could not be liable for any part of plaintiff's claim). In other words, the third-party claim must "grow out of the same transaction" as the main claim. McGrath v. Lund's Fisheries, Inc., 170 F. Supp. 173, 175 (D.C. Del 1959). The third-party claim must involve "common questions of law and fact . . . ." Skupski v. Western Nav. Corp., 113 F. Supp. 726, 727 (S.D.N.Y.

1953). The multiple claims also must "turn upon identical or similar proof." Sirota v. Solitron Devices, Inc., 97 F.R.D. 732, 736 (S.D.N.Y. 1983). The rule "is not intended to be used as a means for trying, in the same proceeding, two separate and distinct causes of action." U.S. v. Dobrowolski, 16 F.R.D. 134, 136 (D.C. Md. 1954). "The fact that [a] third-party claim arises against the same general background as the main claim is not enough to allow application of Rule 14 to independent claims." U.S. v. Hutchins, 47 F.R.D. 340 (D.C. Or. 1969).

Edison is not alleged to be "secondarily liable" to Pharmacia for its contamination of the Property. No such allegations have been made by Mystic, Pharmacia, or Modern Continental. Any future dispute between Edison and Pharmacia would not stem from Pharmacia's contamination of the Property, but rather from some, as yet, unforeseen damage arising out of, as yet, an unexpressed intention by Mystic to use the Property in violation of the restrictive covenant. Resolution of such a dispute between Edison and Pharmacia will turn upon different sets of facts and proof, and will involve additional parties in the chain of title to this Property. With each party and with each closing transaction, an array of recorded documentation will need be examined over nearly twenty (20) years concerning the enforceability and applicability of the 1983 restrictive covenants. Each of the parties in the chain of title, by various transfer and release documents, have sought to alter the enforceability of the covenants. The issues of law running with this real estate analysis are numerous. Even assuming that Mystic had already used the Property in breach of a restrictive covenant, that fact alone would not require Edison to indemnify Pharmacia.

On June 20, 1983, Pharmacia's predecessor-in-interest, Monsanto, sold the Property, retaining an abutting parcel of land. The Property was owned by Monsanto prior to 1983, during which time it was used for industrial and manufacturing purposes. In the Deed, the language

1083801v1

under "Further Covenants and Conditions", states in relevant part:

> b. EDISON and its successors in title agree, for the benefit of MONSANTO and its successors in title, that the property hereby conveyed shall be used solely for industrial and manufacturing purposes and that the property hereby conveyed shall not be used for retail business, for multi or single family residential purposes, park purposes, recreational uses, food or feed facilities, agricultural or animal uses, even though such purposes may otherwise be permitted uses as the above terms are defined respectively in the zoning ordinances of the Cities of Boston and Everett, Massachusetts. The foregoing shall not be deemed to prohibit any use incidental and accessory to the use of the property for industrial or manufacturing purposes. Without limiting the generality of the foregoing sentence, two examples of uses incidental and accessory to the use of the property for industrial or manufacturing purposes are (1) a restaurant or lunchroom located within a building or structure devoted to an industrial or manufacturing use provide that such employees of the industrial or manufacturing facility . . . .
>
> c. EDISON shall at all times indemnify and hold MONSANTO harmless from and against, and hereby releases MONSANTO from any and all civil liability, claims, suits, judgments, damages, losses, costs, and expenses (including reasonable attorneys' fees) caused by, relating to, or arising out of any use of the premises in violation of the provisions of paragraphs a and b above. The rights of MONSANTO and obligations of EDISON under this indemnity and release shall not be affected by a conveyance of the premises by EDISON, nor by the conveyance of the adjoining property by MONSANTO, and the indemnity and release shall continue in full force and effect in the event one or both such conveyances are made in the future.

(Ex. A at 11-12.) The Complaint, which makes no mention of Edison, alleges that Pharmacia is responsible for contaminating the Property. Mystic seeks the costs associated with clean-up pursuant to Chapter 21E, § 4A as follows:

> 23. The Site is classified as a Tier II Disposal Site under the Massachusetts Contingency Plan (the "MCP").
>
> 24. In order to achieve regulatory closure pursuant to the MCP, a licensed site professional must determine that conditions at the Site pose No Significant Risk ("NSR") to public safety, human health,

and the environment. In order to determine NSR for the Site without the use of an Activity and Use Limitation ("AUL"), concentrations of soil contaminants need to be reduced to levels below the MCO Method 1 S1/GW-2 and S-1/GW-3 clean-up standard.

