UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MYSTIC LANDING, LLC,
        Plaintiff,

   v.

PHARMACIA CORPORATION, SOLUTIA, INC.
and MONSANTO COMPANY,
        Defendants.

CIVIL ACTION NO: 04-10180 RGS

PHARMACIA CORPORATION and MONSANTO
CORPORATION,
        Third-Party Plaintiffs,

   v.

MODERN CONTINENTAL CONSTRUCTION
CO., INC.,
        Third-Party Defendant.

PHARMACIA CORPORATION,
        Third-Party Plaintiff,

   v.

BOSTON EDISON COMPANY,
        Third-Party Defendant.

BOSTON EDISON COMPANY,
        Fourth-Party Plaintiff,

   v.

O'DONNELL SAND & GRAVEL, INC.
and MARY O'DONNELL,
        Fourth-Party Defendants.

1091293

## ANSWER, COUNTERCLAIM, CROSS-CLAIMS AND FOURTH-PARTY COMPLAINT OF THIRD-PARTY DEFENDANT, BOSTON EDISON COMPANY

The Third-Party Defendant, Boston Edison Company ("Edison"), hereby responds to the Third-Party Complaint of Pharmacia Corporation ("Pharmacia"), in accordance with its numbered paragraphs, as follows:

### Introduction

1.    No answer required.  (As used herein, the phrase "No answer required" shall mean that the allegation or paragraph contains conclusions of law and/or prayers for relief and not averments of fact as to which an admission or denial is required.  To the extent that such allegation or paragraph shall be deemed to allege actionable behavior or wrongdoing by or against Edison, it is denied.)

### Parties and Jurisdiction

2.    Without knowledge.  (As used herein, the phrase "Without knowledge" shall mean that Edison is without sufficient knowledge or information necessary to form a belief as to the truth of the allegation, and Edison therefore denies same.)

3.    Admitted.

4.    No answer required.

### Statement of the Claim

5.    Admitted, except that the properties referenced herein were owned by Monsanto Company f/k/a/ Monsanto Chemical Company.

6.    As this paragraph purports to characterize the terms of a document, Edison refers this Court to the document itself and not to Pharmacia's characterization of it.  Edison expressly denies any characterization by Pharmacia of Exhibit "A" inconsistent with the terms contained in it.

- 2 -

1091293

7.      Admitted.

8.      Without knowledge.

9.      Without knowledge.

10.     It is admitted that on or about the dates referenced herein, counsel for Pharmacia made purported demands upon Edison for indemnification. Edison denies that Pharmacia's purported demands were based upon an enforceable contractual obligation as inferred herein, or that they properly stated a claim or notice either as a demand for indemnity and/or pursuant to M.G.L. Chapter 21E. The allegations herein are otherwise denied.

11.     No answer required. To the extent that an answer is required to this paragraph, Edison denies having breached any obligations or that its refusal to indemnify Pharmacia was not factually and/or legally justified.

12.     No answer required. To the extent that an answer is required to this paragraph, Edison denies having breached any contract and therefore denies that Pharmacia has been damaged as alleged.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Pharmacia has failed to state a claim upon which relief may be granted.

### Second Affirmative Defense

Pharmacia's claims are barred by the applicable statutes of limitation.

### Third Affirmative Defense

Pharmacia's claims are barred due to non-occurrence of a condition precedent.

- 3 -

1091293

### Fourth Affirmative Defense

Pharmacia's claims against Edison fail as the theories and documentation upon which it relies have been released.

### Fifth Affirmative Defense

Pharmacia is not the real party-in-interest and lacks standing to assert claims against Edison.

### Sixth Affirmative Defense

Pharmacia's claims are barred due to a lack of mutuality of obligation.

### Seventh Affirmative Defense

Pharmacia's claims are barred by the waiver and election of remedies doctrines.

### Eighth Affirmative Defense

Pharmacia's claims are barred by the doctrine of frustration of purpose.

### Ninth Affirmative Defense

Pharmacia's claims are barred because of its contributory and/or comparative negligence.

### Tenth Affirmative Defense

Pharmacia's damage, if any, was caused in whole or in part by its own acts or omissions or by those of non-parties over which Edison has had no control.

### Eleventh Affirmative Defense

Pharmacia's claims are barred by its failure to adequately mitigate damage.  Pharmacia's damage must be reduced thereby in an amount to be determined.

### Twelfth Affirmative Defense

Pharmacia's claims are barred by the doctrine of laches.

1091293

### Thirteenth Affirmative Defense

Pharmacia's claims are barred by its own unclean hands.

### Fourteenth Affirmative Defense

Pharmacia's claims are barred by the doctrine of estoppel.

### Fifteenth Affirmative Defense

Pharmacia's claims are barred by its predecessor's failure to fulfill basic assumptions to the 1983 Deed; namely, that following said 1983 Deed, Monsanto would cease in its contamination of the subject property, including especially the adjacent property from which its contaminants flowed.

