UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MYSTIC LANDING, LLC,
                Plaintiff,
    v.

PHARMACIA CORPORATION, SOLUTIA INC.
  and MONSANTO COMPANY,
                Defendants.

PHARMACIA CORPORATION and
  MONSANTO COMPANY,
                Third-Party Plaintiffs,
    v.

MODERN CONTINENTAL CONSTRUCTION
  CO., INC.,
                Third-Party Defendant.

PHARMACIA CORPORATION,
                Third-Party Plaintiff,
    v.

BOSTON EDISON COMPANY,
                Third-Party Defendant.

BOSTON EDISON COMPANY,
    Fourth-Party Plaintiff,
    v.

O'DONNELL SAND & GRAVEL, INC.
and MARY O'DONNELL,
    Fourth-Party Defendant.

CIVIL ACTION No. 04-10180 NMG

**MEMORANDUM IN SUPPORT OF DEFENDANTS MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

Defendants Pharmacia Corporation ("Pharmacia") and Monsanto Company ("Monsanto") (collectively, the "Defendants") submit this memorandum in support of their motion to compel Plaintiff Mystic Landing, LLC ("Mystic") and Third-Party Defendant Modern Continental Construction Co., Inc. ("Modern") to make complete and non-evasive Rule 26(a) disclosures and to produce documents responsive to Defendants' First Requests for the Production of Documents Propounded to Mystic and Modern.

## SUMMARY STATEMENT OF FACTS

Mystic commenced this action by filing a complaint in Massachusetts Superior Court alleging that it was entitled to recover from Pharmacia and Monsanto expenses it expected to incur at property it owned at Alford Street and Broadway in Everett (the "Property") as necessary and appropriate costs of responding to environmental contamination of the Property under chapter 21E of the Massachusetts General Laws. Pharmacia had owned the Property and operated a chemical manufacturing plant there prior to 1983, when it sold the Property to third-party defendant Boston Edison Co. ("BECO"). Mystic, a limited liability corporation managed by Modern, which acquired the Property in or about 2001 following intervening transactions, apparently planned to develop it and, in connection with that development, anticipated that it would incur substantial expenses related to environmental contamination of the Property that it alleged was attributable to its past use for chemical manufacturing.

Pharmacia and Monsanto removed the action to this Court and filed an answer and counterclaims against Mystic and third-party claims against Modern. Among other defenses, Pharmacia and Monsanto pointed out that Mystic/Modern would be unjustifiably enriched if Mystic recovered response costs. They based this defense on the recitation in the deed to Mystic that the purchase price was $300,000, an amount that represented a more than generous

FHBOSTON/1127865.2

2

allowance for the cost of cleaning up any environmental contamination that might be present on the Property. In response Mystic asserted on various occasions that it had paid "millions" for the Property.

Among the counterclaims and third-party claims filed by Pharmacia and Monsanto were claims for contribution by Mystic and Modern to any environmental response costs for which Pharmacia and Monsanto were liable on the ground that there had been releases of hazardous materials and oil while the Property was owned by Mystic and operated by Modern. In that regard, while the Property was owned by Mystic and prior thereto, Modern used it in connection with its performance as a joint venturer of a $339,487,273 contract for the High Street to State Street, Aquarium Station portion of the Central Artery Project. Kahn, Ex. A. [1] In 1996, Modern and its joint venturer entered into a $13,800,000.00 subcontract with the then-owner of the Property; of the total subcontract amount, $7,732,690 was for the use of the Property. Id. A view of the Property had by Pharmacia and Monsanto pursuant to their Rule 34 request revealed that that use of the Property involved, among other things, breaking up pieces of the elevated Central Artery, fueling construction vehicles in an unpaved area and maintaining piles of waste soils and garbage. Kahn, ¶ 3, Exs. B-D. Analysis of soil samples taken during the view showed that hazardous materials and oil had been released onto the Property during Mystic's ownership and Modern's operation. Kahn, ¶ 4, Ex. E.

