UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>   Plaintiff,<br>v.<br><br>PHARMACIA CORPORATION, SOLUTIA INC.<br>and MONSANTO COMPANY,<br>   Defendants.<br><br>PHARMACIA CORPORATION and<br>MONSANTO COMPANY,<br>   Third-Party Plaintiffs,<br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>   Third-Party Defendant.<br><br>PHARMACIA CORPORATION,<br>   Third-Party Plaintiff,<br>v.<br><br>BOSTON EDISON COMPANY,<br>   Third-Party Defendant.<br><br>BOSTON EDISON COMPANY,<br>   Fourth-Party Plaintiff,<br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>and MARY O'DONNELL,<br>   Fourth-Party Defendant. | CIVIL ACTION No. 04-10180 NMG |

**AFFIDAVIT OF ADAM KAHN**

FHBOSTON/1147724.1

Adam Kahn hereby deposes and says as follows:

1.  I am one of the counsel for defendants Pharmacia, Corporation ("Pharmacia") and Monsanto Company ("Monsanto"). I make this affidavit in support of their motion for an order compelling disclosures and discovery.

2.  In the course of my representation of Pharmacia and Monsanto, I learned of an action in Suffolk Superior Court captioned <u>Rosen Construction Ventures, Inc. v. O'Donnell Sand & Gravel, Inc.</u> and numbered Civil Action No. 96-5683F, which concerned the property at issue herein (the "Property") and in which third-party defendant Modern Continental Construction Co., Inc. ("Modern") was a party. I arranged to obtain certain filings in that action from the court, including an affidavit of Peter M. Grela, Modern's chief financial officer, a copy of which is attached as Exhibit "A." In this affidavit, Mr. Grela describes Monsanto's use the Property in connection with its performance of a large construction contract for the Central Artery Project.

3.  I was one of the participants in a view of the Property on June 29, 2004. It was apparent that the Property had been and was being used intensively for work that had to do with demolition of the old elevated Central Artery and construction of the new Central Artery Project. Attached as Exhibits "B," "C" and "D" are three photographs taken on that day. Exhibit B shows pieces of the old elevated Central Artery steel structure being broken up. Exhibit C shows an unpaved area apparently used for the fueling of construction equipment and vehicles. Exhibit D shows one of the several piles of debris and refuse on the Property. All of these photographs are fair and accurate representations of what I saw on June 29, 2004.

4.  At the view on June 29, 2004 and a subsequent date, environmental consultants engaged by Pharmacia and Monsanto took soil samples that they had analyzed for the presence of certain contaminants. A copy of their report of the results of this sampling is attached as

Exhibit "E." It shows, among other results, the presence of elevated levels of lead on the surface of the Property in the area where pieces of steel from the old Central Artery were being broken up and elevated levels of oil in the area apparently used for fueling.

5. Attached as Exhibit "F" is a copy of a letter I wrote to counsel for Modern and plaintiff Mystic Landing LLC ("Mystic"), stating that their response to Pharmacia's and Monsanto's requests for production of documents had been deficient and requesting a discovery conference on that issue.

Signed under the pains and penalties of perjury this 23rd day of December 2004.

By, _____
Adam P. Kahn (BBO No. 561554)

## CERTIFICATE OF SERVICE

I, John M. Stevens, hereby certify that I served the foregoing document by having a copy thereof delivered to counsel for Mystic Landing, LLC and Modern Continental Construction Co., Inc., and by having copies mailed to counsel for Boston Edison Company and counsel for Mary O'Donnell and O'Donnell Sand & Gravel, Inc., this 23rd day of December, 2004.

_____
John M. Stevens

Exhibit A

Case 1:04-cv-10180-NMG    Document 54    Filed 12/27/2004    Page 4 of 18

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                                    SUPERIOR COURT
                                                                C.A. #96-6583F

```
ROSEN CONSTRUCTION VENTURES, INC.      )
AND ACROPOLIS VENTURES, INC.,          )
                                       )
                                       )
        Plaintiffs                     )
                                       )
                                       )
v.                                     )
                                       )
                                       )
O'DONNELL SAND & GRAVEL, INC.,         )
MARY O'DONNELL, MARY O'DONNELL         )
CONSTRUCTION, CO., INC., THE MODERN    )
CONTINENTAL CONSTRUCTION CO., INC.     )
AND OBAYASHI CORPORATION, PARTNERS     )
D/B/A MODERN CONTINENTAL               )
CONSTRUCTION CO., INC./OBAYASHI, A     )
JOINT VENTURE                          )
                                       )
        Defendants                     )
                                       )
```

## AFFIDAVIT OF PETER M. GRELA

I, Peter M. Grela, being of age and duly sworn, hereby do and depose and say as follows:

1.  I am the Chief Financial Officer ("CFO") of Modern Continental Construction Co., Inc. ("Modern"), a Massachusetts corporation with a place of business in Cambridge, Massachusetts. I have been employed by Modern for 10 years.

