UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MYSTIC LANDING, LLC,                         )
    Plaintiff                                )
                                             )
VS.                                          )
                                             )
PHARMACIA CORP., SOLUTIA, INC., and          )
MONSANTO CO.,                                )
    Defendants                               )      **CIVIL ACTION NO.**
                                                    **04-10180 NMG**
PHARMACIA CORP. and MONSANTO CO.             )
    Third Party Plaintiffs                   )
                                             )
VS.                                          )
                                             )
MODERN CONTINENTAL CONSTR. CO., INC.         )
    Third Party Defendant                    )

PHARMACIA CORP.,                             )
    Third Party Plaintiff                    )
                                             )
VS.                                          )
                                             )
BOSTON EDISON CO.,                           )
    Third Party Defendant                    )

BOSTON EDISON CO.,                           )
    Fourth Party Plaintiff                   )
                                             )
VS.                                          )
                                             )
O'DONNELL SAND & GRAVEL, INC. and            )
MARY O'DONNELL,                              )
    Fourth Party Defendants                  )

## FOURTH-PARTY DEFENDANT, MARY O'DONNELL'S
## ANSWERS TO FIRST SET OF INTERROGATORIES BY FOURTH-PARTY
## PLAINTIFF, BOSTON EDISON COMPANY

Mary O'Donnell (hereinafter referred to as "O'Donnell") in answer to Interrogatories propounded by the Fourth-Party Plaintiff states as follows:

Q1.     Please identify yourself including your full name, date of birth, residential address, primary business address, marital status, and capacity within which you are answering these Interrogatories.

A1.     Mary O'Donnell, 71 Ellisville Road, Plymouth, Massachusetts; 47 Marion Drive, Kingston, Massachusetts; divorced; answering as an individual.

Q2.     Please identify any and all persons who participated in the negotiations for the purchase and sale of the Property, including name, address and a description of that person's role.

A2.     OBJECTION.    O'Donnell objects to this questions since it does not specify the purchase and sale of the Property.  Reserving said objection, O'Donnell states that the persons that participated in the purchase and sale of the Property from Edison were Donald Anastasia of Boston Edison; Charles Madden of Gator, Inc.; and O'Donnell.

The persons that negotiated the purchase and sale of the Property from O'Donnell to Modern were O'Donnell; Joel Lewin of Hinckley, Allen and Snyder; Alan Gotlieb of Hinckley, Allen and Snyder and Les Marinos of Modern Continental; Peter Grela of Modern Continental; Charles Madden of Gator, Inc.; and other employees of Modern Continental whose names may be developed during the course of discovery.

Q3.     Please identify any and all conversations concerning the 1983 Indemnity and/or 1983 use restriction existing at the time of the 1995 Sale, and the basis for

including them in the 1995 Deed. Please identify any and all parties present, including the dates and a description of the conversation(s) that occurred.

A3.    OBJECTION. O'Donnell objects to question 3 since it is overly broad and unduly burdensome. Reserving O'Donnell's right to object to question 3, O'Donnell states that she cannot recall any specific conversations. However, O'Donnell states that there were no specific conversations that she can recall regarding the use restriction and indemnity clause that were included in the deed prepared by Boston Edison. No objection was made by O'Donnell. The parties present were Donald Anastasia, Robert Nevin and Mary O'Donnell. O'Donnell has been a real estate broker for over 20 years and states that any recorded deed restrictions are in the chain of title and all public records.

Q4.    Regarding the 1995 conveyance from OSG to Mary O'Donnell, please identify all parties involved and a description of their role(s) in the transaction.

A4.    Joel Lewin of Hinckley, Allen and Snyder; Alan Gotlieb from Hinckley, Allen and Snyder; Mary O'Donnell; Howard Guggenheim.

Q5.    Please identify any and all conversations that took place concerning removal of the 1995 Indemnity and 1995 use restriction in the Deed from OSG to Mary O'Donnell. Explain why said Indemnity and use restriction were removed.

A5.    O'Donnell cannot recall conversations that took place regarding the removal of the Indemnity clause and use restriction in the Deed. The documents were prepared by Hinckley, Allen and Snyder. Mary O'Donnell signed the Deed as presented to her at the time Hinckley, Allen gave them to her for her signature.

