UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>    Plaintiff<br><br>VS.<br><br>PHARMACIA CORP., SOLUTIA, INC., and<br>MONSANTO CO.,<br>    Defendants<br><br>PHARMACIA CORP. and MONSANTO CO.<br>    Third Party Plaintiffs<br><br>VS.<br><br>MODERN CONTINENTAL CONSTR. CO., INC.<br>    Third Party Defendant<br><br>PHARMACIA CORP.,<br>    Third Party Plaintiff<br><br>VS.<br><br>BOSTON EDISON CO.,<br>    Third Party Defendant<br><br>BOSTON EDISON CO.,<br>    Fourth Party Plaintiff<br><br>VS.<br><br>O'DONNELL SAND & GRAVEL, INC. and<br>MARY O'DONNELL,<br>    Fourth Party Defendants | **CIVIL ACTION NO.**<br>**04-10180 NMG** |

### FOURTH-PARTY DEFENDANT, O'DONNELL SAND & GRAVEL, INC.'S ANSWERS TO FIRST SET OF INTERROGATORIES BY FOURTH-PARTY PLAINTIFF, BOSTON EDISON

O'Donnell Sand & Gravel, Inc. (hereinafter referred to as "OSG") in answer to the Interrogatories Propounded by Fourth-Party Plaintiff states as follows:

Q1. Please identify each person who was interviewed, consulted or who participated in the preparation or formulation of OSG's answers to these interrogatories. If more than one person is answering these interrogatories, please list for each such person the specific interrogatories which he or she answered or participated in answering, including that person's full name, residential and business address.

A1. The only person who assisted me in the preparation of these answers to interrogatories was my attorney. No one was contacted regarding the preparation of these Answers to Interrogatories.

Q2. Please identify any and all persons who participated in the negotiations for the purchase and sale of the property, including name, address and a description of that person's role.

A2. OBJECTION. OSG objects to this Interrogatory since it lacks specificity as to which purchase and sale is being referred to. Reserving the objection for trial, OSG states that the sale of Boston Edison to OSG, Don Anastasia, Charles Madden of Gator, Inc. and Mary O'Donnell participated in the negotiations.

For the sale from OSG to Mary O'Donnell and Mary O'Donnell to Mystic, Joel Lewin of Hinckley, Allen and Snyder; Alan Gotlieb of Hinckley, Allen and Snyder; Mary O'Donnell; Charles Madden of Gator, Inc.

Q3. Please identify any and all conversations concerning the 1983 Indemnity and/or 1983 use restriction existing at the time of the 1995 Sale, and the basis for including them in the 1995 Deed. Please identify any and all parties present, including the dates and a description of the conversation(s) that occurred.

A3. OSG cannot recall any specific conversations regarding the Indemnity or use restriction in the 1995 sale. The documents were prepared by Boston Edison. OSG can only assume that extensive conversations did not take place since the Deed of 1995 contained the same restrictions as the Deed to Boston Edison.

Q4. Regarding the 1995 conveyance from OSG to Mary O'Donnell, please identify all parties involved and a description of their role(s) in the transaction.

A4. The parties present at the transfer have already been identified. Joel Lewin of Hinckley, Allen and Snyder; Alan Gotlieb of Hinckley, Allen and Snyder, Mary O'Donnell and Charles Madden of Gator, Inc.

Q5. Please identify any and all conversations that took place concerning removal of the 1995 Indemnity and 1995 use restriction in the Deed from OSG to Mary O'Donnell. Explain why said Indemnity and use restriction were removed.

A5. OSG cannot recall any specific conversations that took place regarding the removal of the Indemnity clause and use restriction in the Deed. The documents were prepared by Hinckley, Allen and Snyder. OSG signed the Deed as presented to it at the time Hinckley, Allen and Snyder gave them to OSG for signature.

Q6. Please set forth in as much detail as possible all facts supporting OSG's denial of Edison's allegation that OSG failed to take the steps necessary to protect the restrictive use and indemnity provisions contained in the 1983 and 1995 Deeds.

A6.     OSG assumed that the restrictions and indemnity provisions contained in the 1995 deed would follow the property in question, it would not need protection. Also, the 2001 deed from OSG to Mystic stated that the sale was "subject to and with the benefit of matters of record, insofar as in force and applicable, not intending to re-impose any of said matters previously released, waived or terminated or which previously expired". Further, OSG claims that Mystic filed an action for declaratory judgment against Pharmacia for determination of parties' rights under Chapter 21E. Pharmacia's action against Boston Edison for indemnity relies on the use restriction and not contamination of the property. Edison's action against OSG for indemnity, likewise, relies on the use restriction.

