# EXHIBIT 1.B.

Case 1:04-cv-10180-NMG   Document 99-5   Filed 11/07/2005   Page 1 of 11

COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION

| | |
|---|---|
| In the Matter of: ) | File No.: ACOP-NE-05-4008 |
| ) | FMF No. 409484 |
| Modern Continental Construction Co., Inc. ) | **ADMINISTRATIVE** |
| ) | **CONSENT ORDER** |
| ) | **WITH PENALTY AND** |
| Everett Yard ) | **NOTICE OF NONCOMPLIANCE** |
| 22 Horizon Way ) | |
| Everett, Massachusetts ) | |

## I. THE PARTIES

1. The Department of Environmental Protection ("DEP") is a duly constituted agency of the Commonwealth of Massachusetts, established pursuant to M.G.L. c. 21A, §7, with its principle and Metropolitan Boston/Northeast Regional Offices located at One Winter Street, Boston, Massachusetts 02108.

2. Modern Continental Construction Company, Inc. ("MCC"), is a Massachusetts corporation duly organized under the laws of the Commonwealth of Massachusetts with its principle offices located at 600 Memorial Drive, Cambridge, MA 02139.

## II. STATEMENT OF FACTS, ALLEGATIONS, AND LAW

3. DEP is a duly constituted agency of the Commonwealth of Massachusetts, established pursuant to G.L. c.21A, §7. DEP is responsible for the implementation and enforcement of G.L. c.21C, G.L. c.21E, G.L. c.21H, G.L. c.111, §150A and §150A½, and the regulations promulgated thereunder at 310 CMR 30.000, 310 CMR 40.000, 310 CMR 16.00 and 310 CMR 19.000. DEP's authority to issue this Administrative Consent Order with Penalty ("ACOP") is conferred by M.G.L. c.111, §150A. For the purposes of M.G.L. c. 21A, §16, and 310 CMR 5.00, this ACOP shall constitute a Notice of Noncompliance for MCC's noncompliance with the requirements cited in Part II of this ACOP.

4. Mystic Landing, LLC ("Mystic") is a Massachusetts corporation duly organized under the laws of the Commonwealth of Massachusetts with its principle offices located at 600 Memorial Drive, Cambridge, MA 02139. Mystic is the owner of land known as the Everett Yard located at 22 Horizon Way off Route 99 in Everett, Massachusetts ("the Everett Yard"). Upon

539841

Everett                                                                                           Page 2 of 10
Modern Continental                                                                      ACOP-05-4008

information and belief, Mystic acquired the property on June 21, 2001. Mystic granted MCC the right to use the Everett Yard for storage and laydown of construction materials.

5. MCC alleges that Monsanto Corporation and its successor in interest, Pharmacia Corporation (collectively referred to as Pharmacia), and/or any of their predecessor companies, owned and operated the Everett Yard, and generated various chemicals at the site, as a fully operational chemical manufacturing facility from at least the 1940's to 1983.

6. MCC is the General Contractor (either solely or as part of a joint venture) for a number of contracts for the Central Artery/Tunnel Project ("CA/T Project"), including but not necessarily limited to, Contracts C17A6, C17A9 and C17A1.

7. The management of solid waste is regulated under 310 CMR 16.00, "The Site Assignment Regulations for Solid Waste Facilities" and 310 CMR 19.000, "The Solid Waste Management Regulations".

8. The regulations at 310 CMR 16.06, Prohibitions, read in part:

No place in any city or town shall be maintained as a site for a facility unless such place has been assigned by the board of health or the Department, whichever is applicable, pursuant to M.G.L. c. 111, sect. 150A. Any disposal of solid waste at any location not so assigned shall constitute a violation of 310 CMR 16.00.

9. The regulations at 310 CMR 19.015, Definitions, read in part:

Construction and Demolition Waste means the waste building materials and rubble resulting from the construction, remodeling, repair or demolition or buildings, pavements, roads or other structures. Construction and demolition waste includes but is not limited to, concrete, bricks, lumber, masonry, road paving materials, rebar and plaster.

