# EXHIBIT 1.D.

Case 1:04-cv-10180-NMG    Document 99-7    Filed 11/07/2005    Page 1 of 6

# Rebuttal Report of
# R. Duff Collins, P.G., LSP

# Mystic Landing, LLC
# v.
# Pharmacia Corporation and
# Monsanto Company

*Prepared by:*
R. Duff Collins
Woodard & Curran, Inc.
980 Washington Street, S325N
Dedham, Massachusetts 02026



WOODARD & CURRAN

I, R. Duff Collins, P.G., LSP of Woodard & Curran, Inc., have been retained by Monsanto Company and Pharmacia Corporation, to prepare this rebuttal report regarding the Expert Opinion of Richard J. Hughto dated September 12, 2005 (Hughto report; Hughto 2005). This rebuttal document responds to certain issues raised by the Hughto report prepared and submitted on behalf of counsel to Mystic Landing LLC and Modern Continental Construction Co., Inc (Mystic and Modern).

**Rebuttal Issue No 1:**

On pages 9 and 10, the Hughto report states that several of the surface soil samples collected from the Mystic Site by Woodard & Curran in 2004 contained concentrations in excess of the DEPs' reportable concentrations. The Hughto report further suggests that Woodard & Curran sampling may have resulted in the potential for cross contamination. It is my opinion that Woodard & Curran's sampling was performed in accordance with generally accepted surface soil sampling protocols. It is my opinion that there was no cross-contamination and that the tools brought to the site were brought clean, meaning that any contamination detected must have resulted from the Site. It is also my opinion that the sampling and laboratory analysis performed by Woodard & Curran Inc. and resulting data are suitable and useable for the assessment of whether a reporting obligation is present under the MCP.

As stated in my expert report of September 12, 2005 (Woodard & Curran 2005), on June 29, 2004, soil sample locations were flagged and photographed. During the soil sampling activities, a total of 32 near surface soil samples were obtained and containerized for off-site laboratory analysis. The soil sample at each sample location was a sample of soil obtained from depths ranging from 0 to 6 inches. The soil samples were obtained using hand shovels or trowels, placed in zip-lock plastic bags, and labeled S-1 through S-32. The hand tools were washed and decontaminated prior to being transported to the site. After obtaining each soil sample, the hand tool used to obtain the sample was decontaminated by washing it with a hand-brush in a 5-gallon bucket filled with a soap solution and then rinsed by pouring distilled water over the trowel prior to obtaining the next soil sample. This procedure was performed throughout the June 29th sampling event to eliminate the potential for cross contamination to occur between sample locations.

The northern portion of the Site could not be accessed for inspection or sampling during the June sampling event due to active heavy equipment operations in the area at the time. On September 8, 2004, the site tour of the northern portion of the Site was completed. The soil sample locations were documented and photographed. During the soil sampling activities, a total of 12 near surface soil samples were obtained and containerized for off-site laboratory analysis. The soil sample at each sample location was a sample of soil obtained from depths ranging from 0 to 6 inches. Each soil sample was collected using one of two shovels (a standard-sized shovel and a smaller hand shovel) and placed in a

zip-lock plastic bag. These sample bags were labeled S-33 through S-44. The two shovels used for soil sampling were washed and decontaminated prior to being transported to the site. These two shovels were decontaminated using a soap solution and then rinsed with distilled water prior to obtaining subsequent soil samples with the same equipment to eliminate the possibility of cross contamination between sample locations.

It is my opinion that Woodard & Curran's sampling was performed in accordance with generally accepted surface soil sampling protocols and that cross contamination did not occur. The sampling and laboratory analysis performed by Woodard & Curran Inc. and resulting data are suitable and useable for the assessment of whether a reporting obligation is present under the MCP.

**Rebuttal Issue No 2:**

On page 2 the Hughto expert report describes the "Site" as the former Monsanto manufacturing complex in Everett, MA. The Hughto report further indicates that the "Site" is naturally divided into western and eastern parcels by MBTA railroad tracks. Hughto suggests that the westerly parcel, the Gateway property as described in my expert report, is intrinsically and physically connected to the easterly property, the Mystic property as referred to in my expert report. It is my opinion, based upon historical maps and drawings, that these properties are and have been physically separated by the MBTA railroad tracks. The Hughto report subsequently refers to this "Site", the former Monsanto manufacturing complex, when describing sources of contamination and any contamination in general (e.g. Section 4.4 and 5.0). It is my opinion that the broadly construed Hughto report "Site" does not apply to the Mystic property as land uses and operations were different on the Gateway property than those uses and operations on the Mystic property.

