# EXHIBIT 2

A SELF-CONTAINED REPORT OF A
COMPLETE APPRAISAL OF LAND

ROUTE 99 AND CHEMICAL LANE
BOSTON AND EVERETT, MA

EFFECTIVE MAY 1, 2001

CLIENT:
FIRST TRADE UNION BANK
25 DRY DOCK AVENUE
BOSTON, MA 02210
ATTENTION: RICHARD ARCHAMBAULT

APPRAISERS:
DEREK CAVANAUGH
ERIC T. REENSTIERNA, MAI
OF

ERIC REENSTIERNA ASSOCIATES
*Real Estate Appraisers and Consultants*

HAS-EVE3 00387

# ERIC REENSTIERNA ASSOCIATES
*Real Estate Appraisers and Consultants*

Bulfinch Square, 43 Thorndike Street, Cambridge, MA 02141

617 577-0096

May 25, 2001

Mr. Richard Archambault
First Trade Union Bank
25 Dry Dock Avenue
Boston, MA 02110

Dear Mr. Archamault:

    In accordance with your request, we have made an analysis of a parcel of 33.6 acres of land located at Chemical Lane, Everett and Boston (Charlestown), Massachusetts, for the purpose of estimating the Market Value of the Fee Simple and the Leased Fee Estates in the property, "as is" and as if not contaminated, as of May 1, 2001.

    This letter is introductory to a Complete Appraisal presented in the format of a Self-Contained Report, intended to comply with the Uniform Standards of Professional Appraisal Practice of The Appraisal Foundation, standards of The Appraisal Institute, the Financial Institutions Reform, Recovery, and Enforcement Act, and First Trade Union Bank Documentary Requirements. The subject property, comparable market data, and analyses are described in full in the text and other explanatory materials that follow, as are special assumptions and any instructions of the client. The property is appraised "as if clean and free of environmental contamination". A copy of the client's engagement letter and a FIRREA Compliance Certification are included in the addenda. This letter is part of the larger document and, to be properly understood, must remain attached.

    On the basis of the analyses presented here, it is our opinion that the Market Value of the subject property, "as is" and as if not contaminated, expressed as cash to the seller in a hypothetical transfer, as of May 1, 2001, is as follows:

    Fee Simple Estate - Seventeen Million Three Hundred Ninety Thousand U.S. Dollars ($17,390,000.).

    Leased Fee Estate - Seventeen Million Twenty Thousand U.S. Dollars ($17,020,000.).

    The estimated marketing period is six to twelve months. If we may be of further service to you, please call us.

Sincerely,

Derek J. Cavanaugh, Appraiser
Mass. Cert. General R.E. Appraiser #901

Eric T. Reenstierna, MAI
Mass. Cert. General R.E. Appraiser #343

HAS-EVE3 00388

TABLE OF CONTENTS

| | |
|---|---|
| Location | 8 |
| Ownership | 8 |
| Purpose of Appraisal | 8 |
| Scope of Assignment (Extent of Process of Gathering and Analyzing Data) | 9 |
| General Assumptions and Limiting Conditions | 11 |
| Special Assumptions | 13 |
| Greater Boston | 14 |
| Greater Boston Map | 18 |
| Retail Market | 19 |
| Everett | 21 |
| Everett Map | 22 |
| Immediate Neighborhood | 23 |
| Neighborhood Map | 24 |
| Neighborhood Map | 25 |
| Property Description | 26 |
| Site | 27 |
| Plan of the Land | 28 |
| Contamination | 30 |
| Equipment and Personal Property | 30 |
| Legal Description | 31 |
| Assessments and Taxes | 39 |
| History and Recent Use | 39 |
| Lease | 40 |
| Zoning and Other Use Restrictions | 41 |
| Zoning Maps – Everett and Boston | 43 |
| Flood Plain Maps - Boston and Everett | 44 |
| Highest and Best Use | 45 |
| Appraisal Process | 46 |
| Appraisal Analysis | 47 |
| Fee Simple Estate – Sales Comparison Approach | 48 |
| Comparable Land Sales Map | 49 |
| Sale No. 1A | 50 |
| Sale No. 1B | 50 |
| Sale No. 1C | 51 |
| Sale No. 2 | 53 |
| Sale No. 3 | 55 |
| Sale No. 4 | 57 |
| Sale No. 5A | 59 |
| Sale No. 5B | 60 |
| Leased Fee Estate – Income Capitalization Approach | 66 |
| Reconciliation and Final Value Estimate | 68 |
| Range of the Estimate | 68 |
| Risk Factors | 68 |
| Exposure Time, Marketing Period, and Future Value | 69 |
| Certification | 70 |

