UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>　　　　　Plaintiff,<br>　　v.<br><br>PHARMACIA CORPORATION<br>　and MONSANTO COMPANY,<br>　　　　　Defendants. | |
| PHARMACIA CORPORATION and<br>　MONSANTO COMPANY,<br>　　　　　Third-Party Plaintiffs,<br>　　v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>　CO., INC.,<br>　　　　　Third-Party Defendant. | CIVIL ACTION No. 04-10180 NMG |
| PHARMACIA CORPORATION,<br>　　　　　Third-Party Plaintiff,<br>　　v.<br><br>BOSTON EDISON COMPANY,<br>　　　　　Third-Party Defendant. | |
| BOSTON EDISON COMPANY,<br>　　　　　Fourth-Party Plaintiff,<br>　　v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>　and MARY O'DONNELL,<br>　　　　　Fourth-Party Defendant. | |

**MEMORANDUM IN SUPPORT OF THE MOTION OF DEFENDANT PHARMACIA
CORPORATION TO FORECLOSE PRESENTATION OF EVIDENCE ON DAMAGES**

B3124071.1

Defendant Pharmacia Corporation ("Pharmacia") submits this motion to foreclose plaintiff Mystic Landing, LLC ("Mystic") from presenting evidence, either in response to a motion for summary judgment or at trial, of costs alleged to have been incurred responding to environmental contamination at the property in Everett, Massachusetts owned now by Mystic and formerly by Pharmacia that is the subject matter of the action (the "Property"). The Court should grant the Motion because, despite having been ordered to do so by the Court and sanctioned for its continuing failure to do so, Mystic failed to produce any documents claimed to evidence response costs until well after the deadlines not only for the completion of fact discovery but also for the service of expert reports and the filing of dispositive motions. Moreover, the invoices belatedly included in a filing by Mystic in response to Pharmacia's motion for partial summary judgment on the issue of past response costs are not even alleged to show expenditures by Mystic. Finally, on their face, these documents indicate, with few exceptions, that insofar as they show expenditures by anyone for anything, they are bills not for response costs but for litigation expenses.

**Statement of Facts**

Pharmacia served its First Request for Production of Documents on June 25, 2004 (the "Request"). *Defendant's Motion to Compel Disclosure and Production of Documents* ("*Motion to Compel*") at 7. Among the documents requested were those showing the costs of responding to contamination of the Property that Mystic sought as damages. *Id.* As Pharmacia described to the Court in its Motion To Compel Disclosure and Production of Documents, the single box of documents produced by Mystic pursuant to the Request did not include a single document showing any response costs. *Id.* at 8.

At a discovery conference on October 25, 2004 requested by Pharmacia pursuant to Local Rule 37.1, counsel for Pharmacia pointed out the subjects, including evidence of response costs, as to which no documents had been produced. *Id.* at 8 - 9. As to response costs, counsel for Mystic said Mystic and its affiliate third-party defendant Modern Continental Construction Co., Inc. ("Modern") had provided the only documents it had within this category to Pharmacia before commencement of the action and therefore did not have to produce them in discovery.[1] *Id.* at 9. When counsel for Pharmacia took issue with this position, counsel for Mystic said there would be an additional inquiry and additional documents would be produced within two weeks. *Id.*

When no additional documents were produced, Pharmacia filed Defendant's Motion To Compel Disclosures and Production of Documents on December 23, 2004. In the Motion, Pharmacia advised the Court that Mystic had not produced a single document showing response costs. *Id.* at 8. Mystic did not dispute this statement.

The Court allowed the Motion To Compel on February 25, 2005, ruling that "[t]he disclosures of Mystic and Modern have been woefully inadequate and they have carelessly disregarded their obligations to comply with reasonable discovery requests without explanation." *Memorandum and Order of 2/25/05* at 7. On March 11, 2005, Mystic made additional documents available for inspection by Pharmacia. As described to the Court in the Statement in Support of Sanctions Pharmacia subsequently filed, this additional production did not document any response costs. "Mystic has failed to produce documents evidencing that it has incurred any

