## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>    Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>    Defendant.<br><br>PHARMACIA CORPORATION<br>    Third-Party Plaintiff,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>    Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| PHARMACIA CORPORATION<br>    Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY<br>    Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY<br>    Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL<br>    Fourth-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CIVIL ACTION NO.<br>04-10180 NMG**

## PLAINTIFF'S AMENDED COMPLAINT
## FOR DECLARATORY JUDGMENT
## AND COMPENSATORY RELIEF

**INTRODUCTION**

This is an action for Declaratory Judgment and compensatory relief in which the Plaintiff

Mystic Landing, LLC ("Mystic"), seeks relief requiring the Defendant Pharmacia Corporation

("Pharmacia") to pay all response action costs incurred by Mystic and intended to be incurred

pursuant to M.G.L. Chapter 21E, §4A, and property damages pursuant to M.G.L. 21E, § 5 related

to a certain contaminated property located in Everett, Massachusetts (the "Property" or "Site").

**PARTIES**

1.      Mystic is a limited liability corporation with a usual place of business at 600

Memorial Drive, Cambridge, Middlesex County, Massachusetts.

2.      Formally named the Monsanto Company, Pharmacia is a Delaware corporation,

with a principal place of business in Peapack, New Jersey, and is conducting business in the

Commonwealth of Massachusetts.  Pharmacia is the corporate successor to Monsanto Company

("Monsanto"). During its ownership and operation of the Site Pharmacia was called the Monsanto

Company.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332.

4.      This Court has personal jurisdiction over Pharmacia because Defendant has

engaged in business in the Commonwealth of Massachusetts.

5.      Venue is proper pursuant to 28 U.S.C. §1391 because a substantial portion of the

property at issue is located in this judicial district.

## FACTS

6.     The Site is located at Alford Street and Broadway in Everett, Massachusetts.

7.     In 1929, Pharmacia, named Monsanto at the time, acquired the Site, on which it operated a large-scale chemical manufacturing plant until 1983.

8.     The Pharmacia chemical manufacturing plant produced, *inter alia*, sulfuric acid and phthalic anhydride, and Pharmacia stored and used large quantities of oil at the Site.

9.     Pharmacia also owned and operated a chemical manufacturing plant on the parcel of land that abuts the Site on the northwest property line, the "Gateway Property".

10.     In 1983, Pharmacia sold the Site to Boston Edison Company ("Edison").

11.     In 1995, Edison conducted a limited subsurface investigation of the Site consisting of excavating test pits and collecting soil samples for laboratory analysis.  The results of the analysis of the soil samples collected from the test pits indicated the presence of elevated concentrations of certain metals and petroleum hydrocarbons.

12.     As a result of this investigation, Edison submitted a Release Notification Form ("RNF") to the Commonwealth of Massachusetts, Department of Environmental Protection ("DEP") on January 18, 1996.

13.     In or about 1996, Edison sold the Site to O'Donnell Sand & Gravel, Inc., which, in turn, sold the Site to Mary O'Donnell ("O'Donnell").

14.     In December 1996, O'Donnell conducted an additional subsurface investigation, which included the installation and sampling of seven (7) boring/monitoring wells.  In at least four (4) of the wells, lead and arsenic were found in concentrations in excess of reportable concentrations.

15.     In or about June 2001, O'Donnell sold the Site to Mystic.

16.    In April and May of 2001, Rizzo Associates, on behalf of Mystic, conducted additional subsurface investigations of the Site.  These investigations included the installation of thirty-one (31) shallow soil borings, ten (10) of which were completed as groundwater monitoring wells; the excavation of fifteen (15) test pits; and the collection and laboratory analysis of soil and groundwater samples.

17.    The soil analysis revealed elevated concentrations of arsenic, mercury, naphthalene, and selected polycyclic aromatic hydrocarbons ("PAHs").

18.    The ground water analysis revealed elevated concentrations of dissolved lead, arsenic, and cadmium.

19.    The source of the metals contamination in the soil and groundwater was the use of the Site by Pharmacia and the Gateway Property as chemical manufacturing facilities.

20.    The source of the elevated areas of PAHs identified at the Site was the placement of fill materials containing ash and cinders or residual contamination resulting from the former storage of crude oil at the Site.

21.    The fill materials used by Pharmacia also caused low pH groundwater, which, in turn, caused elevated metals concentrations, with the low pH groundwater causing leaching of the metals in the fill and resulting in the high dissolved metals concentrations.

22.    The Site is classified as a Tier II Disposal Site under the Massachusetts Contingency Plan (the "MCP").

23.    In order to achieve regulatory closure pursuant to the MCP, a licensed site professional must determine that conditions at the Site pose No Significant Risk ("NSR") to public safety, human health, and the environment.  In order to determine NSR for the Site without the use of an Activity and Use Limitation ("AUL"), concentrations of soil contaminants

need to be reduced to levels below the MCP Method 1 S1/GW-2 and S-1/GW-3 cleanup standard.

24.     Pursuant to Mass. Gen. Laws. c. 21E, §5(a), "any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material . . . shall be liable, without regard to fault . . . to any person for damage to his real or personal property incurred or suffered as a result of such release or threats of release."

25.     Pursuant to Mass. Gen. Laws c. 21E, 4A, "[a]ny person…who has undertaken, is undertaking, or intends to undertake a necessary and appropriate response action or who is or reasonably believes that he might be liable pursuant to section five may notify any person he reasonably believes is liable pursuant to section five that the response action has been taken or is being taken or of the notifier's intent to take such response action or to seek contribution, reimbursement or equitable share from other persons..."

