## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>PHARMACIA CORPORATION, )<br>and MONSANTO COMPANY, )<br>Defendants. )<br>)<br>PHARMACIA CORPORATION and )<br>MONSANTO COMPANY, )<br>Third-Party Plaintiffs, )<br>)<br>v. )<br>)<br>MODERN CONTINENTAL CONSTRUCTION )<br>CO., INC., )<br>Third-Party Defendant. )<br>PHARMACIA CORPORATION )<br>Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>BOSTON EDISON COMPANY )<br>Third-Party Defendant. )<br>)<br>v. )<br>)<br>BOSTON EDISON COMPANY )<br>Fourth-Party Plaintiff, )<br>)<br>v. )<br>)<br>O'DONNELL SAND & GRAVEL, INC. )<br>And MARY O'DONNELL )<br>    Fourth-Party Defendants. )<br> | **CIVIL ACTION NO.**<br>**04-10180 NMG** |

## PLAINTIFF MYSTIC LANDING, LLC AND THIRD-PARTY DEFENDANT MODERN CONTINENTAL CONSTRUCTION CO., INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT PHARMACIA CORPORATION'S MOTION TO FORECLOSE PRESENTATION OF EVIDENCE OF DAMAGES

560992

## PRELIMINARY STATEMENT

Plaintiff Mystic Landing, LLC ("Mystic") and Third-Party Defendant Modern Continental Construction Co., Inc. ("Modern") submit this Memorandum of Law in Support of Their Opposition to Defendant Pharmacia Corporation's ("Pharmacia") Motion to Foreclose Presentation of Evidence of Damages. This motion is an inappropriate attempt by Pharmacia to use "gotcha" discovery tactics as a means to avoid damage liability for polluting the Site in question. Both sides have engaged in wide-ranging and copious production of documents pursuant to requested discovery. Nevertheless, this motion ignores the history of mutual cooperation and compliance by attempting to isolate one type of requested documents from the universe of documents that were requested and produced to the moving party.

Formerly called the Monsanto Company ("Monsanto"), Pharmacia is liable under M.G.L. c. 21E ("21E" or the "Act") because it's chemical manufacturing, handling, storage, and waste-disposal activities caused contamination of Mystic's property during it's thirty-seven years of owning and operating the site at issue (the "Site" or "Property") as a chemical manufacturing and storage facility.

Pharmacia's Memorandum in Support of the Motion to Foreclose Presentation of Evidence of Damages (Pharmacia's Memorandum") is an attempt to invoke draconian discovery sanctions to the end of evading its liability for clean-up costs under 21E. Pharmacia attempts to foreclose presentation of evidence showing damages consisting of past response costs incurred. In seeking this unjustified relief, Pharmacia seeks to walk away from its financial responsibilities for cleanup and the resultant damages it caused to the property after years of polluting and contaminating the Site.

1

Pharmacia seeks inappropriately harsh sanctions against Mystic and Modern under FRCP 37 for alleged discovery noncompliance. Preclusion of plaintiff's damages evidence, however, is unjustified under FRCP 37 because Mystic and Modern's conduct in producing the documents at issue here – the invoices documenting Mystic's response costs to date – does not come close to the standards justifying sanctions under FRCP 37. The facts in the cases cited by Pharmacia involved egregious discovery misconduct that bears no comparison, and is not even remotely analogous, to Mystic and Modern's conduct with respect to the invoices at issue here.

As a polluter of real estate, Pharmacia is the quintessentially liable defendant for past response-action costs in a 21E case such as this one, which seeks contribution to fund the assessment and cleanup of the Site. Pharmacia's attempt to evade such liability by positing discovery misconduct on the claimant's part and by seeking draconian sanctions is without merit.

