UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>              Plaintiff,<br>    v.<br><br>PHARMACIA CORPORATION<br>              Defendant. | |
| PHARMACIA CORPORATION<br>              Third-Party Plaintiffs,<br>    v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>  CO., INC.,<br>              Third-Party Defendant. | CIVIL ACTION No. 04-10180 NMG |
| PHARMACIA CORPORATION,<br>              Third-Party Plaintiff,<br>    v.<br><br>BOSTON EDISON COMPANY,<br>              Third-Party Defendant. | |
| BOSTON EDISON COMPANY,<br>              Fourth-Party Plaintiff,<br>    v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>  and MARY O'DONNELL,<br>              Fourth-Party Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE OF DEFENDANT
PHARMACIA CORPORATION TO FORECLOSE PRESENTATION OF EVIDENCE
<u>OF PROPERTY DAMAGE</u>**

Defendant Pharmacia Corporation ("Pharmacia") submits this memorandum in support of its motion to preclude plaintiff Mystic Landing, LLC ("Mystic") from presenting evidence at trial relating to its claim for property damage.  The grounds for this motion are identical to the grounds for Pharmacia's pending motion for summary judgment on Mystic's claim for property damage (Exhibit A).  Mystic has opposed Pharmacia's motion (Exhibit B), but its opposition raises no colorable challenge to the reasons why Pharmacia's motion for summary judgment, and this motion to foreclose evidence, should be granted.

## STATEMENT OF FACTS

Pharmacia's memorandum in support of its motion for summary judgment set forth the undisputed facts showing that at the time Mystic purchased the property, its condition was well known to Mystic, and since that time no material new information about historic site contamination has been uncovered.  Mystic's knowledge stemmed from multiple restrictions appearing on the title to the Property, from reports from environmental consultants retained by Mystic's affiliate Modern Continental, from notifications filed with the Massachusetts Department of Environmental Protection and elsewhere.  Prior to Mystic's purchase of the Property in 2001, Mystic's lawyers wrote a letter to Solutia Inc. ("Solutia"), a spinoff entity from Pharmacia that is named as a defendant in this action but was never served, demanding compensation for contamination.  At about the same time, another environmental consulting firm, Rizzo Associates Inc. ("Rizzo") completed additional investigation on the Property, which further confirmed the presence of contamination.  Rizzo's estimates of potential remedial cost estimates ranged from $810,000 to $17,500,000.  Pharmacia's Memorandum in Support of Its Motion for Partial Summary Judgment at 3-6.

Mystic seeks to present evidence that it has suffered property damages in a total amount between $4,000,000 and $10,000,000.  Mystic's expert's presentation of "property damage" is expected to consist of the sum of two values:  the future environmental-related costs estimated by Dr. Richard Hughto, another of Mystic's experts, reported in the most recent expert disclosure as a range of $2,265,000 to $8,420,000[1] for a hypothetical future development of the Property, plus an additional "10-15%" reduction ($1,078,000 to $2,540,250), which Mystic's experts term a "market resistance discount."

**ARGUMENT**

**I.     The Court Should Exclude Evidence Of Property Damage Because The Claim For Property Damage Was Not Disclosed In Pleadings Or During Discovery.**

As set forth in greater detail in Pharmacia's motion for summary judgment, Mystic's claim for property damage appeared for the first time at the very close of discovery, after Mystic apparently determined that it could not obtain a monetary judgment for past or future response costs because neither had been incurred.  The complaint never mentions the concept of damage to the value of the Property; in contrast to paragraphs specifying the anticipated amount of response costs, Mystic's complaint and civil action cover sheet (filed in Massachusetts Superior Court prior to removal to this Court) and Mystic's original Rule 26 disclosures (both to Pharmacia and to Third-Party Defendant Boston Edison) contain no reference to damages other than "response costs."   Failure to plead or disclose this category of damages should, in of itself, preclude Mystic from recovering them at trial, and by extension, from presenting evidence of property damages at trial.  Pharmacia's Memorandum in Support of Its Motion for Summary Judgment at 7-9.

