**<u>EXHIBIT B (PART 1 OF 2)</u>**

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>and MONSANTO COMPANY,<br>Defendants.<br><br>PHARMACIA CORPORATION and<br>MONSANTO COMPANY,<br>Third-Party Plaintiffs,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>Third-Party Defendant.<br>PHARMACIA CORPORATION<br>Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL<br>Fourth-Party Defendants. | CIVIL ACTION NO.<br>04-10180 NMG |

PLAINTIFF MYSTIC LANDING, LLC AND THIRD-PARTY DEFENDANT
MODERN CONTINENTAL CONSTRUCTION CO., INC.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION IN OPPOSITION TO DEFENDANT
PHARMACIA CORPORATION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT

552481

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

FACTS ...............................................................................................................3

ARGUMENT .......................................................................................................8

I.     THE STANDARD OF REVIEW ON SUMMARY JUDGMENT ..........................8

II.    BECAUSE GENUINE DISPUTES EXIST ABOUT MATERIAL FACTS,
       THE COURT SHOULD DENY PHARMACIA'S PARTIAL SUMMARY
       JUDGMENT MOTION...................................................................................9

       A.     Examples of Proposed Material Facts that are in Dispute..........................9

              1.     Mystic and Modern Intend to Clean Up the Site; Pharmacia's
                     Contention That They Do Not is Disputed .......................................9

              2.     A Genuine Dispute Exists Over the Various Response Cost
                     Estimates........................................................................................11

              3.     A Genuine Dispute Exists About Whether Mystic and Modern
                     Have Provided Evidence of Response Costs Incurred....................13

              4.     A Genuine Dispute Exists Over Pharmacia's Proposed Facts
                     Concerning Certain Privileged Documents, Work Product, and
                     Otherwise Protected Materials Used by Pharmacia in its
                     Memorandum, Statement, and Affidavit of Elisabeth M.
                     DeLisle...........................................................................................15

       B.     Even If There Were No Actual Facts in Dispute, Pharmacia is Not
              Entitled to a Partial Summary Judgment....................................................16

III.   PHARMACIA   IS   NOT   ENTITLED   TO   PARTIAL   SUMMARY
       JUDGMENT; ON THE CONTRARY, PHARMACIA IS LIABLE UNDER
       THE OIL AND HAZARDOUS MATERIAL RELEASE PREVENTION
       ACT, M.G.L. C. 21E ....................................................................................16

       A.     Pharmacia is Liable Under 21E, § 5 .........................................................17

       B.     Pharmacia is Liable Under 21E, § 4A ......................................................19

       C.     § 4A Allows "Reimbursement" of Response Costs Incurred and
              Recovery Of Response Costs A Party "Intends To Undertake".................20

D.    Mystic and Modern's Claim for Property Damages under Chapter 21E, § 5 is Not a "late-adopted theory;" Rather, the Claim Was Presented in the Complaint and Remains an Integral Part of this Litigation........................................................................................21

E.    The Measure of Damages Under 21E § 5 is Identical to the Measure of Property Damages at Common Law; But Pharmacia's Attempt to Support Its "Knowledge" and "Injury" Arguments Is Irrelevant to Statutory Liability Under 21E § 5.............................................................22

CONCLUSION ..........................................................................................26

## TABLE OF AUTHORITIES

**CASES**

Magee v. United States, 121 F.3d 1 (1st Cir.1997)

Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995)

Oliver v. Digital Equip. Corp., 846 F.2d 103,105 (1st Cir. 1988)

Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922 (1st Cir. 1983)

Byrnes v. Massachusetts Port Auth., 1994 WL 879644 (Mass. Super. Ct. 1994)

Guaranty-First Trust Co. v. Textron, Inc., 416 Mass. 332 (1993)

Black v. Coastal Oil New England, Inc., 45 Mass. App. Ct. 461 (1998)

Belkus v. Brockton, 282 Mass. 285 (1933)

Taygeta Corporation v. Varian, 436 Mass. 217 (2002)

Lewis v. Potvin Lumber Company, Inc., 390 Mass. 636 (1983)

Harris v. T.C. Erb Construction, Inc., 1996 WC 1185038 (Mass.Super.Ct. 1996)

Luna Preservation Society v. Metropolitan District Commission et al., 2000 WL 420838 (Mass.Super.Ct. 2000)

Wellesley Hills Realty Trust v. Mobil Oil Corporation, 747 F.Supp. 93 (1990)

Koehn v. Ayers, 26 F.Supp.2d 953 (1998)


