UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>and MONSANTO COMPANY,<br>Defendants.<br><br>PHARMACIA CORPORATION and<br>MONSANTO COMPANY,<br>Third-Party Plaintiffs,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>Third-Party Defendant.<br>PHARMACIA CORPORATION<br>Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL<br>    Fourth-Party Defendants. | **CIVIL ACTION NO.<br>04-10180 NMG** |

**PLAINTIFF MYSTIC LANDING, LLC AND THIRD-PARTY DEFENDANT
MODERN CONTINENTAL CONSTRUCTION CO., INC.'S MEMORANDUM IN
OPPOSITION TO THE MOTION IN LIMINE OF DEFENDANT PHARMACIA
CORPORATION TO FORECLOSE PRESENTATION OF EVIDENCE OF
PROPERTY DAMAGE**

565984

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

FACTS .........................................................................................................................2

ARGUMENT ...............................................................................................................6

I.  
II.  Pharmacia is Liable Under the Oil and Hazardous Material  
    Release Prevent Act, M.G.L. C. 21E ...........................................................7

II.  Mystic and Modern's Claim for Property Damages under  
    Chapter 21 E, § 5 is Not a Late-Adopted Theory; It Has Always  
    Been an Integral Part of this Litigation.......................................................9

III. Pharmacia's Attempt to Supports its Knowledge Theory Using  
    Irrelevant Common Law Fails Judicial Scrutiny ..................................11

CONCLUSION ........................................................................................................14

## TABLE OF AUTHORITIES

### CASES

*Magee v. United States,* 121 F.3d 1 (1st Cir.1997)

*Coll v. PB Diagnostic Sys., Inc.,* 50 F.3d 1115, 1121 (1st Cir. 1995)

*Oliver v. Digital Equip. Corp.,* 846 F.2d 103,105 (1st Cir. 1988)

*Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922 (1st Cir. 1983)

*Byrnes v. Massachusetts Port Auth.,* 1994 WL 879644 (Mass. Super. Ct. 1994)

*Guaranty-First Trust Co. v. Textron, Inc.,* 416 Mass. 332 (1993)

*Black v. Coastal Oil New England, Inc.,* 45 Mass. App. Ct. 461 (1998)

*Belkus v. Brockton,* 282 Mass. 285 (1933)

*Taygeta Corporation v. Varian,* 436 Mass. 217 (2002)

*Lewis v. Potvin Lumber Company, Inc.,* 390 Mass. 636 (1983)

*Harris v. T.C. Erb Construction, Inc.,* 1996 WC 1185038 (Mass.Super.Ct. 1996)

*Luna Preservation Society v. Metropolitan District Commission et al.,* 2000 WL 420838 (Mass.Super.Ct. 2000)

*Wellesley Hills Realty Trust v. Mobil Oil Corporation;* 747 F.Supp. 93 (1990)

*Koehn v. Ayers,* 26 F.Supp.2d 953 (1998)

### STATUTES AND REGULATIONS

M.G.L. c. 21E

M.G.L. § 21E, § 2

M.G.L. C. 21E, § 4

M.G.L. C. 21E, § 4A

M.G.L. C. 21E, § 5

M.G.L. c. 21E, § 5(a)

M.G.L. c. 21E, § 5(a)(2)

M.G.L. c. 21E § 5(a)(3)

310 C.M.R. 40.0000

310 C.M.R. 40.0000, Subpart P

42 U.S.C. § 9601(14)

## PRELIMINARY STATEMENT

Plaintiff Mystic Landing, LLC ("Mystic") and Third-Party Defendant Modern Continental Construction Co., Inc. ("Modern") submit this Memorandum of Law in Opposition to the Motion In Limine Of Defendant Pharmacia Corporation To Foreclose Presentation of Evidence of Property Damage "Motion in Limine"). The Defendant Pharmacia Corporation ("Pharmacia"), formerly the Monsanto Company ("Monsanto"), is liable under M.G.L. c. 21E ("the Act") because Pharmacia's chemical manufacturing, handling, storage, and waste-disposal activities caused contamination of Mystic's property during Pharmacia's thirty-seven years of owning and operating the site at issue as a chemical manufacturing and storage facility (the "Site" or "Property").

