# EXHIBIT B

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>and MONSANTO COMPANY,<br>Defendants.<br><br>PHARMACIA CORPORATION and<br>MONSANTO COMPANY,<br>Third-Party Plaintiffs,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>Third-Party Defendant.<br>PHARMACIA CORPORATION<br>Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL<br>    Fourth-Party Defendants. | **CIVIL ACTION NO.**<br>**04-10180 NMG** |

## PLAINTIFF MYSTIC LANDING, LLC AND THIRD-PARTY DEFENDANT MODERN CONTINENTAL CONSTRUCTION CO., INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN OPPOSITION TO DEFENDANT PHARMACIA CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

552481

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................1

FACTS ....................................................................................................3

ARGUMENT ...........................................................................................8

I.    THE STANDARD OF REVIEW ON SUMMARY JUDGMENT ...........................8

II.   BECAUSE GENUINE DISPUTES EXIST ABOUT MATERIAL FACTS, THE COURT SHOULD DENY PHARMACIA'S PARTIAL SUMMARY JUDGMENT MOTION.................................................................................9

      A.    Examples of Proposed Material Facts that are in Dispute...........................9

            1.    Mystic and Modern Intend to Clean Up the Site; Pharmacia's Contention That They Do Not is Disputed .........................................9

            2.    A Genuine Dispute Exists Over the Various Response Cost Estimates..................................................................................11

            3.    A Genuine Dispute Exists About Whether Mystic and Modern Have Provided Evidence of Response Costs Incurred....................13

            4.    A Genuine Dispute Exists Over Pharmacia's Proposed Facts Concerning Certain Privileged Documents, Work Product, and Otherwise Protected Materials Used by Pharmacia in its Memorandum, Statement, and Affidavit of Elisabeth M. DeLisle.................................................................................15

      B.    Even If There Were No Actual Facts in Dispute, Pharmacia is Not Entitled to a Partial Summary Judgment.......................................................16

III.  PHARMACIA IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT; ON THE CONTRARY, PHARMACIA IS LIABLE UNDER THE OIL AND HAZARDOUS MATERIAL RELEASE PREVENTION ACT, M.G.L. C. 21E ........................................................................16

      A.    Pharmacia is Liable Under 21E, § 5 ............................................................17

      B.    Pharmacia is Liable Under 21E, § 4A ..........................................................19

      C.    § 4A Allows "Reimbursement" of Response Costs Incurred and Recovery Of Response Costs A Party "Intends To Undertake"................20

D.    Mystic and Modern's Claim for Property Damages under Chapter 21E, § 5 is Not a "late-adopted theory;" Rather, the Claim Was Presented in the Complaint and Remains an Integral Part of this Litigation................................................................................................21

E.    The Measure of Damages Under 21E § 5 is Identical to the Measure of Property Damages at Common Law; But Pharmacia's Attempt to Support Its "Knowledge" and "Injury" Arguments Is Irrelevant to Statutory Liability Under 21E § 5 ................................................................22

CONCLUSION ..............................................................................................26

## TABLE OF AUTHORITIES

### CASES

*Magee v. United States*, 121 F.3d 1 (1st Cir.1997)

*Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1121 (1st Cir. 1995)

*Oliver v. Digital Equip. Corp.*, 846 F.2d 103,105 (1st Cir. 1988)

*Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922 (1st Cir. 1983)

*Byrnes v. Massachusetts Port Auth.*, 1994 WL 879644 (Mass. Super. Ct. 1994)

*Guaranty-First Trust Co. v. Textron, Inc.*, 416 Mass. 332 (1993)

*Black v. Coastal Oil New England, Inc.*, 45 Mass. App. Ct. 461 (1998)

*Belkus v. Brockton*, 282 Mass. 285 (1933)

*Taygeta Corporation v. Varian*, 436 Mass. 217 (2002)

*Lewis v. Potvin Lumber Company, Inc.*, 390 Mass. 636 (1983)

*Harris v. T.C. Erb Construction, Inc.*, 1996 WC 1185038 (Mass.Super.Ct. 1996)

*Luna Preservation Society v. Metropolitan District Commission et al.*, 2000 WL 420838 (Mass.Super.Ct. 2000)

*Wellesley Hills Realty Trust v. Mobil Oil Corporation*, 747 F.Supp. 93 (1990)

*Koehn v. Ayers*, 26 F.Supp.2d 953 (1998)

### STATUTES AND REGULATIONS

M.G.L. c. 21E

M.G.L. § 21E, § 2

M.G.L. C. 21E, § 4

M.G.L. C. 21E, § 4A

M.G.L. C. 21E, § 5

M.G.L. c. 21E, § 5(a)

M.G.L. c. 21E, § 5(a)(2)

M.G.L. c. 21E § 5(a)(3)

310 C.M.R. 40.0000

310 C.M.R. 40.0000, Subpart P

42 U.S.C. § 9601(14)

## PRELIMINARY STATEMENT

Plaintiff Mystic Landing, LLC ("Mystic") and Third-Party Defendant Modern Continental Construction Co., Inc. ("Modern") submit this Memorandum of Law in Support of its Motion in Opposition to Defendant Pharmacia Corporation's Motion for Partial Summary Judgment. In addition, Mystic and Modern submit a separate Rule 56.1 Statement of Plaintiff Mystic Landing, LLC in Opposition To Defendant Pharmacia Corporation's Motion For Partial Summary Judgment. The Defendant Pharmacia Corporation ("Pharmacia"), formerly the Monsanto Company ("Monsanto"), is liable under M.G.L. c. 21E ("the Act") because Pharmacia's chemical manufacturing, handling, storage, and waste-disposal activities caused contamination of Mystic's property during Pharmacia's thirty-seven years of owning and operating the site at issue as a chemical manufacturing and storage facility (the "Site" or "Property").

