# EXHIBIT E

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>and MONSANTO COMPANY,<br>Defendants.<br><br>PHARMACIA CORPORATION and<br>MONSANTO COMPANY,<br>Third-Party Plaintiffs,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>Third-Party Defendant.<br><br>PHARMACIA CORPORATION<br>Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL<br>    Fourth-Party Defendants. | **CIVIL ACTION NO.**<br>**04-10180 NMG** |

## AFFIDAVIT OF RICHARD J. HUGHTO, PH.D., P.E., LSP

I, Richard J. Hughto, do hereby depose and say the following:

1. My name is Richard J. Hughto. I am an environmental consultant, specializing since the early 1970's in the study of contaminant impacts on, and remediation of surface water, groundwater, and soil. I hold B.E. and M.E. degrees in Civil and Environmental Engineering from Manhattan College and a Ph.D. degree in Water Resource Engineering from Cornell University. I am an expert consultant to Mystic Landing, LLC ("Mystic") and Modern Continental Construction Co. ("Modern"), parties to the above-captioned case.

2. The site at issue is located on the eastern shore of the Mystic River between Rte. 99 and Mystic View Ave. (the "Site"). Currently it is owned by Mystic Landing, LLC.

3. The Defendant in this case, Pharmacia Corporation ("Pharmacia"), formerly known as the Monsanto Company ("Monsanto"), purchased the Site in 1929 and engaged in chemical manufacturing operations until 1975.

4. Historical operations conducted by Pharmacia on the Site included: (1) the handling and storage of raw chemical materials for chemical manufacturing, (2) manufacturing, generation, and storage of chemical products and by-products, and (3) the production, storage, handling and disposal of wastes and by-products.

5. During Pharmacia's ownership and operation of the Site, the Site became contaminated with several hazardous materials as a result of Pharmacia's chemical manufacturing processes, storage, handling, releases, spills, and related waste and by-product disposal activities.

552483-v2

2

6. Environmental studies prepared for the Site identified contamination caused by Pharmacia's operations during its ownership and operation of the Site. For example, the 1/8/80 Dames & Moore report finds groundwater contamination from lead, arsenic, and plasticizers on the Site. A 7/16/82 Perkins Jordan report quantified soil contamination with lead, arsenic, and plasticizers on the Site. A later 10/17/85 documentation of work by Perkins Jordan shows soil and groundwater Site contamination with lead, arsenic, and plasticizers. Lead and arsenic were also quantified in soil and groundwater by CES (1/15/97) and Rizzo Associates (6/19/01 and 8/10/01). In addition, low pH conditions in groundwater were quantified in reports by Dames & Moore (12/23/80), CES (1/15/97), and Rizzo Associates (6/19/01 and 8/10/01).

7. I have been working with Rizzo Associates, which was retained by Hinckley Allen & Snyder LLP, as counsel to Mystic and Modern, to conduct environmental assessments of the Property and to delineate and characterize the contamination at the Site. These response actions were memorialized in environmental study reports prepared in anticipation of Site remediation.

8. In 2001, I was retained to conduct soil and groundwater sampling at the Site to further investigate the nature and extent of the contamination there. Activities I conducted included the collection and laboratory analysis of soil and groundwater samples and reviewing the history of the operations and contaminant assessments prepared for the Site. The results of this work were memorialized in a June 2001 Phase II Field Investigation Report. The Report contains the observations made in the field, the data collected, and an analysis of the information collected.

9. Later in 2001, I conducted additional soil and groundwater sampling at the Site and to characterize the nature and extent of the Site contamination. Activities conducted

included additional analysis of groundwater and soil. The results of this work were memorialized in an August 2001 Limited Subsurface Investigation. The Report contains the observations made in the field, the data collected, and an analysis of the information collected.

10. In addition to the services described above, I have worked with Rizzo Associates to evaluate data collected by other parties, to review historical documents related to the Site, to analyze various alternative development plans for the Site, to evaluate the alternative development plans and the extent of remediation likely to be needed to implement those plans, and to develop cost estimates for the remediation anticipated for the different development and regulatory scenarios.

11. Among the remediation cost estimates that were prepared were two that I documented in draft letters dated May 15, 2001 and May 22, 2001 and that I addressed to Hinckley Allen & Snyder LLP. The May 15, 2001 estimate for $810,000 was our estimate at the time of the remediation costs that would be necessary to close the Site out in the DEP system, assuming an industrial use with little or no ground-invasive activity. This solution would include an Activity and Use Limitation (AUL) placed on the deed for the property. It did not include estimated costs for the management of contaminated soil and groundwater that would be encountered if ground-invasive activities for utilities, foundations, parking, or other purposes were undertaken during site development. The May 22, 2001 estimate for $17,500,000 was our estimate at that time of what remediation costs would be necessary to close the Site out in the DEP system, assuming no AUL would be required and that any future land use would be possible. It is not unusual that parties acquiring properties request it to be clean and unencumbered by limitations, such as AULs. Contamination of the Site soil exists throughout the Site's footprint and it extends to over ten feet in depth. To avoid the need for an AUL, soil

remaining on the Site would have to meet residential cleanup standards. Due to the widespread contamination, soil from throughout the Site would have to be excavated to achieve a site closure without a use limitation (AUL); therefore, the cost for such a scenario would be substantially higher.

12. The costs invoiced and paid Modern for all of the Rizzo Associates services listed above through November 7, 2005, are $186,304.97.

13. The constituents of the contamination identified on the Site were chemicals present as a result of Pharmacia's chemical manufacturing, generation, storage, and disposal operations during its ownership and operation of the Site. For example, lead was present as a raw material in pyrite ore used in the production of sulfuric acid. Arsenic was a waste product from the sulfuric acid manufacturing process. The plasticizers were products of the manufacturing by Pharmacia in their adjacent Everett operations.

14. The chemicals used in Pharmacia's manufacturing processes that contaminated areas of the Site during its ownership and operation are hazardous materials or, in the case of the low pH condition, facilitated the releases of hazardous materials, as low pH conditions in groundwater allow greater amounts of heavy metals to dissolve in the groundwater, facilitating their migration in the groundwater with potential discharge to surface water.

15. In forming my conclusions and statements in this Affidavit, I relied, in part, on my review of many documents made available to me, including all the documents attached to Mystic and Modern's Memorandum of Law in Opposition to Pharmacia Corporation's Motion for Partial Summary Judgment. All of the documents attached to the memorandum of law are of a type reasonably relied upon by experts in my field in forming expert opinions.

SIGNED UNDER THE PENALTIES OF PERJURY this 3rd day of November 2005.

_____
Richard J. Hughto, Ph.D., P.E., LSP

545053                                6