# EXHIBIT F

# CONSULTING ENGINEERS & SCIENTISTS

PHASE I

INITIAL SITE INVESTIGATION REPORT

3-13341

ALFORD STREET
EVERETT, MASSACHUSETTS

PREPARED FOR:

O'DONNELL SAND & GRAVEL, INC.
P.O. BOX 243, MARION DRIVE
KINGSTON, MA 02364

PREPARED BY:

CONSULTING ENGINEERS & SCIENTISTS, INC.
10 RIVERSIDE DRIVE
LAKEVILLE, MASSACHUSETTS 02347

CES PROJECT #95217

JANUARY 15, 1997

MONS1 0001554

Consulting Engineers & Scientists, Inc.
10 Riverside Drive
Lakeville, Massachusetts 02347-1676
508-946-3400    Fax 508-946-3404

PHASE I INITIAL SITE INVESTIGATION REPORT
TABLE OF CONTENTS

PAGE

TRANSMITTAL FORM

1.0 INTRODUCTION ............................................... 1

2.0 DISPOSAL SITE HISTORY ..................................... 2
    2.1 Owner/Operator and Operations History ........................... 2
    2.2 Oil and Hazardous Materials (OHMs) Use and Storage History ........... 2
    2.3 Release & Waste Management History ............................. 3
    2.4 Environmental Permits and Compliance History ..................... 3
        2.4.1 Municipal Agency File Review ............................. 3
        2.4.2 Review of the State Environmental Agency Files ............. 4

3.0 HYDROGEOLOGICAL CHARACTERISTICS .......................... 6

4.0 NATURE AND EXTENT OF CONTAMINATION ....................... 8

5.0 MIGRATION PATHWAYS AND EXPOSURE POTENTIAL ............... 10

6.0 SUMMARY AND CONCLUSIONS ................................. 11

7.0 LIMITATIONS AND CERTIFICATIONS ............................ 12

LIST OF FIGURES

FIGURE 1        LOCUS MAP

FIGURE 2        DISPOSAL SITE PLAN

FIGURE 3        MERRIMAC CHEMICAL COMPANY BASE MAP - 1933

FIGURE 4        Compiled Plan of Land in Everett & Boston, MA by Miller & Nylander
                Co. 1/14/1983

LIST OF APPENDICES

APPENDIX A        Correspondence

APPENDIX B        CES Test Pit Summary Report with Appendices

MONS1 0001555

APPENDIX C     Soil Boring/Monitoring Well Installation Logs

APPENDIX D     Alpha Analytical Reports

APPENDIX E     Numerical Ranking Scoresheet

MONS1 0001556

## PHASE 1 INITIAL SITE INVESTIGATION REPORT

### 1.0 INTRODUCTION

This Phase 1 Initial Site Investigation Report presents the results of the Preliminary Response Actions undertaken at the property currently owned by O'Donnell Sand & Gravel, Inc. (O'Donnell) located off Alford Street in both Everett and Boston, Massachusetts (the Property), pursuant to 310 CMR 40.0400. The property is approximately 35 acres located off Route 99 adjacent to the Mystic River (Figure 1 - Locus Map). The Massachusetts Department of Environmental Protection (DEP) assigned Release Tracking Number 3-13341 as shown by the Notice of Responsibility (NOR) letter dated February 22, 1996 (see Appendix'A). O'Donnell is listed as a Potentially Responsible Party (PRP) for the property. O'Donnell is located on Marion Drive, P.O. Box 243, Kingston, MA 02364. Ms. Mary O'Donnell is the contact on this project and can be reached at (617) 585-6531.

There were two areas of concern identified in the initial test pit investigation at the Property. The first was in the northern area of the Property where lead and arsenic contaminated soil was identified above the reportable concentrations. The second area was to the south adjacent to the Mystic River where low pH groundwater was identified. The letter report summarizing the test pit investigation was submitted to the DEP as requested in the NOR (see Appendix B). The Plot Plan of the entire property is shown in Figure 2. The Property is currently being used to stockpile Deer Island glacial till and as a construction yard for Modern Continental, Inc. Previous use of the Property is shown on Figure 3, which is a Base Map from a plan entitled Merrimac Chemical Company, Inc. (Chemical Works) Everett, MA, dated 11/23/33. The Compiled Plan of Land in Everett & Boston, MA by Miller & Nylander Co. in 1983, showing the Property Line both in Everett and Boston, is shown as Figure 4. The structures on the Figure 4 plan are no longer present.

MONS1 0001557

A general description of the land use around the disposal site is divided between warehouse/ marine industrial and commercial, as shown on Figure 1. The Mystic River is directly to the southwest of the site and to the west of the Property are the MBTA railroad tracks, then the Monsanto Chemical Company site. To the east of the Property is a small empty lot, then Route 99 and, on the east side of Route 99, is the Boston Edison Mystic Station Power Plant. To the North of the property is the MBTA bus repair facility. The estimated number of on-site workers at the property is 20. The estimated residential population within the 1/2-mile radius of the disposal site is greater than 1,000, to the east in the Everett neighborhood east of Route 99. The property is approximately 34.96 acres with several small trailers and storage sheds and the glacial till stock pile which is approximately half a million cubic yards. There are no institutions within 500 feet of the disposal site.

