# EXHIBIT G



LINCOLN
PROPERTY
COMPANY

EXPERT REPORT OF:

Donald P. Bouchard, MAI
Steven R. Foster, MAI
Lincoln Property Company
101 Arch Street, 18th Floor
Boston, MA 02110

IN THE MATTER OF:

Mystic Landing, LLC
v. Pharmacia Corp., et al.
Civil Action No: 04-10180 NMG

PREPARED FOR:

Hinckley, Allen & Snyder LLP
As Counsel to Mystic Landing, LLC
and Modern Continental Construction
Co., Inc.

DATE OF REPORT:

September 12, 2005



September 12, 2005

Gerald J. Petros, Esq.
Doreen Zankowski, Esq.
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775

RE:    *Market Value Estimate and Estimate of Damages*
       *As a Result of Environmental Contamination*
       *Mystic Landing Property, Route 99, Everett and Boston, Massachusetts.*

       *Mystic Landing, LLC v. Pharmacia Corp., et al.*
       *Civil Action No: 04-10180 NMG*

Dear Attorneys Petros and Zankowski:

In accordance with your authorization, we have prepared a complete self-contained appraisal report addressing the market value of the fee simple rights in the property captioned above. The purpose of this appraisal is to estimate the value of the property, assuming an effective valuation date of September 1, 2005.

The property is a large parcel of vacant land of 34.96 acres (24 acres of upland) situated primarily in the City of Everett with approximately 5 acres extending over the line into the City of Boston. This is a level waterfront site with frontage directly on the Mystic River. Because of its close proximity to the urban core, the land has been used in recent years as a construction staging, storage and lay-down area by Modern Continental Co. More recently is has been considered as a mixed-use development site for residential and office uses and a marina. As of the preparation of the report, the land is being marketed for sale by Cushman and Wakefield of Massachusetts and it has attracted the attention of retail and residential developers. A subject history and alternative land use options for the property will be discussed in this report in order to give the reader background on the property as well as its market context within the current real estate and capital markets environment.

We have also considered the presence of substances and chemicals on the property that will require remediation in order to achieve solution consistent with the requirements of Massachusetts General Laws, Chapter 21-E. After an evaluation of the property that has included consultation with land planning and environmental specialists, we have concluded that the contamination on the property has a negative impact on value because of the premium costs associated with its development, as well as the negative market reaction to these kinds of properties.

LINCOLN PROPERTY COMPANY
101 ARCH STREET
BOSTON, MA 02110
(617) 951-4100
(617) 737-3315 FACSIMILE

Hinckley, Allen & Snyder LLP
Mystic Landing, LLC v. Pharmacia Corp., et al.
Civil Action No: 04-10180 NMG
September 12, 2005
Page Two

This appraisal report presents two value indications to the reader. The first is subject to a very specific hypothetical condition, ie., that the land is vacant and available for development to its highest and best use, but subject to an assumption that the property is not impacted by hazardous substances and chemicals. The second value estimate takes into consideration the impact of the contaminants on the use, utility and marketability of the site. The difference between the two value conclusions establishes the basis for the estimation of damages.

As a result of our research and analysis, we have concluded that the market value of the subject property as defined by the assumptions and limiting conditions noted herein, and as assumed to be free of contamination, as of September 1, 2005, was:

$19,200,000

Furthermore, it is our opinion that the market value of the property, in its as-is condition, subject to the impacts related to the environmental contamination, are most appropriately expressed in a range, as of September 1, 2005 as follows:

$9,160,000-$15,240,000

Based upon our findings and analysis, we have concluded that the damages associated with the presence of the identified environmental contamination on the property are most appropriately expressed in a rounded range, as of September 1, 2005 as follows:

$4,000,000 to $10,000,000

This letter is accompanied by a 142-page report that presents the data considered and the analysis conducted in the valuation of the subject property. This letter of transmittal is not a stand-alone document and should not be presented without the benefit of the complete report.

I want to thank you for the opportunity to be of assistance to you in this matter. If you have any questions or comments, please call us at (617) 951-4100.

Sincerely,

Donald P. Bouchard, MAI
MA Certified Gen. R.E. Appraiser #27

Steven R. Foster, MAI
MA Certified Gen. R.E. Appraiser #104

## TABLE OF CONTENTS

Page

Letter of Transmittal
Table of Contents ..................................................................................................... 1

### SECTION I: INTRODUCTION
Summary of Important Facts and Conclusions ................................................................ 3
General Assumptions and Limiting Conditions ............................................................. 13
Specific Assumptions and Limiting Conditions ............................................................ 15
Certification of Appraisers ...................................................................................... 16

