UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>and MONSANTO COMPANY,<br>Defendants.<br><br>PHARMACIA CORPORATION and<br>MONSANTO COMPANY,<br>Third-Party Plaintiffs,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>Third-Party Defendant.<br>PHARMACIA CORPORATION<br>Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL<br>    Fourth-Party Defendants. | **CIVIL ACTION NO.<br>04-10180 NMG** |

**PLAINTIFF MYSTIC LANDING, LLC'S OPPOSITION TO
DEFENDANT PHARMACIA CORPORATION'S MOTION *IN LIMINE* TO
FORECLOSE PRESENTATION OF EVIDENCE OF RESPONSECOST DAMAGES**

Plaintiff Mystic Landing, LLC ("Mystic") hereby opposes the motion *in limine* of Defendant Pharmacia Corporation ("Pharmacia"), by which Pharmacia seeks to preclude Mystic from introducing evidence of the response costs incurred by Mystic to date relating to the investigation and analysis of the contamination of the subject property, which contamination was caused by Pharmacia. For the reasons stated herein, Pharmacia's Motion should be denied. As additional grounds for its Opposition, Mystic incorporates herein by reference its Opposition to Defendant Pharmacia Corporation's Motion to Foreclose Presentation of Evidence on Damages.[1]

## LEGAL STANDARD FOR MOTION *IN LIMINE*

"The purpose of a motion *in limine* is to prevent irrelevant, inadmissible or prejudicial matters from being admitted in evidence...." City of Boston v. Board of Educ., 392 Mass. 788, 1984)(citations omitted). That is, the purpose of a motion *in limine* is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.

Here, there can be no principled contention that the evidence that Pharmacia seeks to preclude is "irrelevant, inadmissible or prejudicial:" rather, the evidence that Pharmacia seeks to preclude is that of costs directly incurred by Mystic during the investigation and analysis of the contamination caused by Pharmacia on the subject property (the "Property").[2] Accordingly,

---

[1] As Pharmacia notes in its Motion *in limine*, the parties' respective positions with regard to the contested evidence have been briefed *in toto* in Pharmacia's Motion for Summary Judgment, which motion is pending before the Court, and Mystic's Opposition thereto.

[2] There has never been any dispute that the Site is contaminated; Monsanto has produced reams of evidence of the contamination from its own files. See, e.g., Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment and Exhibits G – M thereto, and Excerpts from the transcript of the September 8, 2005 deposition of Gerald Rinaldi, Exhibit E, at pp. 37, 39, 42, 69, 71, 118, 124, 132, 137-138, 141, 154, copies of which are filed herewith for the Court's convenience as Exhibit 1.

Pharmacia seeks to preclude the evidence on the grounds that documentary evidence of these costs was withheld from production during discovery.

As an initial matter, Mystic disputes that the evidence of these costs was withheld, as discussed herein. Moreover, given that this case is based on a state statute, it is noteworthy that the courts of the Commonwealth have held that "in most cases the better course is for the judge to deny motions *in limine* which seek exclusion of an area of potential evidence." City of Boston v. Board of Educ., 392 Mass. 788, 1984) citing Commonwealth v. Burke, 390 Mass. 480, 481 n. 1 (1983); Commonwealth v. United Books, Inc., 389 Mass. 888, 898 n.2 (1983). When, as here, Pharmacia's liability is more than reasonably clear, it would be a complete miscarriage of justice to preclude evidence of the damages suffered by Modern as a direct and proximate result of the defendants' actions, and thus, the "better course" is to allow the admission of such evidence at trial. Further, it is notable that the damages Pharmacia seeks to preclude, are "ongoing" damages, because they are costs associated with "Future Response Costs" that are clearly recoverable under M.G.L. 21E, §4A.

