# EXHIBIT C

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>and MONSANTO COMPANY,<br>Defendants.<br><br>PHARMACIA CORPORATION and<br>MONSANTO COMPANY,<br>Third-Party Plaintiffs,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>Third-Party Defendant.<br><br>PHARMACIA CORPORATION<br>Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL<br>   Fourth-Party Defendants. | CIVIL ACTION NO.<br>04-10180 NMG |

## AFFIDAVIT OF RICHARD J. HUGHTO, PH.D., P.E., LSP

I, Richard J. Hughto, do hereby depose and say the following:

1. My name is Richard J. Hughto. I am an environmental consultant, specializing in the study of contaminant impacts on, and remediation of surface water, ground water and soil since the early 1970's. I hold B.E. and M.E. degrees in civil and environmental engineering from Manhattan College and a Ph.D. degree in water resource engineering from Cornell University. I am an expert consultant to Mystic Landing, LLC and Modern Continental Construction Co., parties to the above-captioned case.

2. The site at issue is located on the eastern shore of the Mystic River between Rte. 99 and Mystic View Ave. (the "Site"). Currently it is owned by Mystic Landing, LLC.

3. My work in this case included the review of thousands of pages of documents concerning environmental conditions on the Site, including environmental studies of the Site.

4. I have prepared an expert report in this matter dated September 12, 2005 and a Rebuttal Report dated September 19, 2005.

5. The Defendant in this case, Monsanto Company ("Monsanto"), purchased the Site in 1929 and engaged in chemical manufacturing operations until 1975.

6. Historical operations conducted by Monsanto on the Site included: (1) the handling and storage of raw chemical materials for chemical manufacturing, (2) manufacturing and storage of chemical products and by-products, (3) and the production, handling and disposal of wastes and by-products.

7. During Monsanto's ownership and operation of the Site, the Site became contaminated with several hazardous materials as a result of Monsanto's chemical manufacturing

processes, storage, handling, storage, releases, spills and related waste and by-product disposal activities.

8.  Environmental studies prepared for the Site identified contamination caused by Monsanto's operations during Monsanto's ownership and operation of the Site. For example, in the 1/8/80 Dames & Moore report groundwater contamination with lead, arsenic, and plasticizers was discovered on the Site. Soil contamination with lead, arsenic, and plasticizers was quantified in a 7/16/82 Perkins Jordan report. A 10/17/85 documentation of work by Perkins Jordan shows soil and groundwater contamination with lead, arsenic, and plasticizers. Lead and arsenic were quantified in soil and groundwater by CES (1/15/97) and Rizzo Associates (6/19/01) and (8/10/01). In addition, low pH conditions in groundwater were quantified in reports by Dames & Moore (12/23/80), CES (1/15/97), and Rizzo Associates (6/19/01 and 8/10/01).

9.  The constituents of the contamination discovered on the Site were chemicals present as a result of Monsanto's chemical manufacturing, storage and disposal operations during Monsanto's ownership and operation of the Site. For example, lead was present as a raw material in pyrite ore used in the production of sulfuric acid. Arsenic was a waste product from the sulfuric acid manufacturing process. The plasticizers were products of the manufacturing by Monsanto in their adjacent Everett operations.

10. The chemicals found on the Site were discovered in locations on the Site where that particular chemical was used for Monsanto's operations. For example, the low pH in groundwater was found in the area where sulfuric acid was manufactured and stored. Elevated concentrations of lead in soil were quantified in areas where iron ore was stored. Aluminum was discovered in the area of the Site where alum mud, containing aluminum, was disposed.

11. Documents I reviewed, including internal Monsanto Memoranda document the storage, disposal, spills and releases of the chemicals used in Monsanto's operations during Monsanto's ownership and operation of the Site. For example, a 10/22/73 Monsanto document discusses different types of waste disposal during their Site operations. A 6/3/80 Monsanto document identifies different raw material and waste products found on the Site and presents a cost estimate for their removal. Monsanto's 7/21/80 memo documents the presence of raw material and other Monsanto process-related materials on the Site. An 11/19/81 Monsanto memo discusses the different types of contamination present on the Site. Monsanto's 1/22/82 letter to Boston Edison warns of the potential that wastes were disposed on the Site and that Boston Edison should consider that condition when planning development of the Site.

12. Aluminum sulfate, a hazardous material, was disposed of by Monsanto on the Site in the Alum Mud Pond during Monsanto's ownership and operation of the Site. Aluminum was discovered in the soil in the area where this pond had existed.

13. The chemicals used in Monsanto's manufacturing processes that contaminated areas of the Site during Monsanto's ownership and operation are hazardous materials or, in the case of the low ph, facilitated the releases of hazardous materials, as the low pH conditions in groundwater allow greater amounts of heavy metals to dissolve in the water, facilitating their migration in the water.

14. In forming my statements, I relied, in part, on my review of many documents made available to me, including all of the documents attached to the memorandum of law in support of summary judgment for Mystic Landing, LLC and Modern Continental Co. All of the documents attached to the memorandum of law are of a type reasonably relied upon by experts in my field in forming expert opinions.

SIGNED UNDER THE PENALTIES OF PERJURY this 26th day of September 2005.

_____
Richard J. Hughto, Ph.D., P.E., LSP