UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>and MONSANTO COMPANY,<br>Defendants.<br><br>PHARMACIA CORPORATION and<br>MONSANTO COMPANY,<br>Third-Party Plaintiffs,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>Third-Party Defendant.<br>PHARMACIA CORPORATION<br>Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY<br>Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL<br>    Fourth-Party Defendants. | **CIVIL ACTION NO.<br>04-10180 NMG** |

**PLAINTIFF, MYSTIC LANDING, LLC AND THIRD-PARTY DEFENDANT
MODERN CONTINTENTAL CONSTRUCTION CO., INC.'S
<u>REQUEST FOR FINDINGS OF FACT AND RULINGS OF LAW</u>**

## FINDINGS OF FACT

1. On all of the evidence, a finding for Plaintiff, Mystic Landing, LLC ("Mystic") and third-party Defendant, Modern Continental Construction Co., Inc., ("Modern") is warranted.

2. The Property which is the focus of this matter is an approximately 35 acre parcel of land located on the shore of the Mystic River at State Route 99 and Chemical Lane (Alford Street) in Boston and Everett, Massachusetts (the "Property").

3. The Property has been owned by Mystic since June 21, 2001.

4. The Property was formerly owned by Pharmacia, and Pharmacia (and its predecessors in interest) owned and operated a chemical manufacturing facility at the Property.

5. Pharmacia owned the Property from in or about 1929 to 1983 and operated a chemical manufacturing and storage facility at the Property until in or about 1975.

6. Pharmacia's operations at the Property are described in several documents, including but not limited to the following:

- 10/22/73 Monsanto Environmental Assessment of the Site;
- 11/19/81 Monsanto Memorandum and attached "Site History and Environmental Status Summary – Sale of Everett Plant East Side Property;"
- 6/3/80 Monsanto Memorandum ("Everett Plant, East Side Assessment"); and,
- 8/4/80 Monsanto Memorandum entitled "Sale of Monsanto Land.

The aforementioned documents clearly evidence that releases and threats of releases of chemical contaminants occurred at the Property, and all such releases or threats of releases of the chemical contaminants are consistent with Pharmacia's operations at the Property.

7. Releases of oil and hazardous materials occurred during the time the Property was owned by Pharmacia.

8. A series of environmental studies of the Property were conducted through the years. Such studies documented contamination at the Property. Such studies include:

- Environmental Assessment Sale of 34 Acres-Everett Plant, 10/22/73 (0004951);
- Dames & Moore, Hydrogeologic Survey, 1/8/80 (000325);
- Monsanto Memo, Everett Plant, East Side Assessment, 6/3/80 (0009975)
- Monsanto Memo, Sale of Monsanto Land, 7/21/80 (0010702);
- Dames & Moore, Report, Hydrogeological Services, 12/23/80 (0000314);
- Monsanto, Site History and Environmental Status Summary, Sale of Everett Plant, East Side Property, 11/19/81 (0006322);
- Monsanto, Proposed Property Sale to Boston Edison Company, 1/22/82 (0006273);
- Perkins Jordan, Site Contamination and Liability Audit on Monsanto Property, 7/16/82 (0005923);
- Boston Edison, 10/17/85;
- Consulting Engineers & Scientists, Phase I, Initial Site Investigation Report, 1/15/97 (MONS1 0001554); and,
- Rizzo Associates, Environmental Studies, 6/19/01 and 8/10/01.

The aforementioned documents clearly evidence that releases and threats of releases of chemical contaminants occurred at the Property, and all such releases or threats of releases of the chemical contaminants are consistent with Pharmacia's operations at the Property.

9. The deposition of Gerald Rinaldi, current manager of Remediation at Solutia, Inc. and former employee of Pharmacia, was taken on September 8, 2005.

10. Through Mr. Rinaldi's deposition testimony, Pharmacia admitted that releases and threats of releases of oil and hazardous materials occurred during Pharmacia's ownership and operations at the Property.

11. Mystic has incurred response costs of approximately $180,000 to investigate the environmental condition of the Property, and such response costs are recoverable under M.G.L. 21E.

12. Pharmacia is required to reimburse Mystic for its incurred response costs.

13. Mystic will incur future response costs and remediation costs to cleanup the environmental contamination at the Property and bring the Property into compliance with the Massachusetts Contingency Plan, M.G.L. 21E.