25. Pursuant to Mass. Gen. Laws c. 21E, § 5(a), "any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release or hazardous material . . . shall be liable, without regard to fault . . . to any person for damage to his real or personal property incurred or suffered as a result of such release or threats of release."

(Complaint, at 4.) It is critical to note that M.G.L. c. 21E, § 5(a) makes no distinction as to its own applicability based on the proposed use of the site at issue. The Property must be cleaned-up to meet or exceed Method 1 S1/GW-2 and S-1/GW-3 standards regardless of how the owner intends to use the particular site. Pharmacia has not alleged otherwise. Although the terms of the 1983 Deed restrict the use of the Property to industrial and manufacturing purposes, human health and environmental considerations are no less important under those uses than if Mystic eventually chooses to construct homes on the site. Under the restricted use, employees will spend much time at the Property working and, as permitted by the 1983 Deed, even eating at one or more on-site restaurants or lunchrooms. Pharmacia's alleged responsibility to remediate the Property is not tied to the use Mystic may make of that parcel, and the Court should reject Pharmacia's attempt to implead Edison on a wrongful use theory.

**B. Pharmacia's Motion Is Premature Under Any Set of Facts.**

Even assuming this Court finds some link between Mystic's environmental claims and Pharmacia's indemnity claims against Edison, Mystic has not yet improperly "used" the Property. Such wrongful use is a clear prerequisite to Edison's participation in this case. Mystic provides no indication, whatsoever, as to its intentions with the Property in either (1) the

Complaint or (2) its M.G.L. c. 21E, §4A letter to Pharmacia (Ex. B). By Pharmacia's own allegations, a wrongful usage has not yet occurred. Pharmacia can only allege that a wrongful use is anticipated:

> 8. Shortly after acquiring the Property [in 2001], Mystic publicly announced **plans** and commenced **preparations** to develop the [P]roperty for retail business, residential purposes and recreational uses. The **plans** announced by Mystic included **proposed** construction of 537 residential units.

[Proposed] Third-Party Complaint of Defendant Pharmacia Corporation Against Boston Edison Company at p. 4 (emphasis added; attached as Exhibit A to Defendant Pharmacia Corporation's Motion for Leave to File a Third-Party Complaint, dated April 26, 2004).

In neither (1) the Motion, or (2) Pharmacia's Answer and Counterclaims does Pharmacia allege that Mystic actually has used the Property in violation of the covenant appearing in the 1983 Deed. All Pharmacia has said is that, three years ago, Mystic announced plans that it *might* use the Property in violation of the covenant. Mystic may choose not to proceed with these alleged announced plans but, instead, develop the Property for industrial or manufacturing purposes. Not until an actual use of the Property in violation of the covenant occurs, can Edison be made a party to this case under any credible legal theory.

### C. The Addition Of Edison Will Vastly Increase Costs and Unduly Complicate This Litigation.

Granting the Motion would unduly burden the Court and the parties by (1) introducing complex legal issues that otherwise would not be part of this case, (2) adding fourth party claims thereby increasing the number of parties involved from five to at least eight, and (3) necessitating the expenditure of the time, money, and inclusion of experts that would be required to address both. It is true that the primary purpose of Rule 14 is "to promote judicial efficiency by eliminating circuity of actions," i.e., the duplication of lawsuits arising from the same set of facts

and addressing similar or related issues. Wright and Miller, Federal Practice and Procedure, v. 6, § 1442 at p. 289-92 (1990 ed.). Where impleader significantly complicates litigation via the introduction of new issues, otherwise unnecessary discovery, increased costs, and/or a greater number of parties, a court has the power to deny impleader. (See, Remington Arms Co. v. Liberty Mut. Ins. Co., 748 F. Supp. 1057, 1068-69 (D. Del. 1990) - denying motion of insurer to implead insurer's parent and excess carrier in declaratory action by insurer's subsidiary to determine whether insurance policy covered environmental contamination in part because impleader would complicate the issues by requiring the court to address whether the primary insurer was entitled to indemnification and contribution from the parent and its excess insurers, and would have greatly increased the cost of litigation; Albino v. City of Chicago, 578 F. Supp. 1487, 1489-90 (N.D. Ill. 1987) - denying the addition of another nine parties to a class-action suit via a third-party claim due to, in part, the introduction of new issues and the need for additional discovery to the case; Greene Line Mfg. Corp. v. Fibreboard Corp., 130 F.R.D. 397, 400 (N.D. Ind. 1990) - denying motion to implead where simple claim to pay a debt was primary claim, and grant of motion would severely complicate the issues in the case, increase the cost to the parties of the litigation, and cause unnecessary delay in the resolution of the plaintiffs' claim; First Nat. Bank of Strasburg v. Platte Valley State Bank, 107 F.R.D. 120, 123 (D.C. Colo 1985) - denying motion to implead third-party where third-party defendant could not be liable for any part of plaintiff's claim and third-party claim was so dissimilar that it would cost more court time and be more costly than if separate suits were filed.