### Sixteenth Affirmative Defense

Pharmacia's claims against Edison are barred because at all relevant times, Edison took the steps necessary to protect Monsanto in Edison's subsequent conveyance by, *inter alia,* adding language to the 1995 use restriction, namely: 1) that the use restriction was required because of the nature and condition of the subsurface of the property being conveyed; and 2) that the restrictive covenants and conditions were being imposed for the benefit of Monsanto by its deed to Edison dated June 20, 1983.

### Seventeenth Affirmative Defense

Pharmacia's claims against Edison are barred since Edison carried forward the indemnity clause in its 1995 transaction by requiring that O'Donnell Sand & Gravel indemnify both Monsanto and Edison on the same basis as that contained in the 1983 Deed.

- 5 -

### Eighteenth Affirmative Defense

Pharmacia's claims against Edison are barred since the indemnity provision upon which it relies does not cover claims resulting from a statute imposing civil liability for environmental clean-up.

### Nineteenth Affirmative Defense

Pharmacia's claims against Edison are barred until such time as Mystic undertakes a prohibited use of the property in violation of the restriction contained in the 1983 Deed. Thus, Pharmacia's claim against Edison is not yet ripe.

### Twentieth Affirmative Defense

By its terms, the burden and benefit of the use restriction ran with the land such that subsequent parties in the chain of title had the power to waive them - - and did so.   As such, there is no restriction left to be violated and therefore nothing for Edison to indemnify against. Pharmacia's claims against Edison fail since the use restriction has been rendered unenforceable.

### Twenty-First Affirmative Defense

Pharmacia's claims against Edison are barred by the doctrine of accord and satisfaction.

### Twenty-Second Affirmative Defense

Pharmacia is estopped and otherwise barred from bringing any claims against Edison because, as successor-in-interest to Solutia and Monsanto, it failed to protect the burdened property when, on March 17, 1999, Solutia sold the benefited property to DDRC Gateway LLC. Whereas the Solutia/Gateway deed contains many restrictions and covenants related to the development and remediation of the abutting property, there is no specific reference in said deed to the restriction or indemnity imposed by Monsanto on the property sold to Edison under the 1983 Deed.  Pharmacia's claims fail as a result.

- 6 -

### Twenty-Third Affirmative Defense

Pharmacia's claims against Edison are barred as it has failed to provide Edison with the requisite notice under M.G.L. c. 21E for purported Chapter 21E claims against it.

### Twenty-Fourth Affirmative Defense

Pharmacia's claims against Edison are barred since Chapter 21E claims were not contemplated by the 1983 Deed.

### Twenty-Fifth Affirmative Defense

Owing to Edison's conduct and performance from the 1983 Deed through the 1995 Deed, Pharmacia's claims fail under the doctrine of impossibility of performance of contract.

## COUNTERCLAIM, CROSS-CLAIMS AND FOURTH PARTY COMPLAINT

The Third-Party Defendant, Boston Edison Company, hereby asserts the following Counterclaim, Cross-Claims and Fourth-Party Complaint in accordance with F.R.Civ. P. Rules 13 and 14.

### Parties and Jurisdiction

1.       The Third-Party Defendant and Plaintiff-in-Counterclaim, Cross-Claim and Fourth-Party Complaint, Boston Edison Company ("Edison"), is a corporation duly organized and existing under the laws of Massachusetts with its principal place of business located at 800 Boylston Street, Boston, Massachusetts.

2.       The Third-Party Plaintiff, Pharmacia Corporation ("Pharmacia") is, upon information and belief, a corporation duly organized and existing under the laws of Delaware with its principal place of business located at 100 Route 206 North, Peapack, New Jersey.

- 7 -

3.     The    Defendant    and    Defendant-in-Cross-Claim,    Monsanto    Company ("Monsanto") is, upon information and belief, a corporation duly organized and existing under the laws of Delaware with its principal place of business located at 800 North Lindbergh Boulevard, Saint Louis, Missouri.

4.     The Plaintiff and Defendant-in-Cross-Claim, Mystic Landing, LLC ("Mystic") is, upon information and belief, a limited liability corporation duly organized and existing under the laws of Massachusetts with its principal place of business located at 600 Memorial Drive, Cambridge, Massachusetts.

5.     The Third-Party Defendant and Defendant-in-Cross-Claim, Modern Continental Construction Co., Inc. ("Modern Continental") is, upon information and belief, a corporation duly organized and existing under the laws of Massachusetts with its principal place of business located at 600 Memorial Drive, Cambridge, Massachusetts.

6.     The Fourth-Party Defendant, O'Donnell Sand & Gravel, Inc. ("OSG") is, upon information and belief, a corporation duly organized and existing under the laws of Massachusetts with its principal place of business located at 47 Marion Drive, Kingston, Massachusetts.

7.     The Fourth-Party Defendant, Mary O'Donnell ("O'Donnell") is, upon information and belief, an individual residing at 128 West Cliff Drive, Plymouth, Massachusetts.