Mystic made its voluntary disclosures on May 24, 2004. A copy of the disclosures is attached hereto as Exhibit A. The section of the disclosures entitled "Individuals who may have discoverable information relevant to the allegations contained in the Complaint" identified only

---

[1] References to the Affidavit of Adam Kahn, filed herewith, are by the surname of the affidavit and paragraph or exhibit.

two individuals, both of them employees of the Commonwealth's Department of Environmental Protection. The remainder of the section merely stated that unnamed individuals now or formerly employed by eight corporations might have knowledge concerning various matters at issue in the action.

On June 25, 2004, Pharmacia and Monsanto served their First Requests for Production of Documents and their First Sets of Interrogatories on Mystic and Modern. Copies of these discovery requests are attached, respectively, as Exhibits B, C, D and E. By the document requests, Pharmacia and Monsanto sought, *inter alia*, all documents showing the price paid for the acquisition of the Property by Mystic (Exs. B, C, ¶ 4), an action involving the Property in which Modern had been a party (the "Rosen action") (Exs. B, ¶ 9, C, ¶ 8), any contract relating to use of the Property (Exs. B, C, ¶ 5), activities occurring on the Property (Exs. B, C, ¶¶ 12-19) and the past or projected costs of remediating the Property that Mystic seeks as damages herein (Exs. B, C, ¶ 25). One of the three interrogatories Pharmacia and Monsanto propounded to each of Mystic and Modern asked them to identify each document responsive to the document requests that had existed in the past but had been destroyed before service of the Requests. (Exs. D, E, Int. # 2)

On July 26, 2004, Mystic and Modern served written responses to the requests for production of documents and answers to the interrogatories. Copies of those documents are attached hereto as Exhibits F, G, H and I. The responses asserted standard objections to virtually all paragraphs of the requests but indicated that all non-privileged documents responsive to the requests that were in the possession, custody or control of Mystic or Modern would be produced. In response to Interrogatory No. 2, Mystic and Modern stated that they were "not aware of any

documents which are responsive to Defendants' First Request for Production of Documents that [Mystic or Modern] once had, but that has since been lost or destroyed."

On September 10, 2004, Mystic and Modern produced documents for inspection and copying. The production consisted of a single box containing approximately 1900 pages. Among them were at least 300 pages of duplicate reports entirely unrelated to the Property or to the subject matter of any of the document requests.[2] The only documents that could be claimed to have anything to do with the price paid by Mystic for the Property were a release of a mortgage held by Modern's joint venture, a release of security interests held by the joint venture and an assignment by Modern to Mystic of an option to buy the Property for a stated price of $20,000,000 (to be reduced to $7,500,000 in the event the Red Sox did not locate a stadium on the Property) executed by the same individual on behalf of both parties . No document showed any payment actually made by Mystic for that assignment or for the actual acquisition of the Property. The production did not include a single document relating to the Rosen action, to Modern's $7,000,000 subcontract for use of the Property, to activities occurring on the Property while it was operated by Modern or owned by Mystic or to the actual or projected response costs that constitute the damages Mystic seeks to recover herein.

Following a request by Pharmacia and Monsanto on October 19, 2004, there was a discovery conference pursuant to Local Rule 37.1 on October 25, 2004 at the offices of Hinckley Allen Snyder LLP, counsel for Mystic and Modern. In attendance were John Stevens and Elisabeth DeLisle, representing Pharmacia and Monsanto, and Robert Flanders and Doreen Zankowski, representing Mystic and Modern. Mr. Stevens pointed out that Mystic and Modern

---

[2] In contrast, Pharmacia and Monsanto have produced hundreds of boxes of documents responsive to Mystic's document request, documents which were identified and assembled at significant expense.

had failed to identify individuals in their voluntary disclosures. Ms. Zankowski agreed to supplement the disclosures and, when asked when she would do so, said within a week. Mr. Stevens then went through the document request, pointing out the numerous subjects as to which no documents had been provided and others where documents had not been produced that Pharmacia and Monsanto knew existed because they had seen them referenced or had obtained them from other sources or from Modern and Mystic themselves in the past. As to the absence of documents concerning contracts for use of the Property and activities on the Property, Ms. Zankowski said that there had been two floods at Modern's offices. As to the absence of documents showing response costs claimed as damages, she said that Modern and Mystic had provided the only documents it had within this category to Pharmacia before commencement of the action and therefore did not have to produce them in discovery. As to these and other categories of documents Ms. Zankowski indicated there would be an additional inquiry and that additional documents would be produced within two weeks.