2.  In my capacity as CFO of Modern, I have been personally involved in the financial status of a subcontract entered into

between Defendant Mary O'Donnell Construction Co., Inc., and a joint venture between Modern Continental and Obayashi Corporation of Japan ("Modern/Obayashi"). I therefore make this affidavit on the basis of my personal knowledge of hereof.

3. The Modern/Obayashi Joint Venture was formed for the purpose of submitting a bid to be the general contractor for a joint project of the Massachusetts Highway Department and Massachusetts Transportation Authority, and, if successful, performing the work of that general contract. Modern/Obayashi was the successful bidder for that project, known as "Interstate 93, High Street to State Street, MBTA Aquarium Station", Central Artery Tunnel Project C17A9 (the "Project"), and therefore executed a general contract for the Project on March 4, 1996 (the "Contract").

4. Under the terms of the Contract, Modern/Obayashi is required to excavate approximately 1,100 feet of tunnel, sixty feet deep and two hundred feet wide, underneath and adjacent to the existing overhead Interstate 93 Highway. Modern/Obayashi is also required to demolish and reconstruct the MBTA Aquarium Blue Line Station adjacent to that section of Artery, relocate numerous utilities presently routed through the area, re-route traffic, construct temporary ramps and roadways, demolish the old elevated I-93 Highway and perform related activities. This work

175604v4                                2

is to be performed over an eight year period for a contract price of $339,487,273.00. At the time of its award, C17A9 was the second largest public construction contract ever awarded in the Commonwealth of Massachusetts.

5. As part of its work on the Project, Modern/Obayashi required a facility for the laydown and staging of equipment and materials for the Project. In furtherance of this and other project requirements, on April 5, 1996, Modern/Obayashi entered into a subcontract agreement with Mary O'Donnell Construction Co., Inc. ("MODC") of Kingston, Massachusetts.

6. Under the terms of the Subcontract, MODC agreed to furnish a laydown/staging facility and project yard for a seven and one-half year period. MODC also agreed to secure and improve the yard for the Joint Venture's use, to manage and operate the project yard, to perform certain trench excavation and to perform other project related services for compensation in the total amount of $13,800,000.00. A copy of the Subcontract is attached hereto as Exhibit A. Of that $13,800,000.00, the sum of $7,732,690.00 was for the use of the land at issue, while $6,067,310.00 was for construction services to be performed by MODC. All of these payments are secured by a surety bond obtained by Modern/Obayashi for the benefit of its subcontractors and suppliers, as required by statute.

3

7. In addition to receiving the use of the facility and the services described above, as part of the Subcontract Modern/Obayashi received an option to purchase the property at the end of the Subcontract term for the sum of $300,000.00.

8. Modern/Obayashi is aware of claims regarding the subject property which have been made by Mr. Clifford Rosen and certain entities which he owns or controls, including Plaintiffs Rosen Construction Ventures Inc., and Acropolis Ventures, Inc., to the effect that Rosen is entitled to receive approximately 50% of the payments from Modern/Obayashi to MODC for the use of the Property.

9. Modern/Obayashi, on the basis of its understanding of the status of the property, and its understanding of the several disputes between MODC and Rosen, believes that MODC had sufficient right, title and interest in the subject property to enter into the Subcontract and fulfill its terms, and that it is therefore paying the correct party.

10. Nevertheless, in order to be assured that Modern/Obayashi would not be exposed to any claims that it had paid monies to the wrong party, I arranged for an analysis to be performed of the payments to date, and payments which remain to be made under the Subcontract. As part of that analysis, I also arranged for an analysis to be made to show the amount of time

4

175604v4

which will elapse before the amount of money remaining to be paid under the Subcontract will be insufficient to satisfy Rosen's claims to 50% of the proceeds of the land use portion of the Subcontract. Those analyses are set forth in the spreadsheet attached hereto as Exhibit B, which includes a true and accurate list of the amounts which have been paid and are due to be paid under the Subcontract, as well as the schedule for those payments.

11. As shown on Exhibit B, under the terms of the Subcontract, payments for Modern/Obayashi to MODC for the use of the land at issue were scheduled as follows:

- Upon mobilization, $1,167,710.00.
- For the first 12 months, $36,917.00 per month.
- For the next 68 months, $87,529.00 per month.
- For the next 6 months, $28,334 per month.