Q6.    Please set forth in as much detail as possible all facts supporting your denial of Edison's allegation that you failed to take the steps necessary to protect the restrictive use and indemnity provisions contained in the 1983 and 1995 Deeds.

A6.    Since O'Donnell always assumed that the use restriction and indemnity provisions contained in the 1995 deed would follow the property in question, it would not need protection.  Also, the 2001 deed from O'Donnell to Mystic stated that the sale was "subject to and with the benefit of matters of record, insofar as in force and applicable, not intending to re-impose any of said matters previously released, waived or terminated or which previously expired".  Further, O'Donnell claims that Mystic filed an action for declaratory judgment against Pharmacia for determination of parties' rights under Chapter 21E.  Pharmacia's action against Boston Edison for indemnity relies on the use restriction and not contamination of the Property.  Edison's action against O'Donnell for indemnity, likewise, relies on the use restriction.

If the use restriction runs with the land, Mystic will be bound by them.  If the use restriction does not run with the land, then O'Donnell would have had the right to delete it from the deed to Mystic.  Edison will not have any right to indemnity as to O'Donnell.

Moreover, Monsanto sold abutting property to Gateway and left out the use restriction from the deed and is therefore estopped from holding Mystic liable.

There has been no violation of the use restriction at the present time.  The action filed by Mystic is solely for a determination under Chapter 21E.  Since there has been no violation of the use restriction, there are no indemnity rights in favor of Boston Edison against O'Donnell.

Q7.    Please set forth in as much detail as possible the facts and circumstances related to the conveyance of the Property from OSG to Mary O'Donnell on September 25, 1995, including the purpose of such conveyance.

A7.    Hinckley, Allen and Snyder prepared all documents relative to the conveyance of the Property from OSG to O'Donnell on September 25, 1995. O'Donnell cannot recall the purpose of such conveyance. The purpose of the conveyance was explained by Modern Continental's attorneys, Hinckley, Allen and Snyder. O'Donnell simply cannot recall. In all likelihood, the reason for the conveyance from OSG to O'Donnell was for Joel Lewin's presentation to the State Office of Minority Business Affairs.

Q8.    Please set forth in as much detail as possible the facts and circumstances relating to the omission of the 1995 Indemnity and 1995 use restriction in OSG's conveyance of the Property to Mary O'Donnell on September 25, 1995.

A8.    Documents were prepared by Hinckley, Allen and Snyder. The reasons for the omission were their own.

Q9.    Please set forth in as much detail as possible the facts and circumstances supporting your denial of Edison's allegation that the 1999 Grant and Release executed by O'Donnell did not adversely affect the 1995 Indemnity and 1995 use restriction as expressed in the 1995 Deed.

A9.    O'Donnell states that since the Indemnity and use restrictions in the Deed followed the Property, Boston Edison was not adversely affected by their absence in the subsequent Deeds.

Q10.   Please set forth in as much detail as possible all facts supporting your denial of Edison's allegation that you are bound by the 1995 Indemnity and 1995 use restriction.

A10.   It is O'Donnell's position that Modern Continental and Mystic, Inc. were bound by the use and indemnity restrictions in the Deed. That while O'Donnell was the owner of the Property, the indemnity and use restrictions were honored.

Q11.   Please set forth all facts supporting your denial that Edison took the steps necessary to protect Monsanto in the 1995 Sale as expressed by the 1995 Deed.

A11.   A Transfer Certificate of Title dated March 26, 1999 stated that the Property, as owned by O'Donnell, was "subject to covenants, etc., contained in deed between Boston Edison Co. and O'Donnell Sand and Gravel, Inc. dated May 6, 1995". O'Donnell assumed that no further steps need be taken on her part. Moreover, the 1983 deed and the 1995 deed stated that the restrictions "shall run with the land and bind and be for the benefit of, as appropriate, the parties' successors in title".

Q12.   Please identify any and all individuals involved in the negotiations, drafting and execution of the 1995 Acknowledgement and Release between OSG and Edison. For each individual identified, please set forth their name, employer, position held and characterize their involvement in said negotiations, drafting and execution.