If the use restriction runs with the land, Mystic will be bound by them. If the restriction does not run with the land, then OSG would have had the right to delete it from deed to Mystic. Edison will not have any right to indemnity against OSG.

Moreover, Monsanto sold abutting property to Gateway and left out the use restriction from the deed and is therefore estopped from holding Mystic liable to it.

There has been no violation of the use restriction at the present time. The action filed by Mystic is solely for a determination under Chapter 21E. Since there has been no violation of the use restriction, there is no indemnity right in favor of Boston Edison against OSG.

Q7.     Please set forth in as much detail as possible the facts and circumstances related to the conveyance of the Property from OSG to Mary O'Donnell on September 25, 1995, including the purpose of such conveyance.

A7. The transfer of property documents from OSG to Mary O'Donnell were prepared by Joel Lewin of Hinckley, Allen and Snyder and Alan Gotlieb of Hinckley, Allen and Snyder. Joel Lewin would have specific knowledge of the reason for the conveyance.

Q8. Please set forth in as much detail as possible the facts and circumstances relating to the omission of the 1995 Indemnity and 1995 use restriction in OSG's conveyance of the Property to Mary O'Donnell on September 25, 1995.

A8. The omission of the use restrictions and the reasons therefore are known to Joel Lewin of Hinckley, Allen and Snyder. Hinckley, Allen and Snyder prepared all documents and OSG signed them. Further, the transfer documents included language relative to the use restrictions in the 1995 documents.

Q9. Please set forth in as much detail as possible the facts and circumstances supporting OSG's denial of Edison's allegation that the 1999 Grant and Release executed by O'Donnell did not adversely affect the 1995 Indemnity and 1995 use restriction as expressed in the 1995 Deed.

A9. Since the restrictions followed the Property, Boston Edison suffered no effect on its rights. OSG incorporates by reference paragraph 21 of Boston Edison's counterclaim, cross-claims and fourth party complaint.

Q10. Please set forth in as much detail as possible all facts supporting OSG's denial of Edison's allegation that OSG is bound by the 1995 Indemnity and 1995 use restrictions.

A10. OBJECTION. OSG objects to Interrogatory No. 10 since it calls for a legal conclusion.

Q11. Please set forth all facts supporting OSG's denial that Edison took the steps necessary to protect Monsanto in the 1995 Sale as expressed by the 1995 Deed.

A11. OSG asserts that it took the steps necessary to protect Monsanto.

Q12. Please identify any and all individuals involved in the negotiations, drafting and execution of the 1995 Acknowledgement and Release between OSG and Edison. For each individual identified, please set forth their name, employer, position held and characterize their involvement in said negotiations, drafting and execution.

A12. Donald Anastasia of Boston Edison, Attorney Nevin of Boston Edison, Mary O'Donnell, and Charles Madden of Gator, Inc.

Q13. Please provide the names of all individuals with whom OSG has discussed either this lawsuit or the facts involved in this lawsuit, especially those relating to the 1995 Sale, and all individuals that have been contact3ed, either orally, electronically or in writing , and include the date, who and how contacted, and the substance of the communication, including any current or former OSG employees and any insurance companies, agents, and legal representatives who have dealt with either OSG or its successors.

A13. OBJECTION. OSG objects to this Interrogatory since it calls for facts and information obtained in anticipation of litigation. Reserving its objection, OSG asserts that it has contacted Jay Cashman of Mystic, Inc., Max Marino of Mystic, Inc. for information regarding the state of the negotiations among the parties to this lawsuit.

Q14. Please identify each individual who OSG believes has knowledge of the facts relating to the 1`995 Sale and/or 1995 Indemnity and, for each such individual,

describe the subject matter and substance of the information about which OSG believes each such person has knowledge.

A14. Donald Anastasia of Boston Edison; Robert Nevin of Boston Edison; Mary O'Donnell and Charles Madden of Gator, Inc.

SIGNED under the pains and penalties of perjury this 16 day of August, 2005.

O'DONNELL SAND AND GRAVEL, INC.

_____
Mary O'Donnell, President

**AS TO OBJECTIONS:**

_____
Howard G. Guggenheim, Esquire
P.O. Box 736
Scituate, MA 02066
(781) 264-3717
BBO #214150

### CERTIFICATE OF SERVICE

I, Howard G. Guggenheim, hereby certify I have served copies of the foregoing Answers to Interrogatories upon counsel of record, Douglas B. Otto, Esquire and Jill K. Hauff, Esquire of Morrison Mahoney, LLP, 250 Summer Street, Boston, MA 02210.

SIGNED under the pains and penalties of perjury this 16 day of August, 2005.

_____
Howard G. Guggenheim, Esquire