10. The regulations at 310 CMR 19.015, Compliance, read in part:

No person shall construct, modify, operate or maintain a facility except in compliance with a site assignment, permit or plan approved by the board of health or the Department, as applicable, and any authorizations issued by the Department and all conditions included in a permit, approval or authorization for said facility.

11. The regulations at 310 CMR 19.020, Permit Requirements for Construction and Operation of Solid Management Facilities, read in part:

Except as allowed under 310 CMR 19.021, no person shall construct, operate or maintain a facility to store, process, transfer, treat, or dispose of solid waste except in accordance with:
    a valid site assignment (310 CMR 16.06);
    a solid waste management facility permit (hereafter permit), issued in accordance with 310 CMR 19.000;

539841

an authorization to construct the facility issued by the Department in accordance with 310 CMR 19.041; and

an authorization to operate the facility issued by the Department in accordance with 31 CMR 19.042.

12. Pursuant to the C17A6, C17A9 and C17A1 contracts, MCC periodically transported construction and demolition debris and materials to and from the CA/T Project and the Everett Yard since 1998. Such construction and demolition debris and materials included, but was not necessarily limited to, asphalt, concrete, excavated soils, and solid waste.

13. As stated in a chronology provided to DEP with a letter dated December 30, 2002, On October 12, 2002, beginning at approximately 6:00 A.M., representatives from MCC directed approximately 1,000 cubic yards (cy) of CA/T Project materials, including but not limited to Excavated Materials, from Contract C17A6 (originating at Purchase Street in Boston) to be transported to and temporarily stockpiled at the Everett Yard.

14. On October 12, 2002, at approximately 6:15 A.M., MCC representatives and the CA/T project's Right of Way Assessment and Remediation Services ("ROWARS") contractor, Camp Dresser and McKee, Inc. ("CDM") discovered abandoned concrete duct bank containing orangeburg conduit within the material originating from the CA/T Project, specifically at the C17A6 excavation site. CDM contacted the CA/T Project asbestos management consultant, Hygienetics Environmental Services, Inc. ("Hygienetics"), to respond to the discovery.

15. A site visit to the Everett Yard on October 14, 2002, by representatives from the CA/T Project confirmed the presence of stockpiles of excavated soils, as well as piles of asphalt, concrete, and other materials. Visual inspection of the various soil stockpiles revealed the presence of suspect Asbestos Containing Material (ACM). On the basis of this information, the CA/T Project reported the presence of the suspect ACM to the DEP. This condition was defined by the CA/T Project as "Incident #145". Following this notification, a site meeting was held on October 17, 2002 attended by representatives from DEP, the CA/T Project, CDM, Hygienetics, and MCC.

16. Subsequent sampling by Hygienetics confirmed ACM was present within four (4) stockpiles at Everett Yard, specifically stockpiles No. 1, 2, 8 and 20.

17. In a December 30, 2002 letter to DEP, the CA/T Project provided details and proposed corrective actions for the incident on October 12, 2002, in which MCC shipped utility ductbank debris to the CA/T Project MPO facility at Subaru Pier and also to the Everett Yard. The letter indicated that some of the debris at the Everett Yard had been found to contain asbestos.

18. On January 30, 2003, DEP received a Construction Document Transmittal from John Wright (on behalf of the CA/T Project) which forwarded to DEP a January 30, 2003, Asbestos Abatement Workplan prepared by Hygienetics to address ACM material at the Everett Yard. DEP subsequently received from Hygienetics a February 6, 2003, Amendment to the January 30th Workplan. This Amendment was prepared based upon discussions which occurred at a February 6, 2003, site inspection among staff from the CA/T Project, MCC, Hygienetics and DEP.