**Rebuttal Issue No 3:**

The Expert appraisal report prepared by Donald P. Bouchard and Steven Foster of Lincoln Property Company dated September 12, 2005 (Lincoln 2005) for counsel to Mystic and Modern identifies several comparable properties (pages 88 to 120) as part of its property valuation. The attached Table 1 highlights the names, the DEP Release Tracking Number (RTN), and the DEP regulatory status of those properties as listed by DEP on their website as of September 19, 2005.

**Rebuttal Issue No 4.**

Contaminated material (soil, debris, waste) was placed at the property by Modern Continental without the required permits, approvals or management procedures under Massachusetts DEP regulations. My expert report (Opinion 1; Woodard & Curran 2005) documents and provides photographs of these materials. Data collected by Mystic/Modern and provided to us on September 16, 2005 indicate soils and debris containing asbestos, PCBs, PAHs and inorganics were placed on to the site and then removed under a Bill of Lading stamped by an LSP. The concentrations of select PAHs detected in the soils stockpiled at the Mystic property were above the levels where reporting is required. This action constitutes an unlawful release of OHM at the property requiring reporting and subsequent response actions under MGL c. 21E and the MCP (310 CMR 40.0000).

I reserve the right to supplement my opinion throughout the discovery period and trial.

*[signature]*

R. Duff Collins, P.G., LSP
Senior Vice President

3

Table 1

Status of Comparison Properties in Mystic Landing Appraisal Report*

| Property ID in Report* | Address | DEP Release Tracking Number | AUL |
|---|---|---|---|
| 1-M | 99, 109, 111 Sumner Street, East Boston | No, but neighboring property listed | No. |
| 2-M | 245, 257 Marginal Way, Chelsea | Yes. 3-0000821, Northeast Petroleum - Notification 04/15/1987; RAO 10/30/1997. 3-0014846 - 72 hour release of hazardous material reported 2/21/1997; DPS 10/30/1997 | Yes. 9/27/02 |
| 3-M | Condor Street, East Boston | Yes. 3-0023149 and 3-0004332; releases of oil. Current Tier II. | No but property description states it will be covered by an AUL. |
| 1-E | 1690 Revere Beach Parkway, Everett | Yes. 3-0018620, 120 day release of OHM reported 08/06/1999; Class A3 RAO 5/13/2003 | Yes. 4/29/03 |
| 2-E | Lot 13 Kinsman Street, Everett | No. | No. |
| 3-E | 114 Wyllis Avenue, Everett | No. | No. |
| 4-E | 2401 Revere Beach Parkway, Everett | No. | No. |
| 5-E | 30 Broadway, Everett | Yes. Parcel F- 3-0014553, 120 day release of OHM reported 11/22/1996; class A1 RAO 11/24/1997. 3-0002526, oil, 1/15/1990; class B1 RAO 8/18/1996. | No |
| 1-OA | 222 Lee Burbank Highway, Revere | Yes. 18 RTN's. | Yes. Multiple AUL's listed |
| 2-OA | 590, 600 - 612 Revere Beach Parkway, Revere | Yes. 3-0020236 - 120 day release of OHM reported 12/14/2000; class B1 RAO 12/11/01. 3-0022466 - 2 hour release of hazardous material reported 01/09/2003; Class A2 RAO 4/1/2003. | No. |
| 3-OA | 327 Mystic Ave., Medford | Yes. 3-0010459 - 2 hr release of oil reported 1/20/94; Class A2 RAO 11/19/2001. 3-0021098 - 120 day release of oil reported 8/8/01; Class B2 RAO 11/13/01. | Yes. 4/11/02. |
| 4-OA | 35 Revere Beach Pkwy, Medford | Yes. 3-0022235 - 120 day release of hazardous material reported 10/22/02; Class A3 RAO 10/22/03. | Yes. 10/22/03. |
| 5-OA | Tomasello Road, Revere | Yes. 3-0023112 - 120 day release of hazardous material 08/05/2003; Phase II 9/9/2004. | No. |
| 6-OA | Lot 2, Alford St, Charlestown (MBTA) | ? | No. |
| 7-OA | Alford St, Charlestown (MBTA) | ? | |

*Summarized from Expert Report of Donald Bouchard, MAI and Steven R. Foster, MAI; Lincoln Property Co., September 12, 2005.

206449