HAS-EVE3 00389

SUMMARY OF IMPORTANT FACTS AND CONCLUSIONS

| | |
|---|---|
| Address: | Route 99 and Chemical Lane<br>Boston and Everett, MA |
| Ownership: | O'Donnell Sand and Gravel, Inc. |
| Property Rights Appraised: | Fee Simple Estate<br>Leased Fee Estate |
| Value Appraised: | Market Value |
| Date of Value: | May 1, 2001 |
| Important Locational Economic Factors: | Greater Boston Commercial Land Market |
| Land Area: | 33.6 total acres; 21.35 upland acres |
| Special Assumptions: | none |
| Hazardous Waste Assumptions: | presumed not to require remediation |
| Zoning: | Boston – Charlestown General Industrial<br>Everett - Industrial |
| Flood Zone: | Boston –Zones A2, B, C; FEMA Map #250285 0005D<br>Everett - Zones A2, B, C; FEMA Map #250192 0001B |
| Improvements: | None |
| Current Use: | Construction staging yard |
| Current Occupancy: | Modern Continental Construction Company |
| Highest and Best Use: | Commercial retail development |
| Value Indications | |
|   Cost Approach: | not utilized |
|   Income Capitalization Approach: | $17,020,000. (Leased Fee Estate) |
|   Sales Comparison Approach: | $17,390,000. (Fee Simple Estate) |
| Final Market Value Estimates: | $17,390,000. (Fee Simple Estate)<br>$17,020,000. (Leased Fee Estate) |
| Marketing Period: | 6 to 12 months |

HAS-EVE3 00390

ROUTE 99 AND CHEMICAL LANE, EVERETT AND BOSTON, MASSACHUSETTS                                5

Route 99, view south with subject property access on right - by Derek Cavanaugh, April 26, 2001



Chemical Lane access to site



HAS-EVE3 00391

Northwest triangular corner of site; electric power right of way



Interior circulation route view south along eastern edge of property



HAS-EVE3 00392

View north along western edge of property; MBTA line on left side



Seawall and tidelands along southern boundary of site



HAS-EVE3 00393

LOCATION

>Chemical Lane, Everett and Boston, MA. The property is located on Chemical Lane, off Route 99. It is shown as Lot #H00006-191-1 on plans of the Everett Assessors and Lot 0201835000 on plans of the Boston Assessors.

OWNERSHIP

>O'Donnell Sand and Gravel, Inc., as shown in a deed dated March 6, 1995, and recorded as Land Court Document #969448 at the Middlesex County South District Registry of Deeds.

PURPOSE OF APPRAISAL

>The purpose of this appraisal is to estimate the Market Value of the Fee Simple and the Leased Fee Estates in the subject property, "as is" and as if not contaminated, as of May 1, 2001.
>
>Courts, lending institutions, and appraisal organizations make use of different definitions of "Market Value" or "Fair Market Value." All refer to a hypothetical sale in which the seller offers property in a competitive market and accepts the highest price offer made. That price, as estimated by the appraisers, is the most probable selling price and the Market Value. An exchange of property for cash to the seller is typically presumed, unless other terms are standard in the market and are available for the subject property. If seller financing, an assumable mortgage, tax credits, or other such terms are taken into account, these are made explicit in this report.
>
>The definition of Market Value applied here follows.
>
>>Market Value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby;
>>
>>(1) buyer and seller are typically motivated;
>>(2) both parties are well informed or well advised, and acting in what they consider their own best interests;
>>(3) a reasonable time is allowed for exposure in the open market;
>>(4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
>>(5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

HAS-EVE3 00394

(Source: Office of the Comptroller of the Currency under 12CFR, Part 34, Subpart C-Appraisals, 34 42 Definitions [f].)