---

[1] In fact, the only documents relating to response costs provided before the filing of the action were estimates of future response costs, not documentation of past, incurred response costs. *Affidavit of Adam Kahn in Support of Pharmacia Corporation's Motion to Foreclose Presentation of Evidence on Damages* at ¶ 5. A copy of the *Affidavit of Adam Kahn in Support of Pharmacia Corporation's Motion to Foreclose Presentation of Evidence on Damages* is attached hereto as Exhibit A.

response costs since its formation in June 2001," Pharmacia advised the Court. *Statement to the Court in Support of Sanctions* ("*Pharmacia Statement*") at 8. In the voluminous response it filed to the Statement in Support of Sanctions, Mystic did not take issue with this statement. *See Mystic Landing, LLC's and Modern Continental Construction Co., Inc.'s Opposition to Defendants' Statement to the Court in Support of Sanctions* ("*Mystic Opposition Statement*").

At the hearing at which Mystic was directed to show cause why it should not be sanctioned for its disregard of its discovery obligations, John M. Stevens, counsel for Pharmacia again reiterated the complete lack of production of any documents showing response costs. "They gave us not a single document showing a response cost," he said. *Transcript of April 4, 2005 Status Conference* ("*Transcript*") at 11. Counsel reiterated, "they showed not one penny, not one document showing having incurred one penny of costs." *Id.* at 12. In responding, counsel for Mystic did not claim that any documents showing response costs had been produced.

At the hearing, the Court announced its decision to impose a sanction on Mystic for its discovery violations. "I . . . want to make sure," the Court stated, "that whatever discovery problems have been present in this case thus far will not be repeated." *Id.* at 17. The Court expressed the intention that the sanction it was going to impose would "send a message to all counsel that I'm not going to tolerate this kind of conduct when it comes to discovery." *Id.* at 17-18.

After the Court imposed sanctions on Mystic for violations of its discovery obligations and before the time for responding to dispositive motions, Mystic from time to time produced additional documents, usually after Pharmacia indicated that it knew of the existence of particular documents which had not been produced. *Affidavit of Elisabeth DeLisle in Support of Pharmacia Corporation's Motion to Foreclose Presentation of Evidence on Damages* ("*DeLisle*

*Aff.*") at ¶ 4.[2]  None of those additional productions included any documents showing charges or payments alleged to be response costs.  *DeLisle Aff.* at ¶ 5.

On October 24, 2005, the date set by the Court for the filing of dispositive motions, Pharmacia served and filed a motion for partial summary judgment on Mystic's claim for response costs, arguing that future unincurred response costs were not recoverable and that Mystic had failed to document past response costs.  *Memorandum in Support of Pharmacia Corporation's Motion for Partial Summary Judgment* ("*Pharmacia Memorandum*") at 7-9.  On November 7, 2005, Mystic claimed for the first time to have produced documents showing past response costs.  Specifically, counsel for Mystic wrote to counsel for Pharmacia stating that "we were concerned that given the nature of your Summary Judgment Motion that you may not have had a complete copy of the invoices relating to the Rizzo work."  See *Nov. 7, 2005 letter from Doreen Zankowski to Adam Kahn* ("*Letter of November 7, 2005*") attached as *Exhibit 8 to Nov. 8, 2005 Affidavit of Doreen Zankowski*.  Counsel enclosed 27 summary complete or partial invoices that she said totaled $157,381.58.  *Id.*  She claimed that 12 of these invoices and portions of 2 others had, at some unspecified time and in some unspecified manner, previously been produced by Mystic, admitting thereby that portions of those two and 13 in their entirety had never been produced.  *Id.*  In fact, none of these invoices had ever been produced by Mystic to Pharmacia.  *Affidavit of Elisabeth M. DeLisle in Support of Defendant Pharmacia Corporation's Motion for Partial Summary Judgment* at ¶ 51.  All of the invoices are addressed to counsel and, accordingly, had been in the possession of counsel from at or about the time they were generated.

---

[2]   A copy of the *Affidavit of Elisabeth DeLisle in Support of Pharmacia Corporation's Motion to Foreclose Presentation of Evidence on Damages* is attached hereto as Exhibit B.