26.     On August 27, 2001, Mystic notified Pharmacia, pursuant to Mass. Gen. Laws c. 21E, § 4A(a)(i), of the response actions necessary to reduce the concentrations of soil, ground water and sediment contaminants at the Site, and the potential nature and amount of Pharmacia's liability.

27.     Pharmacia has failed and refused to offer reasonable contribution or reimbursement to Mystic, or to participate in the performance of the response action or in the discharge of liability pursuant to Chapter 21E.

28.     Mystic has satisfied all conditions precedent to the filing of this action.

**COUNT I**
**DECLARATORY JUDGMENT**

29.    Paragraphs 1 through 28 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

30.    As the former owner/operator of the Site at the time of the storage or disposal and release of oil or hazardous material to the soil, ground water, and sediments, the Defendant is responsible for all of the response costs incurred and intended to be incurred pursuant to Mass. Gen. Laws c. 21E, § 4A.

31.    As the former owner/operator of the Site at the time of the storage or disposal and release of oil or hazardous material to the soil, ground water, and sediments, the Defendant is responsible for property damages pursuant to Mass. Gen. Laws c. 21E, § 5.

32.    Pursuant to Mass. Gen. Laws c. 231A *et seq.*, an actual controversy exists between Mystic and the defendants with respect to whether the Defendant is responsible for contribution and reimbursement of the response costs incurred and intended to be incurred pursuant to Mass. Gen. Laws c. 21E, § 4A, and property damages pursuant to Mass. Gen. Laws c. 21E, § 5.

**COUNT II**
**CONTRIBUTION AND REIMBURSEMENT**

33.    Paragraphs 1 through 32 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

34.    As the former owner/operator of the Site at the time of the storage or disposal and release of oil or hazardous material to the soil, ground water, and sediments, the Defendant is responsible for all of the response costs incurred and intended to be incurred  pursuant to Mass. Gen. Laws c. 21E, § 4A.

35.    Pursuant to Mass. Gen. Laws c. 21E, § 4A, the Defendant is responsible for

contribution to the response costs intended to be incurred by Mystic in an amount between $2,265,046 and $8,421,306.

36.    Pursuant to Mass. Gen. Laws c. 21E, § 4A, the Defendant is responsible for, reimbursement of the response costs incurred by Mystic in the amount of $186,304.97.

## COUNT III
## COMPENSATORY DAMAGES

37.    Paragraphs 1 through 36 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

38.    As the former owner/operator of the Site at the time of the storage or disposal and release of oil or hazardous material to the soil, ground water, and sediments, the Defendant is responsible for all property damages caused to the Site pursuant to Mass. Gen. Laws c. 21E, § 5.

39.    Pursuant to Mass. Gen. Laws c. 21E, § 5, the Defendant is responsible for the permanent diminution in value of the Property.

## COUNT IV
## ATTORNEYS' FEES AND COSTS

40.    Paragraphs 1 through 39 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

41.    As the former owner/operator of the Site at the time of the storage or disposal and release of oil or hazardous material to the soil, ground water, and sediments, the Defendant is responsible for all of the response costs and property damages caused by contamination of the Site pursuant to Mass. Gen. Laws c. 21E, § 4A and §5.

42.    Mystic did not contribute to, or cause, the release of those hazardous materials at the Site necessitating response actions or causing property damage.

43.    After receipt of the Notice from Mystic pursuant to Mass. Gen. Laws c. 21 E, §

4A, the Defendant failed without reasonable basis to enter into or carry out an agreement to perform or participate in the performance of a response action or pay the costs of such response action pursuant to the provisions of Chapter 21E, where its liability was reasonably clear.

44.    Mystic is entitled, therefore, to its litigation costs and reasonable attorneys' fees incurred in this action.

**WHEREFORE**, Mystic requests that the Court enter the following relief:

1.    Declare that the Defendant is responsible to provide contribution to the costs intended to be incurred in Mystic's response actions at the Site in an amount between $2,265,046 and $8,421,306 pursuant to the provisions of Mass. Gen. Laws c. 21E, § 4A;

2.    Declare that the Defendant is responsible to provide reimbursement of the incurred costs of Mystic's response actions in the amount of $145,450.00 pursuant to the provisions of Mass. Gen. Laws c. 21E, § 4A , together with interest thereon and costs;

3.    Enter judgment in favor of Mystic and against the Defendant for all diminution in value property damages pursuant to the provisions of Mass. Gen. Laws c. 21E, § 5.

4.    Award Mystic its attorneys' fees and costs incurred in this action; and

5.    Award such other relief as this Court deems just.

MYSTIC LANDING, LLC
By its attorneys:

/s/ Doreen M. Zankowski

DATED: December 2, 2005

Robert G. Flanders, Jr., Esq. (BBO #170820)
Doreen M. Zankowski, Esq. (BBO #558381)
Kevin M. Plante, Esq. (BBO #630088)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
(617) 345-9000

## CERTIFICATE OF SERVICE

I, Kevin M. Plante, hereby certify that on this 2nd day of December 2005, I served a true and accurate copy of the foregoing document electronically to:

John M. Stevens, Esq.
Adam P. Kahn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210

Mark S. Granger, Esq.
Douglas B. Otto, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Howard G. Guggenheim
P.O. Box 736
Scituate, MA 02066

/s/ Kevin M. Plante
_____
Kevin M. Plante

SIGNED UNDER THE PENALTIES OF PERJURY THIS 2nd DAY OF DECEMBER, 2005.

/s/ Kevin M. Plante
_____
Kevin M. Plante

559560v1

9