### Summary of Reasons Why Pharmacia's Motion to Foreclose Should be Denied

1. Before the Close of Discovery, Mystic and Modern Produced Evidence of Response-Action Costs Incurred; As It Also Produced Those Invoices That Were Not Received Until After Discovery Closed;

2. Mystic and Modern produced evidence of the work and services performed by Rizzo Associates, namely Mystic provided Pharmacia with copies of Rizzo's voluminous reports, reports which Mystic clearly incurred costs to have produced;

3. The Circumstances Surrounding the Production of the Rizzo Invoices Does Not Meet the Flagrant Misconduct Standards Required to Justify Sanctions Under FRCP 37

4. Cases Cited by the Defendant Are Examples of "Flagrant Bad Faith" And "Grossly Negligent" Discovery Misconduct, and these Cases Are Dissimilar and Distinguishable From the Facts Before This Court

## FACTS

2

Mystic and Modern rely on the facts presented and documents referenced in its previously filed Memorandum of Law in Support of Their Motion for Summary Judgment on Liability and Exhibits thereto (see Exhibit A (text)). Although we rely on the documents referenced above and on the facts therein referenced, which we incorporate herein by reference, the following salient facts regarding relevant discovery matters are provided for the benefit of the Court.

Mystic did in fact provide evidence of its incurred response costs by providing certain documents relating not only to the actual work and services performed by Rizzo Associates, but Mystic also provided invoices from Rizzo Associates ("Rizzo") evidencing work that had been completed.

The single box of documents that Pharmacia references in its Memorandum in Support of the Motion to Foreclose Presentation of Evidence of Damages is not the box of documents that contained Rizzo's invoices. Mystic, throughout the entire discovery period and thereafter, supplemented its production of documents, including supplementing its production on or about March 11, 2005. The March 11, 2005 production included approximately ten boxes of documents and within one of the boxes were copies of Rizzo invoices. *Affidavit of Doreen Zankowski in support of Mystic and Modern's Opposition to Pharmacia's Motion to Foreclose Presentation of Evidence of Damages ("Zankowski Aff.)* at paragraphs 5, 7 and 8. Further, when Mr. Kahn, attorney for Pharmacia, informed Ms. Zankowski that invoices had never been produced, Ms. Zankowski immediately forwarded copies of the invoices that had been available for review and copying on March 11, 2005 and also supplemented same with copies of all invoices. Zankowski Aff. Parapraphs 9-11, 14 and 15. *See, November 7, 2005 letter*

*from Doreen Zankowski to Adam Kahn ("Letter of November 7, 2005") attached as*
*Exhibit 8 to November 8, 2005 Affidavit of Doreen Zankowski.*

Mystic produced invoices totaling more than $33,000 of invoice documentation,
and produced another $51,000 with the Letter of November 7, 2005. It is important to
note that more than $58,000 of invoices were produced after the close of discovery, only
because that was when the work was basically completed and invoiced. *Affidavit of*
*Richard Hughto in support of Mystic and Modern's Opposition to Pharmacia's Motion to*
*Foreclose Presentation of Evidence of Damages ("Hughto Aff.)* at paragraph 9.

Furthermore, Pharmacia has known since 2001, that Rizzo Associates has been
working with Mystic to investigate and remediate the property in question. Mystic
notified Pharamcia in the August 27, 2001 §4A letter that costs of approximately $90,500
had been incurred. Further, Mystic again notified Pharamcia in the complaint that costs
of approximately $100,000 had been incurred at that point in time.

Mr. Kahn even states in his own affidavit in support of Pharmacia's Motion to
Foreclose Presentation on Evidence of Damages that "on several occasions prior to
Mystic's filing of its Complaint, I received documents from Mystic and Modern
purporting to show Mystic's "remedial costs" in relation to the Property." Mystic did
indeed provide Pharmacia with information as to the costs – and to date, these costs are
certainly not unreasonable.

Counsel for Pharmacia correctly points out that during the February 25, 2005
hearing, counsel did talk about many documents that had been requested but were not yet
produced by Mystic and Modern. It was explained to counsel, and supported by an
affidavit by Mr. Robert Shepard of Modern, that many documents were destroyed.