---

[1] Pharmacia has separately moved *in limine* to exclude evidence of these estimated future costs as irrelevant and speculative.

**II.     Evidence Of Property Damage Should Be Excluded Because Mystic Should Not Be Able To Recover "Property Damage" Because Mystic Voluntarily Purchased The Property With Knowledge Of All Contamination And With Knowledge That The Contamination Could Reduce The Value Of The Property Relative To What It Would Be "Clean."**

No court has awarded property damage for environmental contamination in the circumstances present here. M.G.L. c. 21E, § 5, the statute on which Mystic relies for its property damage claim, provides as follows:

> [A]ny person who…caused or is legally responsible for a release…of… [a] hazardous material from a…site[] shall be liable, without regard to fault,…to any person for damage to his real or personal property incurred or suffered as a result of such release…

M.G.L. c. 21E, § 5(a)(5)(iii). Mystic cannot recover for "damages" under this provision because, having known the Property to be contaminated before it purchased the Property, Mystic neither incurred nor suffered property damage as a result of the contamination.

To summarize briefly the discussion of the law set forth at pages 9-16 of Pharmacia's Memorandum in Support of Its Motion for Partial Summary Judgment, common law principles governing entitlement to property damage are applicable to claims under M.G.L. c. 21E, § 5. Guaranty-First Trust Co. v. Textron, Inc., 416 Mass. 332, 333, 622 N.E.2d. 597, 598 (1993) ("[t]he measure of recovery under [§ 5(a)(5)(iii)] is identical to the measure of recovery at common law for damage to real or personal property"). Under this standard, courts have awarded damages arising from historic releases of contamination only to property owners who did not know of the contamination until after their purchase and, therefore, could not have taken the contamination into account in establishing a purchase price. See Taygeta Corp. v. Varian Associates, Inc., 436 Mass. 217, 227, 763 N.E.2d. 1053, 1061 (2002); Lewis v. General Electric Co., 254 F. Supp. 2d 205, 216 (D. Mass. 2003) ("knowledge of the injury was the injury");

Guaranty-First Trust Co. v. Textron, 416 Mass. 332, 333, 622 N.E.2d 597, 598 (1993) (property damage action accrued when plaintiff discovered contamination on property after plaintiff acquired the property without knowledge of the contamination). Applying the same principles applicable here in analogous contexts, courts have denied recovery for property damage to claimants who, like Mystic, were aware of the alleged injury to their property before having purchased it. See Lewis v. General Electric Co., 254 F. Supp. 2d 205, 215 (D. Mass. 2003), citing Larabee v. Potvin Lumber Co., Inc., 390 Mass. 636, 640 459 N.E.2d. 93, 95 (1983) (no direct cause of action for property damage when injury occurred and was discovered prior to plaintiff's purchase of property); Wellesley Hills Realty Trust v. Mobil Oil Co., 747 F. Supp. 93, 101 (D. Mass. 1990) (dismissing owner's claim because "the undisputed facts are that an environmental assessment was conducted prior to the sale an that WHRT therefore knew of the contaminated condition of the property when the sale was consummated.") The Lewis court also cited Koehn v. Ayers, 26 F. Supp. 2d. 953, 957 (S.D. Tex. 1998) (cause of action for injury to property belongs to prior owners, not the current owner, where the injury was known to the prior owners before the sale).[2]