**STATUTES AND REGULATIONS**

M.G.L. c. 21E

M.G.L. § 21E, § 2

M.G.L. C. 21E, § 4

M.G.L. C. 21E, § 4A

M.G.L. C. 21E, § 5

M.G.L. c. 21E, § 5(a)

M.G.L. c. 21E, § 5(a)(2)

M.G.L. c. 21E § 5(a)(3)

310 C.M.R. 40.0000

310 C.M.R. 40.0000, Subpart P

42 U.S.C. § 9601(14)

## PRELIMINARY STATEMENT

Plaintiff Mystic Landing, LLC ("Mystic") and Third-Party Defendant Modern Continental Construction Co., Inc. ("Modern") submit this Memorandum of Law in Support of its Motion in Opposition to Defendant Pharmacia Corporation's Motion for Partial Summary Judgment. In addition, Mystic and Modern submit a separate Rule 56.1 Statement of Plaintiff Mystic Landing, LLC in Opposition To Defendant Pharmacia Corporation's Motion For Partial Summary Judgment. The Defendant Pharmacia Corporation ("Pharmacia"), formerly the Monsanto Company ("Monsanto"), is liable under M.G.L. c. 21E ("the Act") because Pharmacia's chemical manufacturing, handling, storage, and waste-disposal activities caused contamination of Mystic's property during Pharmacia's thirty-seven years of owning and operating the site at issue as a chemical manufacturing and storage facility (the "Site" or "Property").

This Memorandum explains why Pharmacia's Motion for Partial Summary Judgment ("Memorandum") fails to undermine the legal validity of Mystic and Modern's claims under Massachusetts General Laws, Chapter 21E, for a Declaratory Judgment and for damages based on Pharmacia's wide-ranging contamination of the Site. Simply put, Pharmacia now seeks to walk away from their cleanup responsibilities and the resultant damages they caused to the property after years of polluting and contaminating the Site. Under the statutory and regulatory framework of Chapter 21E, enforcement actions can be initiated by either the Commonwealth or the current landowners to recover response costs required to remediate the contaminated properties. The policies and purposes behind the far-reaching Oil and Hazardous Material Release Prevention Act, Chapter 21E are, inter alia, to encourage redevelopment of contaminated properties and to empower

current landowners to act as private attorneys general to enforce the provisions of 21E, including compelling previous owners such as Pharmacia who have contaminated the properties to fund intended cleanup measures. The Act provides for strict liability that is joint and several. Even current owners who did nothing to pollute their property are liable. Although Pharmacia disputes the public policy embodied in 21E, clearly misunderstands its provisions, and largely ignores the controlling law in its Memorandum, Pharmacia is not above this law and is clearly liable under the Act.

Pharmacia has characterized Plaintiffs' claims as "little more than a barely disguised attempt to seize a windfall by a landowner who knowingly purchased contaminated property." Memorandum at 2. Pharmacia suggests that the claims are "contrary to law and logic" and "entirely unprecedented." *Id*. It even posits that no parties in the history of our jurisprudence have had the "effrontery" to make such claims. Given that the claims in question constitute core 21E litigation, the only "effrontery" in this case is Pharmacia's disingenuous arguments that it is not liable under Chapter 21E. Having polluted and contaminated a 35 acre site for decades with dangerous, toxic chemicals that have left a toxic brew of contaminants in the soil, groundwater, and the adjacent river (including sulphuric acid, lead, arsenic and phthaltes), it ill lies in Pharmacia's mouth to argue that the only party that has suffered damages in this case is Pharmacia. Memorandum at 16. Pharmacia is the major polluter of this property; a mere name change from its former Monsanto moniker is insufficient to insulate it from liability. As such, it is the quintessentially liable defendant in a 21E case such as this one, which seeks contribution to fund the cleanup of the Site and to recover the other damages attributable to its pollution of this area.

552481

2

**Summary of the Reasons why Pharmacia's Summary Judgment Motion Should be Denied:**

1.    Pharmacia's Memorandum shows that there are materials facts in dispute; but even if there were no such disputes, the issues Pharmacia presents do not support the granting of a partial summary judgment in its favor.

2.    Mystic and Modern have every intention of cleaning up the Site using funds from a judgment against Pharmacia to do so.

3.    Mystic and Modern have provided evidence of response costs incurred in assessing the contamination to be remediated at the Site.

4.    Pharmacia fundamentally misunderstands the difference between § 4 and § 4A of Chapter 21E; Pharmacia is Clearly Liable Under § 4A for the response costs that Mystic and Modern have undertaken and *intend to undertake*.