Mystic and Modern's claims under Massachusetts General Laws, Chapter 21E, for a Declaratory Judgment and for property damages based on Pharmacia's long-term contamination of the Site. Pharmacia now seeks to walk away from their cleanup and damage responsibilities and the toxic brew of chemicals it left at the Property caused by years of polluting and contaminating the Site. Under the statutory and regulatory framework of Chapter 21E, enforcement actions can be initiated by current landowners to recover response costs required to remediate the contaminated properties. The policies and purposes behind the far-reaching Oil and Hazardous Material Release Prevention Act, Chapter 21E. A primary purpose is to encourage redevelopment of *known* contaminated properties and to empower current landowners to enforce the provisions of 21E, and make polluters pay. Pharmacia, the polluter in the case, should pay for 1) the cost to clean up its contamination of the Property, and 2) property damages. The Act provides for strict liability that is joint and several. Even current owners who did nothing

to pollute their property are liable. The Act is draconian. This is unfortunate for Pharmacia who reaches for straws in its Motion In Limine in a disingenuous attempt to escape 21E liability. Although Pharmacia ignores the public policy embodied in 21E, misunderstands its provisions, and ignores the statute – reaching instead for irrelevant common law – we submit that Pharmacia should be held liable and ordered to pay for cleanup and the resultant property damages.

This Memorandum explains why Pharmacia's Motion In Limine fails to undermine the legal validity of arguments already made in the pending Summary Judgment Motions. Pharmacia's Motion In Limine is simply a restatement of the same arguments it made in its Summary Judgment Motions and are a good example of filings that waste the Court's time and undermine judicial economy.

**The Primary Reasons why Pharmacia's Motion In Limine Should be Denied:**

1. A claim for property damages under Chapter 21E, § 5 is set forth in Plaintiffs' Complaint and it has remained an integral part of this litigation

2. Under the strict liability provisions of 21E, a previous owner such as Pharmacia, that has contaminated a site like this one is liable to a current owner, despite the current owner's knowledge of the contamination when it acquired the site; Pharmacia's common-law arguments regarding knowledge and injury are irrelevant to the strict statutory imposed liability under 21E.

### FACTS

Mystic and Modern rely on the facts presented in its previously filed Memorandum of Law in Support of Their Motion for Summary Judgment on Liability and Exhibits thereto (see Exhibit A, text only), and Mystic and Modern's Memorandum of Law in Support of its Motion in Opposition to Pharmacia's Motion For Partial Summary Judgment (see Exhibit B, text only)(also attached to Pharmacia's Motion In Limine). In particular, Mystic and Modern rely, and refer this Court to, the Expert Report

(text only) and Affidavits of Richard J. Hughto, Ph.D., P.E. LSP (see Exhibits C, D and E).

Although we rely on the documents referenced above and on the facts therein referenced, which we incorporate herein by reference, the following salient facts are provided for the benefit of the Court:

During the decades of Pharmacia's ownership and operation of the Site, its activities there included the handling and storage of raw materials for chemical manufacturing; the manufacture and storage of chemical products and by-products; and the production, handling, and disposal of wastes and by-products. MONS2 0000586-0000595; Deposition of Gerald Rinaldi ("Rinaldi Deposition"), September 8, 2005.

The existing contamination at the Mystic Site is indisputable, as it is both admitted by Pharmacia and well-documented. Hughto Report, at 5, and documents cited therein. The contamination consists of the residuals from Pharmacia's chemical manufacturing processes, storage, release, spills and related waste-disposal activities that took place on the Site during the decades that Pharmacia owned and operated the Site. *Id;* Hughto Affidavits at Exhibits D and E. The Hughto Affidavit states that he personally reviewed and relied on all the documents in this case and further states that all of the documents attached to Mystic and that Memorandum of Law are of a type reasonably relied upon by experts in his field in forming expert opinions. *See* Hughto Affidavit at 4. Contamination of the soil, groundwater, surface water, and surface water sediments has occurred because of the storage, use, releases, spills, and chemical disposals that occurred during Pharmacia's various chemical-related operations at the Site. *Id.*