This Memorandum explains why Pharmacia's Motion for Partial Summary Judgment ("Memorandum") fails to undermine the legal validity of Mystic and Modern's claims under Massachusetts General Laws, Chapter 21E, for a Declaratory Judgment and for damages based on Pharmacia's wide-ranging contamination of the Site. Simply put, Pharmacia now seeks to walk away from their cleanup responsibilities and the resultant damages they caused to the property after years of polluting and contaminating the Site. Under the statutory and regulatory framework of Chapter 21E, enforcement actions can be initiated by either the Commonwealth or the current landowners to recover response costs required to remediate the contaminated properties. The policies and purposes behind the far-reaching Oil and Hazardous Material Release Prevention Act, Chapter 21E are, <u>inter alia</u>, to encourage redevelopment of contaminated properties and to empower

1

current landowners to act as private attorneys general to enforce the provisions of 21E, including compelling previous owners such as Pharmacia who have contaminated the properties to fund intended cleanup measures. The Act provides for strict liability that is joint and several. Even current owners who did nothing to pollute their property are liable. Although Pharmacia disputes the public policy embodied in 21E, clearly misunderstands its provisions, and largely ignores the controlling law in its Memorandum, Pharmacia is not above this law and is clearly liable under the Act.

Pharmacia has characterized Plaintiffs' claims as "little more than a barely disguised attempt to seize a windfall by a landowner who knowingly purchased contaminated property." Memorandum at 2. Pharmacia suggests that the claims are "contrary to law and logic" and "entirely unprecedented." *Id*. It even posits that no parties in the history of our jurisprudence have had the "effrontery" to make such claims. Given that the claims in question constitute core 21E litigation, the only "effrontery" in this case is Pharmacia's disingenuous arguments that it is not liable under Chapter 21E. Having polluted and contaminated a 35 acre site for decades with dangerous, toxic chemicals that have left a toxic brew of contaminants in the soil, groundwater, and the adjacent river (including sulphuric acid, lead, arsenic and phthaltes), it ill lies in Pharmacia's mouth to argue that the only party that has suffered damages in this case is Pharmacia. Memorandum at 16. Pharmacia is the major polluter of this property; a mere name change from its former Monsanto moniker is insufficient to insulate it from liability. As such, it is the quintessentially liable defendant in a 21E case such as this one, which seeks contribution to fund the cleanup of the Site and to recover the other damages attributable to its pollution of this area.

2

**Summary of the Reasons why Pharmacia's Summary Judgment Motion Should be Denied:**

1.  Pharmacia's Memorandum shows that there are materials facts in dispute; but even if there were no such disputes, the issues Pharmacia presents do not support the granting of a partial summary judgment in its favor.

2.  Mystic and Modern have every intention of cleaning up the Site using funds from a judgment against Pharmacia to do so.

3.  Mystic and Modern have provided evidence of response costs incurred in assessing the contamination to be remediated at the Site.

4.  Pharmacia fundamentally misunderstands the difference between § 4 and § 4A of Chapter 21E; Pharmacia is Clearly Liable Under § 4A for the response costs that Mystic and Modern have undertaken and *intend to undertake.*

5.  A claim for property damages under Chapter 21E, § 5 is set forth in Plaintiffs' Complaint and it has remained an integral part of this litigation.

6.  Under the strict liability provisions of 21E, a previous owner such as Pharmacia, that has contaminated a site like this one is liable to a current owner, despite the current owner's knowledge of the contamination when it acquired the site; Pharmacia's common-law arguments regarding knowledge and injury are irrelevant to the strict statutory imposed liability under 21E.

As explained below, and in the Rule 56.1 Statement of Plaintiff Mystic Landing, LLC in

Opposition To Defendant Pharmacia Corporation's Motion For Partial Summary

Judgment, there are genuine disputes over the materials facts proposed by Pharmacia in 1)

Pharmacia Corporation's Statement of Material Facts As To Which There Is No Dispute,

2) Pharmacia Corporation's Motion for Partial Summary Judgment, and 3) the Affidavit

of Elisabeth M. DeLisle.

## FACTS

Mystic and Modern rely on the facts presented in its previously filed

Memorandum of Law in Support of Their Motion for Summary Judgment on Liability

and Exhibits thereto (see Exhibit A). In particular, Mystic and Modern rely, and refer this

Court to, the Expert Report and Affidavit of Richard J. Hughto, Ph.D., P.E. LSP (see Exhibits B and C).

Although we rely on the documents referenced above and on the facts therein referenced, which we incorporate herein by reference, the following salient facts are provided for the benefit of the Court:

During the decades of Pharmacia's ownership and operation of the Site, its activities there included the handling and storage of raw materials for chemical manufacturing; the manufacture and storage of chemical products and by-products; and the production, handling, and disposal of wastes and by-products. MONS2 0000586-0000595 (see Exhibit D); Deposition of Gerald Rinaldi ("Rinaldi Deposition"), September 8, 2005, (see Exhibit E).

The existing contamination at the Mystic Site is indisputable, as it is both admitted by Pharmacia and well-documented. Hughto Report, at 5, and documents cited therein. The contamination consists of the residuals from Pharmacia's chemical manufacturing processes, storage, release, spills and related waste-disposal activities that took place on the Site during the decades that Pharmacia owned and operated the Site. *Id;* Hughto Affidavit at Exhibit F. The Hughto Affidavit states that he personally reviewed and relied on all the documents cited and attached to the Memorandum of Law in Support of Mystic and Modern's Motion for Summary Judgment on Liability, and further states that all of the documents attached to that Memorandum of Law are of a type reasonably relied upon by experts in his field in forming expert opinions. *See* Hughto Affidavit at 4. Contamination of the soil, groundwater, surface water, and surface water sediments has occurred because of the storage, use, releases, spills, and chemical

disposals that occurred during Pharmacia's various chemical-related operations at the Site. *Id.*

Pharmacia's own documents show that it knew that the contamination occurred and that it remained on the Site due to its operations. For example:

1.    A Monsanto 10/22/73 Monsanto Environmental Assessment of the Site states that sodium bisulfate effluents "run out onto the ground" and end up in the Mystic river. 00004952 (see Exhibit G). In addition, it states that there is "waste" leaking from sewer pipes from the bisulfate plant onto the Site reaching groundwater and the river. Also, leaks in the heat exchangers in the bisulfate plant caused a stream of acid that is "in violation of effluent regulations." Finally, the Assessment documents that there are "spills from tanks in the $SO_2$ or the bisulfite plant reaching the river."