The work was undertaken and performed in accordance with generally accepted environmental assessment practices. No other warranty is expressed or implied.

## 2.0 DISPOSAL SITE HISTORY

### 2.1 Owner/Operator and Operations History

The present owner is O'Donnell Sand & Gravel, Inc. and Rosen Construction Ventures, Inc. The Property was previously owned by Boston Edison who reportedly purchased the Property from Monsanto Chemical Company. Historically, the Property was owned by the Merrimac Chemical Company.

### 2.2 Oil and Hazardous Materials (OHMs) Use and Storage History

Figure 3 shows a sketch of the Merrimac Chemical Company site, dated 1933, which includes buildings on both sides of the railroad tracks. The Figure has written descriptions of the chemical stockpiles and uses of the different buildings at the site. On the present day Monsanto site there are descriptions of ammonia, nitric acid, sulfuric acid, phenol still, hydrochloric & bisulfate and

MONS1 0001558

merchlor. At the Alford Street Property there are descriptions of sulfuric acid, sodium bisulfate, alum mud pond, ferric sulfate, sulphur pile 35 ft. high and pyrites cinder 30 ft. high.

## 2.3 Release & Waste Management History

There was no release history available in the DEP, City of Everett Fire Department or Board of Health files. The waste management history for the site was not determined since the Property was abandoned for at least ten years prior to the recent use as a stockpile area and construction yard.

## 2.4 Environmental Permits and Compliance History

The review of local, state and federal agency records allows for an overview of the environmental history of a property. The records are usually up-to-date and provide information relative to reported spills and leaks which have occurred on a property. Although it is not a fail-safe method of assuring that there is no source of contamination on site or that there isn't a threat looming off the Property, when combined with the information and data provided from other sources, including the environmental property inspection, it presents a relatively reasonable picture of the Property and its recorded environmental condition.

## 2.4.1 Municipal Agency File Review

To obtain information concerning the possible release of hazardous material or oil at or near the study site, CES contacted the Everett Fire Department and Board of Health to review files on the Property.

- On January 8, 1997, CES contacted the Everett Fire Department Fire Prevention Bureau concerning the subject site (see Appendix A). According to the Fire Prevention Officer on duty there are no records available for the Property and he is not aware of any underground storage tanks (UST) or spills related to OHMs at the Property.

MONS1 0001559

- The Everett Health Department did not have any records of OHM violations other than the NOR that is attached in Appendix A.

- The Property is served by the municipal water and sewer system (see Figure 4 for utilities) and, based on the review of the Water Supply Protection Atlas for the surrounding area, there are no existing public water supplies within one mile of the site.

- Figure 4 shows the utilities servicing the property which include gas, electric and telephone. Many of the utilities on the plan are no longer in use.

### 2.4.2 Review of the State Environmental Agency Files

The purpose of the file review is to discover any reported violations of Chapter 21E of the Massachusetts General Laws (MGL), in particular, spills or releases of hazardous materials or oils into the environment. A review of the Massachusetts Department of Environmental Protection (DEP) Spill Response Files, town general files and specific property DEP files was conducted on December 23, 1996 at the DEP's Northeast Regional Office in Woburn, MA. The information provided appears on the DEP's October 21, 1996 Sites List and the November 4, 1996 Standard Release Report List. A review of the state records provided the following information:

- The Property is not listed as a "Location To Be Investigated" (LTBI).

- The Property is not listed as a "Confirmed Disposal Site" (CDS).

- There is a spill or leak incident on record for this Property.

- There are abutting or proximate properties listed on the State's "List of Transition and Tier Classified Sites" (Table 2).

MONS1 0001560

TABLE 2
List of Transition & Tier Classified Sites
Everett, Massachusetts

| Site Name | Address | Hazard | Status | RTN # |
|---|---|---|---|---|
| Sunoco Station | 38 Broadway | Petrol | Phase 1 | 3-2733 |
| MBTA | 80 Broadway | Petrol | LTBI Ph 1 | 3-312 |
| Ciro's Foreign Auto | 107 Broadway | Petrol | LTBI PA | 3-2858 |
| FMR Gas Station | 176 Broadway | Petrol | LTBI | 3-1909 |
| Property | 178 Broadway | Both | LTBI PA | 3-4075 |
| Monsanto Chemical | Mystic View Road | Both | Tier 2 Ph 2 | 3-313 |
| Monsanto Fund Land | Mystic View Road | Both | Tier 2 Ph 2 | 3-4200 |
| Monsanto Mfg. & N. Fill Area | Mystic View Road | Both | Tier 2 Ph 2 | 3-4425 |
| Boston Edison | Mystic Station | Haz | PA | 3-1109 |
| Subject Property | Alford Street | Haz | PA | 3-13341 |

• There were numerous incident reports in the DEP spill files for sites greater than 2,000 feet from the Property which do not appear to affect the site and were not included in this report.

The closest Tier Classified site is the Monsanto Chemical Mystic View Road which is located across the railroad tracks to the west of the Property. The Monsanto site has three different DEP Release Tracking Numbers, as shown in Table 2. The Monsanto site is an 82-acre former chemical manufacturing facility in use since 1847. Monsanto ceased operations at the facility in 1992 and has recently conducted demolition activities of the aboveground structures. The main chemicals of concern at the Monsanto site include phthate, adipate plasticizers, PCBs, phenols, calcium sulfate, elemental sulfur and metals (lead and arsenic).