### SECTION II:  EXECUTIVE SUMMARY
Executive Summary .............................................................................................. 19
Property Identification, Ownership and Sale History ..................................................... 19
Purpose of the Appraisal ........................................................................................ 20
Intended Use and Users of the Appraisal Report .......................................................... 20
Interest Appraised ................................................................................................ 20
Scope of Work ..................................................................................................... 21
Definition of Market Value ..................................................................................... 23
Report Summary ................................................................................................... 23

### SECTION III: THE MARKETPLACE
The Regional Marketplace ...................................................................................... 27
Real Estate Market Overview .................................................................................. 37

### SECTION IV: THE PROPERTY
The Property ....................................................................................................... 58
Zoning and Land Use Confolds ................................................................................ 64
Property Taxes .................................................................................................... 66

### SECTION V: HIGHEST AND BEST USE
Highest and Best Use ............................................................................................ 68

### SECTION VI:  VALUATION
Valuation ........................................................................................................... 80
Sales Comparison Approach .................................................................................... 82
Consideration of Market Value as Impacted by Contamination ........................................ 134

### SECTION VII:  RECONCILIATION
Reconciliation ..................................................................................................... 140

### SECTION VIII: ADDENDA
Qualifications of Appraisers

## CONSIDERATION OF MARKET VALUE AS IMPACTED BY CONTAMINATION

As discussed previously in this report, we have considered the findings of Rizzo Associates. In consultation with Dr. Hughto of Rizzo Associates, and in the reading of his report, we have estimated the market value of the subject site based upon the best information that is known to us at this time. We have relied upon Dr. Hughto's findings and consider them to be appropriate for consideration of a partial deduction necessary to achieve a market value estimate for the property in its current contaminated condition.

Typically there are two primary categories of damages associated with environmental contamination. The first is the cost to cure. This is a cost based figure of the professional services required to either clean the site to background levels or achieve an alternate satisfactory status for development consistent with an Activity and Use Limitation. These are out-of-pocket premium costs that must be borne as necessary expenditures required to achieve a compliant status for the property so that development, permitting, and financing can proceed.

A second element of damages has loosely been labeled "stigma." Stigma is also known as market resistance. *Real Estate Damages-An Analysis of Detrimental Conditions,* published by the Appraisal Institute, defines market resistance as:

> "market resistance refers to the risks and uncertainties, if any, associated with the negative reactions by the market towards a property that has a history of being damaged...related to market resistance are any risks and uncertainties associated with third party liability. This consideration relates primarily to litigation risk, but is somehow associated with a detrimental condition."[8]

---

[8] *Real Estate Damages-An Analysis of Detrimental Conditions,* The Appraisal Institute, Chicago, IL, 1999, p. 14

Risk and uncertainty vary, depending on the stage in the process. Impaired marketability and value typically occurs when there is the greatest element of uncertainty associated with environmental contamination. For example, the greatest decrease in property marketability occurs at the time of discovery when there is no indication of timing or probable clean-up costs (see charts in the addenda).

As the assessment of the environmental conditions and ongoing cleanup efforts towards a solution, uncertainty decreases and typically so would market resistance and resultant impacts on value.

The one thing real estate developers fear most is uncertainty. This is true because it eliminates their ability to forecast successful ventures and probable returns on investment.

With regard to the valuation of the subject property, at least one element of uncertainty is beginning to be reduced by virtue of the extensive environmental study conducted on the site by Rizzo Associates. According to Dr. Hughto, the environmental conditions at the site that would be necessary to address in order to achieve an Activity and Use Limitation consistent with the development as proposed on the site and as concluded within the highest and best use of this report, would be in the range of $2.1 million.[9].

We have examined these figures and the projected costs associated with the clean-up of the site. Our consideration of these costs has been performed through the prism of the real estate business and reflects the timing, range in cost, and contingencies associated with the achievement of a permanent environmental solution on the property. In addition, we have also discussed these matters

---

[9] See Rizzo Associates report

with Dr. Hughto in order to obtain a further understanding of the risks associated with these cost models.

Additional damages to contaminated property vary with timing, condition, and the relative confidence that can be placed in the environmental analysis and remediation outlook. Again uncertainty comes at a premium. Property value is ultimately determined by the behavior of buyers and sellers. The probable actions of participants must be considered as part of any evaluation of market resistance.

Faced with the prospect of acquiring the property as of the date of value here, September 1, 2005, what circumstance would be considered by a potential buyer? We have discussed the matter with environmental experts and commercial and industrial brokers, and commercial lenders, as well as relied upon published works such as the text noted above. We have also based our findings upon our experience in dealing with a host of commercial property types over 25 years. In summary, we believe that additional damages due to "stigma" or market resistance are the result of the following primary reasons:

The buyer would want a premium for the added administrative requirements of dealing with this additional dimension of development, site and regulatory management;

The buyer would demand a higher level of profit as a reward for cleaning up the property and would want to create value above that solely associated with his/her cost to cure the problem;

The buyer would recognize potential and atypical risks associated with timing and possible development delays beyond what is normally anticipated for non-contaminated projects.