## ARGUMENT

It is axiomatic that "discovery sanctions are a potent weapon and should, therefore, be deployed in balanced manner and should be imposed in proportion to magnitude of misconduct." Gonsalves v. City of New Bedford, 168 F.R.D. 102, 116 (D.Mass. 1996); see also Fashion House v. Kmart Corp., 892 F.2d, 1076, 1081 (1st Cir. 1989)("Discovery sanctions 'must be just,' and 'specifically related to the particular claim which was at issue in order to provide discovery.'") (internal citations omitted). Courts consider the following factors in determining an appropriate sanction for a discovery violation: (1) the <u>willfulness</u> or <u>bad faith</u> of the non-complying party; (2) the <u>prejudice</u> to the opposing party; (3) whether the procedural history indicates a protracted

inaction or <u>deliberate</u> delay; (4) the disregard of earlier warnings of the consequences of the misconduct; and (5) the availability of less draconian factors. Big Top USA, Inc. v. The Wittern Group, 183 F.R.D. 331, 338 (D.Mass. 1998)(emphasis added). However, the central consideration in imposing any discovery sanction is the proportion between the alleged offense and the sanction. To be just, the sanction must never be any more severe than it need be to cure any <u>actual</u> prejudice to the other party. Here, Pharmacia cannot demonstrate that Mystic has willfully acted in bad faith or deliberately delayed the production of any documents, nor can Pharmacia fairly argue that it has been prejudiced in any way, and certainly not in any way that would merit the requested sanction of exclusion of the totality of Mystic's evidence of the costs it has incurred to date in assessing and responding to the contamination of the Property, which contamination was directly caused by the defendants.[3]

###    I.    Mystic Produced All Documents of Which It Was Aware As They Became Available.

Pharmacia argues in its Motion *in limine* that Mystic should be precluded from introducing evidence of the costs it has incurred in assessing and responding to the contamination of the Property on the grounds that Mystic failed to produce such evidence during the discovery period. This allegation is patently false. As an initial matter, on at least four separate occasions, Mystic advised the defendants of the response costs that it has incurred as of the date of each respective disclosure, including in Mystic's 4A letter to the defendants, in which Mystic identified response costs of approximately $90,500 (see Letter from Doreen M. Zankowski to Fred Hassan, Chairman and CEO of Pharmacia Corporation, *et al.*, dated August

---

[3] Pharmacia was fully aware that Rizzo Associates, Inc. was working for Mystic and Mystic's counsel in the investigation of contamination at the Property. Pharmacia was provided with extensive reports generated by Rizzo, and the reports contained documentation and evidence of sampling activities at the Property, such as soil borings and groundwater well installations and sampling activities. Pharmacia was aware that Mystic was incurring "investigation costs" and these are "Response Costs" as defined in M.G.L. 21E, §4A.

#566169                                              4

27, 2001, a copy of which is attached as Exhibit B to Mystic and Modern's Opposition to Pharmacia's Motion to Foreclose Presentation of Evidence of Damages, and a copy of which is attached hereto for the Court's convenience as Exhibit 2); in Mystic's Complaint, in which Mystic stated that it had "incurred in excess of One Hundred Thousand Dollars ($100,000) in investigation and analysis costs" (see Complaint at ¶ 39); in Mystic's Rule 26 Initial Disclosure, in which Mystic estimated that it had incurred and/or would incur $210,000 in "Soil and Sediment Pre-characterization"; and, at least in part, through its production of documents (see Affidavit of Doreen Zankowski, filed in support of Mystic and Modern's Opposition to Pharmacia's Motion to Foreclose Presentation of Evidence of Damages, at ¶¶ 5, 7 and 8, a copy of which is attached hereto for the Court's convenience as Exhibit 3). Pharmacia had the opportunity to inquire about these costs during depositions, yet it failed to do so.

With regard to documentary evidence, Mystic and Mystic's counsel believed that Mystic had produced all supporting invoices in its possession as of the March 11, 2005 document production. It was only upon receiving notice from the defendants on or about November 7, 2005, that there appeared to be certain gaps in the billing history that Mystic became aware of the alleged gaps. Upon receiving said notice, Mystic immediately contacted Rizzo Associates, the billing party, to request a complete set of supporting invoices directly from their files, to ensure that a complete set was, in fact, provided to the defendants. See Zankowski Affidavit at ¶¶ 14, 15. Rizzo produced a complete set of invoices, including invoices for work that had not been previously invoiced. See Affidavit of Richard Hughto, filed in support of Mystic and Modern's Opposition to Pharmacia's Motion to Foreclose Presentation of Evidence of Damages, at ¶ 9, a copy of which is attached hereto for the Court's convenience as Exhibit 4. Mystic's inadvertent discovery omission, coupled with the production of documents not previously

available, in the context of a voluminous, multi-party discovery process, which was quickly remedied upon identification, does not warrant the draconian preclusion sanction sought by the defendants. Nexxus Products Co. v. CVS New York, Inc., 188 F.R.D. 11, 22 (D.Mass. 1999); see also R.W. International Corp. v. Welch Foods, Inc., 937 F.R.D. 11, 16-17 (1991)(where plaintiffs had complied to some extent with the general directive that they produce information relevant to the computation of damages, court held that "unless the failure of discovery is absolute, or nearly so, Rule 37 sanctions are unripe.").