14. Modern is the sole operating member of Mystic, which is organized as an LLC and owned by Modern.

15. Pharmacia is the current successor corporation to Monsanto; thus, Pharmacia is the liable party under M.G.L. 21E.

16. Pharmacia's chemical manufacturing process at the Property included manufacturing and/or storage of the following chemicals:

- Sulfuric acid;
- Nitric acid;
- Mixed acids;
- Alum (aluminum sulfate);
- Iron free alum;
- Sodium bisulfite;
- Ferric sulfate;
- Alcohol;
- Pyrites (iron sulfide); and
- Sulfur

17. The Property contained an alum pond or lagoon used for disposal, and raw material storage areas for:

- Sulfur;
- Bauxite;
- Iron ore; and
- Salt.

18. Wastes produced from chemical manufacturing processes at the Property included:

- Sodium bisulfite;
- Arsenic;
- Platinum catylyst; and,
- Alum mud (aluminum and potassium sulfate).

19. Hazardous waste contamination has been discovered and documented at the Property.

20. The contamination consists of the residuals and from the chemicals manufacturing, storage, release, spills and related waste disposal activities that took place on the Property during the decades that Pharmacia owned and operated at chemical manufacturing facility at the Property.

21. Pharmacia is a legal person as defined under M.G.L. 21E.

22. Pharmacia is a liable person as defined under M.G.L. 21E.

23. Pharmacia is liable party under M.G.L. 21E.

24. Mystic is entitled to a Declaratory Judgment to have its future response costs for remediation and cleanup of the Property paid for by the liable party, Pharmacia, together with any permanent damages that Pharmacia caused to the Property.

25. The chemical products, raw materials, byproducts and waste materials listed in Paragraphs 16 through 18 are included within the definition of "hazardous materials" under applicable law, M.G.L. 21E, §2; 42 U.S.C. § 9601(14); 310 C.M.R. 40.0000, Subpart P.

26. Mystic's permanent damages under M.G.L. 21E, will be determined after future response costs are incurred and the Property is remediated.

27. On or about April 5, 1996, Mary O'Donnell Construction Co., Inc. ("O'Donnell"), entered into a subcontract with Modern Continental Construction Co., Inc./Obayashi, a Joint Venture ("Modern/Obayashi"), pursuant to which Mary O'Donnell Construction Co., Inc. agreed to provide, *inter alia*, a laydown/staging facility at the Site for use by Modern/Obayashi in its work on the Central Artery/Tunnel Project.

28. The Modern/Obayashi and O'Donnell subcontract included what was a "lease to own" arrangement, whereby Modern/Obayashi would make certain payments under the terms of the Subcontract, including lease payments for use of the Property, with the understanding that Modern/Obayashi would have an option to purchase the Property, and that, in the event that Modern/Obayashi did purchase the Property, it would receive a credit for the lease payments made during the course of the lease period and amendments thereto.

29. On June 19, 2001, Modern/Obayashi executed an Assignment and Assumption of Rights and Obligations, which transferred Modern/Obayashi's option to purchase the Property to Mystic.

30. Mystic purchased the Property pursuant to an Option agreement, with the option price being $300,000, added to the lease payments from the Modern/Obayashi and O'Donnell, thereby establishing the total purchase price of the Property.

31. Mystic and Modern currently have the Property filed with the Massachusetts Department of Environmental Protection ("MA DEP"), pursuant to the requirements set forth in the Massachusetts Contingency Plan.

32. Modern also was tasked by the MA DEP, pursuant to a duly negotiated and executed Administrative Consent Order, with removing certain stock piles of

materials from the site (construction debris from the Central Artery/Tunnel "Big Dig" project), and providing the MA DEP with confirmatory sampling results evidencing the removal of the stockpiles and evidence that there is no residual contamination on the Site, which results were produced to the MA DEP.

33. Any *de minimus* contamination at the Property caused by Modern's operations is separable from Pharmacia's contamination of the Property, and Modern has provided evidence of remediation of any contamination alleged to have been caused by Modern.