As in the cases above, the negative impact from adding Edison as a third-party to this case far outweighs any benefit to doing so. At present, this case involves five parties, each of whom has accused another of contaminating the Property at some point over the last fifty (50)

1083801v1

years in violation of state law. The degree of investigation, discovery, and costs alone are sizeable, to say nothing of the motions and trial to follow. Should Edison be added to this case, both the Court and the parties will be faced with new and complex real estate issues involving multiple closing transactions and recorded documentation spanning twenty (20) years - - related to both the Property and adjoining parcels. Moreover, Edison will have no choice but to file fourth-party complaints against successors-in-title plus file counter or cross-claims against existing parties under similar theories that Pharmacia currently presents in its case against Edison (i.e., that various use-related covenants and indemnity agreements protect Edison). The resources needed to litigate the case will increase substantially.

### D.   Substantial Prejudice Will Result To Edison

Edison submits that it will be prejudiced in two respects. First, there is the obvious financial burden associated with having to monitor, and effectively litigate the environmental claims for which it is, practically speaking, a non-party. This Court is all too familiar with how extraordinary the attorney-time investment can be in cases like this. As important is Edison being tainted with statutory environmental liability at time of trial. Put another way, there is the prospect that Edison will be perceived as having contributed to the contamination of this Property, or somehow be responsible merely because it is a former owner and now party to the litigation. Despite the fact that no direct allegations have been made against it, Edison cannot avoid the fact that it once owned the Property. Pharmacia is likely to take great liberty with its indemnity-like allegations. Unlike the case where there are joint tortfeasors, Edison should not be subject to a risk of loss where Edison is not involved in the contamination and therefore not secondarily liable.

**E. Should This Court Decide to Add Edison, It Should Sever Such Claims And Order A Separate Trial.**

Edison asks the Court to decide the viability of Pharmacia's claim against it now. Should the Court decide not to do that and instead permit Pharmacia to add Edison as a third-party defendant, Edison respectfully requests, for the reasons listed above, that the Court sever the claims and order separate trials. Mystic's claims should be adjudicated first, and indemnification issues addressed thereafter.

**IV. <u>Conclusion</u>**

For all of the foregoing reasons, Edison respectfully requests that the Court deny Pharmacia's Motion.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Boston Edison Company respectfully submits that oral argument may assist the Court and it therefore requests to be heard.

BOSTON EDISON COMPANY,

By its Attorneys,

*/s/ Mark S. Granger*

Mark S. Granger (BBO# 206920)
Douglas B. Otto (BBO# 555269)
William A. Staar (BBO# 659425)
MORRISON, MAHONEY & MILLER, LLP
250 Summer Street
Boston, MA 02210
(617) 737-8873

Date: May 28, 2004

1083801v1

## CERTIFICATE OF SERVICE

I, Douglas B. Otto, do hereby certify that on this 28th day of May, 2004, I have served the foregoing pleading by mailing same, first class and postage prepaid, to counsel of record as follows:

Gerald J. Petros, Esq.
HINCKLEY, ALLEN & SNYDER
1500 Fleet Center
Providence, RI 02903
*Attorney for Mystic Landing, LLC, and Modern Continental Company, Incorporated*

Lauren Timoney Upton, Esq.
HINCKLEY, ALLEN & SNYDER
28 State Street
Boston, MA 02109
*Attorney for Mystic Landing, LLC, and Modern Continental Company, Incorporated*

Adam P. Kahn, Esq.
Elisabeth M. DeLisle, Esq.
John M. Stevens Jr., Esq.
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
*Attorneys for Pharmacia Corporation, Monsanto Company, and Solutia, Inc.*
*(Attorney Stevens only).*

Douglas B. Otto