8.     This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

### Facts Relevant to Chain of Title and Restrictive Use Covenant

9.     On June 20, 1983, Monsanto sold to Edison property containing approximately 35 acres of land located in Everett and Boston at Alford Street and Broadway (the "property"). Monsanto retained an abutting parcel of land (the "abutting property"). The property was owned

- 8 -

by Monsanto prior to 1983 during which time it was purportedly used only for industrial and manufacturing purposes.

10.    In the deed under "Further Covenants and Conditions", "EDISON and its successors in title agree[d], for the benefit of MONSANTO and its successors in title, that the property hereby conveyed shall be used solely for industrial and manufacturing purposes and that the property hereby conveyed shall not be used for retail business, for multi or single family residential purposes..." (the "restrictive use" or "use restriction") (Exhibit "A", Section b.). EDISON further agreed that it "shall at all times indemnify and hold MONSANTO harmless from and against, and hereby releases MONSANTO from any and all civil liability, claims, suits, judgments, damages, losses, costs and expenses (including reasonable attorneys' fees) caused by, relating to or arising out of any use of the premises in violation of the provisions of paragraphs a and b above" (Exhibit "A", Section c.).

11.    The indemnity paragraph further provides that "[t]he rights of MONSANTO and obligations of EDISON under this indemnity and release shall not be affected by a conveyance of the premises by EDISON, nor by the conveyance of the adjoining property by MONSANTO, and the indemnity and release shall continue in full force and effect in the event one or both such conveyances are made in the future." (Exhibit "A", Section c.). Section d. provides that the (restrictive) covenants "shall run with the land and bind and be for the benefit of, as appropriate, the parties' successors in title." (The provisions of ¶¶ 9-11 are collectively referred to as the "1983 Deed".)

12.    On March 6, 1995, Edison sold the property to OSG. In its deed to OSG, Edison imposed a use restriction nearly identical to that contained in the 1983 Deed, plus an indemnity provision in favor of Edison and Monsanto for any damages or losses caused by, relating to, or

- 9 -

arising out of any use of the premises in violation of the restriction (the "1995 Deed", Exhibit "B"). Edison inserted language indicating that the use restriction was required "because of the nature and condition of the subsurface of the property" being conveyed, referring to the prospect of environmental contamination by Monsanto or other predecessor-in-interest to Edison. (Section b. of Exhibit "B" under "Further Covenants and Conditions".) In that regard, OSG and Edison released each other from any liability arising under CERCLA or Chapter 21E (Section 1 of Exhibit "B" under "Additional Covenants and Releases").

13.     In addition to the restrictive use and indemnity terms of the 1983 Deed, the 1995 Deed contained yet additional language. Following subsection d., the 1995 Deed provides that "[a]ll of the foregoing covenants and conditions are imposed for the benefit of Monsanto by its Deed to Boston Edison Company, dated June 20, 1983, ... and are imposed by this Deed for the benefit of Grantor [Edison] and Grantor's remaining land in the Cities of Everett and Boston" (Exhibit "B"). The 1995 Deed provided that the covenants "shall run with the land and bind and be for the benefit of, as appropriate, the parties' successors in title" (Exhibit "B").

14.     In 1995, Edison owned a generating plant in Everett located across from the subject property. In 1997, Edison sold its generating plant but retained a substantial easement at the site.

15.     As part of the 1995 sale from Edison to OSG, the parties executed a separate document entitled "Acknowledgment and Release" (Exhibit "C"). OSG, (1) acknowledged the contaminated nature of the property; (2) recognized that it obtained a price-concession as such; and, (3) restated its release in favor of Edison (Exhibit "C"). Edison, in turn, executed a like release in favor of OSG. Once OSG's debt was discharged, Edison's release was complete as to statutory environmental liability as to OSG and its "successors and assigns", but not "successors

- 10 -

in title" (see excluded language in Exhibit "C"). OSG's obligation to honor the restrictive use and indemnity remained.

16.    On September 25, 1995, OSG conveyed the property to Mary O'Donnell ("O'Donnell"), OSG's president and treasurer. The use restrictions and indemnity are not restated in this Quitclaim Deed (Exhibit "D").

17.    On March 17, 1999, the abutting property was sold by Monsanto's successor, Solutia, Inc., to DDRC Gateway LLC ("Gateway"). There is no specific reference in that deed to the restriction or indemnity imposed by Monsanto on the property sold to Edison in 1983. Also on this date, March 17, 1999, O'Donnell entered into a Notice of Option Agreement with Modern Continental, which Option Agreement, as amended, was dated May 1, 1996.

18.    On March 18, 1999, the day after Gateway purchased the abutting property, O'Donnell executed a Grant and Release of Easements (the "1999 Grant and Release"), whereby O'Donnell granted Gateway certain easements allowing access to the abutting property and released certain easements created in the 1983 Deed for the benefit of the abutting property (Exhibit "E").

19.    In exchange, Gateway, "as successor in title to Monsanto as owner of the Benefited land [the abutting property]," waived any right it or its successors or assigns may have "to enforce those use restrictions contained in the [1983] Deed, meaning and referring only to those conditions and restrictions set forth in paragraphs (a) and (b) under the heading 'Further Covenants and Conditions' in the [1983] Deed."