Despite the discussion and the undertakings at the discovery conference, Mystic and Modern have not supplemented their disclosures or produced a single additional document. By email on November 22, 2004, counsel for Pharmacia and Monsanto reiterated to counsel for Mystic and Modern that, if it were not remedied, their deficient document production would be brought before the Court. Still, Mystic and Modern have done nothing.

## ARGUMENT

I.    **Pharmacia And Monsanto Are Entitled To An Order Compelling Discovery.**

A.    **Mystic And Modern Have Failed To Make A Disclosure Required by Rule 26(A).**

Rule 26(a) requires all parties, "without awaiting a discovery request," "to provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses. . . ." In its Rule 26(a) disclosures, with only two exceptions, Mystic and Modern failed to provide the names of individuals, but rather referred to categories of people. At the discovery conference, their counsel acknowledged that they had an obligation to identify individuals and undertook to do so promptly. Counsel has failed to carry out that undertaking.

B.    **Mystic and Modern Have Failed To Permit Inspection Of Documents.**

Under Rule 37, a party is entitled to an order compelling inspection of documents if the party from whom it has requested the production of documents fails to produce them for inspection and copying. Pharmacia and Monsanto requested production of documents concerning, *inter alia*, Mystic's acquisition of the Property and the consideration it paid for that acquisition, contracts for use of the Property, activities occurring on the Property while it was owned by Mystic and operated by Modern and the response costs Mystic seeks to recover as damages. Although Mystic and Modern produced a small quantity of requested documents relating to other subject matters, they produced either none or virtually no documents relating to

each of these subjects. Under the express provisions of Rule 37, "an evasive or incomplete disclosure, answer or response is to be treated as a failure to disclose answer, or respond."

Mystic's and Modern's response to Pharmacia's and Monsanto's request for production was demonstrably evasive and incomplete. The incompleteness is perhaps most readily demonstrable in the case of the lack of production of a single document relating to contracts for use of the Property and the use of the Property during Mystic's ownership and Modern's operation. Modern has acknowledged under oath in another proceeding that it entered into a $7,700,000 subcontract for the use of the Property in connection with a major Central Artery Project contract. It did not produce that subcontract or a single document relating to its formation or performance. During the view of the Property noticed by Pharmacia and Monsanto, it was evident that there was another subcontract involving use of the Property, for a demolition subcontractor was involved in breaking up steel from the old elevated Central Artery, and that demolition was a part of the work to be performed under Modern's Central Artery Project contract. Kahn, ¶¶ 2-3, Exs. A-D. Yet Modern did not produce a copy of this subcontract or a single document relating to its formation or performance.

As to other subject matters, the incompleteness and insufficiency of the document production is similarly apparent. Because neither Mystic nor Modern produced not a single document showing the actual payment of even a penny for the Property, their response to this request must have been incomplete unless, of course, having overpaid for the use of the Property out of federal and state Central Artery Project funds, Modern or its designee Mystic acquired the Property without payment. As to the request relating to the Rosen action, it is simply incredible that neither Modern nor the counsel who represented it both here and in the Rosen action would

have in their custody or control a single document relating to a lawsuit in which Modern was a party and submitted an affidavit.

### C.   Mystic's And Modern's Partial Excuses Are Without Merit.

At the discovery conference, Mystic and Modern attempted to excuse a portion of their failure to produce documents. For certain categories of documents, such as those relating to the Rosen action, they offered no excuse for the lack of production. For those where they did attempt to excuse their lack of production, the excuses were invalid and insufficient.