Along with the above listed option payment of $300,000.00 for the Property, the land value being paid to MODC is therefore $8,032,690.

12. In accordance with these provisions, Modern/Obayashi has to date paid to MODC the sum of $1,859,896.00, with the sum of $4,701,720.00 remaining to be paid over the next 66 months.

175604v4

5

13. That total of $8,032,690.00 for the use of the land is not, however, being paid in full directly to MODC. As shown in Column 2 of Schedule 1, portions of those payments are being held by Modern/Obayashi and paid to satisfy real estate taxes on the subject property. Specifically, $1,471,074.00 due under the Subcontract is to be held in escrow and paid to the Cities of Everett and Boston for real estate taxes. The net amount which would therefore be paid by Modern/Obayashi to MODC, or to any other entity with right, title and interest to the subject property, is $6,561,616.00, as shown in column three of Schedule 1.

14. If Mr. Rosen and his various business entities are correct, and are in fact entitled to approximately 50% of the monies being paid by Modern/Obayashi for the use of the land under the Subcontract, Rosen would be entitled to approximately 50% of $6,561,616.00, for a total of $3,280,808.00. Even that amount, however, would not be fully payable to Rosen.

15. As acknowledged at paragraph 3, page three of the Plaintiff's preliminary injunction motion, if Rosen is entitled to 50% of the payments at issue, Rosen then also would be required to pay the amount of $632,560.00, 50% of the payments made to Boston Edison Company to secure the discharge of a certain note and mortgage. The maximum amount which Rosen can

6

175604v4

recover, therefore, and the maximum which any attachment motion need protect, is the above described $3,280,808.00, minus that $632,560.00, for a total $2,648,248.00.

16. As shown in the fourth column of Schedule 1, however, the amount remaining to be paid by Modern/Obayashi for the land use at issue is $4,701,720.00, an amount which is substantially greater than that which Rosen would be entitled to receive if he is successful in all of his arguments.

17. Next, Schedule 2 of Exhibit B shows the sums which remain to be paid on the Subcontract on a monthly basis, as compared to the Rosen claims. Specifically, when the monthly net payment of $73,632.00 is divided into the $2,052,912.00 required to protect Rosen's claims, it can be clearly seen that 28 months of monthly payments, or May of the year 2000, will be reached before Modern/Obayashi has paid so much money under the terms of the contract at issue that Rosen's alleged right to recovery would be endangered.

18. I have become aware that the plaintiffs in this case have alleged that the transaction between Modern/Obayashi and MODC was "structured to disguise" the true nature of the transaction and structured to "deceive the Massachusetts Highway Department and Central Artery Tunnel Project," allegations made in connection with the Project's "minority set-aside"

7

175604v4

requirements. This statement is entirely false, as the transaction at issue was known to and approved by the awarding authorities at issue, and is in full compliance with applicable statutes and regulations.

19. Under the terms of the Massachusetts Highway Department and MBTA requirements for the Contract, Modern/Obayashi was required to enter into subcontracts with business enterprises owned and controlled by women or minorities ("W/MBEs"). In order to satisfy this requirement, Modern/Obayashi entered into subcontracts with several different W/MBEs, one of which was the above-described Subcontract with MODC.

20. Prior to entering into that subcontract with MODC, in accordance with standard Central Artery/Tunnel project procedures, Modern/Obayashi submitted to the awarding authority a schedule which listed its proposed W/MBE subcontractors, to demonstrate that it would comply with project requirements. In addition, Modern/Obayashi inquired directly with the awarding authority as to whether this proposed Subcontract would comply with minority subcontracting requirements. The awarding authority did then review the proposed subcontract, and agreed that it did comply with applicable requirements.

8

175604v4

21. [illegible] aware that, in connection with this action, the Plaintiffs are seeking to attach payments being made by Modern/Obayashi to MODC. In the event that such an attachment causes MODC to be unable to perform under the subcontract, Modern/Obayashi could be substantially damaged in two ways.

22. First, Modern/Obayashi could be forced to seek alternate W/MBEs to satisfy Project requirements. Due to the fact that the project is well under way, and that qualified MBEs are in high demand, Modern/Obayashi would likely need to pay extremely high subcontract rates to meet its Project W/MBE requirements, causing substantial additional costs, the amounts of which cannot be determined at this time. Second, Modern/Obayashi could be required to relocate its laydown/staging yard, at substantial expense both for costs of new land and the costs of interrupting work at the Property and physically relocating the equipment and supplies at issue.

FURTHER YOUR AFFIANT SAYETH NOT.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 22ND DAY OF DECEMBER, 1997.

                                                    _____
                                                    Peter M. Grela

9

175604v4

Exhibit B







Exhibit C