A12.   Donald Anastasia from Boston Edison; Robert Nevin of Boston Edison; Mary O'Donnell. All work was done by Boston Edison.

Q13.   Please set forth in as much detail as possible your denial of Edison's allegation that you purchased the Property on September 15, 1995 subject to the 1995 Deed and use restrictions contained therein.

A13.    The 1995 deed speaks for itself.

Q14.    Please set forth in as much detail as possible your knowledge of the inclusion of the language in the March 26, 1999 Transfer Certificate of Title stating that the Property, as owned by you, as "subject to covenants, etc. contained in the deed between Boston Edison Company and O'Donnell Sand & Gravel, Inc. dated May 6, 1995 …".

A14.    The 1999 Transfer Certificate of Title is a written document and speaks for itself.  Joel Lewin and Alan Gotlieb of Hinckley, Allen and Snyder would have knowledge for the reason for the inclusion of the language.

Q15.    Please set forth in as much detail as possible your knowledge of the negotiations, financing and drafting of documents relating to the June 21, 2001 sale of the Property from Mary O'Donnell to Mystic.

A15.    O'Donnell does not recall any specific negotiations and drafting of documents since Hinckley, Allen and Snyder prepared the documents.

Q16.    Please set forth in as much detail as possible any and all negotiations or discussions between Mary O'Donnell and Modern having anything to do with the May 1, 2996 mortgage executed and delivered by Mary O'Donnell in favor of Modern.

A16.    The Property in question was to be used by Modern Continental as a lay down yard during the construction of the Central Artery.  The mortgage was obtained by Modern Continental as security for O'Donnell's contract with Modern Continental to prepare the site for Modern's purpose.

Q17.   Please set forth in as much detail as possible any and all negotiations or discussions between Mary O'Donnell and Modern having anything to do with the March 17, 1999 Notice of Option Agreement.

A17.   Modern Continental received the benefit of the use of the subject property. As part of O'Donnell's subcontract with Modern, Modern received an option to purchase the property at the end of O'Donnell's subcontract term.

Q18.   Please provide the names of all individuals with whom you have discussed either this lawsuit or the facts involved in this lawsuit, and all individuals you have contacted, either orally, electronically or in writing, and include the date, who and how contacted, and the substance of the communication, including employees of O'Donnell and any insurance companies, agents, and legal representatives who have dealt with either you or any of your entities.

A18.   OBJECTION.  O'Donnell objects to this Interrogatory since it calls for information obtained by O'Donnell in preparation of her defense of the within action and any information was secured in anticipation of this lawsuit.  Reserving this objection at the time of trial, O'Donnell states that she has talked to Jay Cashman and Mystic to find out the status of the negotiations among the parties; Les Marinos of Mystic, Inc. to find out the status of the negotiations among the parties; and Donald Anastasia to find out the status of the negotiations among the parties.

Q19.   Please identify each individual who you believe has knowledge of facts relating to this case and, for each such individual, describe the subject matter and substance of the information about which you believe each such person has knowledge.

A19.   Joel Lewin of Hinckley, Allen and Snyder; Alan Gotlieb of Hinckley, Allen and Snyder; Max Marinos of Mystic, Inc.; Donald Anastasia of Boston Edison; Robert Nevin of Boston Edison; Charles Madden of Gator, Inc.  O'Donnell reserves the right to supplement this matter during the continuing discovery and investigation.

SIGNED under the pains and penalties of perjury this $\angle$ $6$ day of August, 2005.

_____
Mary O'Donnell

***AS TO OBJECTIONS***:

_____
Howard G. Guggenheim, Esquire
P.O. Box 736
Scituate, MA 02066
(781) 264-3717
BBO #214150

## CERTIFICATE OF SERVICE

I, Howard G. Guggenheim, hereby certify I have served copies of the foregoing Answers to Interrogatories upon counsel of record, Douglas B. Otto, Esquire and Jill K. Hauff, Esquire of Morrison Mahoney, LLP, 250 Summer Street, Boston, MA 02210.

SIGNED under the pains and penalties of perjury this $16$ day of August, 2005.

_____
Howard G. Guggenheim, Esquire