539841

19.    On February 11, 2003, DEP issued correspondence to the CA/T Project and MCC approving the Asbestos Abatement Workplan and DEP Emergency Waiver #0301855 (for Incident #145) for corrective actions at Everett Yard.

20.    On May 27, 2004, DEP personnel conducted an inspection of the Everett Yard and observed a stockpile (approximately 100 feet long by 50 feet wide by 20 feet high) of mixed solid waste on the Site. DEP personnel also observed the previously referenced ACM contaminated soil stockpiles were still on site and that additional soils had been added to at least one of these piles (to Stockpile #1). In addition, DEP personnel observed piles of asphalt and concrete debris and other materials.

21.    On September 30, 2004, DEP personnel conducted another inspection of the Everett Yard and observed that conditions were substantially the same as those observed during the May 27, 2004 inspection.

22.    MCC delivered and stockpiled various soils and related materials from the CA/T Project at the Everett Yard. These various soils and related materials include "excavated materials" as defined in the May 21, 1997 Amended Memorandum of Understanding ("AMOU") by and between the Massachusetts Department of Highways ("MHD") and DEP. The following are relevant excerpts from this AMOU.

> Excavated Material(s) means the soils excavated for the CA/T Project, composed mainly of historic fill, and natural clay and till. [Section 1.1 Definitions of AMOU]
>
> DEP has determined that any Excavated Material(s) with constituents in concentrations above the Reportable Concentrations promulgated in the MCP and/or above background levels constitute a release or a threat of release pursuant to c. 21E. [Introduction para. 4 of AMOU].
>
> DEP and MHD agree that approvals issued by DEP pursuant to the procedures established in this MOU shall in no way limit DEP's authority to condition any approval issued hereunder as is necessary or appropriate to comply with any applicable law or regulation, nor shall this MOU be construed to in any way limit DEP's authority to undertake any other action in accordance with any applicable law or regulation. In addition, DEP and MHD agree that Project activities undertaken by MHD and/or its contractors in accordance with the terms and conditions of this MOU, including DEP approvals issued in accordance with the terms and conditions of this MOU, comply with the relevant requirements of c.21E and the MCP. [Introduction para. 7 of AMOU].
>
> Any excavated materials removed from the CA/T Project Right-of-Way (ROW) must be in accordance with a tracking system implemented consistent with DEP requirements in accordance with DEP Policy #COMM-97-001. This has been determined to include use of a Bill of Lading (BOL), Material Shipping Record

539841

(MSR) or (if applicable) Internal Material Tracking Record (IMTR). [see Section 4.11 of AMOU]

23.     It it alleged that MCC's removal and transportation of Excavated Materials off the CA/T ROW without use of an authorized transportation procedure is not in compliance with the May 21, 1997 AMOU between MHD and DEP in violation of M.G.L. c.21E and 310 CMR 40.0000.

## III.    DISPOSITION AND ORDER

24.     Without MCC admitting any liability with respect to the allegations contained in this ACOP, MCC and the DEP have entered into this ACOP because they agree that it is in their own interests and in the public interest to do so. Nothing herein stated, and/or agreed to be MCC, is to be construed as an admission of intentional disregard of the hereinbefore referenced Massachusetts General Laws and applicable regulations or rules, nor is anything herein being consented to by MCC to be construed as an admission.  In entering into this ACOP, MCC hereby waives its right to an adjudicatory hearing before the DEP on and judicial review of the issuance and terms of this ACOP, except MCC does not waive any of its rights or defenses with respect to any further action or enforcement by the DEP relating to the assessment of future penalties under this ACOP or for any violations not specifically mentioned in this ACOP. Further, nothing in this ACOP shall be construed as or operate as barring, diminishing, adjudicating or in any way affecting any legal or equitable right, remedy or defense of MCC to defend itself against any allegations not contained herein or in the assessment of any other fines, additional fines under this ACOP, or civil penalties or other enforcement actions by the DEP. Nothing in this ACOP shall be construed as or operate as barring, diminishing, adjudicating or in any way affecting any legal or equitable right of the DEP to issue any additional order or to seek any other relief or exercise any equitable right to pursue any other claim, action, suit, cause of action or demand that the DEP may have with respect to the subject matter covered by this ACOP, including any action to enforce this ACOP in an administrative or judicial proceeding.  The DEP reserves all its rights and authority to take any other action authorized by law against any person with respect to the Site, including but not limited to issuing any further administrative orders, assessing any civil administrative penalties, and issuing/approving any permits or approvals.