A *Fee Simple Estate* is absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat.

(Source: *The Appraisal of Real Estate*, Eleventh Edition, The Appraisal Institute, Chicago, 1996, p. 138)

A *Leased Fee Estate* is an ownership interest held by a landlord with specified rights that include the right of use and occupancy conveyed by lease to others; the rights of lessor (the leased fee owner) and lessee (leaseholder) are specified by contract terms contained within the lease.

(Source: *The Appraisal of Real Estate*, Eleventh Edition, The Appraisal Institute, Chicago, 1996, p. 138)

## SCOPE OF ASSIGNMENT (EXTENT OF PROCESS OF GATHERING AND ANALYZING DATA)

This appraisal report is prepared at the request of First Trade Union Bank. The function is for valuation of an asset as collateral for a mortgage. The intended users of this report are officials of the bank and of regulatory agencies that oversee the bank's lending practices. This assignment calls for a full narrative appraisal report (a Self-Contained Report of a Complete Appraisal, as these terms are defined by The Appraisal Foundation), in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP), standards of The Appraisal Institute, standards of FIRREA, and First Trade Union Bank Appraisal Requirements, including a complete highest and best use analysis and application of those methods of valuation (including the three traditional approaches) that are appropriate.

The appraisers are experienced in the valuation of commercial land and are competent to perform this valuation.

The property is currently encumbered by an Option Agreement between the owner and Modern Continental Construction Co., Inc./Obaysashi, a Joint Venture dated May 1, 1996. The lessee (as Mystic Landing LLC) reportedly intends to exercise the option. Apart from this option and the pending transaction, to the knowledge of the appraisers, in the past three years, the subject property has not additionally been marketed for sale, placed under agreement for sale, or sold.

At the time of the exercise of the option to purchase, the property is reportedly to be leased to Modern Continental Construction Co., Inc. The lease is reproduced in the addenda to this report and is described in the report. The client has requested an analysis

HAS-EVE3 00395

of the value of the property in fee simple and a second analysis of the leased fee, subject to the proposed lease. Both analyses are included in this report.

Derek J. Cavanaugh inspected the property on April 26 and May 1, 2001 in the company of Anthony Giuffrida, Jr. and Peter M. Grela of Modern Continental. Derek Cavanaugh made an analysis of the property and drafted this report. Eric T. Reenstierna inspected the property on May 8, 2001.

Mr. Giuffrida supplied copies of site plans, environmental assessments and other legal documents. Alan Gottlieb, Esq. of Hinckley, Allen and Snyder supplied copies of deeds, the option agreement and other legal documents. The data in this report are derived from numerous sources, as follows:

- deeds at Suffolk and Middlesex County Registry of Deeds
- assessments at Boston and Everett Assessors
- Boston and Everett zoning map and by-laws from Munilaw
- *List of Contaminated Sites* issued by the Mass. D.E.P.
- personal inspection
- Subcontract and Amendment between Modern Continental/Obaysahi and O'Donnell Construction Company
- Initial Site Investigation prepared by Consulting Engineers and Scientists, Inc.
- Sample analyses by Groundwater Analytical, Inc.
- Aerial photographs
- Correspondence from the Department of Environmental Protection
- site plans from Registry and Assessors
- USGS maps
- FEMA flood plain map, from Digital Media Services
- published data sources (Comps, Banker and Tradesman, REDI Data, Spaulding & Slye, WebAppraiser, CCIM/Landauer, Korpacz)
- deeds for comparable properties
- conversations with local officials
- conversations with brokers or principals for sales and leases as noted
- inspection of comparable sales and rentals

In all cases, participants or brokers involved in sales were contacted for verification. In some cases verification was not possible; in others, participants in sales revealed information, which is described in the "Comment" section for each comparable sale or rental.