At the same time counsel for Mystic sent this letter to counsel for Pharmacia, Mystic filed its opposition to Pharmacia's motion for partial summary judgment. Attached to the opposition was a collection of invoices including but not limited to those enclosed in counsel's letter. *Mystic and Modern's Memorandum of and in Support of its Opposition* ("*Mystic Opposition*"), Exh. R. Also attached was an affidavit of Mystic's environmental expert stating that these invoices totaled $186,304.97 and, although the sentence is confusing, seeming to state that all of them had been paid. *Mystic Opposition*, Exh. F at ¶12. The affidavit did not identify what activities accounted for any of these invoices. It is evident, however, on the face of the invoices that only the first five related to activities that could be considered response costs and that the others were for litigation support. For example, the only two substantial invoices after the first five corresponded to times when the expert spent a week in St. Louis reviewing Pharmacia's document production and when he prepared his expert report. All but one of the first five invoices were for services rendered before Mystic was formed.

Also attached to the opposition was an affidavit from Modern's president. Contrary to his expert, he said the invoices totaled not $186,304.97 but $157,381.58. *Mystic Opposition*, Ex. P at ¶10. Contrary to his expert, he did not say that they had all been paid but that some had been paid and others would be. *Id.* All of those payments, he said, were and were to be by Modern. *Id.* None were by Mystic.

## ARGUMENT

I. **Mystic's Failure To Produce The Invoices Claimed To Show Response Costs Precludes Their Use On Summary Judgment Or At Trial.**

Where a party has failed to obey an order to provide or permit discovery, the Court may make such orders in regard to the failure as are just, including the following:

> "(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

Fed. R. Civ. P. 37(b)(2). In addition to the foregoing, "the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." *Id.* The Supreme Court has stressed the policy reasons for enforcing discovery rules, stating that, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976). Belated compliance with a discovery order does nothing to cure a party's violation. *See, e.g., Cine Forty-Second Street Theatre Corp. v. Allied Artists Picture Corp.*, 602 F.2d 1062, 1068 (1979) ("Under the deterrence principle of National Hockey, plaintiff's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall.")

Thus, courts have found that precluding a party from introducing into evidence documents disclosed after the close of discovery period is an appropriate sanction for parties who have engaged in behavior similar to that engaged in by Mystic and Modern. For example, in *Zenian v. District of Columbia*, 283 F. Supp. 2d 36, 38-39 (D.D.C. 2003), the court held that personnel files that were produced at the time defendants filed their opposition to plaintiff's

motion, which was based on the failure of the defendants to produce such personnel files, could not be introduced into evidence in its direct case, for impeachment or on rebuttal. *Id.* Similarly, in a breach of contract and fraud case filed by an employee, the Court of Appeals for the District of Columbia upheld the magistrate's determination that, due to defendants' failure to produce complete financial records, the defendants would be barred from introducing evidence at trial in opposition to particular claims regarding which discovery had been resisted. *Jankins v. TDC Management Corp., Inc.*, 21 F.3d 436 (D.C. Cir. 1994). *See also Cine Forty-Second*, 602 F.2d 1062 (2nd Cir. 1979) (upholding magistrate judge's determination that plaintiff be precluded from introducing evidence with respect to damages where failure to comply with magistrate's order constituted a dereliction of professional responsibility); *United States v. Sumitomo Marine's Fire Ins. Co., Ltd.*, 617 F.2d 1365 (9th Cir. 1980) (upholding district court order that United States be precluded from introducing any evidence of damages where it had delayed on numerous occasions in providing information and had failed to comply with court order requiring it to produce information regarding the same).

Even where there has not been a violation of a court order, Rule 37(c)(1) provides that, "[a] party that without substantial justification fails to disclose information required by Rule 26(a), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any . . . information not so disclosed." Fed. R. Civ. P. 26(a)(1)(A) requires a party to provide to other parties:

> a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of the injuries suffered.

Thus, Mystic and Modern were obliged to provide Pharmacia with the evidentiary material on which their damage computations were based even prior to receiving Pharmacia's requests for production. Mystic and Modern's failure to provide such evidence mandates that they be barred from using such evidence at trial or to oppose Pharmacia's Motion for Partial Summary Judgment.