560992

4

Counsel for Mystic and Modern agreed to continue to provide documents responsive to Pharmacia's discovery request. Counsel for Modern and Mystic did not address each and every document that counsel for Pharmacia alleged had not been produced.

Concerning the issue of who pays for the Rizzo work, Pharmacia would want the damages precluded because Pharmacia contends that Modern pays for Rizzo's invoices and not Mystic. First, Mystic is a close affiliate of Modern and it is not uncommon for Modern to pay the obligations of its subsidiaries and affiliates and backcharge them at a later date. Second, Mystic did indeed pay for some of Rizzo's invoices through Mystic accounts. Third, Modern began paying Mystic's obligations when the entire Modern organization began to experience financial distress. In summary, Modern may have paid some of the invoices, but Modern still holds Mystic liable for the obligation. *Affidavit of John Pastore in support of Mystic and Modern's Opposition to Pharmacia's Motion to Foreclose Presentation of Evidence of Damages ("Pastore Aff.")* at 8-11.

Pharmacia attempts a ditch last effort to say that if this court allows the damages evidence to proceed, and the court doesn't agree with Pharmacia's contention that any invoices paid by Modern be negated because they were not directly paid by Mystic, then Pharamcia wants the court to rule that Rizzo's costs are not "response costs" as defined by MGL 21E, but that they are litigation support costs. This position is unsupported by the mere fact that Rizzo engaged a driller to drill test wells. Rizzo had samples taken and analyzed. Rizzo wrote a voluminous report, and the report was supplemented. Rizzo's Richard Hughto spent a good deal of time and energy reviewing documents – which is all part of a response action. Documents must be reviewed to determine where and when releases or threatened releases of contaminants took place. It is important for Rizzo to

know this in order to best evaluate the contamination and design a cleanup. Of the

$186,304.97 in response costs incurred to date, arguably $46,000 may not be categorized

as response costs and may be considered litigation support costs. *Affidavit of Richard*

*Hughto in support of Mystic and Modern's Opposition to Pharmacia's Motion to*

*Foreclose Presentation of Evidence of Damages ("Hughto Aff.)* at paragraph 8.

## ARGUMENT

Pharmacia is liable for past response action costs under 21E, § 4A. Mystic and

Modern seek contribution to fund the ongoing assessment and future cleanup of the Site.

Pharmacia's attempt to evade such liability by arguing discovery misconduct and by

seeking the draconian sanction of precluding evidence on these damages is without merit.

## I.     THE DISCOVERY CONDUCT IN QUESTION SHOULD NOT BE SANCTIONED UNDER FRCP 37 AND THUS MYSTIC SHOULD NOT BE PRECLUDED FROM PRESENTING EVIDENCE ON DAMAGES

### A.     Mystic and Modern Produced Evidence of Response Action Costs Incurred

Although Pharmacia asserts that "Mystic did not produce any documents showing

past response costs," Pharmacia's Memorandum in Support of the Motion to Foreclose

Presentation of Evidence on Damages ("Motion to Foreclose").,this contention is false.

The Plaintiffs served Pharmacia with the § 4A Notice dated August 27, 2001, informing

Pharmacia of its liability for response action costs incurred. The Notice specifically

stated: "The cost of response actions to date is approximately $90,500." § 4A Notice at 6

(see Exhibit B). That was the relevant figure in August 2001. The Complaint in this

action stated that "Mystic has incurred in excess of One Hundred Thousand Dollars

($100,000) in investigation and analysis costs…" Complaint at paragraph 39. Thereafter,

Mystic incurred additional response-action costs, and evidence of same has been provided to Pharmacia, as explained below.

The definition of "Response action" in 21E, § 2 includes "assess, assessment, contain, containment, remove and removal." Mystic has incurred response action costs on Site "assessment" and commissioned further work to "assess" the widespread contamination that Pharmacia caused at the Site.