---

[2] Indeed, because many courts interpreting the federal CERCLA statute have required entities that purchase property with knowledge of contamination to bear cleanup costs to avoid windfall profits, see generally Memorandum of Pharmacia Corporation and Monsanto Company in Opposition to Motion for Summary Judgment on Liability at 12-14, it is almost inconceivable that property damage should be awarded on top of that, as Mystic has claimed here. For example, in Western Properties Service Corp. v. Shell Oil Co., 358 F.3d 678 (9th Cir. 2004), the plaintiff landowner had purchased the property at issue with full knowledge that the defendant oil companies had dumped large quantities of petroleum wastes into pits on the property. The court held that liability for cleanup costs had to be equitably apportioned among the plaintiff and the defendants. The court reasoned that it could be presumed, without need for proof, that the purchase price paid by the plaintiff had taken the contamination into account for "[n]o sensible person would pay as much for a property with a known liability as for one without, whether the price expressly discounted for the cleanup or not." 358 F.3d at 691. Therefore, imposing all of the liability to the defendant could produce a windfall double recovery for the plaintiff, and if the defendant had sold the property to a purchaser who had known of the contamination, it "would have paid for the same harm twice." Id.

Mystic's opposition to Pharmacia's motion for summary judgment on the issue of property damages does not dispute, in any meaningful manner, Pharmacia's statement of the law that forecloses those damages here. Mystic cites not a single decision in which property damage has been awarded by reason of historic contamination to a property owner who knew of the contamination at the time it acquired the property. It cites not a single decision arising in any context in which a claimant has been awarded damages for an injury to property known to have existed before acquisition of the property. Mystic's entire discussion of the case law consists of a single paragraph adopted from Pharmacia's statement of applicable legal principles with only minor edits and a single footnote pointing out immaterial differences between this case and some of those brought to the attention of the Court by Pharmacia.

Apparently acknowledging the utter lack of support for its property damage claim in any reported decision, Mystic mistakenly contends that the terms of chapter 21E, section 5 provide a legal basis for its property damage claim. That statute, Mystic points out, says that anyone who causes a release of hazardous materials shall be liable without regard to fault to anyone who incurs or suffers damage to his property as a result of the release. Mystic then contends erroneously that, because none of the statutory exemptions from liability apply, it can recover property damage here.

Mystic's argument completely misses the point of Pharmacia's demonstration why Mystic is foreclosed, as a matter of law, from recovering property damage. Pharmacia's position is not that it would not be liable to someone who suffered or incurred property damage as a result of releases of hazardous materials caused by Pharmacia. Rather, its position is that Mystic cannot recover for property damage because, as numerous courts interpreting what it means to have incurred or suffered damage to property have ruled without exception, in the circumstances

present here, Mystic has not incurred or suffered damage to its property. Any damage to the Property caused by a release of hazardous materials was caused long before Mystic bought the Property. Mystic knew what it was buying when it bought the Property, and it got exactly what it bought.

A rule that would allow Mystic to recover for damage to property would produce absurd and unjust results. The contamination of the Property, other than that caused during the operation of the Property by Modern and its ownership by Mystic, and the damage arising therefrom became known while it was still owned by Pharmacia. Mystic is the fourth owner of the Property following its sale by Pharmacia. Each of the four acquired the Property with knowledge that it was contaminated. If Mystic could recover for damage to property in these circumstances, then one who purchased a car knowing full well that it had previously been damaged in a bad accident caused by a negligent prior owner could recover for damage to property against that prior owner -- as could every subsequent owner. In short, the unprecedented rule proposed by Mystic would inflict duplicative liability and allow multiple windfall recoveries, both concepts which are anathema to the law. For these reasons, the courts have ruled consistently and invariably that, as a matter of law, property owners in Mystic's position have no claim for damage to property because they have not suffered or incurred any such damage.

## **CONCLUSION**

For the foregoing reasons, Pharmacia requests that the Court exclude evidence of property damage.

Respectfully submitted,

/s/ John M. Stevens
John M. Stevens (BBO # 480140)
Adam P. Kahn (BBO # 561554)
Elisabeth M. DeLisle (BBO #658067)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts   02210
tel: (617) 832-1000
fax: (617) 832-7000
jstevens@foleyhoag.com

Dated:    January 3, 2006