5.    A claim for property damages under Chapter 21E, § 5 is set forth in Plaintiffs' Complaint and it has remained an integral part of this litigation.

6.    Under the strict liability provisions of 21E, a previous owner such as Pharmacia, that has contaminated a site like this one is liable to a current owner, despite the current owner's knowledge of the contamination when it acquired the site; Pharmacia's common-law arguments regarding knowledge and injury are irrelevant to the strict statutory imposed liability under 21E.

As explained below, and in the Rule 56.1 Statement of Plaintiff Mystic Landing, LLC in Opposition To Defendant Pharmacia Corporation's Motion For Partial Summary Judgment, there are genuine disputes over the materials facts proposed by Pharmacia in 1) Pharmacia Corporation's Statement of Material Facts as To Which There Is No Dispute, 2) Pharmacia Corporation's Motion for Partial Summary Judgment, and 3) the Affidavit of Elisabeth M. DeLisle.

<u>FACTS</u>

Mystic and Modern rely on the facts presented in its previously filed Memorandum of Law in Support of Their Motion for Summary Judgment on Liability and Exhibits thereto (see Exhibit A). In particular, Mystic and Modern rely, and refer this

3

Court to, the Expert Report and Affidavit of Richard J. Hughto, Ph.D., P.E. LSP (see Exhibits B and C).

Although we rely on the documents referenced above and on the facts therein referenced, which we incorporate herein by reference, the following salient facts are provided for the benefit of the Court:

During the decades of Pharmacia's ownership and operation of the Site, its activities there included the handling and storage of raw materials for chemical manufacturing; the manufacture and storage of chemical products and by-products; and the production, handling, and disposal of wastes and by-products. MONS2 0000586-0000595 (see Exhibit D); Deposition of Gerald Rinaldi ("Rinaldi Deposition"), September 8, 2005, (see Exhibit E).

The existing contamination at the Mystic Site is indisputable, as it is both admitted by Pharmacia and well-documented. Hughto Report, at 5, and documents cited therein. The contamination consists of the residuals from Pharmacia's chemical manufacturing processes, storage, release, spills and related waste-disposal activities that took place on the Site during the decades that Pharmacia owned and operated the Site. *Id;* Hughto Affidavit at Exhibit F. The Hughto Affidavit states that he personally reviewed and relied on all the documents cited and attached to the Memorandum of Law in Support of Mystic and Modern's Motion for Summary Judgment on Liability, and further states that all of the documents attached to that Memorandum of Law are of a type reasonably relied upon by experts in his field in forming expert opinions. *See* Hughto Affidavit at 4. Contamination of the soil, groundwater, surface water, and surface water sediments has occurred because of the storage, use, releases, spills, and chemical

4

disposals that occurred during Pharmacia's various chemical-related operations at the Site. *Id.*

      Pharmacia's own documents show that it knew that the contamination occurred and that it remained on the Site due to its operations. For example:

      1.    A Monsanto 10/22/73 Monsanto Environmental Assessment of the Site states that sodium bisulfate effluents "run out onto the ground" and end up in the Mystic river. 00004952 (see Exhibit G). In addition, it states that there is "waste" leaking from sewer pipes from the bisulfate plant onto the Site reaching groundwater and the river. Also, leaks in the heat exchangers in the bisulfate plant caused a stream of acid that is "in violation of effluent regulations." Finally, the Assessment documents that there are "spills from tanks in the $SO_2$ or the bisulfite plant reaching the river."

      2.    A 1/8/80 Dames & Moore Hydrogeologic Survey installed a monitoring well on the Site and the results were the highest concentrations of contamination found in the Survey. 0000325 (see Exhibit H). Contaminants discovered in the groundwater included lead, arsenic, phthalates (Bis2-ethyl-phthalate, Dibutyl phthalate and Butyl Benzl Phthalate), and plasticizer compounds (hazardous materials known to be handled on the adjacent Monsanto site).

      3.    A Monsanto 11/19/81 Memorandum and attached "Site History and Environmental Status Summary – Sale of Everett Plant East Side Property" states: "The land surface is contaminated with some of the raw materials which were stored on site. Soil samples taken from the upper 4 feet of the site indicate the presence of sulfur, bauxite, iron ore, and other inorganic metal salts." 00006322 (see Exhibit I).

4.    A 6/3/80 Monsanto Memorandum, "Everett Site, East Side Assessment" estimated that "between 30 and 120 tons of sulfur is spread over an area of up to 60,000 sq. ft." on the Site. 0009975 (see Exhibit J). The memorandum explains the cause referring to "large areas on the east side [Mystic Site] used for raw material storage piles of several thousand tons each of sulfur..."