Pharmacia's own documents show that it knew that the contamination occurred and that it remained on the Site due to its operations. For example:

1.  A Monsanto 10/22/73 Monsanto Environmental Assessment of the Site states that sodium bisulfate effluents "run out onto the ground" and end up in the Mystic river. 00004952. In addition, it states that there is "waste" leaking from sewer pipes from the bisulfate plant onto the Site reaching groundwater and the river. Also, leaks in the heat exchangers in the bisulfate plant caused a stream of acid that is "in violation of effluent regulations." Finally, the Assessment documents that there are "spills from tanks in the $SO_2$ or the bisulfite plant reaching the river."

2.  A 1/8/80 Dames & Moore Hydrogeologic Survey installed a monitoring well on the Site and the results were the highest concentrations of contamination found in the Survey. 0000325. Contaminants discovered in the groundwater included lead, arsenic, phthalates (Bis2-ethyl-phthalate, Dibutyl phthalate and Butyl Benzl Phthalate), and plasticizer compounds (hazardous materials known to be handled on the adjacent Monsanto site).

3.  A Monsanto 11/19/81 Memorandum and attached "Site History and Environmental Status Summary – Sale of Everett Plant East Side Property" states: "The land surface is contaminated with some of the raw materials which were stored on site. Soil samples taken from the upper 4 feet of the site indicate the presence of sulfur, bauxite, iron ore, and other inorganic metal salts." 00006322.

4.  A 6/3/80 Monsanto Memorandum, "Everett Site, East Side Assessment" estimated that "between 30 and 120 tons of sulfur is spread over an area of up to 60,000 sq. ft." on the Site. 0009975. The memorandum explains the cause referring to "large

areas on the east side [Mystic Site] used for raw material storage piles of several thousand tons each of sulfur..."

5. A 1/22/82 letter captioned "Proposed Property Sale to Boston Edison Company" from Monsanto to Boston Edison regarding the potential purchase made certain disclosures including: "Waste materials disposed of on the tract include alum mud (aluminum sulfate)." 00006274.

6. During his 9/8/05 deposition, Pharmacia's witness, Gerald Rinaldi, repeatedly acknowledged contamination on the site caused by Monsanto's chemical operations. *See e.g.* Rinaldi Deposition, at 37, 39, 42, 69, 71, 118, 124, 132, 137-138, 141, 154.

7. A 7/16/82 Perkins Jordan Site Contamination and Liability Audit found contaminants that were signatures of the chemicals used and handled on the Site: sulfate, lead, arsenic, aluminum, and phthalates (Bis2-ethyl-phthalate and Dibutyl phthalate). 0005923.

8. For a 1/15/97 Phase I Environmental Assessment, Consulting Engineers & Scientists collected soil and groundwater samples and detected arsenic and lead in soil, and low pH, arsenic and lead in groundwater. MONS1 0001554 (see Exhibit F). Sulfuric acid manufacturing waste product caused the arsenic contamination. Iron ore for sulfuric acid manufacturing caused the lead contamination. *Id.* Sulfuric acid manufacturing and leaks caused the low pH in the groundwater. Environmental studies were conducted on the Site to define the degree and extent of contamination and the need for remediation. *See* Hughto Report, at 7, and documents cited therein. As detailed in the documents referenced above, Pharmacia itself possessed the results of numerous environmental

5

565984

studies of the Site, which prove the existence of contamination on the Site caused by the storage, disposal, and other handling of chemicals during its ownership and operation of the Site.[1]

Other assessments confirmed these findings. During their assessments of the Property, Rizzo Associates conducted soil and groundwater sampling at the Site, the results of which are presented in Environmental Studies dated 6/19/01 and 8/10/01; Hughto Report, at 9. Their findings include further delineation of the low pH found in groundwater, and detailed the areas contaminated with arsenic, lead, petroleum compounds and polyaromatic hydrocarbons ("PAHs") in the soil. *Id.* The area of low pH in the groundwater also contains heavy metal contamination in the groundwater. *Id.* All contamination was directly attributable to Pharmacia's ownership and operation of the Site.