2.    A 1/8/80 Dames & Moore Hydrogeologic Survey installed a monitoring well on the Site and the results were the highest concentrations of contamination found in the Survey. 0000325 (see Exhibit H). Contaminants discovered in the groundwater included lead, arsenic, phthalates (Bis2-ethyl-phthalate, Dibutyl phthalate and Butyl Benzl Phthalate), and plasticizer compounds (hazardous materials known to be handled on the adjacent Monsanto site).

3.    A Monsanto 11/19/81 Memorandum and attached "Site History and Environmental Status Summary – Sale of Everett Plant East Side Property" states: "The land surface is contaminated with some of the raw materials which were stored on site. Soil samples taken from the upper 4 feet of the site indicate the presence of sulfur, bauxite, iron ore, and other inorganic metal salts." 00006322 (see Exhibit I).

5

4.    A 6/3/80 Monsanto Memorandum, "Everett Site, East Side Assessment" estimated that "between 30 and 120 tons of sulfur is spread over an area of up to 60,000 sq. ft." on the Site. 0009975 (see Exhibit J). The memorandum explains the cause referring to "large areas on the east side [Mystic Site] used for raw material storage piles of several thousand tons each of sulfur…"

5.    A 1/22/82 letter captioned "Proposed Property Sale to Boston Edison Company" from Monsanto to Boston Edison regarding the potential purchase made certain disclosures including: "Waste materials disposed of on the tract include alum mud (aluminum sulfate)." 00006274 (see Exhibit K).

6.    During his 9/8/05 deposition, Pharmacia's witness, Gerald Rinaldi, **repeatedly** acknowledged contamination on the site caused by Monsanto's chemical operations. *See e.g.* Rinaldi Deposition, at 37, 39, 42, 69, 71, 118, 124, 132, 137-138, 141, 154 (see Exhibit E).

7.    A 7/16/82 Perkins Jordan Site Contamination and Liability Audit found contaminants that were signatures of the chemicals used and handled on the Site: sulfate, lead, arsenic, aluminum, and phthalates (Bis2-ethyl-phthalate and Dibutyl phthalate). 0005923 (see Exhibit L).

8.    For a 1/15/97 Phase I Environmental Assessment, Consulting Engineers & Scientists collected soil and groundwater samples and detected arsenic and lead in soil, and low pH, arsenic and lead in groundwater. MONS1 0001554 (see Exhibit M). Sulfuric acid manufacturing waste product caused the arsenic contamination. Iron ore for sulfuric acid manufacturing caused the lead contamination. *Id.* Sulfuric acid manufacturing and leaks caused the low pH in the groundwater.    Environmental studies

were conducted on the Site to define the degree and extent of contamination and the need for remediation. *See* Hughto Report, at 7, and documents cited therein. As detailed in the documents referenced above, Pharmacia itself possessed the results of numerous environmental studies of the Site, which prove the existence of contamination on the Site caused by the storage, disposal, and other handling of chemicals during its ownership and operation of the Site.[1]

Other assessments confirmed these findings. During their assessments of the Property, Rizzo Associates conducted soil and groundwater sampling at the Site, the results of which are presented in Environmental Studies dated 6/19/01 and 8/10/01 (see Exhibits N and O respectively, text only); Hughto Report, at 9. Their findings include further delineation of the low pH found in groundwater, and detailed the areas contaminated with arsenic, lead, petroleum compounds and polyaromatic hydrocarbons ("PAHs") in the soil. *Id.* The area of low pH in the groundwater also contains heavy metal contamination in the groundwater. *Id.* All contamination was directly attributable to Pharmacia's ownership and operation of the Site.

---

[1] The environmental studies include:
- Environmental Assessment Sale of 34 Acres-Everett Plant, 10/22/73 (0004951)
- Dames & Moore, Hydrogeologic Survey, 1/8/80 (000325)
- Monsanto Memo, Everett Plant, East Side Assessment, 6/3/80 (0009975)
- Monsanto Memo, Sale of Monsanto Land, 7/21/80 (0010702)
- Dames & Moore, Report, Hydrogeological Services, 12/23/80 (0000314)
- Monsanto, Site History and Environmental Status Summary, Sale of Everett Plant, East Side Property, 11/19/81 (0006322)
- Monsanto, Proposed Property Sale to Boston Edison Company, 1/22/82 (0006273)
- Perkins Jordan, Site Contamination and Liability Audit on Monsanto Property, 7/16/82 (0005923)
- Boston Edison, 10/17/85
- Consulting Engineers & Scientists, Phase I, Initial Site Investigation Report, 1/15/97 (MONS1 0001554)
- Rizzo Associates, Environmental Studies, 6/19/01 and 8/10/01
- Woodward and Curran, Environmental Study, 10/1/04

Hughto Report, at 7-11, and documents cited therein.

7

## ARGUMENT

Chapter 21E was enacted to hold polluters like Pharmacia liable, and to force them to pay for cleanup of the properties and for other related damages. Yet, Pharmacia maintains that "these claims ha[ve] no factual or legal basis..." Memorandum at 2. In an attempt to evade liability under 21E, it relies on supposed "facts" that are genuinely disputed; it argues novel and irrelevant theories of common law to avoid liability under a strict liability statute; and it protests against a claim not made in the Complaint. Significantly, Pharmacia fails to cite a single 21E case in support of its position.

## I.  THE STANDARD OF REVIEW ON SUMMARY JUDGMENT

In accord with Fed.R.Civ.P. 56(c), summary judgment must be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *Magee v. United States,* 121 F.3d 1, 3 (1st Cir.1997). Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see Coll v. PB Diagnostic Sys.. Inc., 50 F.3d 1115, 1121 (1st Cir. 1995). In ruling on a motion for summary judgment, the court must view the record in the light most favorable to the party opposing the motion and indulge all inferences favorable to that party. Oliver v. Digital Equip. Corp., 846 F.2d 103,105 (1st Cir. 1988); Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983) (citing Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976)).

## II.    BECAUSE GENUINE DISPUTES EXIST ABOUT MATERIAL FACTS, THE COURT SHOULD DENY PHARMACIA'S PARTIAL SUMMARY JUDGMENT MOTION

Pharmacia's Statement of Material Facts as To Which There Is No Dispute ("Statement"), and the voluminous exhibits referenced therein, do not support the arguments in its Memorandum. Virtually every deed and purchase agreement transferring the Property is included. Although the chain of title may be correctly stated, the more relevant "facts" it proposes show the existence of genuine issues of material fact. Therefore, their Motion for Partial Summary Judgment should be denied.