MONS1 0001561

CES also reviewed the MASS GIS/BWSC Priority Resources Map #125 Boston North Quadrangle. No existing public water supplies or other priority resources are located within one mile of the subject site.

## 3.0 HYDROGEOLOGICAL CHARACTERISTICS

The topography of the Property and surrounding area is relatively flat. The southwestern boundary of the property abuts the Mystic River.

CES supervised the installation of eight test pits on August 25, 1995, as described in the Test Pit Soil Sample Results letter in Appendix B. During the advancement of test pits at the disposal site, the surficial geology was found to consist of grey till fill with very dense fine sand, silt and fine gravel at the surface to a depth of approximately six to eight feet. Moist to wet organic peat and marine clay was observed from a depth of four feet to twelve feet. The groundwater at the disposal site is located approximately five feet below ground surface (bgs). From the triangulation of groundwater elevations of the monitoring wells, CES identified the groundwater flow to be traveling in a southerly direction towards the Mystic River, as shown of Figure 2. The direction of groundwater flow is likely to be affected by the tidal changes known to influence the Mystic River.

On December 17 and 18, 1996, CES supervised the installation of seven soil boring/monitoring wells (CES-1 through 7) at the disposal site. Monitoring wells MW-1 through 7 were sampled on December 27, 1996. The soil boring logs with monitoring well installation details and the groundwater sampling logs are shown in Appendix C. Split spoon samples were collected continuously to a depth of 14 feet bgs at each well location. Each split spoon was screened with a PID in the field. Two grab samples were collected from each boring for metals and TPH/GC analysis. Locations CES-3, 4 and 5 also had soil sample analysis for reactive sulfides.

MONS1 0001562

The monitoring wells were constructed of two-inch ID Schedule 40 PVC pipe with flush threads and end caps. The screen sections of each well were constructed of .010-inch slotted, two-inch ID Schedule 40 PVC pipe with flush threads. The well screen in each well was installed to intercept the elevation of the upper level groundwater. Following placement of the riser pipe and screen section of each well, the annular space was filled with washed silica sand to a level approximately three feet from grade. One foot of bentonite was used as a seal above the sand. Both above-ground protective casings and flush-mounted protective casings were then placed at grade and sealed with concrete to complete installation. Table 3.1 outlines the monitoring well construction details.

Table 3.1
Monitoring Well Details

| Well Number | Well Depth (ft) | Depth to Groundwater (ft) 12/27/96 | Top of Casing Elevation (ft)* | Groundwater Elevation (ft)* |
|---|---|---|---|---|
| CES-1 | 11 | 4.35 | 102.92 | 98.57 |
| CES-2 | 13 | 8 | 101.96 | 93.96 |
| CES-3 | 13 | 6.6 | 103.55 | 96.95 |
| CES-4 | 13 | 7.75 | 104.00 | 96.25 |
| CES-5 | 13 | 5.43 | 103.07 | 97.64 |
| CES-6 | 14 | 4.37 | 101.15 | 96.78 |
| CES-7 | 11 | 4.1 | 102.05 | 97.95 |

*Assumed Elevation datum of 100 feet.

MONS1 0001563

## 4.0 NATURE AND EXTENT OF CONTAMINATION

Analytical Laboratory reports of the soil and groundwater analyses from the CES investigations are shown in Appendix D.

Soil and groundwater samples collected from the site were screened by CES during their respective studies for total volatile organic compounds (VOCs) using a photoionization detector (PID). The results were all at background levels. It should be noted that it was raining and 40°F during the field work.

There were 14 soil samples collected for laboratory analysis by CES on December 17 and 18, 1996. The samples were analyzed at Alpha Analytical Laboratories for RCRA 8 metals, Total Petroleum Hydrocarbons (TPH) by GC/FID and reactive sulfides. Table 4-1 shows a summary table of the key contaminants detected. The soil sample results from CES-1, 2, 3 and 4 had levels of arsenic (30 mg/Kg) and lead (600 mg/Kg) above the applicable reportable concentrations (RC-S2). The levels of arsenic ranged from 33 to 1,400 mg/Kg. The levels of lead ranged from 630 - 11,000 mg/Kg. The levels of TPH, reactive sulfide and the other six metals were below the applicable reportable concentrations and frequently not detected.

The CES analytical sampling of groundwater in the monitoring wells detected reportable concentrations of arsenic, lead and pH. There were seven groundwater samples collected from the seven newly installed monitoring wells for laboratory analysis. The samples were analyzed at Alpha Analytical Laboratories for RCRA 8 metals, Total Petroleum Hydrocarbons (TPH) by GC/FID and pH. Table 4-2 shows a summary table of the key contaminants detected. The groundwater sample results from CES-2, 3, 4 and 5 had levels of arsenic, lead and pH above the applicable Reportable Concentrations for Groundwater 2 (RC-GW2); which are 0.4 mg/l, 0.3 mg/l and 2.5-12.5, respectively. The levels of arsenic ranged from 1.03 - 7.85 mg/l. The levels of lead ranged from 0.05 - 1.2 mg/l. The levels of TPH and the six other metals were below the applicable reportable concentrations and were frequently not detected.