Any prudent buyer would understand that the seller of a contaminated site is constrained by a smaller universe of potential buyers. Such a seller has less than typical bargaining power at the negotiating table than would otherwise be the case with an environmentally compliant site.

A buyer would have to approach the financing of a non-compliant site differently and face additional financing hurdles and potential guarantees. Discussions with bankers at Boston Private Bank, Capital Crossing Bank and Lawrence Savings Bank have confirmed this view.

In the final analysis, the question is: all things being equal, would someone purchase a property subject to environmental constraints similar to those of the subject, if an equivalent, non-impacted substitute site were available? If the logical answer is no, then the question that demands to be asked is: What additional incentive or discount would then entice the buyer to opt for the non-compliant site as a first choice?

Ideally, the answer to this question would be extracted directly from market data and an adjustment would be formulated based upon market behavior. In truth, the extraction of such a factor is indeed problematic. The specific environmental circumstance and risks will be different in each instance, and while the general behavior of market participants can be forecasted with a measure of certainty, their specific reaction to the circumstances at the subject could not be easily predicted based upon their actions in other circumstances. Additionally, the data pool is more constrained than it is for the market as a whole.

Our analysis of the issue leads us to conclude that if the property were to be sold as of September 1, 2005, on an as-is basis, with the buyer assuming the cost of clean up for the site, without further recourse to the seller, that a premium/discount would be applied to unimpaired price of the property. We believe that such an acceptance of risk and responsibility by the buyer would entail a 10% to 15% reduction in the price, after recognition of the estimate of the cost to cure the property from a responsible LSP.

APPRAISAL REPORT
Mystic Landing
Everett and Boston, MA

Page 138

The chart below provides an indication of the value and damages associated with such circumstances:

| Summary of Impaired Valuation | | |
|---|---|---|
| | Low End of 21E Cost | High End of 21E Cost |
| Market Value Estimate - As Unimpaired | $19,200,000.00 | $19,200,000.00 |
| Estimated Direct Clean Up Costs | $2,265,000.00 | $8,420,000.00 |
| Market Value Before Market Resistance | $16,935,000.00 | $10,780,000.00 |
| Market Resistance Discounts | | |
| Buyer Discount at 10% | $1,693,500.00 | $1,078,000.00 |
| Buyer Discount at 15% | $2,540,250.00 | $1,617,000.00 |
| Value Diminution Estimates | | |
| Diminution with 10% Market Discount | $3,958,500.00 | $9,498,000.00 |
| Diminution with 15% Market Discount | $4,805,250.00 | $10,037,000.00 |
| Value Range As Unimpaired | | |
| As Is Value with 10% Market Discount | $15,241,500.00 | $9,702,000.00 |
| As Is Value with 15% Market Discount | $14,394,750.00 | $9,163,000.00 |

# SECTION VII:  RECONCILIATION

## RECONCILIATION

The process of reconciliation is the last opportunity for the appraisers to weigh the data and evaluate the relevance of the various approaches to value. In this instance, while all three approaches to value were considered, only the sales comparison was deemed applicable. Although no formal reconciliation of approaches is necessary, the reconciliation process is helpful in providing a point for review and reflection as to the value estimates rendered herein. The value conclusions have been estimated as a range due to the variability associated with the project cleanup costs and the market resistance that impacts such sites.

We have cast a net far and wide and have collected substantially more sales data than has been presented here. Despite the fact that it has not been included in this report, it was helpful in understanding the marketplace and the behavior of participants, buyers and sellers.

Ultimately, the appraiser must decide which comparables provide the most meaningful information. There are no "perfect" comparables in the marketplace for this kind of appraisal exercise. This is because each has unique characteristics with regard to location and physical elements that must be considered. It is this broad array of data that must be considered and analyzed to determine its relevance to the appraisal problem at hand.

As a result of our analysis, it is our opinion that the estimate of damages associated with the detrimental environmental conditions, as of September 1, 2005 was:

As a result of our research and analysis, we have concluded that the market value of the subject property as defined by the assumptions and limiting conditions noted herein, and as assumed to be free of contamination, as of September 1, 2005, was:

$19,200,000

Furthermore, it is our opinion that the market value of the property, in its as-is condition, subject to the impacts related to the environmental contamination, are most appropriately expressed in a range, as of September 1, 2005 as follows:

$9,160,000-$15,240,000

Based upon our findings and analysis, we have concluded that the damages associated with the presence of the identified environmental contamination on the property are most appropriately expressed in a range, as of September 1, 2005 as follows:

$4,000,000 to $10,000,000