In addition, the belated production of certain of the invoices has caused no significant disruption or delay to these proceedings.[4] The defendants have now had ample time in which to review the totality of the Rizzo invoices. Finally, while Pharmacia argues that Rule 37 makes clear that exclusion of evidence is a common sanction for a violation of the duty of disclosure under Rule 26(a), it is clear that the Court is under no obligation to exclude evidence based upon a such a failure, particularly where, as here, it occurred long before trial and has been rectified without any prejudice to the defendants. Samos Imex Corporation v. Nextel Communications, Inc., 194 F.3d 301, 305 (1999). Accordingly, Pharmacia's Motion *in limine* should be denied.

## II.    Mystic Incurred The Subject Response Costs.

Pharmacia next argues that Mystic should be precluded from introducing evidence of the response costs it incurred as a result of Pharmacia's contamination of the Property because, Pharmacia alleges, the costs were not incurred by Mystic but by Modern Continental Construction Co., Inc. ("Modern"). This argument again elevates form over substance.

Mystic is the owner of the Property. See Excerpts of the transcript of the March 14, 2005 deposition of Peter Grela, true and accurate copies of which are attached as Exhibit 1 to the

---

[4] The defendants knew that Rizzo was doing work for Mystic and Mystic's counsel. They were aware of the reports and sampling results contained therein, as the defendants themselves have used such information in their pleadings.

Zankowski Affidavit, at p. 12, and true and accurate copies of which are attached hereto for the Court's convenience as Exhibit 5. In April and May of 2001, Rizzo Associates ("Rizzo"), on behalf of Mystic, conducted additional subsurface investigations of the Site. See, e.g., Expert Report of Richard J. Hughto, Ph.D., P.E., L.S.P., dated September 12, 2005, a copy of which is attached as Exhibit 33 to Pharmacia's Motion for Partial Summary Judgment, and a copy of which is attached hereto for the Court's convenience as Exhibit 6. On or about May 15, 2001, Rizzo submitted a draft Phase II Field Investigation Report setting forth its findings relating to the Site. A copy of the Draft Phase II Field Investigation Report dated May 15, 2001, is attached as Exhibit 24 to Pharmacia's Motion for Partial Summary Judgment, and a copy of which is attached hereto for the Court's convenience as Exhibit 7. On or about May 15, 2001, Rizzo also provided Mystic's counsel with a draft letter setting forth a preliminary remedial cost estimate of $810,000, which cost estimate was for "Lending Purposes Only," and was submitted as part of a loan consideration request by Mystic. A copy of the May 15, 2001, letter from Richard J. Hughto, Ph.D., P.E., L.S.P. and William C. Phelps of Rizzo Associates, Inc. to Doreen M. Zankowski, counsel for Modern, is attached as Exhibit 25 to Pharmacia's Motion for Partial Summary Judgment 34 (emphasis added), and a copy of which is attached hereto for the Court's convenience as Exhibit 8. In each of these instances, Mr. Hughto was acting on behalf of Mystic.