34. Mystic sent a M.G.L. 21E, §4A demand notice to Pharmacia on August 27, 2001.

33. Mystic's original Complaint included a claim for property damage pursuant to M.G.L. c. 21E, § 5.

## RULINGS OF LAW

I. **The Defendants Are Liable Under the Oil and Hazardous Material Release Prevention Act, M.G.L.A. c. 21E, § 5.**

1. This matter is governed by M.G.L. c. 21E, §§ 4A and 5.

2. M.G.L.A. c. 21E imposes strict liability upon, among others, "any person who, at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous materials was stored or disposed of and from which there has been a release or threat of release of hazardous material. See M.G.L. c. 21E, § 5(a)(2) (stating that liable persons "shall be liable, without regard to fault"); see also Guaranty-First Trust Co. v. Textron, Inc., 416 Mass. 332 (1993)( "General Laws c. 21E, § 5(*a* )(iii), provides a property owner with a strict liability claim against certain classes

of persons for 'damage to his real or personal property incurred or suffered as a result of [a] release or threat of release' of hazardous materials"); Pirovano v. Gould, Inc., No. 91-13304 (D.Mass. 1994) (order granting summary judgment) (same).

3. Pursuant to M.G.L. c. 21E, § 2, a "person" is "any…private corporation…"

4. A successor corporation by merger is included among persons liable under M.G.L.A. c. 21E and CERCLA. See John S. Boyd Co. v. Boston Gas Co., 992 F.2d 401, 404 and n.3 (1st Cir. 1993).

5. A person who was the owner or operator of a site at the time of storage or disposal of hazardous material may be held liable for a release, even if the release occurred *after* that person ceased to be an owner or operator of the site. See Byrnes v. Massachusetts Port Auth., 1994 WL 879644 (Mass. Super. Ct. 1994).

6. Pursuant to M.G.L. § 5(a)(5), a person is liable for a release of hazardous material from a site if it otherwise *caused* or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site." See Griffith v. New England Tel. & Tel. Co., 420 Mass. 365, 369 (1995)( "To impose liability under § 5(a)(5), a plaintiff must establish both the defendant caused the release and that the release caused the contamination").

II. **The Defendants Are Liable Under M.G.L.A. c. 21E, § 4A for Contribution.**

1. M.G.L.A. c. 21E, § 4A permits an injured party to seek contribution of clean up costs from the entity that caused the contamination.

2. M.G.L.A. c. 21E, § 4A provides in pertinent part:

> (a) Any person…who has undertaken, is undertaking, *or intends to undertake* a necessary and appropriate response action or who is or

> reasonably believes that he might be liable pursuant to section five *may notify any person he reasonably believes is liable pursuant to section five* that the response action has been taken or is being taken or of the notifier's intent to take such response action or to seek contribution, reimbursement or equitable share from other persons...

(emphasis added).

3. Pursuant to M.G.L.A. c. 21E, § 4A, an owner is entitled to recover all costs and attorneys' fees related to its claim to recover response costs in the event that is successful in prosecuting its claims. See, e.g., Black v. Coastal Oil New England, Inc., 45 Mass.App.Ct. 461, 468, 699 N.E.2d 353, 357, review denied 707 N.E.2d 1077 (1998). See also Buddy's Inc. v. Town of Saugus, 62 Mass.App.Ct. 256, 258-259, 816 N.E.2d 134, 136-137 (2004).

4. Pursuant to M.G.L.A. c. 21E, § 4A, an owner can be awarded costs to conduct a response action that he *intends to undertake*. Id.

5. A plaintiff is not required to establish liability under a § 5 claim in order to succeed on a § 4A claim. Martignetti v. Haigh-Farr, Inc., 425 Mass. 294 (1997).

6. Although the courts have equitable power to hold that a party that purchased property with knowledge of its contamination should also bear a portion of the clean up cost, especially if the purchaser received a discount in the purchase price due to the contamination, where the defendant in the cost recovery suit is several steps back in the chain of title, courts will not impose such an equitable apportionment. Al Tech Specialty Steel Corporation v. Allegheny International Credit Corp., 104 F.3d 601, 607-608 (1997).

III.   **The Measure of Damages Under M.G.L.A. c. 21E, § 5 is Identical to the Measure of Property Damages at Common Law.**

    1.   The measure of recovery under 21E, § 5 is identical to the measure of recovery at common law for damage to real and personal property." Guaranty First Trust Company v. Textron, Inc., 416 Mass. 332, 333 (1993); Black v. Coastal Oil New England, Inc., 45 Mass. App. Ct. 461 (1998). At common law, the appropriate measure depends on whether the property damages are permanent or temporary. Id.

    2.   When the injury is permanent, the appropriate measure of damages is diminution of value determined by "the difference in the fair market value of the injured premises before and after the injury." Black, 45 Mass. App. Ct. at 466; Belkus v. Brockton, 282 Mass. 285, 288 (1933).