20.    O'Donnell reaffirmed any indemnity obligations she may have had as to Gateway and its successors and assigns under the 1983 Deed, but stated that Gateway's "predecessors in

- 11 -

title shall have no right or claim of indemnification under such [indemnity] by virtue of the foregoing." There was no mention of the 1995 Deed or the use restrictions it restated.

21.     A Transfer Certificate of Title dated March 26, 1999, stated that the property, as owned by O'Donnell, was "subject to covenants etc., contained in deed between Boston Edison Company and O'Donnell Sand & Gravel, Inc. dated May 6, 1995…" (Exhibit "F"). Despite the March 18, 1999 Grant and Release between O'Donnell and Gateway, any restrictions or conditions contained in the 1995 Deed from Edison to OSG remained in effect.

22.     On June 21, 2001, O'Donnell sold the property to Mystic (the "2001 Deed"). Also on June 21, 2001, Modern Continental assigned its Notice of Option Agreement to Mystic. The 2001 Deed from O'Donnell to Mystic stated that the sale was "subject to and with the benefit of matters of record, insofar as in force and applicable, not intending to re-impose any of said matters which were previously released, waived or terminated or which previously expired." (Exhibit "G").

23.     A Transfer Certificate of Title dated June 25, 2001, stated that the property as owned by Mystic was "subject to covenants etc., contained in deed between Boston Edison Company and O'Donnell Sand & Gravel, Inc., dated May 6, 1995…" (Exhibit "H"). As with the 1999 Transfer Certificate of Title (Exhibit "F"), the language in the 2001 Certificate of Title confirmed that the restrictions and conditions contained in the 1995 Deed from Edison to OSG remained in effect and were not cancelled by the 1999 Grant and Release.

## Mystic's Chapter 21E Notice to Pharmacia

24.     On August 27, 2001, pursuant to M.G.L. Chapter 21E, §4(a), Mystic sent Pharmacia notice that it would hold Monsanto and Pharmacia liable for the costs incurred for removing hazardous materials from the property, alleging that those hazardous materials had

- 12 -

been released during the period when Monsanto owned the property, and demanding that Pharmacia reimburse it for those costs.

25.    On or about November 1, 2001, having been notified by Pharmacia of Mystic's Chapter 21E notice, Edison notified Mystic that it construed the use restriction contained in the 1995 Deed to remain in full force and effect. Edison further advised Mystic that, based on the indemnity clause contained in the 1995 Deed, to the extent Edison incurred any damage as a result of any violation by Mystic of the use restriction contained in said deed, then Edison would seek indemnification from Mystic.

26.    Responding to Edison's notice, Mystic took the position that the deed restrictions and indemnity no longer burden the property such that they are not enforceable by Edison or Monsanto. Without regard to Edison's easement at the nearby site, Mystic reasoned that neither Edison nor Monsanto owned any land that is benefited by the restrictions.

27.    Whether the use restrictions remain in force and effect or not, Pharmacia has sought indemnification from Edison, purportedly as a matter of contract arising out of the 1983 Deed for Mystic's anticipated breach of the restrictive covenant.

## COUNTERCLAIM

### Count I
### Against Pharmacia for Declaratory Judgment

28.    Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

29.    An actual and *bona fide* controversy exists as to Edison's and Pharmacia's rights, interests and obligations under the 1983 Deed and subsequent conveyances.

- 13 -

30.    Edison requests that this Court declare, *inter alia*, the rights, interests and obligations of Edison, on the one hand, and Pharmacia, on the other hand, under the 1983 Deed.

31.    Edison requests that this Court find, *inter alia*, that:

a)  as set forth above, it took all necessary steps to protect Pharmacia, including its predecessors-in-interest, in its subsequent 1995 conveyance;

b)  the indemnity language contained in the 1983 Deed does not cover, nor was it intended to cover, liability arising out of a statute imposing civil liability for environmental clean-up, such as Mystic's Chapter 21E claims against Pharmacia in this case; and

c)  Pharmacia, including its predecessors-in-interest, failed to protect the burdened property when, on March 17, 1999, it sold the abutting, benefited property without referencing the use restriction imposed by Monsanto on the burdened property sold to Edison.

32.    Edison requests that this Court declare whether the use restrictions remain in force and effect, or whether Gateway and O'Donnell, as successors-in-title to Monsanto and Edison, had the power and authority to waive the use restrictions and did so such that there is no restriction left to be violated and therefore nothing for Edison to indemnify Pharmacia against.

## Count II
## Against Pharmacia for Breach of Contract

33.    Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

34.    As set forth above, Edison took all necessary steps to protect Pharmacia and its predecessors-in-interest under the 1995 Deed.

35.    Pharmacia, and its predecessors-in-interest, had an implied obligation to not take

- 14 -

any action to frustrate or render unenforceable the restrictive use covenants of the 1983 and 1995 Deeds.