### 1.   Destruction Does Not Excuse Non-Production.

In an apparent attempt to explain the lack of production of any documents relating to use of the Property while owned by Mystic or operated by Modern and agreements for use of the Property, counsel for Mystic and Modern stated at the discovery conference and at other times that there had been two floods at Modern's offices. For two reasons, these supposed floods do not excuse the failure to produce any documents showing the use of the Property after the times when Modern obtained the right to use it and Mystic acquired ownership. First, Mystic and Modern themselves belied the statements of their counsel by stating under oath in their answers to interrogatories that they knew of no documents responsive to the requests for production that had been destroyed. Second, the suggestion that every copy of executory multi-million dollar construction subcontracts financed by state and federal funds and, therefore, subject to audit-- together with every piece of paper and every electronic document concerning their formation and performance--has been destroyed by floods at Modern's office is so utterly incredible that it is nothing less than a statement of scorn for the discovery process.

## 2.    Possession From An Alternate Source Does Not Excuse Non-Production.

Of no greater merit is Mystic's and Modern's second reason for not having produced certain documents in response to the requests. At the discovery conference, Mystic and Modern took the view that they did not have to produce any document showing the past and projected response costs they seek to recover as damages or certain documents showing environmental testing at the Property because they had provided those documents to Pharmacia in the course of the pre-litigation negotiations mandated by M.G.L. c21E, § 4A. This assertion is directly contrary to the consistent interpretation of Rule 34 requiring production of documents in response to a request under the Rule regardless whether they are already in the possession of the party serving the request. *E.g., Burton Mechanical Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ind. 1992); *Italia di Navagazione SPAv. M.V. Hermes I*, 564 F. Supp. 492, 495 (S.D.N.Y. 1983), *aff'd on other grounds,* 724 F.2d 21 (2d Cir. 1983); J. Moore, J. Lucas, Moore's Federal Practice P. 34.12 (2d ed. 1991).

As shown by the circumstances present here, there is good reason for the interpretation requiring production of documents already in the possession of the requesting party. In addition to enabling parties to obtain previously unknown information, the discovery process is intended to narrow and define the issues. A comprehensive production of documents in response to a Rule 34 request serves this purpose by permitting the formal identification of the totality of the documents relating to certain issues in a way that a voluntary exchange of documents in an attempt to resolve a dispute by negotiation does not.

## II.    Pharmacia And Monsanto Are Entitled To An Award Of Attorneys' Fees.

If, as it should be, the motion is granted or Mystic and Modern provide the requested discovery after the filing of the motion, Rule 37(a)(4)(A) provides that the Court "shall" award Pharmacia and Monsanto "the reasonable expenses in making the motion" unless they failed to make a good faith effort to obtain the discovery without court action or Mystic and Modern's failure to provide the discovery was substantially justified. Neither exception is applicable here. Pharmacia and Monsanto informed Mystic and Modern that their disclosures and document production were insufficient and incomplete, explained the insufficiency and incompleteness in detail at the discovery conference mandated by the Local Rules, advised Mystic and Modern that they would bring the matter before the Court is the disclosures and document production were not supplemented and allowed a month for Mystic and Modern to do so before filing the motion. Nor can Mystic and Modern claim any substantial justification for simply failing to produce discoverable documents to which no objection was made, failing to identify individuals as required by Rule 26 and failing to produce documents on the ground that they were supposedly already in the possession of Pharmacia and Monsanto.

FHBOSTON/1127865.2

11

## CONCLUSION

For the foregoing reasons, the Court should enter an order compelling Mystic and Modern to make disclosures complying with Rule 26 and to produce for inspection and copying within 30 days all non-privileged documents described in the First Requests for Production of Documents served on them by Pharmacia and Monsanto and requiring Mystic and Modern to pay Pharmacia and Monsanto the reasonable expenses incurred in making the motion.

Respectfully submitted,

John M. Stevens (BBO No. 480140)
Adam P. Kahn (BBO No. 561554)
Elisabeth DeLisle (BBO No. 658067)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 832-1000
Attorneys for Defendants/Third-Party
Plaintiffs Pharmacia Corporation and
Monsanto Company

## CERTIFICATE OF SERVICE

I, John M. Stevens, hereby certify that I served the foregoing document by having a copy thereof delivered to counsel for Mystic Landing, LLC and Modern Continental Construction Co., Inc., and by having copies mailed to counsel for Boston Edison Company and counsel for Mary O'Donnell and O'Donnell Sand & Gravel, Inc., this 23rd day of December, 2004.

John M. Stevens

FHBOSTON/1127865.2