25.     The DEP and MCC agree that the timelines set forth in this ACOP constitute reasonable timelines for compliance with the regulations referenced in this ACOP.

26.     Force Majeure. A. The DEP may extend the time for performance of any term(s) or requirement(s) of this ACOP, if the DEP reasonably determines that: (1) an event(s) has occurred which may delay such performance; (2) the occurrence of such an event(s) is beyond the control of MCC and MCC's employees, agents, consultants and contractors; and (3) the delay could not have been prevented, avoided, or minimized by the exercise of due care by MCC or by MCC's employees, agents, consultants or contractors.  If the DEP makes such a determination, such event shall be a "Force Majeure Event".

539841

Everett  
Modern Continental

Page 6 of 10  
ACOP-05-4008

B. Force Majeure Events for which the DEP may extend performance deadlines include, but are not limited to: (i) acts of God; (ii) acts of war; (iii) unanticipated delays due to accidents, strikes, freight embargoes, or other work stoppages; or (iv) flood, fire, extreme weather conditions, or other natural disasters.

C. Financial inability to meet increases in costs and expenses associated with the performance of any action required by this ACOP, or any action of MCC's representatives, employees, agents, consultant, contractors, subcontractors, or assigns, shall not be considered a Force Majeure Event.

D. If any event(s) occurs or has occurred that delays or will delay the performance of any requirement(s) in violation of this ACOP, MCC shall notify the DEP in writing no later than ten (10) calendar days from the date MCC first became aware of such event(s). The notice shall describe in detail: (i) the reason for and the anticipated length of the delay, (ii) the measures taken and to be taken to minimize the delay, and (iii) the timetable for taking such measures. Such notice shall also include all available documentation supporting a claim of a Force Majeure Event. Failure to comply with the notice requirements set forth herein shall constitute a waiver of the MCC's right to request an extension based on the event(s). MCC shall take all reasonable measures to avoid or minimize any delay resulting in a Force Majeure Event.

E. If the DEP determines that MCC has met the requirements stated herein for a Force Majeure Event, DEP shall extend the time for performance of the affected terms or requirements of this ACOP. Such extension shall be made in writing, for the period of any such unavoidable delay resulting from the Force Majeure Event and no penalties will become due for noncompliance with the terms and requirements of this ACOP occurring as the direct result of such Force Majeure Event.

F. The delay in the performance of a requirement of this ACOP caused by a Force Majeure Event shall not, in itself, extend the time for performance of any other requirement of this ACOP.

27. MCC shall cease all solid waste management activities at the Everett Yard that are not in compliance with the requirements of 310 CMR 16.00 and 310 CMR 19.000. These activities include, but are not necessarily limited to: the disposal, handling, storage, processing, and/or transfer of any materials regulated under the solid waste management regulations at 310 CMR 19.000.

28. Within forty-five (45) days of MCC's receipt of this ACOP signed by DEP, MCC shall provide the DEP with an up-to-date inventory and assessment of all materials located at the Everett Yard and regulated under 310 CMR 19.000, including without limitation, the various stockpiles of soil, asphalt, concrete, solid waste, construction or demolition debris, and any related materials. The inventory shall include, at a minimum the following information: estimated volume; origin of material; how long the material has/had been on the property; intended future use and disposition of the material; and a description of the material including any existing chemical contaminants, and physical data or characteristics.