HAS-EVE3 00396

## GENERAL ASSUMPTIONS AND LIMITING CONDITIONS

An appraisal is an unbiased estimate of the value of a property reached through an analysis of that property and of data from the marketplace. An appraisal is not a certification of the soundness of a building, a survey, or a legal document (for instance, a title examination), though assumptions regarding these and other matters are made. Among the major assumptions and limiting conditions of this appraisal are those that follow.

1. This is a Self-Contained Report of a Complete Appraisal, which is intended to comply with the reporting requirements of the Uniform Standards of Professional Appraisal Practice. It includes full discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraisers' opinion of value.

2. No responsibility is assumed for legal or title considerations. Title to the property is assumed to be good and marketable unless otherwise stated in this report.

3. The property is appraised free and clear of any or all liens and encumbrances unless otherwise stated in this report.

4. Responsible ownership and competent property management are assumed unless otherwise stated in this report.

5. The information furnished by others is believed to be reliable. However, no warranty is given for its accuracy.

6. All engineering is assumed to be correct. Any plot plans and illustrative material in this report are included only to assist the reader in visualizing the property.

7. It is assumed that there are no hidden or unapparent conditions of the property, subsoil, or structures that render it more or less valuable. No responsibility is assumed for such conditions or for arranging for engineering studies that may be required to discover them.

8. It is assumed that there is full compliance with all applicable federal, state, and local environmental regulations and laws unless otherwise stated in this report.

9. It is assumed that all applicable zoning and use regulations and restrictions have been complied with, unless a nonconformity has been stated, defined, and considered in this appraisal report.

10. It is assumed that all required licenses, certificates of occupancy or other legislative or administrative authority from any local, state, or national governmental or private entity or organization have been or can be obtained or renewed for any use on which the value estimates contained in this report are based.

11. Any sketch in this report may show approximate dimensions and is included to assist the reader in visualizing the property. Maps and exhibits found in this report are

HAS-EVE3 00397

provided for reader reference purposes only. No guarantee as to accuracy is expressed or implied unless otherwise stated in this report. No survey has been made for the purpose of this report.

12. It is assumed that the utilization of the land and improvements is within the boundaries or property lines of the property described and that there is no encroachment or trespass unless otherwise stated in this report.

13. The appraisers are not qualified to detect hazardous waste and/or toxic materials. Any comment by the appraisers that might suggest the possibility of the presence of such substances should not be taken as confirmation of the presence of hazardous waste and/or toxic materials. Such determination would require investigation by a qualified expert in the field of environmental assessment. The presence of substances such as asbestos, urea-formaldehyde foam insulation, or other potentially hazardous materials may affect the value of the property. The appraisers' value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value unless otherwise stated in this report. No responsibility is assumed for any environmental conditions or for any expertise or engineering knowledge required to discover them. The appraisers' descriptions and resulting comments are the result of the routine observations made during the appraisal process.

14. Unless otherwise stated in this report, the subject property is appraised without a specific compliance survey having been conducted to determine whether the property is or is not in conformance with the requirements of the Americans with Disabilities Act. The presence of architectural and communications barriers that are structural in nature that would restrict access by disabled individuals may adversely affect the property's value, marketability, or utility. It is assumed that the subject may be used as described without adoption of any further program for compliance other than such programs as may be specified here.

15. Any proposed improvements are assumed to be completed in a good workmanlike manner in accordance with submitted plans and specifications.

16. The distribution, if any, of the total valuation in this report between land and improvements applies only under the stated program of utilization. The separate allocations for land and buildings must not be used in conjunction with any other appraisal and are invalid if so used.

17. This report may not be used for any purpose by any person other than the party to whom it is addressed (or the parties listed as intended users in the Scope of Assignment section of this report, for the function specified) without the written consent of the appraisers and, in any event, only with proper written qualification and only in its entirety. The report is not for use by parties not listed as intended users or for functions other than those specified in the Scope.

18. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or the firm with which the appraisers are connected)

HAS-EVE3 00398

shall be disseminated to the public through advertising, public relations, news sales, or other media without prior written consent and approval of the appraisers.