In a recent case, the Court of Appeals for the First Circuit held that the district court erred in allowing into evidence portions of letters which had not been disclosed prior to trial in accordance with Rule 26(a)(3). *Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir. 1998). The court noted the mandatory nature of Fed. R. Civ. P. 37(c)(1), and stated that "the new rule clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion." *Id.* at 42-43. Similarly, in upholding the district court's exclusion of expert testimony in a case under the Emergency Medical Treatment and Active Labor Act (EMTALA), the Court of Appeals for the First Circuit distinguished the standard for sanctions under 37(b)(2)(B) from that under 37(c)(1). *Ortiz-Lopez v. Sociedad Espanola de Anxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29 (1st Cir. 2001). The court noted that under part (c), unlike part (b), an order need not violated; rather the district court must only find that the offending party was not substantially justified in failing to disclose information required by Rule 26(a) and that the failure to disclose was not harmless. *Id.* at 33. Noting that the range of sanctions available "gives the district court leeway to best match the degree of non-compliance with the purpose of Rule 26's mandatory disclosure requirements," *id.* at 34, the Circuit Court affirmed the District Court's exclusion even though such exclusion resulted in the dismissal of the case. In *Coles v. Perry,* 217 F.R.D. 1, 5-6 (D. D.C. 2003), the magistrate judge held that unless the defendant could show that its failure to

disclose documents which should have been identified in its initial disclosures was harmless, the defendant would not be permitted to admit such documents into evidence. In describing why defendant's delay in producing the documents was unacceptable, the magistrate stated,

> To say that disclosure after the discovery deadline is harmless ignores that a central purpose of setting a discovery deadline is to move the case expeditiously forward from the end of discovery, through dispositive motions, to pre-trial and trial. Disclosures made after the discovery deadline threaten the disruption of that schedule if, in reality, the period of discovery and disclosure does not end when a judge says it is supposed to. While such disruption has to be tolerated when the belated disclosure is substantially justified because disclosure during the discovery period was impossible, the interest in having meaningful deadlines should require the exclusion of the belated disclosure when the tardy party provides no reason whatsoever for the lateness of its response.

*Id*. at 5.

Failure to produce documents forecloses their use not only at trial but in opposition to summary judgment. *See Harding v. Rosewell*, 22 F. Supp. 2d 806, 813 (N.D. Ill. 1998). There, without specifying the provision of Rule 37 on which it was relying, the District Court held that the defendants in an employment discrimination case were barred in their motion for summary judgment from using an employee manual which had not been produced until after the close of discovery. *Id*.

Under the standards established by these cases, Mystic should be foreclosed from presenting evidence of past response costs in opposition to summary judgment or at trial. Mystic failed to produce the invoices it attached to its opposition to Pharmacia's motion for partial summary in response to a request for production of documents. When Pharmacia pointed out in a discovery conference that no documentation of past response costs had been produced, counsel for Mystic made no denial but said that the documents produced during the pre-litigation negotiation mandated by statute, which showed only estimates of future response costs and no past response costs, were the only documents showing response costs in Mystic's possession.

Motion to Compel at 8-9. When Pharmacia brought a motion to compel production of documents, it expressly stated that no document showing past response costs had been produced, and again counsel for Mystic made no denial. Motion to Compel at 8.

Even when the Court granted Pharmacia's motion and directed Mystic to produce all requested documents, Mystic did not produce any documents showing past response costs. In the statement Pharmacia filed showing that Mystic should be sanctioned for violation of its discovery obligations, Pharmacia again explicitly stated that no such documents had been produced, and Mystic did not claim in its voluminous response that it had done so. Pharmacia Statement at 8; Mystic Opposition Statement. Finally, at the hearing on sanctions, counsel for Pharmacia reiterated for a fourth time that no documents showing any alleged past response costs had been produced, and for a fourth time, counsel for Pharmacia made no denial. See Hearing Transcript.