Specifically, Mystic through Modern and its lawyers, have retained Rizzo Associates to undertake a major assessment of the Property, including site characterization, sampling of soil and groundwater, data review, and preparation of cost estimates for remediation based on different assumptions and scenarios. Parts of Rizzo Associates' work culminated in two reports: 1) the Phase II Field Investigation Report dated June 19, 2001, and 2) the Limited Subsurface Investigation dated August 10, 2001. The Reports were provided to Pharmacia during discovery and have otherwise been a subject of discovery and discussions in this case. Rizzo Associates invoiced the substantial Site work and for the Reports generated concerning the Site. See the Affidavit of Richard J. Hughto, Ph.D, P.E., LSP attached at Exhibit C for specific costs related to Rizzo Associates' work, which constitute response costs that Mystic and Modern have already incurred. Under cover letter dated November 7, 2005, Mystic and Modern produced Rizzo invoices to Pharmacia. This production occurred before the Rizzo invoices were used in Mystic and Modern's Motion in Opposition to Pharmacia's Motion for Partial Summary Judgment. The invoices provide a specific up-to-date computation of past response-action costs incurred.

In short, Mystic respectfully submits that Pharmacia's assertion that Mystic has

not produced any evidence showing that it has incurred any costs for assessment,

investigation, data analysis, or other response actions related to the preexisting

contamination is demonstrably false.

### B.      The Case Law Cited by Pharmacia in its Motion to Foreclose Supports Mystic and Modern's Position

#### 1.      The Conduct Complained of Does Not Meet the Egregious Misconduct Standard Required to Justify a Preclusion Sanction Under FRCP 37

All the cases cited by Pharmacia resulted in the type of sanctions that Pharmacia

would like this Court to impose on Mystic. But the answer to a threshold question shows

why these cases are inapplicable here. The question is whether the circumstances

surrounding Mystic's production of the response-cost invoices –constitutes the type of

egregious discovery misconduct that would support the requested preclusion sanction.

The conduct regarding discovery must be, for example, in "flagrant bad faith," or it must

amount to a "grossly negligent failure." *National Hockey League et al. v. Metropolitan

Hockey Club, Inc., et al.*, 427 U.S. 639 (1976)(finding that failure to timely answer

interrogatories was "flagrant bad faith" and that counsel displayed "callous disregard of

its responsibilities."); *Cine Forty-Second Street Theatre Corp. c. Allied Artists Pictures

Corp., et al.*, 602 F.2d 1062 (2nd Cir. 1979)(finding failure to answer interrogatories was

conduct that had "frozen this litigation in the discovery phase for nearly four years…"

and was thus "a grossly negligent failure to obey a court order compelling discovery.")

The inescapable conclusion to the threshold question is that the Plaintiff's

production of the response-cost invoices does not meet any of the high thresholds for

discovery misconduct set forth in the cited cases. There, the misconduct was egregious

and the facts of such misconduct bear no comparison to the conduct in this case. The circumstances in this case do warrant the imposition of the draconian preclusion sanctions sought by Pharmacia. Rather, '[a] discovery sanction imposed for its deterrent effect must be calibrated to the gravity of the misconduct.' *Zanian v.. District of Columbia*, 283 F.Supp.2d 36 (D.D.C. 2003). "Considerations of fair play may dictate that courts eschew the harshest sanctions provided by Rule 37 where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence." *Cine Forty-Second Street Theatre Corp. c. Allied Artists Pictures Corp., et al.,* 602 F.2d 1062 (2ᵈ Cir. 1979).

Nevertheless, cases cited by Pharmacia are instructive becauseeven a cursory analysis of them leads to the conclusion that Mystic and Modern's conduct complained of herein– the late production of some of the invoices – does not meet the egregious misconduct standard set forth in these cases, all of which provide examples of flagrant bad faith and grossly negligent discovery misconduct that bears no comparison with and are not analogous to the facts before this Court.