5.    A 1/22/82 letter captioned "Proposed Property Sale to Boston Edison Company" from Monsanto to Boston Edison regarding the potential purchase made certain disclosures including: "Waste materials disposed of on the tract include alum mud (aluminum sulfate)." 00006274 (see Exhibit K).

6.    During his 9/8/05 deposition, Pharmacia's witness, Gerald Rinaldi, **repeatedly** acknowledged contamination on the site caused by Monsanto's chemical operations. *See e.g.* Rinaldi Deposition, at 37, 39, 42, 69, 71, 118, 124, 132, 137-138, 141, 154 (see Exhibit E).

7.    A 7/16/82 Perkins Jordan Site Contamination and Liability Audit found contaminants that were signatures of the chemicals used and handled on the Site: sulfate, lead, arsenic, aluminum, and phthalates (Bis2-ethyl-phthalate and Dibutyl phthalate). 0005923 (see Exhibit L).

8.    For a 1/15/97 Phase I Environmental Assessment, Consulting Engineers & Scientists collected soil and groundwater samples and detected arsenic and lead in soil, and low pH, arsenic and lead in groundwater. MONS1 0001554 (see Exhibit M). Sulfuric acid manufacturing waste product caused the arsenic contamination. Iron ore for sulfuric acid manufacturing caused the lead contamination. *Id.* Sulfuric acid manufacturing and leaks caused the low pH in the groundwater.    Environmental studies

552481

were conducted on the Site to define the degree and extent of contamination and the need for remediation. *See* Hughto Report, at 7, and documents cited therein.  As detailed in the documents referenced above, Pharmacia itself possessed the results of numerous environmental studies of the Site, which prove the existence of contamination on the Site caused by the storage, disposal, and other handling of chemicals during its ownership and operation of the Site.[1]

Other assessments confirmed these findings.  During their assessments of the Property, Rizzo Associates conducted soil and groundwater sampling at the Site, the results of which are presented in Environmental Studies dated 6/19/01 and 8/10/01 (see Exhibits N and O respectively, text only); Hughto Report, at 9.  Their findings include further delineation of the low pH found in groundwater, and detailed the areas contaminated with arsenic, lead, petroleum compounds and polyaromatic hydrocarbons ("PAHs") in the soil.  *Id.*  The area of low pH in the groundwater also contains heavy metal contamination in the groundwater.  *Id.*  All contamination was directly attributable to Pharmacia's ownership and operation of the Site.

---

[1] The environmental studies include:
- Environmental Assessment Sale of 34 Acres-Everett Plant, 10/22/73 (0004951)
- Dames & Moore, Hydrogeologic Survey, 1/8/80 (000325)
- Monsanto Memo, Everett Plant, East Side Assessment, 6/3/80 (0009975)
- Monsanto Memo, Sale of Monsanto Land, 7/21/80 (0010702)
- Dames & Moore, Report, Hydrogeological Services, 12/23/80 (0000314)
- Monsanto, Site History and Environmental Status Summary, Sale of Everett Plant, East Side Property, 11/19/81 (0006322)
- Monsanto, Proposed Property Sale to Boston Edison Company, 1/22/82 (0006273)
- Perkins Jordan, Site Contamination and Liability Audit on Monsanto Property, 7/16/82 (0005923)
- Boston Edison, 10/17/85
- Consulting Engineers & Scientists, Phase I, Initial Site Investigation Report, 1/15/97 (MONS1 0001554)
- Rizzo Associates, Environmental Studies, 6/19/01 and 8/10/01
- Woodward and Curran, Environmental Study, 10/1/04

Hughto Report, at 7-11, and documents cited therein.

7

**ARGUMENT**

Chapter 21E was enacted to hold polluters like Pharmacia liable, and to force

them to pay for cleanup of the properties and for other related damages. Yet, Pharmacia

maintains that "these claims ha[ve] no factual or legal basis..." Memorandum at 2. In an

attempt to evade liability under 21E, it relies on supposed "facts" that are genuinely

disputed; it argues novel and irrelevant theories of common law to avoid liability under a

strict liability statute; and it protests against a claim not made in the Complaint.

Significantly, Pharmacia fails to cite a single 21E case in support of its position.