## ARGUMENT

Chapter 21E was enacted to hold polluters like Pharmacia liable, and to force them to pay for cleanup of the properties and for other related damages. Flying in

---

[1] The environmental studies include:
- Environmental Assessment Sale of 34 Acres-Everett Plant, 10/22/73 (0004951)
- Dames & Moore, Hydrogeologic Survey, 1/8/80 (000325)
- Monsanto Memo, Everett Plant, East Side Assessment, 6/3/80 (0009975)
- Monsanto Memo, Sale of Monsanto Land, 7/21/80 (0010702)
- Dames & Moore, Report, Hydrogeological Services, 12/23/80 (0000314)
- Monsanto, Site History and Environmental Status Summary, Sale of Everett Plant, East Side Property, 11/19/81 (0006322)
- Monsanto, Proposed Property Sale to Boston Edison Company, 1/22/82 (0006273)
- Perkins Jordan, Site Contamination and Liability Audit on Monsanto Property, 7/16/82 (0005923)
- Boston Edison, 10/17/85
- Consulting Engineers & Scientists, Phase I, Initial Site Investigation Report, 1/15/97 (MONS1 0001554)
- Rizzo Associates, Environmental Studies, 6/19/01 and 8/10/01
- Woodward and Curran, Environmental Study, 10/1/04

Hughto Report, at 7-11, and documents cited therein.

the face of that public police and purpose, Pharmacia attempts to evade the strict liability of 21E and rely on irrelevant theories of common law outside the framework of 21E.

### I. PHARMACIA IS LIABLE UNDER THE OIL AND HAZARDOUS MATERIAL RELEASE PREVENTION ACT, M.G.L. C. 21E

Pharmacia's legal arguments are based on a common-law analysis that is simply inapplicable to these statutory 21E claims. Indeed, Pharmacia does not rely upon a single 21E case in its arguments. As explained below, its common-law arguments are legally irrelevant. First, however, it is important to establish Pharmacia's clear liability under 21E, §§ 4A and 5, and then to understand why Pharmacia's arguments fail to change their status as a liable party under 21E.

Pharmacia is liable for its contamination of the Mystic Site during its ownership and operations thereon. The operative statute is M.G.L. c. 21E, § 5(a).

Chapter 21E, § 5(a) states, in pertinent part:

> § 5. Persons liable (a)...(2) *any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material*...and (5) any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site, *shall be liable, without regard to fault*... (iii) to any person for damage to his real or personal property incurred or suffered as a result of such release or threat of release...

(*emphasis added*). Thus, the elements to prove the liability under § 5 are:

1. Pharmacia is a "person"
2. who owned or operated the Mystic Site
3. at the time of storage or disposal of hazardous materials on the Site
4. a release or threat of release of hazardous material occurred, and
5. the property was damaged as a result of the release or threatened release.

Pharmacia is a legal person. The definition of "Person" in M.G.L. c. 21E, § 2 is "any...private corporation..."

For thirty-seven years Pharmacia operated the site as a chemical manufacturing operation (from 1929 until 1975). MONS2 0000586-0000595; 0006273. Monsanto purchased the Site in 1929 by purchasing Merrimac Chemical Company. MONS2 0000589. Monsanto sold the Site to Boston Edison Company on June 20, 1983. 0005427.

Pharmacia was the owner or operator when disposal of hazardous materials were stored on and disposed of at the Site. During the forty-six years of Pharmacia's ownership, until 1975, Pharmacia's operations at the site included handling and storage of raw materials for chemical manufacturing; manufacture and storage of chemical products and by-products; production, handling, storage and disposal of wastes and byproducts. MONS2 0000586-0000595; 00006273; Rinaldi Deposition Exhibits 29(a)-29(f). The chemical products, raw materials, byproducts and waste are clearly included within the definition of "hazardous material." M.G.L. § 21E, § 2; 42 U.S.C. § 9601(14); 310 C.M.R. 40.0000, Subpart P.