In any event, the "facts" Pharmacia proposes for which there is no dispute, taken as a whole, do not entitle Pharmacia to a partial summary judgment.

### A.    Examples of Proposed Material Facts That are in Dispute

For Mystic and Modern's response to each material fact alleged by Pharmacia please see Rule 56.1 Statement of Plaintiff Mystic Landing, LLC in Opposition to Defendant Pharmacia Corporation's Motion for Partial Summary Judgment. Certain material facts for which there is a genuine dispute are covered more extensively below.

### 1.    Mystic and Modern Intend to Clean Up the Site; Pharmacia's Contention That They Do Not is Disputed

Pharmacia's Statement proposes the following as "material facts not in dispute." Statement at 2.

> Mystic has no current intention to 'spend any money cleaning up the property' in the future, unless such expenditures are required to maintain or enhance the value of the property. DeLisle Aff. Ex. 32, Grela Deposition, at 111-112.

Statement at paragraph 55. Pharmacia also avers that Mystic has no intention of cleaning up the Property throughout its Memorandum. *See* e.g., Memorandum at 2, 6, 15.

9

Mystic and Modern have a genuine dispute over this material fact. First, Mystic and Modern do intend to remediate the Site. See Affidavit of John Pastore ("Pastore Affidavit") at Exhibit P. Indeed, they intend to conduct the appropriate remediation of the Site with funds obtained from the polluter, Pharmacia. Second, the testimony cited in Pharmacia's Statement at paragraph 55 should be clarified. Pharmacia quotes its own attorney in the statement. The deponent, Mr. Grela, who was no longer employed by Mystic or Modern at the time of his deposition, testified in pertinent part as follows:

> Q: Are you planning on spending any money on cleaning up the property?
> A: Not currently. To the extent certain remediation needs to be done on the sale to enhance the value – to maintain the value of the property, then maybe we will, but I'm not speaking for Mystic as of today.
> ...I am not currently employed, as of today, by Modern Continental...
> ...or Mystic...
> ...I'm here to provide historical perspective and testimony.[2]

Affidavit of Elisabeth M. DeLisle at Exhibit 32 (Deposition of Peter M. Grela, 3/14/05, at 112). First, he admitted that he was not testifying regarding the "present" intentions of the two companies he did not work for, only to provide "his historical perspective and testimony." Second, "currently" Plaintiffs do intend to clean up the Property with any funds received from Pharmacia to do so. Third, remediation does need to be performed to enhance and maintain the value of the property, a possibility to which Mr. Grela alluded in his testimony.

The obvious public policy behind Chapter 21E is to encourage parties, such as Mystic, to buy contaminated sites and then to remediate them. Chapter 21E allows such a party to recover the estimated response costs from the prior owners who are responsible

---

[2] Mr. Grela was addressing the situation, as he understood it, that existed at the time of his deposition. He was not addressing what the intentions of Mystic and Modern were if they were able to recover funds from Pharmacia to clean up the property. In any event, he expressly acknowledged that Mystic and Modern might be spending money on cleaning up the property "[t]o the extent certain remediation needs to be done on the sale to enhance the value" – exactly the situation that Plaintiffs now face.

for the pollution before any required remediation occurs, thereby ensuring that the remediation will be financially supportable. The claims in this case invoke that policy and advance the purpose behind Chapter 21E. Under § 4A, a party is allowed to recover costs for response actions it has already undertaken and intends to undertake at the contaminated site. Mystic sent a § 4A Notice pursuant to 21E to Pharmacia and pled a § 4A cause of action in its Complaint. Mystic and Modern intend to use any funds awarded as Pharmacia's contribution toward the cleanup of the Site.

In any event, Plaintiffs dispute the asserted "fact" that they do not intend to clean up the Site. Given that the court must view the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party, Oliver v. Digital Equip. Corp., 846 F.2d 103,105 (1st Cir. 1988); Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983) (citing Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976)), Pharmacia's motion should be denied for this reason alone.

### 2. A Genuine Dispute Exists Over the Various Response Cost Estimates

Pharmacia refers to a draft letter from Mystic and Modern's experts with a remedial cost estimate of $810,000[3]. Statement at paragraph 33. Pharmacia juxtaposes this letter with a later letter from Mystic and Modern's experts containing a remedial cost estimate of $17,500,000. Statement at paragraph 34. Paragraph 34 characterizes the second letter as "an updated draft" of the previous letter, with "a revised Preliminary Remedial Cost Estimate…" Further, Pharmacia sets forth as fact that the second letter was "based on the same analytical information." Memorandum, Facts section at 6.

---

[3] Estimate for financing purposes only.

The mere existence of different cost estimates for the Site's prospective cleanup scarcely establishes the existence of undisputed facts, Moreover, the disparate cost estimates were not "based on the same analytic information." The second letter used different assumptions and contamination scenarios, which naturally produced a different cost estimate. Thus, it is untrue to suggest that the letters are based on the same data and that they are similar in all respects except the differing cost estimates.

The May 15, 2001 Letter was prepared to ascertain what the costs might be for a *de minimis* remediation effort. The May 22, 2001 Letter was prepared based on a potential residential redevelopment scenario, requiring a higher degree of remediation that drove the estimated cleanup costs substantially higher.

The May 15, 2001 Letter presented a cost estimate for a remediation that would allow closure under the Massachusetts Contingency Plan ("MCP"), 310 C.M.R. 40.0000, with the filing of a Class A-3 Response Action Outcome ("RAO"). In addition, the remedial scenario used to prepare the cost estimate included an Activity and Use Limitation ("AUL") to be placed on the title to the Property. In stark comparison, the May 22, 2001 Letter addressed a completely different remedial scenario in which closure would be achieved with the filing of a Class A-2 RAO. Moreover, the second remedial scenario and cost estimate did not involve the imposition of an AUL on the Property. Thus, the remediation in the May 15, 2001 Letter would be much less extensive and much less expensive. An A-3 RAO requires less remediation than a Class A-2 RAO. Moreover, the imposition of an AUL limiting future uses of the property – i.e., to only industrial uses, with no residential uses allowed – obviated the need for more extensive and expensive remediation. But the remediation addressed in the May 22, 2001 Letter

assumed closure under the more stringent Class A-2 RAO and presented a remedial plan

and cost estimate based on a plan without an AUL. Under this scenario, the Property

would need to be cleaned to a much higher level: i.e., suitable for residential use. Thus,

the estimated remediation in the May 22, 2001 Letter bore no comparison to the

remediation addressed in the May 15, 2001 Letter. The scope of the latter remediation

was, to borrow a phrase, at least "twenty-fold" larger.