MONS1 0001564

Table 4-1
Summary of Soil Sample Results
Alford Street, Everett, MA
December 17 - 18, 1996

| Location/ Depth (ft) | Arsenic (mg/Kg) | Lead (mg/Kg) | TPH (mg/Kg) | Reactive Sulfide (mg/Kg) |
|---|---|---|---|---|
| RC-S2 | 30 | 600 | 2,500 | 500* |
| CES-1 (5-7) | 200 | 630 | NS | NS |
| CES-1 (7-9) | 180 | 280 | ND | NS |
| CES-2(7-9) | 380 | 110 | ND | NS |
| CES-2(9-11) | 1,400 | 880 | NS | NS |
| CES-3(5-9) | 290 | 11,000 | 2,000 | ND |
| CES-3(9-11) | 9.4 | 130 | 360 | ND |
| CES-4(5-7) | 33 | 900 | ND | ND |
| CES-4(7-9) | 140 | 21 | ND | ND |
| CES-5(5-9) | 18 | 41 | ND | ND |
| CES-5(11-13) | 6.7 | 31 | 280 | 28 |
| CES-6(7-9) | 14 | 81 | 210 | NS |
| CES-6(9-13) | 5.8 | 15 | 890 | NS |
| CES-7(5-7) | 9.9 | 200 | ND | NS |
| CES-7(7-9) | 5.8 | 76 | ND | NS |

NS = Not Sampled
ND = Not Detected
* = EPA Guidance Value, there is no MCP Reportable Concentration for reactive
    sulfide

MONS1 0001565

Table 4-2
Summary of Groundwater Sample Results
Alford Street, Everett, MA
December 27, 1996

| Location | Arsenic (mg/l) | Lead (mg/l) | TPH (mg/l) | PH |
|----------|----------------|-------------|------------|-----------|
| RC-GW2 | 0.4 | 0.03 | 50 | 2.5 - 12.5 |
| CES-1 | 0.38 | ND | ND | 6.6 |
| CES-2 | 7.85 | 0.05 | ND | 5.2 |
| CES-3 | 1.03 | 1.2 | ND | 2.8 |
| CES-4 | 3.37 | 0.31 | ND | 2.4 |
| CES-5 | 0.049 | 0.33 | ND | 4.6 |
| CES-6 | ND | ND | ND | 6.9 |
| CES-7 | 0.017 | 0.06 | ND | 6.0 |

ND = Not Detected

## 5.0 MIGRATION PATHWAYS AND EXPOSURE POTENTIAL

The entire Property has been covered with a one to three-foot thick layer of the low permeability glacial till from Deer Island and is often used as a landfill capping material. This material acts as a barrier cap and greatly reduces the migration pathway for surface exposure to the contaminated soil and groundwater. Based on the presence of arsenic and lead in the soil; and arsenic, lead and pH in the groundwater below the site at a depth of 4 to 14 feet below ground surface, exposure potential for this disposal site is low.

MONS1 0001566

Below the contaminated fill, ranging in depth from 4 to 9 feet, is the marine clay which acts as an impermeable barrier for the groundwater and soil contamination. There is no air migration pathway due to the impermeable layer of glacial till above the contaminated soil.

There is currently no known or potential human exposure to hazardous materials present at the disposal site by inhalation, dermal contact or ingestion. There may be a need to evaluate the future potential for impact of hazardous materials which have been identified at the disposal site to the Mystic River as an environmental receptor. This impact is anticipated to be nominal due to the use, size and condition of the receptor water and the low mobility of the chemicals found on the site. The primary area of interest would be the relatively low pH (i.e., just below 2.5) of the groundwater on a small portion of the site. The effect of such groundwater on the large volume of water in the Mystic River may be indiscernible.

## 6.0 SUMMARY AND CONCLUSIONS

The contaminants of concern at the property are arsenic, lead and low pH on the Property. The laboratory results of the eight test pits and seven soil boring/monitoring well installations revealed reportable concentrations of the above contaminants. The majority of the Property is currently being used to stockpile glacial till from Deer Island and the remainder of the Property has been capped with a one to three-foot thick layer the glacial till and is being used as a construction lay-down yard for the Central Artery Project.

Based on the Phase I investigation results, it is our professional opinion that there is no need to conduct an Immediate Response Action (IRA) at the site, as described in 310 CMR 40.000.

A Tier Classification is being submitted at the same time as this Phase I under separate cover. The results of the Numerical Ranking Scoring was 266 and it is proposed to be a Tier II classified site.

MONS1 0001567

## 7.0 LIMITATIONS AND CERTIFICATIONS

The information presented herein is the result of a limited study of readily available records that are normally reviewed during this type of process and the observations made during an on-site inspection of the subject Property and are not represented as being the result of a comprehensive investigation of the Property.

The professional opinions expressed are formed from evaluation of the information available at the time of the study and are made from the perspective of an environmental engineer with more than twenty-eight years of experience with environmental regulatory issues.

FOR CONSULTING ENGINEERS & SCIENTISTS, INC.