Mystic is a limited liability corporation, and Modern is the managing member of the Mystic limited liability corporation. See Affidavit of John Pastore, filed in support of Mystic and Modern's Opposition to Pharmacia's Motion to Foreclose Presentation of Evidence of Damages, at ¶ 5, and a copy of which is attached hereto for the Court's convenience as Exhibit 9. Modern often pays the obligations of its affiliates and subsidiaries and then internally charges the

affiliate or subsidiary for the loaned amount. Id. at ¶ 10. Although $16,674.00 of Rizzo's invoices to-date have been paid directly by Mystic, (Id. at ¶ 7), Mystic acknowledges that the majority of Rizzo's invoices, including the most recently paid invoices, have been paid by Modern. Id. at ¶ 8. However, it remains a Mystic obligation to repay Modern for the Rizzo work. Id. Any future Rizzo invoices will be paid by Modern, and Mystic will be obligated to reimburse Modern for the loan. Id. at ¶ 9. It is Modern's intent to obtain full reimbursement from Mystic once Mystic has the resources to pay the obligation. Id. at ¶ 11.[5] Accordingly, while both Mystic and Modern have paid the costs attendant to the investigation and analysis of the contamination caused by Pharmacia, the damages attendant thereto inure to Mystic. Pharmacia's Motion *in limine* should therefore be denied to the extent that it relies on this argument.

### III. Mystic Is Entitled to Recover All Costs and Attorneys' Fees Incurred in Prosecuting Its Claim for Recovery of Response Costs.

Finally, Pharmacia argues that, even assuming, *arguendo*, the invoices produced by Mystic as evidence of Mystic's response costs were not belatedly produced, the invoices are "bills for litigation expenses, not response costs, and, therefore, cannot be recovered as response costs." Pharmacia is simply wrong as a matter of law. It is axiomatic that an owner is entitled to recover all costs and attorneys' fees related to its claim to recover response costs in the event that is successful in prosecuting its claims. See, e.g., Black v. Coastal Oil New England, Inc., 45 Mass.App.Ct. 461, 468, 699 N.E.2d 353, 357, review denied 707 N.E.2d 1077. See also Buddy's Inc. v. Town of Saugus, 62 Mass.App.Ct. 256, 258-259, 816 N.E.2d 134, 136-137 (2004).

---

[5] Mystic is basically a single asset entity, consisting of the Property in question.

The evidence adduced to date demonstrates that Rizzo Associates, on behalf of Mystic, conducted and/or performed certain tasks pursuant to the Massachusetts Contingency Plan ("MCP") cleanup protocol, pursuant to 310 CMR 40.0000, including, *inter alia*, investigations of the Site, which investigations included, *inter alia*, the installation of thirty-one (31) shallow soil borings, ten (10) of which were completed as groundwater monitoring wells; the excavation of fifteen (15) test pits; and the collection and laboratory analysis of soil and ground water samples. See, e.g., Expert Report of Richard J. Hughto, Ph.D., P.E., L.S.P., dated September 12, 2005, a copy of which is attached as Exhibit 33 to Pharmacia's Motion for Partial Summary Judgment, and a copy of which is attached hereto for the Court's convenience as Exhibit 6. It is clear that Mystic is entitled to recovery of all the costs incurred for the performance of these activities. However, to the extent that any of the Rizzo invoices also reflect "litigation expenses," that is, for work performed by Rizzo Associates as litigation support in the prosecution of Mystic's claims, Mystic will, in the event of success on the merits, be entitled to recover these costs as well. See, e.g., Black v. Coastal Oil New England, Inc., 45 Mass.App.Ct. 461, 468, 699 N.E.2d 353, 357, review denied 707 N.E.2d 1077. See also Buddy's Inc. v. Town of Saugus, 62 Mass.App.Ct. 256, 258-259, 816 N.E.2d 134, 136-137 (2004). Accordingly, Pharmacia's Motion *in limine* should be denied.

**WHEREFORE,** for the reasons set forth herein, Mystic respectfully requests that the Court deny the Motion in limine of Defendant Pharmacia Corporation to Foreclose Presentation

of Evidence of Past Response Costs.

**MYSTIC LANDING, LLC**

By its attorneys:

/s/ Doreen M. Zankowski, Esq.
Robert G. Flanders, Jr., Esq. (BBO #170820)
Doreen M. Zankowski, Esq. (BBO #558381)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109-1775
(617) 345-9000

DATED:  January 9, 2006

#566169                                    10

## CERTIFICATE OF SERVICE

I, Doreen M. Zankowski, hereby certify that on this 9th day of January 2006, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

John M. Stevens, Esq.
Adam P. Kahn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210

Mark S. Granger, Esq.
Douglas B. Otto, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Howard G. Guggenheim
P.O. Box 736
Scituate, MA 02066

/s/ Doreen M. Zankowski