    3.   The injury is temporary if it is "reasonably curable by repairs." Id. The injury is reasonably curable by repairs if the expense of the repairs is less than the diminished market value. Id.; see also Textron, 416 Mass. at 337.

    4.   When the injury is temporary "the measure of recovery is the reasonable expense of repairing the injury plus the intervening loss of rental value for the period reasonably needed to repair the injury." Textron, 416 Mass. at 337; Belkus, 282 Mass. at 288.

IV.   **It is Permissible for an Owner to Pursue Aggressive Remediation.**

    1.   The motivation of the remediating party is not relevant to determining whether the clean-up was "necessary." See Wallwork, et al., Environmental and Toxic Tort Matters: Advanced Civil Litigation: Spreading the Cost of Environmental Cleanup, SG084 ALI-ABA 231, at n. 51 (2002); General Electric Co. v. Litton Industrial Automation Systems, Inc., 920 F.2d 1415, 1418-1421 (8th Cir. 1990).

2.  CERCLA, the Federal equivalent of M.G.L.A. c. 21E, clearly evinces a preference for complete, thorough, and permanent clean-ups. See, e.g., U.S. Steel Supply Inc. v. Alco Standard Corp., 1992 WL 229252 (N.D. Ill.) ("When actions are taken in response to a release or threat of release, and those actions reasonably mitigate the release or threat of release, they will be considered necessary [under CERCLA]").

V.  **The Deed Restriction is Inapplicable to the Matter Before the Court.**

1.  It is black letter law in Massachusetts that restrictions on land, being restraints on alienation, are highly disfavored. See Stop & Shop Supermarket Co, v. Urstadt Biddle Properties, Inc., 433 Mass 285, 289, 740 N.E.2d 1286, 1289 (2001).

2.  "For a covenant to run with the land at law, and thus be enforceable by monetary damages, most courts require that a covenant meet the following requirements: (1) The covenant must touch and concern the land; (2) The covenanting parties must have intended that the covenant devolve on successors in interest; and (3) There must be some form of privity of estate." "For a covenant to run with the land in equity, most courts require that a covenant meet the "touch and concern" and the intent requirements. . . and that the successor in interest not be purchaser for value without notice of the covenant." That the benefit of a restriction not exist "in gross" is another requirement, as discussed in the main text of this memorandum, below, although one could argue that the "in gross" doctrine is merely another expression of the "touch and concern" doctrine (see discussion in the main text of this memorandum, below). Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 90 (1979) citing Wolf, Michael A., *Powell on Real Property*, volume 9, Section 60.06[1], nn. 5 and 6.

3.	A restriction for the benefit of a private, non-governmental party will not run with the land if such benefit is "in gross" – i.e. the restriction does not benefit (or, to use real property jargon, is not "appurtenant to") a dominant estate owned by the benefited party. Garland v. Rosenshein, 420 Mass 319 (1995); Orenberg v. Horan (a.k.a. Orenberg v. Johnston) 269 Mass 312 (1929); Lincoln v. Burrage, 177 Mass 378 (1901); Inhabitants of Middlefield v. Church Mills Knitting Co., 160 Mass 267 (1894).

4.	It is essential that both the benefit and the burden of a real covenant 'touch and concern' the affected parcels of land before it will be considered to run" (emphasis added). Whitinsville Plaza, Inc., 378 Mass at 90 (1979).

5.	Under the "Massachusetts privity" requirement, the party seeking to enforce a restriction must be in privity of estate with the party against whom enforcement is sought. Thus, in Massachusetts not only must there be traditional "horizontal privity" (i.e., the original parties to the restriction must be in privity of estate with one another, which is satisfied by a grantor—grantee relationship), but also, the later parties down the chain of title must be in privity of estate with one another. Id.

**MYSTIC LANDING, LLC**

By its attorneys:

/s/ Doreen M. Zankowski, Esq.
Robert G. Flanders, Jr., Esq. (BBO #170820)
Doreen M. Zankowski, Esq. (BBO #558381)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109-1775
(617) 345-9000

DATED: January 9, 2006

## CERTIFICATE OF SERVICE

I, Doreen M. Zankowski, hereby certify that on this 9th day of January 2006, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

John M. Stevens, Esq.
Adam P. Kahn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210

Mark S. Granger, Esq.
Douglas B. Otto, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Howard G. Guggenheim
P.O. Box 736
Scituate, MA 02066

/s/ Doreen M. Zankowski
_____