36.    Pharmacia, including its predecessors-in-interest, failed to protect the burdened property when, on March 17, 1999, it sold the abutting, benefited property without referencing the use restriction imposed by Monsanto on the burdened property sold to Edison under the 1983 Deed.

37.    By virtue of Edison's contractual relationship with Monsanto, Pharmacia's predecessor in-interest and in-title,  Pharmacia is in breach of contract and is liable to Edison for the damages it causes Edison to incur, plus interest, costs and reasonable attorneys' fees.

WHEREFORE, the Third-Party Defendant and Plaintiff-in-Counterclaim, Boston Edison Company, asks this Court to grant:

1.    Pursuant to Count I, a declaratory judgment declaring the rights, interests and obligations of the parties under the 1983 Deed and subsequent 1995 conveyance, including an award to Edison of its attorneys' fees and costs for having to defend this action;

2.    Pursuant to Count II, judgment against Defendant-in-Counterclaim, Pharmacia Corporation, for the damages it has causes Boston Edison Company to incur, plus interest, costs and reasonable attorneys' fees; and,

3.    Such other and further relief this Court deems just and equitable.

## CROSS-CLAIM AGAINST MONSANTO

### Count I
### Against Monsanto for Declaratory Judgment

38.    Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

- 15 -

39.    An actual and *bona fide* controversy exists as to Edison's and Monsanto's rights, interests and obligations under the 1983 Deed and subsequent conveyances.

40.    Edison requests that this Court declare, *inter alia*, the rights, interests and obligations of Edison, on the one hand, and Monsanto, on the other hand, under the 1983 Deed.

41.    Edison requests that this Court find, *inter alia,* that:

a)    as set forth above, it took all necessary steps to protect Monsanto in its subsequent 1995 conveyance;

b)    the indemnity language does not cover, nor was it intended to cover, liability arising out of a statute imposing civil liability for environmental clean-up, such as Mystic's Chapter 21E claims against Monsanto in this case; and

c)    Monsanto, including its successors-in-interest, failed to protect the burdened property when, on March 17, 1999, it sold the abutting, benefited property without referencing the use restriction imposed by Monsanto on the burdened property sold to Edison.

42.    Edison requests that this Court declare whether the use restrictions remain in force and effect, or whether Gateway and O'Donnell, as successors-in-title to Monsanto and Edison, had the power and authority to waive the use restrictions and did so such that there is no restriction left to be violated and therefore nothing for Edison to indemnify Monsanto against. Edison requests that this Court declare any other of the rights and obligations of the parties.

## Count II
## Against Monsanto for Breach of Contract

43.    Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

44.    As set forth above, Edison took all necessary steps to protect Monsanto and its

successors-in-interest under the 1995 Deed.

44.    Monsanto, and its successors-in-interest, had an implied obligation to not take any action to frustrate or render unenforceable the restrictive use covenants of the 1983 and 1995 Deeds.

45.    Monsanto, including its successors-in-interest, failed to protect the burdened property when, on March 17, 1999, it sold the abutting, benefited property without referencing the use restriction imposed by Monsanto on the burdened property sold to Edison under the 1983 Deed.

46.    By virtue of Edison's contractual relationship with Monsanto, Pharmacia's predecessor in-interest and in-title, Pharmacia is in breach of contract and is liable to Edison for the damages it causes Edison to incur, plus interest, costs and reasonable attorneys' fees.

WHEREFORE, the Third-Party Defendant and Plaintiff-in-Counterclaim, Boston Edison Company, asks this Court to grant:

1.    Pursuant to Count I, a declaratory judgment declaring the rights, interests and obligations of the parties under the 1983 Deed and subsequent 1995 conveyance, including an award to Edison of its attorneys' fees and costs for having to defend this action;

2.    Pursuant to Count II, judgment against Defendant-in-Cross-claim, Monsanto Corporation, for the damages it has causes Boston Edison Company to incur, plus interest, costs and reasonable attorneys' fees; and,

3.    Such other and further relief this Court deems just and equitable.

## CROSS-CLAIMS AGAINST MYSTIC AND MODERN CONTINENTAL

### Count I
### Against Mystic and Modern Continental for Declaratory Judgment

47.     Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

48.     An actual and *bona fide* controversy exists as to Edison's, Mystic's and Modern Continental's rights, interests and obligations under, (1) the 2001 Deed from O'Donnell to Mystic; (2) Modern Continental's Assignment of its 2001 Notice of Option Agreement to Mystic; (3) the Transfer Certificate of Title dated June 25, 2001; and, (4) the proposed construction and/or use by Mystic and Modern Continental for the property.

49.     Edison requests that this Court declare, inter alia, the rights, interests and obligations of Edison, on the one hand, and both Mystic and Modern Continental, on the other hand.

50.     Edison requests that this Court find that Edison took all steps necessary to protect Monsanto and Pharmacia under the 1995 Deed.

51.     Edison requests that this Court find that the restrictions contained in the 1995 Deed are or were, at all relevant times, still in force and effect and remain unaffected by the 1999 Grant and Release.