539841

29. Within forty-five (45) days of MCC's receipt of this ACOP signed by DEP, MCC shall provide the DEP with an inventory of all the materials that have been removed from the Everett Yard including, but not limited to, soil, asphalt, concrete, brick, other construction or demolition debris, and other solid waste that have been removed from the Everett Yard since October 12, 2002. This inventory shall include at a minimum, a description of the material, copies of any transportation documents, and the location(s) where the materials were delivered.

30. Within forty (40) days of MCC's receipt of this ACOP signed by DEP, MCC shall remove the previously described stockpiles from the Everett Yard and dispose of such stockpiles at an appropriate and properly permitted facility(s) in accordance with the requirements of 310 CMR 16.00 and 19.000 and G.L. c.21E and 310 CMR 40.000 and any other relevant state or federal laws and regulations. This work shall be performed, in accordance with the DEP's February 11, 2003 and October 7, 2004 correspondence.

31. Within twenty-five (25) days of completing the removal of the material from the Property, MCC shall provide the DEP with a written report that documents the removal of material including the total tonnage and types of material and the receipt by the receiving facilities.

32. Within fifty (50) days of the effective date of this Order having been signed by DEP, MCC shall provide the DEP with a written report describing the steps MCC has taken to comply with the provisions of 310 CMR 16.00, 310 CMR 19.000, 310 CMR 30.000, and 310 CMR 40.0000 relative to the management of the materials at the Everett Yard. The report shall be signed and certified by MCC and its consultant(s) in accordance with the requirements of 310 CMR 19.011 and shall document that MCC is in compliance with the provisions of this Order.

33. This ACOP shall be binding on MCC and its officers, employees, agents, successors, licensees and assignees. MCC shall not violate this ACOP and shall not allow or suffer its officers, employees, agents, successors, consultants, and assignees, Licensees or contractors to violate this ACOP. Violation of this ACOP by any of the foregoing shall constitute a violation of this ACOP. MCC shall provide a copy of this ACOP to each successor, licensee or assignee concurrent with establishing any succession, license or assignment.

34. The provisions of this ACOP are severable and, if any provision of this Administrative Consent Order or the application thereof is held invalid or unenforceable, such invalidity or unenforceability shall not affect the validity or enforceability of any other provision of this Administrative Consent Order which shall be given full effect without the invalid or unenforceable provision.

35. This ACOP constitutes the entire understanding and agreement between the DEP and MCC with regard to MCC's obligations arising out of the violations described in this ACOP.

36. This ACOP may be modified only by a written agreement of the parties. No party may assign its obligations under this ACOP.

539841

Everett                                                                                           Page 8 of 10
Modern Continental                                                                         ACOP-05-4008

## IV. PENALTIES

37.  Future violations of regulatory requirements determined after any rights of appeal have been exercised, may result, without limitation, in the assessment of stipulated penalties or civil administrative penalties for each day, or portion thereof, each such violation occurs or continues. Future violations of this ACOP may result, without limitation, in the assessment of stipulated penalties or civil administrative penalties for each day, or portion thereof, each such violation occurs or continues.

38.  MCC shall pay stipulated penalties to the Commonwealth for each day, or portion thereof, of each violation, if MCC or its employees, agents, licensees, contractors or subcontractors violate this ACOP or any approvals issued pursuant to this ACOP in accordance with the table below:

| Period of Violation: | Penalty per day: |
|---|---|
| 1st through 30th days | $1000 per day |
| 31st through 90th days | $1500 per day |
| 91st day and thereafter | $2000 per day. |

39.  Stipulated penalties shall begin to accrue on the day a violation occurs and shall continue to accrue until the day the violation is corrected or performance is completed, whichever is applicable. Stipulated and suspended penalties shall accrue regardless of whether the Department has notified MCC of a violation or act of noncompliance, provided that MCC shall be able to exercise its rights to show that a violation or noncompliance has not occurred. All stipulated and suspended penalties accruing under this ACOP shall be paid within thirty (30) days of the date the Department sends a written demand for payment. If simultaneous violations occur, separate penalties shall accrue for separate violations of this ACOP. The payment of stipulated penalties and suspended penalties shall not alter in any way MCC's obligations to complete performance as required by this ACOP. The Department reserves its right to elect to pursue other remedies and penalties, including administrative, civil and criminal penalties, in accordance with applicable laws if MCC violates any provision of this ACOP. MCC does not waive any of its rights, defenses or remedies with respect to any violations alleged by the Department.