19. If an income analysis is part of this appraisal, the projections of future cash flow and resale value are intended only to reflect the thinking of a typical investor, as modeled by the appraisers, as of the appraisal's effective date and are not meant as any form of guarantee that such cash flow will actually be achieved or as the appraisers' personal opinion regarding the likelihood of future events. No analysis of future value or future cash flow is undertaken here other than that explicitly described in the text.

20. Unless otherwise stated, this appraisal takes no account of the potential for a higher price for the subject than that available on the general market that may result from buyers such as abutters who may gain special benefits from acquisition. Discovery of the identity, motivation, and purchasing power of parties in a position to gain special benefits requires information not publicly available and is beyond the scope of this appraisal.

## SPECIAL ASSUMPTIONS

1. The subject property is reportedly contaminated. Insufficient information to allow an analysis of the value of the property in its contaminated state has been supplied the appraisers. For the purpose of the analysis presented here, the property is valued as though is clean and free of environmental contamination requiring remediation.

HAS-EVE3 00399



April 17, 2001

Mr. Eric Reenstierna
Eric Reenstierna Associates
Bullfinch Square
43 Thorndike Street
Cambridge, MA. 02141


RE: Modern Everett Realty Trust
    34.96 acre site, Rte. 99
    Everett, Ma.

Dear Eric:

In follow-up to our telephone conversation, this letter authorizes you to appraise the above captioned real estate and submit a written appraisal to First Trade Union Bank and Modern Everett Realty Trust in accordance with the terms and conditions stated here.

The subject property is 34.96 acre site used as a laydown yard for Modern Continental Construction Co. located off of Alford St. at Chemical Lane, Everett, Ma. Please estimate the current market value of the subject real estate. Enclosed for your use in undertaking this assignment are:

- Site Plan
- Option Agreement
- Site Description and Map
- Executed Bid Letter

The written appraisal report shall be a Self-Contained Report of a Complete Appraisal referencing the appropriate flood plan map and stating whether or not the real estate is located in a special flood hazard area. Three (3) copies of the report with original signatures and photographs are required. A copy of this letter, and a signed copy of the FIRREA Compliance Certification and FIRREA Checklist must be included as an addendum to your report and referenced in the transmittal letter.

Access to the Property can be obtained from Tony Giuffrida, Director of Finance (617) 864-6300 ext. 542. Please direct all requests for additional operating statements, maps, plans, surveys, leases and related information in writing to Tony Giuffrida, Director of Finance with a copy to me at First Trade Union Bank Bank.


G:\01RLA\APPRENG


Corporate Offices and Business Banking Center: 25 Drydock Avenue ♦ Personal Banking Center: 10 Drydock Avenue ♦ Operations Center: 23 Drydock Avenue
Mailing Address: P.O. Box 9063, Boston, MA 02205-9063
617-482-4000 ♦ 1-800-242-0272
Rhode Island Banking Center: 14 Jefferson Park Road, Warwick, RI 02888 ♦ 401-781-6636


HAS-EVE3 00505

All correspondence to First Trade Union Bank regarding this appraisal assignment and the completed appraisal report shall be addressed to:

    Richard L. Archambault
    Vice President
    Commercial Lending
    First Trade Union Bank
    25 Drydock Avenue
    Boston, MA. 02210

We understand, based on our discussions and your written bid proposal dated April 14, 2001 ( a copy affixed), that your fee for the appraisal and three copies of the report will not exceed $5,400. The written appraisal reports shall be delivered by no later than May 25, 2001. The reports will be reviewed for compliance with the instructions, after which your invoice will be processed for payment.

Please indicate your acceptance of this assignment by signing below and by faxing and returning the original to me by April 18, 2001. Thank you in advance for your assistance in this matter. Should you have any questions or need additional information, do not hesitate to contact me at 617-728-7334.

Sincerely,

Richard Archambault
Vice President

RLA:AD
Enclosures


AGREED TO AND ACCEPTED BY

Eric Reenstierna Associates

By: _____  Date: 5/02/01

Eric T. Reenstierna


G:\01RLA\APPRENG

HAS-EVE3 00506