Even after it was sanctioned, until well after the conclusion of fact and expert discovery, Mystic produced no document showing alleged response costs. *DeLisle Aff.* at ¶ 5. The report of its environmental expert contained no opinion that any of his activities resulted in response costs incurred by Mystic. *See Mystic Opposition*, Exh. B. Finally, on the day its response to Pharmacia's motion for partial summary judgment was due, Mystic produced invoices that purported to represent past response costs, claiming to have previously produced approximately half of them. *See Letter of November 7, 2005.* This claim is entirely incredible in that it was not made on at least four previous occasions when it was called for. As to the remaining half of the invoices, Mystic admits they were not produced.

Mystic's failure was inexcusable and in no sense harmless. The invoices were in counsel's possession from on or about the time they were generated; they were addressed by the

expert directly to counsel. As to prejudice, Pharmacia's fact discovery, expert reports and dispositive motions, all prepared at significant expense, relied on the absence of any documented past response costs.

### II.  The Invoices Should Be Stricken Even If Mystic's Discovery Violations Are Disregarded.

The invoices should be stricken from Mystic's filings in opposition to Pharmacia's motion for partial summary judgment not only because they were not produced in response to a reasonable request for production of documents and an order of the Court but also because they do not bear upon any fact material to the motion. In that regard, of course, a party such as Mystic may avoid a requested summary judgment only if it shows a genuine dispute as to not just any fact but a fact that is material to the claim on which judgment is sought. *See, e.g., Logan Equipment Corp. v. Simon Aerials, Inc.*, 736 F. Supp. 1188, 1195 (D. Mass. 1990) ("In deciding motions for summary judgment, the court must make two inquiries: (1) whether the factual disputes are genuine, and (2) whether any fact genuinely disputed is material. . . . Factual disputes that are irrelevant or unnecessary will not be counted"). The material fact at issue here is what response costs, if any, have been incurred by Mystic, which is the only party who has pleaded a claim to recover response costs it alleges it has incurred. In that respect, Modern's disclosures state, "Modern currently claims no damages against any party in this lawsuit." *Initial Disclosures of Third-Party Defendant Modern Continental Construction Co., Inc.* at 2.[3]

The invoices are not material to a claim to recover response costs incurred by Mystic. All of them are addressed to Modern, not to Mystic. *Mystic Opposition*, Exh. R. The affidavits

---

[3]  A copy of the *Initial Disclosures of Third-Party Defendant Modern Continental Construction Co., Inc.* is attached hereto as Exhibit C.

of both the expert who submitted the invoices and Modern's president say they were paid by Modern and not by Mystic. *Mystic Opposition*, Exhs. F and P. In short, the invoices do not show response costs or any other costs incurred by Mystic.

In fact, almost all of the invoiced amounts could not be on account of response costs incurred on behalf of Mystic. Specifically, it is evident from Mystic's own expert report, of which it has filed several copies with the Court, that the only services that could possibly be considered response costs were those covered by the first five invoices relating to sampling of soil and groundwater and resulting analysis performed in 2001. The others reflect no activities directed to characterizing, containing or removing contamination at the site and instead relate to Mystic's prosecution of this action, costs that re not recoverable as response costs. Four of the first five invoices, on their face, relate to services that could not have been performed on behalf of Mystic because they were performed before Mystic was formed. The amount of the fifth invoice is $8,793.48.[4]

Thus, even if Mystic had paid the invoice for services that could have been considered response costs and could have been performed on its behalf and had produced evidence of that payment and those services in response to Pharmacia's request and the Court's order, the amount of its claim for past response costs would have been less than $10,000. That sum is a small fraction of the costs Pharmacia incurred in observing its obligations to provide discovery according to the Rules of Civil Procedure. It is also a small fraction of the amount Mystic saved by flouting its obligations under those Rules and the Court's order.

---

[4] The fifth invoice is also the only one of the first five that Mystic even now claims, however incredibly, to have produced in its entirety prior to November 7, 2005.

**CONCLUSION**

      For the foregoing reasons, the Court should grant the motion and rule that Mystic is foreclosed from presenting any evidence of past response costs at trial or in opposition to summary judgment.

      Respectfully submitted,

/s/ John M. Stevens
John M. Stevens (BBO # 480140)
Adam P. Kahn (BBO # 561554)
Elisabeth M. DeLisle (BBO #658067)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts   02210
(617) 832-1000

Dated:   November 18, 2005