**2.    The Cases Relied Upon by Pharmacia Are Inapplicable Here**

Mystic and Modern's conduct in producing the response-cost invoices: 1) is clearly distinguishable from the egregious examples of discovery misconduct in the below-cited cases relied on by Pharmacia, and 2) does not meet the high legal standards set forth by courts that must be met in order to trigger possible preclusion sanctions under FRCP 37.

In *National Hockey League et al. v. Metropolitan Hockey Club, Inc., et al.,* 427 U.S. 639 (1976) the court held that the standard of "flagrant bad faith" regarding

discovery conduct was met where the defendant failed to timely answer interrogatories, disobeyed a discovery order, and filed responses that were "grossly inadequate." Id. 642. The Court further found that sanctions were justified due to counsel's "callous disregard" of their responsibilities. Id. at 643. Here, all the invoices in question have been provided to defense counsel, including those that were created after the close of discovery.

*Cine Forty-Second Street Theatre Corp. c. Allied Artists Pictures Corp., et al.,* 602 F.2d 1062 (2nd Cir. 1979) is also distinguishable on the facts because the discovery violation there was a failure to answer interrogatories satisfactorily that "through undeniable fault, has frozen this litigation in the discovery phase for nearly four years..." Id. at 1068. The Court held that the "grossly negligent" failure to obey multiple court orders compelling discovery justified sanctions. Further, the Court explained that where "gross professional negligence" is found, sanctions are warranted. Id. Here, these egregious circumstances are not present.

Pharmacia states in its Motion to Foreclose that the following case, *Zanian v.. District of Columbia,* exemplifies "behavior similar to that engaged in by Mystic and Modern." Motion to Foreclose, at 7. However, this case, like all the others cited in their Motion to Foreclose, is distinguishable on the facts, and highlights the totally egregious-misconduct standard for sanctions that Mystic and Modern do not come close to meeting in this case. In *Zanian v.. District of Columbia,* 283 F.Supp.2d 36 (D.D.C. 2003), the Court ordered the defendant to produce the personnel files of four specific individuals. Id. at 37. After "plaintiff moved for default judgment, some of the missing documents 'magically' appeared." Id. at 38. Some of the documents that the judge had ordered to be produced were still not produced. The Court held that sanctions for such discovery

10

misconduct "is appropriate when there has been a significant disruption or delay in the judicial system, there has been prejudice to the opposing party, the misconduct is disrespectful to the court, and there is a need to deter such behavior on the future." Id. Reasonable application of such factors to the conduct complained of here leads to the conclusion that the circumstances surrounding the production of the response-cost invoices in this case simply does not rise to the level required by courts to justify the "extreme" and "harsh" sanctions of preclusion under FRCP 37. *National Hockey League et al.,*, 427 U.S. at 643; *Cine Forty-Second Street Theatre Corp.,* 602 F.2d at 1068. Significantly, Pharmacia has suffered no prejudice whatsoever from the complained-of actions.

In another distinguishable case, *Jankins v. TDC Management Corporation, Inc.,* Pharmacia compares apples and oranges. 21 F.3d 436 (D.C. Cir. 1994). The Court described the misconduct justifying sanctions under FRCP 37:

> [I]n a remarkable pattern of delay and obfuscation, the defendants resisted the discovery of specified financial records, computer disks, and other information. The magistrate...found that: defendants' counsel has violated not only the letter and spirit of Rules 11 and 26 of the Federal Rules of Civil Procedure and the Local Rules of this Court, but also at least 11 express orders of the trial court and the Magistrate The misconduct of defendants' counsel has also occasioned two extensions of the discovery cut-off and one continuance of the trial...