## I.  THE STANDARD OF REVIEW ON SUMMARY JUDGMENT

In accord with Fed.R.Civ.P. 56(c), summary judgment must be granted if "there is

no genuine issue as to any material fact" and "the moving party is entitled to a judgment

as a matter of law." *See* Fed.R.Civ.P. 56(c); *Magee v. United States,* 121 F.3d 1, 3 (1st

Cir.1997). Summary judgment is appropriately rendered "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see Coll v. PB Diagnostic

Sys., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995). In ruling on a motion for summary

judgment, the court must view the record in the light most favorable to the party opposing

the motion and indulge all inferences favorable to that party. Oliver v. Digital Equip.

Corp., 846 F.2d 103,105 (1st Cir. 1988); Stepanischen v. Merchants Despatch Transp.

Corp., 722 F.2d 922, 928 (1st Cir. 1983) (citing Hahn v. Sargent, 523 F.2d 461, 464 (1st

Cir. 1975), cert. denied, 425 U.S. 904 (1976)).

II.    **BECAUSE GENUINE DISPUTES EXIST ABOUT MATERIAL FACTS, THE COURT SHOULD DENY PHARMACIA'S PARTIAL SUMMARY JUDGMENT MOTION**

Pharmacia's Statement of Material Facts as To Which There Is No Dispute ("Statement"), and the voluminous exhibits referenced therein, do not support the arguments in its Memorandum. Virtually every deed and purchase agreement transferring the Property is included. Although the chain of title may be correctly stated, the more relevant "facts" it proposes show the existence of genuine issues of material fact. Therefore, their Motion for Partial Summary Judgment should be denied.

In any event, the "facts" Pharmacia proposes for which there is no dispute, taken as a whole, do not entitle Pharmacia to a partial summary judgment.

A.    **Examples of Proposed Material Facts That are in Dispute**

For Mystic and Modern's response to each material fact alleged by Pharmacia please see Rule 56.1 Statement of Plaintiff Mystic Landing, LLC in Opposition to Defendant Pharmacia Corporation's Motion for Partial Summary Judgment. Certain material facts for which there is a genuine dispute are covered more extensively below.

1.    **Mystic and Modern Intend to Clean Up the Site; Pharmacia's Contention That They Do Not is Disputed**

Pharmacia's Statement proposes the following as "material facts not in dispute." Statement at 2.

> Mystic has no current intention to 'spend any money cleaning up the property' in the future, unless such expenditures are required to maintain or enhance the value of the property. DeLisle Aff. Ex. 32, Grela Deposition, at 111-112.

Statement at paragraph 55. Pharmacia also avers that Mystic has no intention of cleaning up the Property throughout its Memorandum. *See* e.g., Memorandum at 2, 6, 15.

9

Mystic and Modern have a genuine dispute over this material fact. First, Mystic and Modern do intend to remediate the Site. See Affidavit of John Pastore ("Pastore Affidavit") at Exhibit P. Indeed, they intend to conduct the appropriate remediation of the Site with funds obtained from the polluter, Pharmacia. Second, the testimony cited in Pharmacia's Statement at paragraph 55 should be clarified. Pharmacia quotes its own attorney in the statement. The deponent, Mr. Grela, who was no longer employed by Mystic or Modern at the time of his deposition, testified in pertinent part as follows:

> Q:   Are you planning on spending any money on cleaning up the property?
> A:   Not currently. To the extent certain remediation needs to be done on the sale to enhance the value – to maintain the value of the property, then maybe we will, but I'm not speaking for Mystic as of today.
> …I am not currently employed, as of today, by Modern Continental…
> …or Mystic…
> …I'm here to provide historical perspective and testimony.[2]

Affidavit of Elisabeth M. DeLisle at Exhibit 32 (Deposition of Peter M. Grela, 3/14/05, at 112). First, he admitted that he was not testifying regarding the "present" intentions of the two companies he did not work for, only to provide "his historical perspective and testimony." Second, "currently" Plaintiffs do intend to clean up the Property with any funds received from Pharmacia to do so. Third, remediation does need to be performed to enhance and maintain the value of the property, a possibility to which Mr. Grela alluded in his testimony.

The obvious public policy behind Chapter 21E is to encourage parties, such as Mystic, to buy contaminated sites and then to remediate them. Chapter 21E allows such a party to recover the estimated response costs from the prior owners who are responsible

---

[2] Mr. Grela was addressing the situation, as he understood it, that existed at the time of his deposition. He was not addressing what the intentions of Mystic and Modern were if they were able to recover funds from Pharmacia to clean up the property. In any event, he expressly acknowledged that Mystic and Modern might be spending money on cleaning up the property "[t]o the extent certain remediation needs to be done on the sale to enhance the value" – exactly the situation that Plaintiffs now face.

552481

10