Releases or threats of release of hazardous materials occurred on the Mystic Site during Pharmacia's ownership and operations there. Under c. 21E, § 5(a)(2), a person is liable for a release of hazardous material from a site if that person was the owner or operator of such site at the time of the storage or disposal of the hazardous material at or upon the site. A person who was the owner or operator of a site at the time of storage or disposal of hazardous material may be held liable for a release, even if the release occurred *after* that person ceased to be an owner or operator of the site. *Byrnes v.*

565984

8

*Massachusetts Port Auth.*, 1994 WL 879644 (Mass. Super. Ct. 1994). The Court in Byrnes stated: "The statute [§ 5(a)(2)] easily could have been written to provide that a prior owner is liable if it owned the site *during* a release or threat of release." *Id.* at *5 (*emphasis added*). Temporally, the release is not required to occur during the former owner's operation of the site. The undisputed evidence shows that the releases occurred during, and were caused by, Pharmacia's operations at the Site. The implications are twofold. One, Mystic and Modern have proof far beyond the quantum of proof required by 21E and the courts to establish Pharmacia's liability under § 5(a)(2). Second, liability is established under § 5(a)(5) as well, which requires causation. M.G.L. § 5(a)(5) states: "Persons liable...(5) any person who otherwise *caused* or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site." (*emphasis added*). See the short summary of examples of indisputable releases of hazardous materials caused by Pharmacia in the Facts section above.

### III. MYSTIC AND MODERN'S CLAIM FOR PROPERTY DAMAGES UNDER CHAPTER 21E, § 5 IS NOT A LATE-ADOPTED THEORY; IT HAS ALWAYS BEEN AN INTEGRAL PART OF THIS LITIGATION

Count I for Declaratory Judgment in the Complaint at paragraph 30 clearly states the following:

> As the former owner/operator of the Site at the time of the release of oil and hazardous material to the soil, groundwater, and sediments, *the defendants are responsible for all of the response costs <u>and other damages related to the contamination of the Site pursuant to Mass. General Laws c. 21E, § 5</u>*. (Emphasis added.)

Count II for Contribution in the Complaint at Paragraph 33 pleads the same allegation of liability and damages under § 5.

Count VI for Attorneys' Fees and Costs in the Complaint at paragraph 51 contains the same claim of liability and damages under § 5.

The Complaint was served on Pharmacia in December 2003. The claims are not "late-adopted" or "late-asserted." Although the words "property damage" or "permanent damages" do not appear in haec verba in the Complaint, they are embraced within the reference to "other damages" under c. 21E, § 5 and are more than "hinted at in the complaint." Pharmacia speculated: "At the very close of discovery, after apparently determining that it could not obtain a monetary judgment for past or future costs because neither had been incurred, Mystic devised a new claim in an effort to recover a monetary judgment – a claim of 'property damage.'" Pharmacia's speculation is unfounded. It is hard to understand how Pharmacia could assert that the § 5 claim for property damages pled in the Complaint almost two years ago, could be a "new claim." Yet Pharmacia asks this Court to "dismiss this last minute attempt to find a theory on which damages could be assessed." But there is nothing "last minute" about a claim pled almost two years ago, that was fair game for discovery by Pharmacia and was subject to discussions on damages throughout this case, and for which Pharmacia is clearly liable.[2]

An issue in dispute, necessitating a trial on damages, is which measure of § 5 property damages applies in this case, temporary or permanent, and what is the amount of those damages.

---

[2] Pharmacia also refers to the state court civil action cover sheet in an attempt to make a compelling argument; however, the cover sheet sufficiently states Plaintiff seeks relief pursuant to § 4A which necessarily implicates liability under § 5. One must be a liable party under § 5 to be subject to § 4A damages. Note also that we are in federal court now, not state court.