Pharmacia opines that "the original estimate, apparently made without regard to

prospective litigation, was $810,000...[but] when the prospect that someone other than

Mystic might pay the bill was considered, the estimate marginally jumped more than

twenty-fold to $17,500,000." Memorandum at 9 (citing Statement at paragraph 34). The

implication that Mystic and Modern inappropriately changed the number for litigation

purposes is baseless. The cost estimates were premised on different remedial scenarios

and prepared for different purposes.

Needless to say, Mystic and Modern dispute Pharmacia's proposed material facts

as stated in Pharmacia's Statement at paragraph 34, and in Pharmacia's Memorandum at

6 and 9.

### 3. A Genuine Dispute Exists About Whether Mystic and Modern Provided Evidence of Response Costs Incurred

Pharmacia contends that "Mystic has not produced any evidence that it has

incurred any costs for investigation, analysis, or cleanup related to preexisting

contamination." Statement at paragraphs 51 and 62; Pharmacia's Memorandum at 3, 8,

and 9; Affidavit of Elisabeth M. DeLisle at paragraph 51.

But the supposedly undisputed material fact that Pharmacia proposes is false. The

Plaintiffs served Pharmacia with the § 4A Notice dated August 27, 2001, informing

13

Pharmacia of its liability for response costs incurred. The Notice specifically stated: "The cost of response actions to date is approximately \$90,500." § 4A Notice at 6 (see Exhibit Q). That was the relevant figure in August 2001. The Complaint in this action stated that "Mystic has incurred in excess of One Hundred Thousand Dollars (\$100,000) in investigation and analysis costs…" Complaint at paragraph 39. Thereafter, Plaintiffs incurred additional response action costs, and evidence of same has been provided to Pharmacia, as explained below. The definition of "Response action" in 21E, § 2 includes "assess, assessment, contain, containment, remove and removal." Although Pharmacia alleges that "Mystic has not spent anything on removal or treatment of contamination on the Site…," Mystic and Modern have incurred response costs on Site "assessment" and to "assess" the widespread contamination that Pharmacia caused at the Site. Memorandum at 8.

Specifically, Mystic and Modern have retained and paid for Rizzo Associates to undertake a major assessment of the Property, including site characterization, sampling of soil and groundwater, and preparation of cost estimates for remediation based on different assumptions and scenarios. Parts of Rizzo Associates' work culminated in two reports: 1) the Phase II Field Investigation Report dated June 19, 2001, and 2) the Limited Subsurface Investigation dated August 10, 2001 (see Exhibits N and O). The Reports were provided to Pharmacia during discovery and have otherwise been a subject of discovery and discussions in this case. Rizzo Associates then invoiced Plaintiffs for the substantial Site work and for the Reports generated about the Site. See the Affidavit of Richard J. Hughto, Ph.D, P.E., LSP attached at Exhibit F for specific costs related to Rizzo Associates' work, which constitute response costs that Plaintiffs have already

14

incurred. Moreover, please see Exhibit R, which are copies of Rizzo Associates' invoices paid by Mystic and Modern.

In short, Mystic and Modern take issue with Pharmacia's proposed material fact that Mystic has not produced any evidence showing that it has incurred any costs for investigation, analysis, or cleanup related to preexisting contamination. Statement at paragraph 62; Memorandum at 3, 8, and 9; Affidavit of Elisabeth M. DeLisle at paragraph 51 and 62; 8/27/01 § 4A Notice at Exhibit Q; Rizzo Environmental Studies at Exhibits N and O; Affidavit of Richard J. Hughto, Ph.D, P.E., LSP at Exhibit F; Rizzo Invoices at Exhibit R.

### 4. A Genuine Dispute Exists Over Pharmacia's Proposed Facts Concerning Certain Privileged Documents, Work Product, and Otherwise Protected Materials Used by Pharmacia in its Memorandum, Statement, and Affidavit of Elisabeth M. DeLisle

It appears that three internal legal research memoranda prepared by Plaintiffs' attorneys were inadvertently disclosed to Pharmacia's counsel, despite the document review that occurred before these and other documents were produced during discovery. Pharmacia chose to use these privileged documents, work product, and otherwise protected materials in their Memorandum, Statement and Affidavit of Elisabeth M. DeLisle. Memorandum at 5; Statement at paragraphs 27, 28, 29; Affidavit of Elisabeth M. DeLisle at 21-23. Their inadvertent disclosure, however, did not waive any privileges. *See U.S. v. Billmyer*, 57 F.3d 31 (1st Cir. 1995) (attorney-client privilege, work-product privilege); *Prudential Ins. Co. v. Turner & Newall*, PLC, 137 F.R.D. 178 (D. Mass. 1991) (attorney-client privilege, work-product privilege) (alternate basis); *Fleet Nat. Bank v. Tonneson & Co.*, 150 F.R.D. 10, 27 Fed. R. Serv. 3d (LCP) 489 (D. Mass. 1993) (work-product privilege); *City of Worcester v. HCA Management Co., Inc.*, 839 F.

Supp. 86, 28 Fed. R. Serv. 3d (LCP) 154 (D. Mass. 1993) (attorney-client privilege,

work- product privilege); *Milford Power Ltd. Partnership by Milford Power Associates,*

*Inc. v. New England Power Co.,* 896 F. Supp. 53 (D. Mass. 1995) (work-product

privilege). Mystic and Modern have a genuine dispute over both the use of these

materials and the material facts proposed that are based on the materials.[4] Memorandum

at 5; Statement at paragraphs 27, 28, 29; Affidavit of Elisabeth M. DeLisle at 21-23.