_____          1/15/97
Bennett D. Edgar, Senior Geologist          Date

_____          JANUARY 15, 1997
Richard R. DeBenedictis, P.E., LSP          Date

MONS1 0001568

# FIGURES

plus oversized
maps &
January 14, 1983
Compiled Plan &
Land in Everett. &
Boston
by: Consulting Engineers &
Scientists
Ben Edgar
10 Riverside Dr
02347

Figure 3
showing alford St.
Site & Monsanto
site

MONS1 0001569



SCALE 1:24 000

QUADRANGLE LOCATION

MARY O'DONNELL CONSTRUCTION CO, INC.
ALFORD STREET     EVERETT, MA

Consulting Engineers & Scientists, Inc.
10 Riverside Drive   Lakeville, MA  02347
508-946-3400            FAX 508-946-3404

| LOCUS MAP | FIGURE 1 |
| --- | --- |

MONS1 0001570

# APPENDIX A

## Correspondence

MONS1 0001571



COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
METROPOLITAN BOSTON - NORTHEAST REGIONAL OFFICE

FEB 27 1996

WILLIAM F. WELD
Governor

ARGEO PAUL CELLUCCI
Lt. Governor

TRUDY COXE
Secretary

DAVID B. STRUHS
Commissioner

URGENT LEGAL MATTER:  PROMPT ACTION NECESSARY
CERTIFIED MAIL:  RETURN RECEIPT REQUESTED

FEB 2 2 1996

Ms. Mary O'Donnell
P.O. Box 243
Kingston, MA 02364

RE: Everett
Alford Street
RTN #3-13341

NOTICE OF RESPONSIBILITY;
M.G.L. c. 21E & 310 CMR
40.0000

Dear Ms. O'Donnell:

    Information contained in a Release Notification Form (RNF)
submitted to the Department of Environmental Protection (the
Department or DEP) on January 18, 1996 and submitted by Ms. Mary
O'Donnell indicates that there is or has been a release of oil
and/or hazardous material at the above-referenced property which
exceeds a "120 day" reporting threshold (310 CMR 40.0315) and
which requires one or more response actions.

    Based on this information, the Department has reason to
believe that the subject property or portion(s) thereof is a
disposal site as defined in the Massachusetts Oil and Hazardous
Material Release Prevention and Response Act, M.G.L. c. 21E, and
the Massachusetts Contingency Plan, 310 CMR 40.0000 (the MCP).
The assessment and cleanup of disposal sites is governed by
M.G.L. c. 21E and the MCP.

    The purpose of this notice is to inform you of your legal
responsibilities under state law for assessing and/or remediating
the subject release. For purposes of this notice, the terms and
phrases used herein shall have the meaning ascribed to them by
the MCP unless the text clearly indicates otherwise.

10 Commerce Way  •  Woburn, Massachusetts 01801  •  FAX (617) 932-7615  •  Telephone (617) 932-7600  •  TDD # (617) 932-7679

Printed on Recycled Paper

**MONS1 0001572**

Ms. Mary O'Donnell
Page 2

## STATUTORY LIABILITIES

The Department has reason to believe that you (as used in this letter, "you" refers to Ms. Mary O'Donnell) are a Potentially Responsible Party (a PRP) with liability under M.G.L. c. 21E, § 5, for response action costs. Section 5 makes the following parties liable to the Commonwealth of Massachusetts: current owners or operators of a site from or at which there is or has been a release/threat of release of oil or hazardous material; any person who owned or operated a site at the time hazardous material was stored or disposed of; any person who arranged for the transport, disposal, storage or treatment of hazardous material to or at a site; any person who transported hazardous material to a transport, disposal, storage or treatment site from which there is or has been a release/threat of release of such material; and any person who otherwise caused or is legally responsible for a release/threat of release of oil or hazardous material at a site.

This liability is "strict", meaning it is not based on fault, but solely on your status as an owner, operator, generator, transporter or disposer. It is also joint and several, meaning that you may be liable for all response action costs incurred at the site, regardless of the existence of any other liable parties.

The MCP requires responsible parties to take necessary response actions at properties where there is or has been a release or threat of release of oil and/or hazardous material. If you do not take the necessary response actions, or fail to perform them in an appropriate and timely manner, the Department is authorized by M.G.L. c. 21E to have the work performed by its contractors. By taking such actions, you can avoid liability for response action costs incurred by the Department and its contractors in performing these actions, and any sanctions which may be imposed for failure to perform response actions under the MCP.

You may be liable for up to three (3) times all response action costs incurred by the Department. Response action costs include, without limitation, the cost of direct hours spent by Department employees arranging for response actions or overseeing work performed by persons other than the Department or their contractors, expenses incurred by the Department in support of those direct hours, and payments to the Department's contractors. (For more detail on cost liability, see 310 CMR 40.1200.)



**MONS1 0001573**

Ms. Mary O'Donnell
Page 3

The Department may also assess interest on costs incurred at the rate of twelve percent (12%), compounded annually. To secure payment of this debt, the Commonwealth may place liens on all of your property in the Commonwealth. To recover the debt, the Commonwealth may foreclose on these liens or the Attorney General may bring legal action against you.