52.     Edison requests that this Court declare either, (1) that Mystic purchased the property under the 2001 Deed and 2001 Transfer Certificate of Title subject to the restrictive use and indemnity contained in the 1995 Deed such that any contrary use or construction by Mystic or Modern Continental would be so violative; or, (2) that Gateway and O'Donnell, as successors-in-title to Monsanto and Edison were authorized to waive the restrictive use covenants and that

- 18 -

they were so waived, such that there is no restriction left for Mystic or Modern Continental to violate and therefore nothing for Edison to indemnify Pharmacia against.

**Count II**
**Against Mystic in Contract for Indemnification**

53.     Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

54.     As set forth above, when Mystic purchased the property from O'Donnell in 2001, the deed stated that the sale was subject to and with the benefit of all matters of record.  Further, the Transfer Certificate of Title dated June 25, 2001 stated that the property as owned by Mystic was "subject to [the] covenants etc. contained in deed between Boston Edison Company and O'Donnell Sand & Gravel, Inc. dated May 6, 1995…"; meaning, that the restrictions and conditions contained in the 1995 Deed remained in effect.

55.     The indemnity provisions of the 1995 Deed restated that its covenants "shall run with the land and bind and be for the benefit of, as appropriate, the parties' successors in title". Mystic, as successor-in-title to OSG and on notice of all deeds, restrictive covenants and indemnity provisions, has inherited the burden to indemnify Edison from the liability caused by Mystic's own use of the property in violation of the restrictive covenant.

56.     As a result, Mystic is liable to Edison in contract for indemnification for the damages it causes Edison to incur, plus interest, costs and reasonable attorneys' fees.

**Count III**
**Against Mystic for Common Law Indemnification**

57.     Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

- 19 -

58.    Mystic purchased the property from O'Donnell subject to the restrictive use and indemnity provisions contained in the 1983 and 1995 Deeds.

59.    Mystic's actions and conduct concerning whether to develop the property in violation of the restrictive covenant are knowing and intentional and may subject Edison to vicarious liability.

60.    As set forth above, in light of the provisions restated by Edison in the 1995 Deed, Edison is without fault, though compelled by operation of law to defend itself against the wrongful actions of Mystic who now owns the site.

61.    As a result, Mystic will be liable to Edison for common law indemnification for the damages it causes Edison to incur, plus interest, costs and reasonable attorneys' fees.

**Count IV**
**Against Modern Continental for Common Law Indemnification**

62.    Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

63.    Mystic, a single purpose LLC, is wholly owned by Modern Continental.  On March 17, 1999, O'Donnell entered into a Notice of Option Agreement with Modern Continental.  On the date Mystic purchased the property from O'Donnell, Modern Continental assigned its Notice of Option Agreement to Mystic.  At all relevant times, Modern Continental has been on notice and aware of the restrictive use and indemnity provisions contained in the 1983 and 1995 Deeds, and Mystic's obligation to indemnify Edison from the liability caused by Mystic's own use of the property in violation of the restriction.

64.    Mystic's actions and conduct concerning whether to violate the covenant are attributable to, and controlled by Modern Continental, its then-managing member and agent. Should Modern Continental pursue construction in violation of the restrictive covenant, it will be

- 20 -

knowing and intentional and of its own authorization, and may subject Edison to vicarious liability.

65.    As set forth above, in light of the provisions restated by Edison in the 1995 Deed, Edison is without fault, though compelled by operation of law to defend itself against the wrongful actions of Modern Continental, who is now controlling the site.

66.    As a result, Modern Continental will be liable to Edison for common law indemnification for the damages it causes Edison to incur, plus interest, costs and reasonable attorneys' fees.

**Count V**
**Against Modern Continental for Interference**
**with Advantageous Business Relations**

67.    Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

68.    Mystic, a single purpose LLC, is wholly owned by Modern Continental.  At all relevant times, upon information and belief, O'Donnell and Modern Continental had a prior business and financial relationship evidenced, in part, by a mortgage dated May 1, 1996, executed and delivered by O'Donnell in favor of Modern Continental to secure certain pre-existing debt of both Mary O'Donnell and Mary O'Donnell Construction Co., Inc.  Also on May 1, 1996, O'Donnell and Modern Continental entered into an Option Agreement with regard to the subject property in favor of Modern Continental.

69.    On March 17, 1999, O'Donnell entered into a Notice of Option Agreement with Modern Continental.  On March 18, 1999, the day after Gateway purchased the abutting property, O'Donnell executed the 1999 Grant and Release granting Gateway certain easements allowing access to the abutting property and released certain easements created in the 1983 Deed

- 21 -

for the benefit of the abutting property. Upon information and belief, Modern Continental caused O'Donnell to enter into the 1999 Grant and Release for which, in exchange, Gateway would waive rights to enforce the 1983 use restrictions thus enabling Modern Continental to develop the property.

70.     On the date Mystic purchased the property from O'Donnell, Modern Continental assigned its Notice of Option Agreement to Mystic. At all relevant times, Modern Continental has been on notice and aware of the restrictive use and indemnity provisions contained in the 1983 and 1995 Deeds and, by extension, the contractual relationship between Edison and Monsanto, including Monsanto's successors-in-interest.