40.  MCC reserves whatever rights it may have to contest the Department's determination that Respondent failed to comply with the Consent Order and/or to contest the accuracy of the Department's calculation of the amount of the stipulated civil administrative penalty.

41.  Within thirty (30) days of the effective date of this Consent Order for the violations described in this ACOP above, MCC shall pay to the Commonwealth the sum of thirty-five thousand dollars ($35,000) as a civil Administrative Penalty for the violations identified in this ACOP.

539841

42. MCC shall pay all penalties due under this ACOP by certified check, cashier's check, or money order payable to the Commonwealth of Massachusetts. MCC shall clearly print on the face of its payment its name, the file number ACOP-05-4008, and MCC's Federal Employer Identification Number, and shall mail it to:

Commonwealth of Massachusetts
Department of Environmental Protection
Commonwealth Master Lockbox
P.O. Box 3982
Boston, Massachusetts 02241-3982

43. MCC, shall mail a copy of its payments to:

Steven G. Lipman, P.E.
Special Projects Coordinator
Department of Environmental Protection
One Winter Street, 6th Floor
Boston, Massachusetts 02108

V. SUBMISSIONS AND NOTICES

44. All submissions made to the DEP by MCC under this ACOP shall be certified in accordance with the applicable provisions of 310 CMR 19.000, including but not limited to the requirements of sections 310 CMR 19.011, 19.031(11), and 19.043. All submissions required under this ACOP must be addressed to:

Steven G. Lipman, P.E.
Special Projects Coordinator
Massachusetts Department of Environmental Protection
One Winter Street, 6th Floor
Boston, Massachusetts 02108

45. All Notices to MCC shall be mailed to:

John Pastore, President
Modern Continental Construction Co., Inc.
600 Memorial Drive
Cambridge, MA 02139

With a copy to:

Doreen M. Zankowski, Esq.
Hinckley, Allen & Snyder, LLP
28 State Street
Boston, MA 02109-1775

539841

Everett  
Modern Continental

Page 10 of 10  
ACOP-05-4008

Failure to provide a copy of Notices to MCC's legal counsel in accordance with this paragraph shall not be a breach of this ACOP.

## VI. COMPLIANCE WITH OTHER LAWS AND REGULATIONS

46. This Order shall not be construed as, or operate as, relieving MCC or any other person of the necessity of complying with all applicable federal, state and local laws and regulations.

47. MCC agrees to provide the DEP, and the DEP's employees, representatives and contractors, access to the Everett Yard at all reasonable times for purposes of conducting any activity related to its oversight of this ACOP. Notwithstanding any provisions of this ACOP, the DEP retains all of its access authorities and rights under applicable state and federal law.

48. The undersigned representatives certify that they are fully authorized to enter into the terms and conditions of this second ACOP and to legally bind the parties that they represent.

This ACOP shall become effective on the date that it is executed on behalf of the DEP.

Modern Continental Construction Co., Inc,

By: _____  Date: _____
John Pastore  
President  
Modern Continental Construction Co., Inc.  
600 Memorial Drive  
Cambridge, MA 02139

Federal Employer Identification Number: 042-440792

Department of Environmental Protection,

By: _____  Date: 8 Aug 05
Richard Chalpin, Regional Director  
Northeast Regional Office  
1 Winter Street – 5th Floor  
Boston, Massachusetts 02108

539841