Id. at 444. The "willful misconduct" described bears no similarity to the conduct of Mystic and Modern. Id. at 445. The cases are not similar or analogous. Rather than supporting Pharmacia's argument to preclude damages evidence on summary judgment or at trial, the case supports Mystic and Modern's position that the requisite factual circumstances do not exist, and the demanding legal standard has not been meet; thus, the requested sanction under FRCP 37 must be denied.

11

Another inapplicable case relied upon by Pharmacia, offers no support for the
sanctions sought in this case. In *United States of America v. Sumitomo Marine & Fire
Insurance Company, Ltd. et al.*, 617 F.2d 1365 (9th Cir. 1980), the Government
committed 18 months of delays and failures to comply with court-ordered discovery. Id.
at 1370. The Court described the Government's failure to provide timely answers to
interrogatories or to provide at any point prior to trial a final tabulation of damages. The
Court stated that "the prejudice to [defendant]…was unmistakable: two weeks before
trial, the government had yet to supply firm damages figures." Id. The Government
received a "series of warnings for the district court" including the assessment of prior
sanctions failed to result in compliance with discovery orders. Id. The Court considered
such misconduct "flagrant disobedience and callous disregard of court discovery orders."
Id. As discussed above, the response-cost invoices were produced to defense counsel, and
we respectfully submit that such production was neither "flagrant disobedience" nor
"callous disregard" of a court order.

In *Klonoski v. Mahlab,* 156 F.3d 255 (1st Cir. 1998), defendants violated
discovery rules and a discovery order in failing to disclose certain letters prior to offering
them into evidence during trial. It is not hard to appreciate the difference between
production of certain documents months before trial and springing new documents upon
the opposing party at trial without any prior disclosure. When analyzing whether to
exclude evidence under FRCP 37, courts find the timing of the disclosure significant, that
is, whether the disclosure occurs before trial and is "likely subject to correction without
much harm to the opposing party," versus revealing them for the first time when offering
them into evidence at trial and causing obvious prejudice. *Samos Imex Corporation v.*

12

*Nextel Communications, Inc.*, 194 F.3d 301 (1st Cir. 1999). Here, Pharmacia has had all the documents in question and it will have at least two more months to review them. Thus, it has not been prejudiced or harmed by this production.

   *Ortiz-Lopez, v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Pureto Rico*, 247 F.3d 29 (1st Cir. 2001) analyed the plaintiff's failure to disclose expert information under FRCP 37(c). Under 37(c) the test is whether a discovery abuse is substantially justified and harmless or not, regardless of whether there is a pending court order compelling discovery. In *Ortiz-Lopez*, the defendant repeatedly warned the plaintiffs by correspondence and motions to the court, that the plaintiff's expert disclosures were deficient. Id. at 34. The expert disclosures were required to be made under FRCP 26. The Court found that the discovery abuse was not substantially justified and was not harmless. Id. at 33. "On the day scheduled for trial, the court found that plaintiffs had committed serious discovery abuses by withholding information they were required to furnish" including expert information. Id. at 29. In addition, the defendants had made three motions to compel, and for nearly three years the plaintiffs failed to "fully and truthfully answer interrogatories...as required by the federal Rules of Civil Procedure..." Id. The court found "purposeful evasion" and "bad faith" regarding plaintiff's conduct. Id. at 31. The Court called a belated proffer at trial both an "insult" and a "shame." Id. at 32. Explaining why the expert nondisclosures were not harmless, the court stated that "the expert's credibility and persuasiveness, supported by his qualifications and experience, would be directly at issue." Id. The court found the plaintiff's disregard of the discovery rules "egregious" and "deliberate and willful." Id. at 36. In comparison, Mystic and Modern's production of Rizzo invoices, some of which

did not even come existence until discovery closed, did not occur on the day of trial, after multiple motions to compel. Further, there is no basis to conclude that the production of the Rizzo invoices was egregious, deliberate and willful, in flagrant disregard of discovery orders or grossly negligent. Nor has Pharmacia been prejudiced or harmed to justify such a severe preclusion sanction under FRCP 37(b) or (c).