IV.  **PHARMACIA'S ATTEMPT TO SUPPORT ITS KNOWLEDGE THEORY USING IRRELEVANT COMMON LAW FAILS JUDICIAL SCRUTINY**

"[T]he measure of recovery under 21E, § 5 is identical to the measure of recovery at common law for damage to real and personal property." *Guaranty First Trust Company v. Textron, Inc.*, 416 Mass. 332, 333 (1993); *Black v. Coastal Oil New England, Inc.*, 45 Mass. App. Ct. 461 (1998). At common law, the appropriate measure depends on whether the property damages are permanent or temporary. *Id.* When the injury is permanent, the appropriate measure of damages is diminution of value determined by "the difference in the fair market value of the injured premises before and after the injury." *Black*, 45 Mass. App. Ct. at 466; *Belkus v. Brockton*, 282 Mass. 285, 288 (1933). The injury is temporary if it is "reasonably curable by repairs." *Id.* The injury is reasonably curable by repairs if the expense of the repairs is less than the diminished market value. *Id.*; *see Textron*, 416 Mass. at 337. When the injury is temporary "the measure of recovery is the reasonable expense of repairing the injury plus the intervening loss of rental value for the period reasonably needed to repair the injury." *Textron*, 416 Mass. at 337; *Belkus*, 282 Mass. at 288. These rules of law present issues in our case necessitating a trial on damages.[3]

Pharmacia digresses into common law arguments concerning "injury," "duty to mitigate damages," and even "assumption of risk."[4] The rule of law under 21E is presented above. Only the measure of *damages* under 21E is identical to the measure in common law. There is no wholesale adoption of all common law principles, such as duty

---

[3] Property damages, including permanent damages, have occurred as a result of the contamination. For example, permanent stigma and market resistance damages are discussed in the Expert Report of Donald P. Bouchard, MAI and Steven R. Foster, MAI dated September 12, 2005 (the relevant portions of which are submitted herewith as Exhibit G).

[4] Pharmacia argues that "Mystic's claims are barred by the doctrine of assumption of the risk as it applies to Massachusetts strict liability cases." But there is no common law strict liability claim in this case, in which liability exists "without regard to fault.."

11

to mitigate damage or assumption of the risk, by the operative statute, 21E. Liability under this statute is "without regard to fault." No 21E cases go beyond the common law distinction between temporary versus permanent damages, much less do they delve into common-law areas such as those Pharmacia invokes. In any event, the cases Pharmacia cites neither support its arguments regarding "knowledge" of contamination prior to purchase, nor their "injury" argument.[5] But it largely avoids cases discussing the only statute that applies in this situation: The Oil and Hazardous Material Release Prevention Act, Chapter 21E. The statute that applies provides defenses, and it is no defense that the current owner seeking contribution had prior knowledge of the contamination. The statute provides that

> there shall be no liability...for a person otherwise liable who can establish by a preponderance of the evidence, (A) that the release or threat of release of oil or hazardous material and the damages resulting therefrom were caused by:
>
> (1) an act of God;
>
> (2) an act of war;
>
> (3) an act or omission of a third party...whose act or omission occurs in connection with a contractual relationship
>
> (4) any combination of the foregoing paragraphs...21E, § 5.

---

[5] Pharmacia cites to the following inapplicable cases to support their "knowledge" and "injury" arguments: *Taygeta Corporation v. Varian*, 436 Mass. 217, 223 (2002)(dealing with *adjacent* property owners and analyzing common law as it applies to the *statute of limitations*); *Lewis v. Potvin Lumber Company, Inc.*, 390 Mass. 636 (1983)(dealing with *adjacent* lumber company cutting timber on their property and analyzing *purchase and sale agreement and assignment of claim* to determine liability); *Textron, Inc.* 416 Mass 332 (analyzing *damages* and *not* when the "property damage action accrued" as represented by Pharmacia in its Memorandum); *Harris v. T.C. Erb Construction, Inc.*, 1996 WC 1185038 (Mass.Super.Ct. 1996)(dealing with destruction of a retaining wall and analyzing *risk of loss* during executory period of a *real estate contract*); *Luna Preservation Society v. Metropolitan District Commission et al.*, 2000 WL 420838 (Mass.Super.Ct. 2000)(dealing with a *tug boat* and analyzing *maritime law* and *standing*); *Wellesley Hills Realty Trust v. Mobil Oil Corporation*, 747 F.Supp. 93 (1990) (analyzing common law *negligence* claim and common law *duty of vendee* to disclose defects); *Koehn v. Ayers*, 26 F.Supp.2d 953 (1998)(a federal *Texas* case dealing with alleged *personal injuries* due to exposure to toxic substance).