## B. Even If There Were No Actual Facts in Dispute, Pharmacia is Not Entitled to a Partial Summary Judgment

Even if there were no genuine disputes of material facts and Pharmacia's

Statement were accepted as true, the totality of those facts, as a matter of law, do not

entitle Pharmacia to summary judgment on any claim or issue in this case. Even if the

proposed "facts" were all true – and they are not – the legal arguments based on those

"facts" are unsupported by applicable law, as explained below.

## III. PHARMACIA IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT; ON THE CONTRARY, PHARMACIA IS LIABLE UNDER THE OIL AND HAZARDOUS MATERIAL RELEASE PREVENTION ACT, M.G.L. C. 21E

Pharmacia's legal arguments are based on a common-law analysis that is simply

inapplicable to these statutory 21E claims. Indeed, Pharmacia does not rely upon a single

21E case in its arguments. As explained below, its common-law arguments are legally

irrelevant. First, however, it is important to establish Pharmacia's clear liability under

21E, §§ 4A and 5, and then to understand why Pharmacia's arguments fail to change their

status as a liable party under 21E.

---

[4] Pharmacia's attorneys have agreed to return these documents to Plaintiffs upon the production of a privilege log and the provision of certain other documents that Pharmacia has requested. The Plaintiffs have agreed to do so, to the extent the requested documents exist and can be located and produced to Pharmacia's attorneys.

A.    **Pharmacia is Liable Under 21E, § 5**

Pharmacia is liable for its contamination of the Mystic Site during its ownership

and operations thereon.  The operative statute is M.G.L. c. 21E, § 5(a).

Chapter 21E, § 5(a) states, in pertinent part:

§ 5. Persons liable (a)…(2) *any person who at the time of storage or disposal of
any hazardous material owned or operated any site at or upon which such
hazardous material was stored or disposed of and from which there is or has been
a release or threat of release of hazardous material…*and (5) any person who
otherwise caused or is legally responsible for a release or threat of release of oil or
hazardous material from a vessel or site, *shall be liable, without regard to fault…*
(iii) to any person for damage to his real or personal property incurred or suffered
as a result of such release or threat of release…

(*emphasis added*).  Thus, the elements to prove the liability under § 5 are:

1.    Pharmacia is a "person"

2.    who owned or operated the Mystic Site

3.    at the time of storage or disposal of hazardous materials on the Site

4.    a release or threat of release of hazardous material occurred, and

5.    the property was damaged as a result of the release or threatened release.

Pharmacia is a legal person. The definition of "Person" in M.G.L. c. 21E, § 2 is

"any…private corporation…"

For thirty-seven years Pharmacia operated the site as a chemical manufacturing

operation (from 1929 until 1975).  MONS2 0000586-0000595; 0006273 (see Exhibits D

and K).  Monsanto purchased the Site in 1929 by purchasing Merrimac Chemical

Company.  MONS2 0000589.  Monsanto sold the Site to Boston Edison Company on

June 20, 1983. 0005427.

Pharmacia was the owner or operator when disposal of hazardous materials were

stored on and disposed of at the Site.  During the forty-six years of Pharmacia's

ownership, until 1975, Pharmacia's operations at the site included handling and storage of raw materials for chemical manufacturing; manufacture and storage of chemical products and by-products; production, handling, storage and disposal of wastes and byproducts. MONS2 0000586-0000595 (see Exhibit D); 00006273 (see Exhibit K); Rinaldi Deposition Exhibits 29(a)-29(f) (see Exhibit S). The chemical products, raw materials, byproducts and waste are clearly included within the definition of "hazardous material." M.G.L. § 21E, § 2; 42 U.S.C. § 9601(14); 310 C.M.R. 40.0000, Subpart P.

Releases or threats of release of hazardous materials occurred on the Mystic Site during Pharmacia's ownership and operations there. Under c. 21E, § 5(a)(2), a person is liable for a release of hazardous material from a site if that person was the owner or operator of such site at the time of the storage or disposal of the hazardous material at or upon the site. A person who was the owner or operator of a site at the time of storage or disposal of hazardous material may be held liable for a release, even if the release occurred *after* that person ceased to be an owner or operator of the site. *Byrnes v. Massachusetts Port Auth.*, 1994 WL 879644 (Mass. Super. Ct. 1994). The Court in Byrnes stated: "The statute [§ 5(a)(2)] easily could have been written to provide that a prior owner is liable if it owned the site *during* a release or threat of release." *Id.* at *5 (*emphasis added*). Temporally, the release is not required to occur during the former owner's operation of the site. The undisputed evidence shows that the releases occurred during, and were caused by, Pharmacia's operations at the Site. The implications are twofold. One, Mystic and Modern have proof far beyond the quantum of proof required by 21E and the courts to establish Pharmacia's liability under § 5(a)(2). Second, liability is established under § 5(a)(5) as well, which requires causation. M.G.L. § 5(a)(5) states:

18

"Persons liable...(5) any person who otherwise *caused* or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site." (*emphasis added*). See the short summary of examples of indisputable releases of hazardous materials caused by Pharmacia in the Facts section above.

### B.    Pharmacia is Liable Under 21E, § 4A

Pharmacia is liable for contribution to the required response actions at the Site. M.G.L. §4A provides a procedure whereby a party gives notice to a potentially responsible party that the notifying party reasonably believes is liable under § 5 to seek contribution for clean up costs. The party notified need not be adjudicated as liable under § 5 in order for a party to prevail under § 4A.

Chapter 21E, § 4A states:

> Section 4A. (a) Any person...who *has undertaken*, is undertaking, *or intends to undertake* a necessary and appropriate response action or who is or reasonably believes that he might be liable pursuant to section five *may notify any person he reasonably believes is liable pursuant to section five* that the response action has been taken or is being taken or of the notifier's intent to take such response action or to seek *contribution, reimbursement* or equitable share from other persons...

(*emphasis added*). On August 27, 2001 Mystic sent notice pursuant to § 4A to Pharmacia that Mystic reasonably believed it was liable under § 5 and that Mystic sought contribution from Pharmacia for the cost of the response actions it has undertaken and it intends to undertake. Please see a copy of the August 27, 2001 §4A Notice at Exhibit Q.