In addition to your liability for up to three (3) times all response action costs incurred by the Department, you may also be liable to the Commonwealth for damages to natural resources caused by the release. Civil and criminal liability may also be imposed under M.G.L. c. 21E, § 11, and civil administrative penalties may be imposed under M.G.L. c. 21A, § 16 for each violation of M.G.L. c. 21E, the MCP, or any order, permit or approval issued thereunder.

## NECESSARY RESPONSE ACTIONS

The subject site shall not be deemed to have had all the necessary and required response actions taken unless and until all substantial hazards presented by the site have been eliminated and a level of No Significant Risk exists or has been achieved in compliance with M.G.L. c. 21E and the MCP. In addition, the MCP requires persons undertaking response actions at disposal sites to perform Immediate Response Actions (IRAs) in response to "sudden releases", Imminent Hazards and Substantial Release Migration. Such persons must continue to evaluate the need for IRAs and notify the Department immediately if such a need exists.

The Department has determined that the following response actions are necessary at the subject site:

An immediate assessment is necessary at the subject site to respond to the low pH level in the groundwater. If you determine that a release of oil or hazardous material exceeding Reportable Quantity or Reportable Concentration occurred at this Site, you must notify the Department pursuant to 310 CMR 40.0000.

Initial site investigation activities in accordance with 310 CMR 40.0405 are necessary. In addition, unless an RAO is submitted earlier, a completed Tier Classification Submittal

**MONS1 0001574**

Ms. Mary O'Donnell
Page 4

pursuant to 310 CMR 40.0510, and, if appropriate, a
completed Tier I Permit Application pursuant to 310 CMR
40.0700, must be submitted to DEP within one year of the
initial date notice of a release is provided to the
Department pursuant to 310 CMR 40.0300 or from the date the
Department issues a Notice of Responsibility (NOR),
whichever occurs earlier.

It is important to note that you must dispose of any
Remediation Waste generated at the subject location in accordance
with 310 CMR 40.0030 including, without limitation, contaminated
soil and/or debris. Any Bill of Lading accompanying such waste
must bear the seal and signature of an LSP or, if the response
action is performed under the direct supervision of the
Department, the signature of an authorized representative of the
Department.

You should respond to the Department in writing no later
than 5:00 pm on March 29, 1996 regarding your investigatory
response actions relative to the low pH level in the groundwater.

The Department encourages parties with liabilities under
M.G.L. c. 21E to take prompt action in response to releases and
threats of release of oil and/or hazardous material. By taking
prompt action, you may significantly lower your assessment and
cleanup costs and avoid the imposition of, or reduce the amount
of, certain permit and annual compliance fees for response
actions payable under 310 CMR 4.00.

If you have any questions relative to this notice, you
should contact Lilla Dick at the letterhead address or (617) 932-
7600. All future communications regarding this release must
reference the Release Tracking Number (RTN #3-13341) contained in
the subject block of this letter.

Very truly yours,

Kingsley Ndi
Chief, Notification Branch

KN/LD
cc:  Everett Board of Health
     Everett Fire Department

     DEP data base/file

Version - May 8, 1995

## RESTRICTIVE COVENANT

THIS RESTRICTIVE COVENANT, dated as of May ___, 1995, by O'DONNELL SAND & GRAVEL, INC., a Massachusetts corporation, and having an address at P.O. Box 263, Marion Drive, Kingston, MA 02364, for itself and its successors and assigns ("Grantor") and for the benefit of the City of Everett, Massachusetts (the "City"), a political subdivision of the Commonwealth of Massachusetts.

WHEREAS, Grantor is the owner of certain property, more particularly described in Exhibit A hereto (the "Property") located in the cities of Everett and Boston, Massachusetts; and

WHEREAS, Grantor desires to subject so much of the Property as now lies within the limits of the City of Everett (the "Everett Portion") to certain restrictions, in accordance with the provisions of General Laws, Chapter 184, Section 27 et seq., as to the future uses for which the Everett Portion may be used;

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby agrees and declares that: (i) any temporary storage, stockpiling or processing of any natural fill material, sand or gravel brought onto the Everett Portion shall be used exclusively for the planned improvement and development (which may include environmental remediation) of that certain property (the "Development Site") described on Exhibit B annexed hereto, lying to the north of the Property and now owned by Monsanto Company and/or Monsanto Fund; and (ii) from and after the fifth anniversary of the date hereof, or the date on which development of the Development Site as a retail shopping center is complete, whichever occurs first, neither the Everett Portion nor any part thereof shall thereafter be used for the temporary storage, stockpiling or processing of natural fill material, sand or gravel for use elsewhere, or for cement or concrete manufacturing, storage or processing purposes, or for similar purposes. For purposes of clarification, it is the intent of this Restriction that any such temporary storage on the Everett Portion shall be only in connection with the development of the Development Site, and shall cease when such development is complete, but in no event beyond the fifth anniversary hereof. This restriction shall not apply to the permanent placement on the Everett Portion of any such fill, gravel, rock or other natural material in connection with the preparation of such stockpile or the proper remediation of any environmental contamination in, on or under the Property.