71.     Mystic's actions and conduct concerning whether to violate the covenant are attributable to, and controlled by Modern Continental, who managed Mystic for more than two years following its date of organization of June 7, 2001. Should Modern Continental pursue construction in violation of the restrictive covenant, it will be knowing and intentional and of its own authorization.

72.     As a result of the foregoing, Modern Continental has intentionally interfered with the business relationships and existing contracts of economic benefit to, or in favor of, Edison.

73.     As a direct result, Edison has or will suffer a loss of advantage and, accordingly, Modern Continental is liable to Edison for the damages it causes Edison to incur, plus interest, costs and reasonable attorneys' fees.

WHEREFORE, the Third-Party Defendant and Plaintiff-in Cross-Claims, ask this Court to grant:

1.      Pursuant to Count I, a judgment declaring the rights, interests and obligations of Boston Edison Company and Defendants-in-Cross-Claim, Mystic Landing, LLC and Modern Continental Construction Co., Inc.;

2.      Pursuant to Counts II and III, judgment against Defendant-in-Cross-Claim, Mystic Landing, LLC, for the damages it causes Boston Edison Company to incur, plus interest, costs and reasonable attorneys' fees;

3.      Pursuant to Counts IV and V, judgment against Defendant-in-Cross-Claim, Modern Continental Construction Co., Inc., for the damages it causes Boston Edison Company to incur, plus interest, costs and reasonable attorneys' fees; and,

4.      Such other and further relief this Court deems just and equitable.

## FOURTH-PARTY COMPLAINT

### Count I
### Against OSG and O'Donnell for Declaratory Judgment

74.     Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

75.     An actual and *bona fide* controversy exists as to Edison's, OSG's and O'Donnell's rights, interests and obligations under the 1995 Deed and subsequent Transfer Certificate of Title dated March 26, 1999.

- 23 -

76.     Edison requests that this Court declare, *inter alia*, the rights, interests and obligations of Edison, on the one hand, and OSG and O'Donnell, on the other hand under the foregoing title documents.

77.     Edison requests that this Court find that it took the steps necessary to protect Monsanto in the 1995 conveyance as expressed by the 1995 Deed.

78.     Edison requests that this Court find that it imposed a use restriction nearly identical to that contained in the 1983 Deed, and that the 1995 Deed contained an indemnity provision in favor of both Edison and Monsanto for any damages or losses caused by, relating to, or arising out of any use of the premises in violation of the restriction.

79.     As set forth above, Edison requests that this Court find that it incorporated such other additional language in favor of itself and Monsanto thereby heightening the protection to each, and that no other document or covenant affected the restrictive use and indemnity terms of the 1983 and 1995 Deeds.

80.     Edison requests that this Court find and/or declare, (1) that Edison carried forward the restrictive use and indemnity terms of the 1983 Deed in this 1995 transaction; (2) that OSG subsequently conveyed the property to O'Donnell but did not restate the restrictive use and indemnity terms; (3) that the 1999 Grant and Release executed by O'Donnell did not adversely affect the 1995 Deed or the use restrictions it restated; and, (4) that the restrictive use covenants and conditions contained in the 1995 Deed remained in effect as the Transfer Certificate of Title dated March 26, 1999 stated that the property, as owned by O'Donnell, was "subject to covenants etc. contained in deed between Boston Edison Company and O'Donnell Sand & Gravel, Inc. dated May 6, 1995…"

81.    In declaring the rights and obligations of the parties, Edison requests that this Court declare whether Gateway and O'Donnell, as successors-in-title to Monsanto and Edison, were entitled to waive the restrictive use covenants such that no indemnity is owed by Edison to Pharmacia or Monsanto.

## Count II
### Against OSG in Contract for Indemnification

82.    Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

83.    As set forth above, the 1995 Deed imposed the original 1983 Deed's use restrictions as well as additional restrictions for the benefit of Edison, itself, and for the benefit of Edison's other land in Everett and Boston. The 1995 Deed restrictions survived the 1999 Grant and Release.

84.    The 1995 Deed required OSG to indemnify Edison for all civil liability, claims, suits, judgments, etc., arising out of any use of the property in violation of the restrictions.

85.    Should Mystic or Modern Continental violate the restrictive use covenants imposed by the 1995 Deed, then OSG is liable to Edison for the damages it has caused Edison to incur, plus interest, costs and reasonable attorneys' fees.

## Count III
### Against O'Donnell in Contract for Indemnification

86.    Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

87.    O'Donnell purchased the property from OSG subject to the 1995 Deed and use restrictions it contained. The Transfer Certificate of Title dated March 26, 1999 stated that the

- 25 -

property, as owned by O'Donnell, was "subject to covenants etc. contained in deed between Boston Edison Company and O'Donnell Sand & Gravel, Inc. dated May 6, 1995...".