*Coles v. Perry,* 217 F.R.D. 1 (D.D.C. 2003) is another example of a party disclosing documents for the first time at trial and thereby prejudicing and harming the opposing party. The court stated: "To permit that stratagem and let a party use at trial evidence it did not disclose during discovery...would gut the discovery rules. Id. at 5. The Court found that nondisclosed evidence should be precluded when the "tardy party provided no reason whatsoever for the lateness of its response." Id. Simply put, our case is distinguishable because we are not at trial; Pharmacia is not prejudiced or harmed as it might be if production occurred for the first time at trial; and there is no proof or basis to suggest any malicious stratagem on the part of Mystic or Modern. Mystic and Modern have explained the circumstances and provided reasons for the timing of the production in question. *Coles v. Perry* does not support sanctioning Mystic and Modern in these circumstances; rather, it, like all the cases cited by Pharmacia, highlights the legally significant factual differences between the authorities relied on in the Motion to Foreclose, and the facts before this Court.

In *Harding v. Rosewell et al.,* 22 F.Supp.2d 806 (N.D, Ill. 1998), a case decided under Illinois law, FRCP 37 was not relied on or cited to. There, an employee manual not produced until over one year after discovery closed was barred from use as evidence. The employee manual was a key piece of evidence and prejudiced the other party. Mystic

560992

14

and Modern's production of the Rizzo invoices does not amount to hiding a key piece of evidence for over a year until after discovery had ended. Thus, the *Harding* case offers no support or guidance in this situation.

## C.    Temperance by Courts in Ordering Sanctions Under FRCP 37

It is axiomatic that "discovery sanctions are a potent weapon and should, therefore, be deployed in balanced manner and should be imposed in proportion to magnitude of misconduct." Gonsalves v. City of New Bedford, 168 F.R.D. 102, 116 (D.Mass. 1996); see also Fashion House v. Kmart Corp., 892 F.2d, 1076, 1081 (1st Cir. 1989)("Discovery sanctions 'must be just,' and 'specifically related to the particular claim which was at issue in order to provide discovery.'") (internal citations omitted). Courts consider the following factors in determining an appropriate sanction for a discovery violation: (1) the willfulness or bad faith of the non-complying party; (2) the prejudice to the opposing party; (3) whether the procedural history indicates a protracted inaction or deliberate delay; (4) the disregard of earlier warnings of the consequences of the misconduct; and (5) the availability of less draconian factors. Big Top USA, Inc. v. The Wittern Group, 183 F.R.D. 331, 338 (D.Mass. 1998)(emphasis added). However, the central consideration in imposing any discovery sanction is the proportion between the alleged offense and the sanction. To be just, the sanction must never be any more severe than it need be to cure any actual prejudice to the other party.

Here, the defendants cannot demonstrate that Mystic has willfully acted in bad faith or deliberately delayed in the production of documents, nor can they fairly argue that they have been prejudiced in any way, and certainly not in any way that would merit the requested sanction of exclusion of the totality of Mystic's evidence of the costs it has

incurred in assessing and responding to the contamination of the Property, which

contamination was directly caused by the defendants. As an initial matter, on at least

four separate occasions, Mystic has advised the defendants of the response costs that it

has incurred as of the date of each respective disclosure, including in Mystic's 4A letter

to the defendants (see letter from Doreen M. Zankowski to Pharmacia, dated August 27,