12

565984

Mystic and Modern's cause of action against Pharmacia is created by 21E, § 5; the common-law theories that Pharmacia cites are simply inapplicable to this statutory claim. The evident policy behind 21E is to encourage developers to buy contaminated properties, to clean them up using funds recovered from polluters and from other responsible parties, and to redevelop them for productive use. *See Textron*, 416 Mass. at 335. In *Taygeta v. Varian*, the Massachusetts Supreme Judicial Court expounds on the important policies behind 21E. The court states: "Simply put, G.L. c. 21E was drafted in a comprehensive fashion to compel the prompt and efficient cleanup of hazardous material and to ensure that costs and damages are borne by the appropriate responsible parties." *Taygeta*, 436 Mass. at 223. Moreover, the court stated that the primary purpose of 21E is

> to respond to environmental contamination and to recover response costs from persons responsible for the contamination...A second significant purpose of 21E is to enable private persons 'to obtain a certain measure of compensation for loss resulting from environmental damage.'

*Id.* (*citing Textron*, 416 Mass. at 335). Pharmacia argues that, under the common law, they should not be liable because Mystic and Modern's damages "were completely avoidable." Pharmacia argues that "Mystic could have declined to purchase the Property because of the contamination." *Id.* But that argument flies in the face of the important policies and purposes of 21E to encourage buyers such as Plaintiffs to purchase contaminated properties, clean them up with the financial help of the responsible polluters, and reintroduce them into the market again as productive properties. In doing so, the Legislature sought to eliminate the dangers of allowing toxic substances to contaminate the properties for years on end, in favor of requiring the responsible polluters to pay for the damages. A finding of liability against Pharmacia, and a trial on damages

565984

13

to fund the cleanup of the Mystic Site, fulfills the purposes and policies behind the Oil and Hazardous Material Release Prevention Act, Chapter 21E.

## CONCLUSION

For the reasons and upon the authorities set forth above, Plaintiff Mystic Landing, LLC and Third Party Defendant Modern Continental Construction Co. respectfully request that the Court deny Pharmacia's Motion In Limine.

                        MYSTIC LANDING, LLC AND MODERN
                        CONTINENTAL CONSTRUCTION CO.

                        By its attorneys:

                        /s/ Kevin M. Plante
                        Robert G. Flanders, Esq. (BBO #170820)
                        Doreen M. Zankowski, Esq. (BBO #558381)
                        Kevin M. Plante, Esq. (BBO #630088)
                        Hinckley, Allen & Snyder LLP
                        28 State Street
                        Boston, MA  02109-1775
                        (617) 345-9000

DATED: January 9, 2006

565984

14

## CERTIFICATE OF SERVICE

I, Kevin M. Plante, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 9, 2006:

John M. Stevens, Esq.
Adam P. Kahn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210

Mark S. Granger, Esq.
Douglas B. Otto, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Howard G. Guggenheim
P.O. Box 736
Scituate, MA 02066

/s/ Kevin M. Plante
Kevin M. Plante

SIGNED UNDER THE PENALTIES OF PERJURY THIS 9th DAY OF JANUARY, 2006.

/s/ Kevin M. Plante
Kevin M. Plante

## CERTIFICATE OF SERVICE

    I, Kevin M. Plante, hereby certify that on this _____ day of January 2005, I served a true and accurate copy of the foregoing document by hand to:

John M. Stevens, Esq.
Adam P. Kahn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210

Mark S. Granger, Esq.
Douglas B. Otto, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Howard G. Guggenheim
P.O. Box 736
Scituate, MA 02066


                                          Kevin M. Plante


Signed under the penalties of perjury this _____ day of January 2005.