When, as here, Plaintiffs have complied with these notice provisions, Pharmacia's liability under § 4A is inescapable. Not only is it liable for property damage under § 5, it is also liable under § 4A for contribution to the response costs that the present owner has undertaken and intends to undertake.

19

**C.**    **§ 4A Allows "Reimbursement" of Response Costs and Recovery Of Response Costs A Party "Intends To Undertake"**

Pharmacia is liable for response costs as discussed above. Costs estimates for remediation of the Site have been prepared by Dr. Richard J. Hughto, Ph.D., P.E., LSP and presented in his Expert Report at Exhibit B.

Pharmacia argues "the rule [is] that only response costs actually expended may be recovered." Memorandum at 9. But this represents a fundamental misunderstanding of § 4A. Under §4A, liability extends to "any person...who...has *undertaken...or intends to undertake*" a response action. The Massachusetts appeals court in *Black v. Coastal Oil New England, Inc.* explained a key difference between §§ 5 and 4A. The Court stated "that a 'person liable for cleanup under § 5 can sue other liable parties under § 4 for reimbursement of cleanup costs already paid, but cannot sue under § 5(a)(5)(III) to recover costs not yet incurred." *Black*, 45 Mass.App.Ct. at 464 *(citations omitted)*. The court continued: "Prior payment is a prerequisite for reimbursement. *Id. (citations omitted)*. The Court explained that "[o]nly after the addition of G.L. c. 21E, § 4A...has a private party who is liable under § 5 been able to seek contribution toward future response costs before commencing cleanup..." *Id*. When Pharmacia states that this Court "is without authority to award monetary damages for costs that have not yet been incurred," it displays a misunderstanding of the statute under which it is liable. Memorandum at 9.

Pharmacia further shows its misunderstanding of the law and adds a new element when it states: "In sum, even if the law permitted unexpended response costs to be recovered...Mystic still could not recover here because it would not have established damages with anything remotely approaching the requisite degree of specificity." First,

20

the law permits unexpended response costs to be recovered under § 4A. Second,

Pharmacia offers no legal support for its assertion that Plaintiffs are unable to prove those

costs with the "requisite degree of specificity." The cost estimates for these response

actions have been prepared by an expert. To be sure, Pharmacia disputes the cost

estimates. But that is exactly why a trial on damages is necessary – to determine the

amount of "necessary and appropriate" response costs and the damages to be recovered,

with whatever specificity may be reasonably required to estimate such costs.

> **D.    Mystic and Modern's Claim for Property Damages under Chapter 21E, § 5 is Not a "late-adopted theory;" Rather, the Claim Was Presented in the Complaint and Remains an Integral Part of this Litigation**

Count I for Declaratory Judgment in the Complaint at paragraph 30 clearly states

the following:

> As the former owner/operator of the Site at the time of the release of oil and hazardous material to the soil, groundwater, and sediments, *the defendants are responsible for all of the response costs and other damages related to the contamination of the Site pursuant to Mass. General Laws c. 21E, § 5.*

Count II for Contribution in the Complaint at Paragraph 33 pleads the same

allegation of liability and damages under § 5.

Count VI for Attorneys' Fees and Costs in the Complaint at paragraph 51 contains

the same claim of liability and damages under § 5.

The Complaint was served on Pharmacia in December 2003. The claims are not

"late-adopted" or "late-asserted." Memorandum at 10. They are more than "hinted at in

the complaint." Memorandum at 2. Pharmacia speculated: "At the very close of

discovery, after apparently determining that it could not obtain a monetary judgment for

past or future costs because neither had been incurred, Mystic devised a new claim in an

effort to recover a monetary judgment – a claim of 'property damage.'" Memorandum at 10. Pharmacia's speculation is unfounded. It is hard to understand how Pharmacia could assert that the § 5 claim for property damages pled in the Complaint almost two years ago, could be a "new claim." Yet Pharmacia asks this Court to "dismiss this last minute attempt to find a theory on which damages could be assessed." Memorandum at 10. But there is nothing "last minute" about a claim pled almost two years ago, that has been an integral part of discovery and discussions on damages throughout this case, and for which Pharmacia is clearly liable.[5]

An issue in dispute, necessitating a trial on damages, is which measure of § 5 property damages applies in this case, temporary or permanent, and what is the amount of those damages.

     **E.**      **The Measure of Damages Under 21E § 5 is Identical to the Measure of Property Damages at Common Law; But Pharmacia's Attempt to Support Its "Knowledge" and "Injury" Arguments Is Irrelevant to Statutory Liability Under 21E, § 5**

"[T]he measure of recovery under 21E, § 5 is identical to the measure of recovery at common law for damage to real and personal property." *Guaranty First Trust Company v. Textron, Inc.*, 416 Mass. 332, 333 (1993); *Black* v. *Coastal Oil New England, Inc.*, 45 Mass. App. Ct. 461 (1998). At common law, the appropriate measure depends on whether the property damages are permanent or temporary. *Id.* When the injury is permanent, the appropriate measure of damages is diminution of value determined by "the difference in the fair market value of the injured premises before and after the injury." *Black*, 45 Mass. App. Ct. at 466; *Belkus* v. *Brockton*, 282 Mass. 285,

---

[5] Pharmacia also refers to the state court civil action cover sheet in an attempt to make a compelling argument; however, the cover sheet sufficiently states Plaintiff seeks relief pursuant to § 4A which necessarily implicates liability under § 5. One must be a liable party under § 5 to be subject to § 4A damages. Note also that we are in federal court now, not state court.

22

288 (1933). The injury is temporary if it is "reasonably curable by repairs." *Id.* The

injury is reasonably curable by repairs if the expense of the repairs is less than the

diminished market value. *Id.*; *see Textron*, 416 Mass. at 337. When the injury is

temporary "the measure of recovery is the reasonable expense of repairing the injury plus

the intervening loss of rental value for the period reasonably needed to repair the injury."