It is the Grantor's intention that the term of this Restrictive Covenant shall perpetual, but in no event less than thirty (30) years, as provided in General Laws, Chapter 184, Section 27 et seq., and will be further extended as provided therein. The Restrictive Covenant may be waived or released, in whole or in part, by written instrument executed by the City and duly recorded and/or registered with the Middlesex County (South) Registry of Deeds and the Middlesex County (South) Registry District of the Land Court.

The failure of the City to enforce the foregoing Restriction shall not be deemed a waiver of its right to do so thereafter. If any provision of this Restrictive Covenant, or its applicability to any person or circumstance, shall be held invalid, the remainder hereof, or the application to other persons or circumstances, shall not be affected.

Version: May 8, 1995

For Grantor's title, see Quitclaim Deed from Boston Edison Company, dated March 6, 1995, and:

(i)    recorded with the Middlesex County (South) Registry of Deeds in Book 25212, Page 463; and

(ii)   filed with the Middlesex County (South) Registry District of the Land Court as Document No. 969448, noted on Certificate of Title No. _____, Registration Book ____, Page ____.

IN WITNESS WHEREOF, the Grantor has caused this Covenant to be duly executed and delivered, as an instrument under seal, as of the day and year first above written.

O'DONNELL SAND & GRAVEL, INC.

By:_____
Name:
Title: (Vice) President


By:_____
Name:
Title: (Assistant) Treasurer


COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                                  May __, 1995

Then personally appeared the above-named _____ ____ of O'Donnell Sand & Gravel, Inc., and acknowledged the foregoing to be his free act and deed and that of O'Donnell Sand & Gravel, Inc., before me.

Notary Public
My Commission Expires:

TJS45870.1-1

- 2 -

MONS1 0001577

Version – May 8, 1995

## QUITCLAIM DEED

O'DONNELL SAND & GRAVEL, INC., a Massachusetts corporation, and having an address at P.O. Box 243, Marion Drive, Kingston, MA 02364 ("Grantor"), in consideration of Ten Dollars ($10.00), receipt of which is hereby acknowledged, hereby grants, WITH QUITCLAIM COVENANTS, to ROSEN CONSTRUCTION VENTURES, INC., a Florida corporation having an address c/o Rosen Associates, Inc., 401 Edgewater Park, Wakefield, MA ("Grantee"), a fifty-one percent (51%) undivided interest in the land (together with any improvements thereon) lying partly in Everett, Middlesex County, and partly in Boston, Suffolk County, Massachusetts, bounded and described as set forth in <u>Schedule 1</u> annexed hereto and made a part hereof, and subject to and with the benefit of matters of record.

The Grantor warrants that the subject property does not constitute all or substantially all of the assets of Grantor. This Deed is being executed in triplicate, as the land conveyed consists in part of registered land lying within Suffolk County, in part of registered land lying in Middlesex County (South), and in part of unregistered land lying in Middlesex County (South). For Grantor's title, see Quitclaim Deed from Boston Edison Company, dated March 6, 1995, and:

(i)     filed with the Suffolk County Registry District of the Land Court as Document No. 523933, noted on Certificate of Title No. 109387, Registration Book 542, Page 187;

(ii)    recorded with the Middlesex County (South) Registry of Deeds in Book 25212, Page 463; and

(iii)   filed with the Middlesex County (South) Registry District of the Land Court as Document No. 969448, noted on Certificate of Title No. _____, Registration Book ____, Page ____.

- 1 -

MONS1 0001578



# APPENDIX B

# CES Test Pit Summary Report with Appendices

MONS1 0001579

# CONSULTING ENGINEERS & SCIENTISTS

October 2, 1995
Job No. 95217-002

Ms. Mary O'Donnell
P. O. Box 243
Kingston, MA 02364

Reference:    Alford Street, Everett, MA
              Test Pit Soil Sample Results from August 25, 1995

Dear Ms. O'Donnell:

On August 25, 1995, Consulting Engineers & Scientists, Inc. (CES) supervised a Test Pit survey performed by an O'Donnell track excavator in the Pier area of the Alford Street site in Everett, MA. Please see Figure 1 Locus Map and the attached preliminary plan. The purpose of the test pitting was to identify the depth to groundwater and collect soil samples for laboratory analysis. The site is currently being used to stockpile clean glacial till and was reported to have previously been used as a storage/stockpiling facility for sulfur.

The attached site plan shows the locations of the eight test pits at the site. The test pits were performed at intermittent distances around the perimeter of the site where the glacial till stockpiles were not present. The attached photographs (Figures 2 and 3) show the unusual colors in the soils of test pits 4 and 5. Table 1 is a test pit log describing the materials encountered and the results of the photo-ionization detector (PID), Multi-gas Personal Monitor for hydrogen sulfide gas ($H_2S$) readings, and pH readings with a digital pH meter.

Soil samples were collected from each Test Pit, at depths of 5 to 8 feet below surface, for laboratory analysis at Inchcape Testing Services. The laboratory analytical reports are attached. All eight Test Pit samples (TP-1 through TP-8) were analyzed for sulfate and reactive sulfides. Samples from test pits TP-2, TP-3, and TP-8 were also analyzed for volatile organic hydrocarbons (VOCs) and total petroleum hydrocarbons (TPH). RCRA 8 metals were analyzed at location TP-4 and composite samples from TP-5/TP-6 and TP-7/TP-8 were also analyzed for RCRA 8 metals.