88.    Should Mystic or Modern Continental violate the restrictive use covenants contained in the 1995 Deed, then O'Donnell will be liable to Edison for the damages it has caused Edison to incur, plus interest, costs and reasonable attorneys' fees.

### Count IV
### Against OSG and O'Donnell for Common Law Indemnification

89.    Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

90.    OSG and O'Donnell, as successors-in-title to Edison, failed to take such steps as were necessary to protect the restrictive use and indemnity provisions contained in the 1983 and 1995 Deeds.

91.    As set forth above, in light of the provisions restated by Edison in the 1995 Deed, Edison is without fault, though compelled by operation of law to defend itself against the wrongful actions of OSG and O'Donnell, successors-in-title.

92.    Mystic's decision whether to develop the property in violation of the restrictive covenant may subject Edison to vicarious liability.

93.    As a result, OSG and O'Donnell will be liable to Edison for common law indemnification for the damages it has caused Edison to incur, plus interest, costs and reasonable attorneys' fees.

### Count V
### Against O'Donnell for Interference
### with Advantageous Business Relations

94.    Edison hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 27.

- 26 -

95.    At all relevant times, upon information and belief, O'Donnell and Modern Continental had a prior business and financial relationship evidenced, in part, by a mortgage dated May 1, 1996, executed and delivered by O'Donnell in favor of Modern Continental to secure certain pre-existing debt of both Mary O'Donnell and Mary O'Donnell Construction Co., Inc.    Also on May 1, 1996, O'Donnell and Modern Continental entered into an Option Agreement with regard to the subject property in favor of Modern Continental.

96.    On March 17, 1999, O'Donnell entered into a Notice of Option Agreement with Modern Continental.    On March 18, 1999, the day after Gateway purchased the abutting property, O'Donnell executed the 1999 Grant and Release granting Gateway certain easements allowing access to the abutting property and released certain easements created in the 1983 Deed for the benefit of the abutting property.    Upon information and belief, in order to aid Modern Continental's development of the property, O'Donnell entered into the 1999 Grant and Release for which, in exchange, Gateway would waive rights to enforce the 1983 use restrictions.

97.    At all relevant times, O'Donnell, both individually and as president and treasurer of OSG, was aware of the restrictive use and indemnity provisions contained in the 1983 and 1995 Deeds and, by extension, the contractual relationship between Edison and Monsanto, including Monsanto's successors-in-interest.

98.    As a result of the foregoing, O'Donnell has intentionally interfered with the business relationships and existing contracts of economic benefit to, or in favor of, Edison.

99.    As a direct result, Edison has or will suffer a loss of advantage and, accordingly, O'Donnell is liable to Edison for the damages it causes Edison to incur, plus interest, costs and reasonable attorneys' fees.

- 27 -

WHEREFORE, Fourth-Party Plaintiff, Boston Edison Company, asks this Court to grant:

1.      Pursuant to Count I, a judgment declaring the rights, interests and obligations of Boston Edison Company and Fourth-Party Defendants, O'Donnell Sand & Gravel, Inc. and Mary O'Donnell;

2.      Pursuant to Count II and IV, judgment against Fourth-Party Defendant, O'Donnell Sand & Gravel, Inc., for the damages it has caused Boston Edison Company to incur, plus interest, costs and reasonable attorneys'; fees;

3.      Pursuant to Counts III, IV and V, judgment against Fourth-Party Defendant, Mary O'Donnell, for the damages she has caused Boston Edison Company to incur, plus interest, costs and reasonable attorneys' fees; and,

4.      Such other and further relief this Court deems just and equitable.

                                        **BOSTON EDISON COMPANY,**

                                        By its Attorneys,

                                        Mark S. Granger (BBO# 206920)
                                        Douglas B. Otto (BBO# 555269)
                                        William A. Staar  (BBO# 659425)
                                        MORRISON MAHONEY LLP
                                        250 Summer Street
                                        Boston, MA  02210
                                        (617) 737-8873

Date: July 19, 2004

## CERTIFICATE OF SERVICE

I, Douglas B. Otto, do hereby certify that on this 19th day of July, 2004, I have served the enclosed Answer, Counterclaim, Cross-Claims and Fourth-Party Complaint of Third-Party Defendant, Boston Edison Company by mailing same, first class and postage prepaid, to counsel of record as follows:

Gerald J. Petros, Esq.
HINCKLEY, ALLEN & SNYDER
1500 Fleet Center
Providence, RI 02903
*Attorney for Mystic Landing, LLC, and
Modern Continental Company, Incorporated*

John M. Stevens Jr., Esq.
Adam P. Kahn, Esq.
Elisabeth M. DeLisle, Esq.
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
*Attorneys for Pharmacia Corporation,
Monsanto Company, and Solutia, Inc..*

Doreen M. Zankowski, Esq.
Katherine L. Ruff, Esq.
HINCKLEY, ALLEN & SNYDER
28 State Street
Boston, MA 02109
*Attorney for Mystic Landing, LLC, and
Modern Continental Company, Incorporated*

Douglas B. Otto

1091293