2001; in Mystic's Complaint; in Mystic's Rule 26 Initial Disclosure; and, at least in part,

through its production of documents (see Zankowski Affidavit at paragraph 5-8). Mystic

and Mystic's counsel believed that Mystic had produced all supporting invoices in its

possession as of the March 11, 2005 document production.. It was only upon receiving

notice from the defendants on or about November 7, 2005, that there appeared to be

certain gaps in the billing history that Mystic became aware of the alleged gaps. Upon

receiving said notice, Mystic immediately contacted Rizzo Associates, the billing party,

to request a complete set of supporting invoices directly from their files, to ensure that a

complete set was, in fact, provided to the defendants. See Zankowski Affidavit at

paragraph 14, 15.. This inadvertent discovery omission by Mystic/Mystic's counsel, in

the context of a voluminous, multi-party discovery process, which was quickly remedied

upon identification, does not warrant the sanction sought by the defendants. Nexxus

Products Co. v. CVS New York, Inc., 188 F.R.D. 11, 22 (D.Mass. 1999); see also R.W.

International Corp. v. Welch Foods, Inc., 937 F.R.D. 11, 16-17 (1991)(where plaintiffs

had complied to some extent with the general directive that they produce information

relevant to the computation of damages, court held that "unless the failure of discovery is

absolute, or nearly so, Rule 37 sanctions are unripe.").

In addition, the belated production of certain of the invoices has caused and will cause no significant disruption or delay to these proceedings. The defendants still have ample time in which to review the totality of the Rizzo invoices, and there will be no delay in the start of the trial date. Finally, while the defendants argue that Rule 37 makes clear that exclusion of evidence is a common sanction for a violation of the duty of disclosure under Rule 26(a), it is clear that the Court is under no obligation to exclude evidence based upon a such a failure, particularly where, as here, it occurred long before trial and has been rectified without any prejudice to the defendants. Samos Imex Corporation v. Nextel Communications, Inc., 194 F.3d 301, 305 (1999). Accordingly, Defendants' Motion for relief should be denied.

## D. Evidence of Response Action Costs Incurred Was Produced and No Order of the Court was Disobeyed

This Court's Memorandum and Order dated February 25, 2005 was not disobeyed. For this reason alone, Mystic and Modern should not be subject to the draconian sanctions available under FRCP 37. As the affidavits show, the invoices were in fact produced to defense counsel as they were discovered and became available. Although Pharmacia argues that Mystic should have produced the invoices sooner, the timing of their production bears no comparison to the grossly negligent misconduct and flagrant bad faith of the parties who were sanctioned under FRCP 37 in the cases cited by Pharmacia. These cases are actually helpful and supportive of Mystic and Modern's argument: 1) they show that the discovery noncompliance must be egregious and flagrant for such misconduct to justify a preclusion sanction under Rule 37, and 2) the cases articulate the extraordinary level of misconduct that must be met to justify sanctions under Rule 37, a standard that cannot be met here.

17

## CONCLUSION

For the reasons and upon the authorities set forth above, Plaintiff Mystic Landing,

LLC and Third Party Defendant Modern Continental Construction Co. respectfully

request that the Court deny Pharmacia's Motion to Foreclose Presentation of Evidence of

Damages.

> MYSTIC LANDING, LLC AND MODERN
> CONTINENTAL CONSTRUCTION CO.
>
> By its attorneys:
>
> /s/ Doreen M. Zankowski, Esq.
> Robert G. Flanders, Jr., Esq. (BBO #170820)
> Doreen M. Zankowski, Esq. (BBO #558381)
> Kevin M. Plante, Esq. (BBO #630088)
> Hinckley, Allen & Snyder LLP
> 28 State Street
> Boston, MA 02109-1775
> (617) 345-9000

DATED: December 2, 2005

## CERTIFICATE OF SERVICE

I, Kevin M. Plante, hereby certify that on this ____ day of December 2005, I served a true and accurate copy of the foregoing document by hand to:

John M. Stevens, Esq.
Adam P. Kahn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210

Mark S. Granger, Esq.
Douglas B. Otto, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Howard G. Guggenheim
P.O. Box 736
Scituate, MA 02066

Kevin M. Plante

Signed under the penalties of perjury this 2nd day of December 2005.

19

560992