*Textron*, 416 Mass. at 337; *Belkus*, 282 Mass. at 288. These rules of law present issues in

our case necessitating a trial on damages.[6]

Pharmacia digresses into common law arguments concerning "injury," "duty to

mitigate damages," and even "assumption of risk." Memorandum at 12-14.[7] The rule of

law under 21E is presented above. Only the measure of *damages* under 21E is identical

to the measure in common law. There is no wholesale adoption of all common law

principles, such as duty to mitigate damage or assumption of the risk, by the operative

statute, 21E. Liability under this statute is "without regard to fault." No 21E cases go

beyond the common law distinction between temporary versus permanent damages,

much less do they delve into common-law areas such as those Pharmacia invokes. In any

event, the cases Pharmacia cites neither support its arguments regarding "knowledge" of

contamination prior to purchase, nor their "injury" argument.[8]   But it largely avoids

---

[6] Property damages, including permanent damages, have occurred as a result of the contamination. For example, permanent stigma and market resistance damages are discussed in the Expert Report of Donald P. Bouchard, MAI and Steven R. Foster, MAI dated September 12, 2005 (the relevant portions of which are submitted herewith as Exhibit T).

[7] Pharmacia argues that "Mystic's claims are barred by the doctrine of assumption of the risk as it applies to Massachusetts strict liability cases." But there is no common law strict liability claim in this case, in which liability exists "without regard to fault.."

[8] Pharmacia cites to the following inapplicable cases to support their "knowledge" and "injury" arguments: *Taygeta Corporation v. Varian*, 436 Mass. 217, 223 (2002)(dealing with *adjacent* property owners and analyzing common law as it applies to the *statute of limitations*); *Lewis v. Potvin Lumber Company, Inc.*, 390 Mass. 636 (1983)(dealing with *adjacent* lumber company cutting timber on their property and *analyzing purchase and sale agreement and assignment of claim* to determine liability); *Textron, Inc.* 416 Mass 332 (analyzing *damages* and *not* when the "property damage action accrued" as represented by Pharmacia in its Memorandum at 12); *Harris v. T.C. Erb Construction, Inc.*, 1996 WC 1185038

23

cases discussing the only statute that applies in this situation: The Oil and Hazardous

Material Release Prevention Act, Chapter 21E. The statute that applies provides defenses,

and it is no defense that the current owner seeking contribution had prior knowledge of

the contamination. The statute provides that

> there shall be no liability...for a person otherwise liable who can establish by a
> preponderance of the evidence, (A) that the release or threat of release of oil or
> hazardous material and the damages resulting therefrom were caused by:
>
> (1) an act of God;
>
> (2) an act of war;
>
> (3) an act or omission of a third party...whose act or omission occurs in
> connection with a contractual relationship
>
> (4) any combination of the foregoing paragraphs...21E, § 5.

Mystic and Modern's cause of action against Pharmacia is created by 21E, § 5;

the common-law theories that Pharmacia cites are simply inapplicable to this statutory

claim. The evident policy behind 21E is to encourage developers to buy contaminated

properties, to clean them up using funds recovered from polluters and from other

responsible parties, and to redevelop them for productive use. *See Textron*, 416 Mass. at

335. In *Taygeta v. Varian*, the Court expounds on the important policies behind 21E.

The Court states: "Simply put, G.L. c. 21E was drafted in a comprehensive fashion to

compel the prompt and efficient cleanup of hazardous material and to ensure that costs

---

(Mass.Super.Ct. 1996)(dealing with destruction of a retaining wall and analyzing *risk of loss* during
executory period of a *real estate contract*); *Luna Preservation Society v. Metropolitan District Commission
et al.*, 2000 WL 420838 (Mass.Super.Ct. 2000)(dealing with a *tug boat* and analyzing *maritime law* and
*standing*); *Wellesley Hills Realty Trust v. Mobil Oil Corporation*; 747 F.Supp. 93 (1990) (analyzing
common law *negligence* claim and common law *duty of vendee* to disclose defects); *Koehn v. Ayers*, 26
F.Supp.2d 953 (1998)(a federal *Texas* case dealing with alleged *personal injuries* due to exposure to toxic
substance).

and damages are borne by the appropriate responsible parties." *Taygeta*, 436 Mass. at

223. Moreover, the court stated that the primary purpose of 21E is

> to respond to environmental contamination and to recover response costs from persons responsible for the contamination...A second significant purpose of 21E is to enable private persons 'to obtain a certain measure of compensation for loss resulting from environmental damage.'

*Id.* (*citing Textron*, 416 Mass. at 335). Pharmacia argues that, under the common law,

they should not be liable because Mystic and Modern's damages "were completely

avoidable." Memorandum at 14. Pharmacia argues that "Mystic could have declined to

purchase the Property because of the contamination." *Id.* But that argument flies in the

face of the important policies and purposes of 21E to encourage buyers such as Plaintiffs

to purchase contaminated properties, clean them up with the financial help of the

responsible polluters, and reintroduce them into the market again as productive

properties. In doing so, the Legislature sought to eliminate the dangers of allowing toxic

substances to contaminate the properties for years on end, in favor of requiring the

responsible polluters to pay for the damages. A finding of liability against Pharmacia,

and a trial on damages to fund the cleanup of the Mystic Site, fulfills the purposes and

policies behind the Oil and Hazardous Material Release Prevention Act, Chapter 21E.

## CONCLUSION

For the reasons and upon the authorities set forth above, Plaintiff Mystic Landing,

LLC and Third Party Defendant Modern Continental Construction Co. respectfully

request that the Court deny Pharmacia's Motion for Partial Summary Judgment.

MYSTIC LANDING, LLC AND MODERN
CONTINENTAL CONSTRUCTION CO.

By its attorneys:

Robert G. Flanders, Jr., Esq. (BBO #170820)
Doreen M. Zankowski, Esq. (BBO #558381)
Kevin M. Plante, Esq. (BBO #630088)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
(617) 345-9000

DATED: November 7, 2005

552481

26

## CERTIFICATE OF SERVICE

I, Kevin M. Plante, hereby certify that on this _____ day of November 2005, I served a true and accurate copy of the foregoing document by hand to:

John M. Stevens, Esq.
Adam P. Kahn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210

Mark S. Granger, Esq.
Douglas B. Otto, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Howard G. Guggenheim
P.O. Box 736
Scituate, MA 02066

Kevin M. Plante

Signed under the penalties of perjury this 7th day of November 2005.

552481