The results of the soil sampling showed very low levels of reactive sulfides ranging from < 6 to 20 mg/Kg. There is no DEP reportable concentrations listed in the MCP, although the EPA guidance level for reactive sulfide is 500 mg/Kg. The levels of sulfate ranged from 580 - 27,000 mg/Kg. There are no DEP or EPA reportable concentration for sulfate. The results of the VOCs and TPH analysis were all at background levels or below the detection limit.

Consulting Engineers & Scientists, Inc.
10 Riverside Drive
Lakeville, Massachusetts 02347-1676
508-946-3400     Fax 508-946-3404

MONS1 0001580

Ms. Mary O'Donnell                    Page 2                    October 2, 1995

The results of the soil sample analysis for the RCRA 8 metals revealed reportable concentrations of Total Arsenic (140 – 180 mg/Kg) at locations TP-4 and TP-5/TP-6 and Total Lead (650 – 7,800 mg/Kg) at all three sampled locations.  310 CMR 40.1600 shows reportable concentrations in category RC-S2 to be 30 mg/Kg for Arsenic and 600 mg/Kg for Lead.  The remainder of the analysis for the RCRA 8 metals were below the reportable concentrations.  The field pH meter reading of the groundwater in TP-4 revealed a pH of 1.5.  According to 310 CMR 40.0347, a material is a hazardous material if an aqueous sample exhibits corrosive properties and has a pH less than 2.0 or greater than 12.5.

As required by the Massachusetts Contingency Plan (MCP) regulations, 310 CMR 40.0300, CES recommends notification to the DEP of the releases to the environment of hazardous material greater than the applicable Reportable Concentrations or as defined by the MCP within 120 days of obtaining knowledge of the release.

Please note that there are certain actions that should be taken to  further define the extent of the problem and to remediate the contamination.  There is also a possibility that once better defined; a Risk Analysis, conducted in accordance with the MCP, may result in a minimal or "No Clean-Up" option being exercised, or the sealing of the site and an Activity and Use Limitation (AUL) being recorded with the property deed.  The AUL would notify all future property owners of the problem and restrict use to those activities which could not create pathways for contaminants to reach sensitive receptors.

Once you have reviewed this information, we should discuss the various future actions available.

If you have any questions, please feel free to call me at 508-946-3400.

Very truly yours,

CONSULTING ENGINEERS & SCIENTISTS, INC.

Richard R. DeBenedictis, P.E., LSP
President

RRD/bde/rld

Ms. Mary O'Donnell                     Page 3                     October 2, 1995

TABLE 1

ALFORD STREET TEST PIT LOG AND SURVEY RESULTS

| Location | PID* (ppm) | pH | H$_2$S (%) | Material Description |
|---|---|---|---|---|
| August 25, 1995 | | | | |
| TP-1 | 0<br>0 | 5.9 | 0<br>0 | 0-1.5' Gray Glacial TILL<br>1.5-9.5' Sandy FILL w/ gravel & cobbles<br>9' Groundwater |
| TP-2 | 4<br>110 | 6.2 | 0 | 0-3' Glacial Till and Fill w/wood & brick<br>3-8.5' Black Tarry soil w/elasticity<br>8.5' Groundwater |
| TP-3 | 0<br>0<br>8<br>0 | NA | 0<br>0.1 | 0-2' Glacial Till and Loamy Fill<br>2-3' Reddish Purple sandy soil<br>3-5' Yellow sandy soil(sulfur)<br>5' Petroleum odor<br>5-11' Dark Grey Clay<br>No Groundwater Found |
| TP-4 | 0<br>0 | 1.5 | 0<br>0<br>0 | 0-2' Fill w/ brick, rebar, concrete<br>2-8' Layers of Reddish Purple and Yellow Substance (Photo 1)<br>10' Groundwater |
| TP-5 | 0<br>0 | NA | 0<br>0 | 0-3' Fill w/ wood, brick and concrete<br>3-5' Reddish Purple sandy soil<br>5-8' Grey Sandy Clay<br>8-10' Grey Clay<br>No Groundwater |
| TP-6 | 0<br>0 | 4.2 | 0<br>0<br>0 | 0-3' Fill w/ Brick, cobbles, trace yellow<br>3-5' Yellowish Sand<br>5-7' Dark Grey Silt<br>7-9' Dark Grey Clay<br>9' Groundwater |

MONS1 0001582

Ms. Mary O'Donnell                    Page 4                    October 2, 1995

| Location | PID* (ppm) | pH | H$_2$S (%) | Material Description |
|---|---|---|---|---|
| TP-7 | 0 0 | NA | 0 | 0-3' Fill w/ wood brick and concrete<br>3-5' Fill dark black silty sand<br>5-10' Dark Grey Clay w/ trace peat<br>No Groundwater |
| TP-8 | 0 0 | NA | 0 | 0-3' Fill w/ brick, wood, and cobbles<br>3-8' Dark Grey silt and clay<br>8' Groundwater |

\* PID readings were conducted using the DEP Jar Headspace Method.
ppm    =    parts per million, calibrated with Isobutylene
NA    =    Not Analyzed

MONS1 0001583