# **EXHIBIT A**

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>    Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION<br>and MONSANTO COMPANY,<br>    Defendants.<br><br>PHARMACIA CORPORATION and<br>MONSANTO COMPANY,<br>    Third-Party Plaintiffs,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>    Third-Party Defendant.<br><br>PHARMACIA CORPORATION,<br>    Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY,<br>    Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY,<br>    Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL,<br>    Fourth-Party Defendants. | **CIVIL ACTION NO.<br>04-10180 NMG** |

**PLAINTIFF MYSTIC LANDING, LLC AND THIRD-PARTY DEFENDANT MODERN
CONTINENTAL CONSTRUCTION CO., INC.'S PRE-TRIAL MEMORANDUM
ADDRESSING VARIOUS MATTERS ARGUED AT THE JANAURY 13, 2006 PRE-
TRIAL CONFERENCE**

Plaintiff Mystic Landing, LLC ("Mystic") and Third-Party Defendant Modern Continental Construction Co., Inc. ("Modern")(collectively referred to herein as "Mystic") hereby submit this pre-trial memorandum addressing various issues raised during the oral argument on January 13, 2005, and in connection with the upcoming trial of this case.

As argued in Court on January 13, 2005, Mystic has presented evidence of, and is prepared to stipulate, for purposes of establishing its entitlement to declaratory relief, that during 1995 and 1996 a previous owner of the property spread an impermeable clay cap of "tunnel muck" over the 35 acre site where Pharmacia previously conducted its chemical business. This cap separates the historical contamination attributable to Pharmacia's over fifty (50) years of conducting chemical manufacturing, waste disposal, and storage on the site from any later releases due to construction operations on the site. Thus, the Court should rightfully hold Pharmacia to be the only liable party for the pollution and contamination of the soils, sediments, and groundwater beneath the "tunnel muck" clay cap under M.G.L. c. 21E, § 5. Accordingly, issues of contribution, equitable allocation, and other such contentions do not apply to Pharmacia's liability under M.G.L. c. 21E, § 5 for all the response, remediation, and restoration costs that will be required to cleanup the polluted land below the "tunnel muck" cap. Indeed, as a matter of law, under § 5(b) of c. 21E, Mystic and Modern are not liable to Pharmacia for any of the response costs attributable to Pharmacia's ownership of the site. The fact that Mystic purchased the site with knowledge that it was contaminated and for a price reflective of such contamination does not make it liable to Pharmacia for paying the response costs attributable to Pharmacia's contamination of the site.

## ARGUMENT

**A. Pharmacia is strictly liable to Mystic for remediating all contamination below the clay cap that is present on the site.**

Pharmacia's strict liability under M.G.L. c. 21E, § 5(a) is clear:

#567408

-2-

> § 5. Persons liable (a)…(2) any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material…and (5) any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site, shall be liable, without regard to fault…

Under § 5 of c. 21E, all that must be established to prove liability is that Pharmacia was an owner or operator on the Property at the time of a release of hazardous material or that Pharmacia caused a release of hazardous material.

Here, it is undisputed that Pharmacia is liable for the release of hazardous materials at the Property, because it has acknowledged and admitted its liability. See Memorandum in Opposition to Motion for Summary Judgment on Liability, p. 2 ("Pharmacia does not dispute that there was a release of hazardous materials while it owned and operated the Property."). Moreover, it appears that Pharmacia is prepared to assume, at the very minimum, liability for 1/3 of the response costs at the site. See Pharmacia Requested Findings of Fact at ¶ 67 and 68.

The existing contamination at the Mystic site attributable to Pharmacia's chemical-manufacturing operation is indisputable, as it is both admitted by Pharmacia and well-documented. Hughto Report, at 5, and documents cited therein. The contamination consists of the residuals from Pharmacia's chemical-manufacturing processes, storage, releases, spills, and related waste-disposal activities that took place on the site during the decades that Pharmacia owned and operated the site. Id; Hughto Affidavit at Exhibit F.

Pharmacia's own documents show that it knew that the contamination occurred and that remained on the site due to its operations. See documents cited and discussion at pp. 5-7 of Mystic's Opposition to Pharmacia's Partial Motion for Summary Judgment.

Moreover, a clear delineation between Pharmacia's releases and any subsequent operations on the site exists by virtue of an impermeable clay cap of "tunnel muck" that a previous owner spread over the site – before Mystic acquired the property in 2001. The "tunnel

#567408

-3-

muck" consists of glacial till and tunnel rock from the construction of the Deer Island Outfall Tunnel that a previous owner distributed over the site in 1995 and 1996. See Hughto Report at 4-5. The "tunnel muck" is clean, low-permeability material, portions of which Pharmacia used to cap the adjoining western parcel that Pharmacia also contaminated. After Pharmacia spent over $30 million to remediate the contamination on that adjacent site, the western portion of its former property is now operating as a retail center. See id. On the eastern portion of the property at issue here, the "tunnel muck" created a cap and barrier, preventing infiltration and isolating the Monsanto-era materials from any later-placed materials. Id. Because of the presence of the "tunnel muck" cap, the Court should declare Pharmacia liable for all of the incurred and future costs to cleanup the contaminated soils, sediments and groundwater below or leaching from this area. To pay for the cleanup of this contamination, Pharmacia alone should be liable, whereas any contamination above the cap would be the responsibility of Mystic and/or Modern.

Mystic submits that any releases above the cap are immaterial to finding Pharmacia liable for the costs to remediate the below-the-cap contamination that Pharmacia alone caused. As noted above, this damage is easily determined due to the relatively unique situation involving the "tunnel muck" cap.

Thus, this Court should reject as a matter of law Pharmacia's equitable-allocation arguments, because the Court can easily determine that Mystic is not liable in any amount for the releases and contamination of the soils, groundwater, and sediments beneath the "tunnel muck" cap. Mystic and Modern's liability to the Commonwealth under M.G.L. c. 21E, § 5(a)(1) for the contamination created and caused by Pharmacia below the "tunnel muck" cap rests solely on its status as an owner or operator of a site on which there has been a previous release of hazardous materials. But such liability does not extend to a third party polluter, such as Pharmacia, because

#567408

neither Mystic nor Modern owned or operated the site at the time of releases in question. See, M.G.L. c. 21E, §5 (b). Accordingly, under §§4A and 5(b), Pharmacia is strictly liable to Mystic for all of the pollution it caused beneath the clay cap and there are no contribution or equitable allocation issues under §4A as between Pharmacia and Mystic/Modern because only Pharmacia is liable for this contamination. Indeed, under § 5(b), Mystic and Modern are immunized from any liability to Pharmacia because they did not cause or contribute to the releases in question; namely, those under the clay cap for which Pharmacia is solely responsible.

Under M.G.L. 21E, a Court should not engage in a balancing of equitable factors when a party that is liable only by virtue of ownership of contaminated land sues a polluter such as Pharmacia. See M.G.L. c. 21E, § 5(b). The basis for any claim seeking reimbursement, contribution, or an equitable share of any incurred or future response costs is addressed in the third paragraph of Section 4, which states:

> Any person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action. If two or more persons are liable pursuant to section five for such release or threat of release, each shall be liable to the others for their equitable share of the costs of such response action. All claims and actions for contribution, reimbursement or equitable share by persons other than the commonwealth pursuant to this paragraph, except those pending in court on the effective date of section four A shall be subject to, and brought in accordance with, the procedures set forth in section four A. (Emphasis added).

Section 4, therefore, establishes a remedy by which two or more persons who are "liable" to the Commonwealth pursuant to § 5 for releases of hazardous material may bring an action for reimbursement, contribution, or equitable share, against another party or parties who are also "liable" pursuant to § 5 for such releases.[1] In this case, however, as discussed above, neither

---

[1] In Braber v. Perlman, 1993 WL 818642 (Mass.Super.1993), the Court noted that Section 5 is relevant to a suit under Section 4 for purposes of defining who is a "person liable" that may be sued for reimbursement, contribution, or equitable share under Section 4.

#567408

Mystic nor Modern is liable under § 5(b) to Pharmacia for Pharmacia's under-the-cap releases. Section 5 makes a key distinction with respect to parties, such as Mystic and Modern, who are entirely blameless with respect to the under-the-cap releases in question. Thus, the second paragraph of §5 (b) provides:

> No person who is <u>liable</u> solely [because they are a subsequent owner or operator of the site] and who did not own or operate the site <u>at the time of the release or threat of release in question</u> and did not cause or contribute to such release or threat of release shall be liable to any person who is <u>liable</u> [under any other provision of Section 5, because of some culpability relative to the release of contamination], except that any such [party who is liable solely due to their status as a subsequent owner or operator of the property] shall be <u>liable</u> to the commonwealth… (Emphases added).

Reading these quoted provisions from Section 4 and Section 5 together, a liable party under § 5(a) cannot bring a claim or <u>counter-claim</u> for reimbursement, contribution, or equitable share against a party who is liable to the Commonwealth for past releases of contaminants at the site solely by virtue of its status as a subsequent owner or operator of the site. To permit Pharmacia to assert claims or defenses of equitable allocation against Mystic and Modern with respect to its sole liability for its past contaminating activities would, in essence, render Mystic and Modern liable to Pharmacia and render Pharmacia liable for only part of the remediation cost for the pollution it caused, all of which would be contrary to the language and intent of § 5(b).

As noted above and as more comprehensively presented in Mystic's Memorandum of Law in Support of Summary Judgment and Opposition to Pharmacia's Motion for Summary Judgment, Mystic bears no responsibility for Pharmacia's past releases of hazardous materials and there has been no intermingling of waste materials below the clay cap. Under § 5(b), neither Mystic nor Modern is liable to Pharmacia for those releases that are solely attributable to Pharmacia' operations. Thus, to enter a declaratory judgment in favor of Mystic and Modern, it is unnecessary for this Court to engage in any allocation analysis concerning the cost of any

remediation effects, response costs, or damages resulting from the contamination below the "tunnel muck," because Pharmacia should be declared to be 100% percent liable to Mystic for the cleanup of such pollution.[2]

### 1. There is no comparable statutory provision in CERCLA to which this Court may look for guidance.

The above issues raised by Mystic are ones of first impression before the Court, with no decisions on point interpreting M.G.L. c. 21E, § 5(b), the key provision at issue. The language of M.G.L. c. 21E, § 5(b) appears to be unique to the Massachusetts statutory scheme, with no equivalent under CERCLA, 42 U.S.C. § 9607. Section 5(a) is broader than CERCLA, in that many persons in the property title chain are liable without regard to fault, notwithstanding their acts or operations on the property. See Gregor I. McGregor, Mass. Environmental Law, Vol. II, §22.5.4(i), p. 22-41 (MCLE 2002).

Although CERCLA contains an "innocent landowner" or "third-party" provision in 42 USC § 9607(b)(3), wherein the property owner must show that the release was the result of a third-party's acts and that the owner was not negligent and exercised due-care with regard to the contaminants, this provision has no bearing on the interpretation of § 5(b), for which there is no analogue in CERCLA.

A party can be a "person liable" to the Commonwealth under Section 5(a) of 21E, and yet not be a "responsible" party, in the sense of being responsible to share with other parties in cleanup costs (unless the cost recovery suit is brought by the Commonwealth). Martingnetti v. Haigh-Farr Inc., 425 Mass. 294, at n. 29 (1997). The language of M.G.L. c. 21E, § 5(b) explicitly provides that a "person liable" to the Commonwealth because of their status as an owner or operator of the site is not necessarily a party who is "responsible" to a polluter for

---

[2] To the extent that any contaminated sediments have leached from below the clay cap, it would be appropriate for the Court to conduct only a limited inquiry into whether any pollution above the cap is also attributable to Pharmacia.

#567408

cleanup costs at that site. Put another way, all "responsible" parties are statutorily "liable" to share in the response costs in an action brought by the Commonwealth, but not all parties who are "liable" to the Commonwealth are "responsible" for sharing in such costs as a result of litigation between the private parties themselves.

### B. Response costs are clearly distinguishable from permanent damages

M.G.L. c. 21E, § 5 provides recovery for "damage to …real or personal property incurred or suffered as a result of [a]… release or threat of release" of oil or hazardous material. M.G.L. c. 21E, § 5. The statute is silent, however, on the scope and measure of damages for this right of action. Section 5 does not state the measure of damages to be applied; but, Massachusetts Courts have interpreted it to incorporate the common law measure of damages to real property. E.g., Black v. Coastal Oil New England, Inc., 45 Mass.App.Ct. 461, 464-465, 699 N.E.2d 353, 355 (1998).

The statutory scheme of M.G.L. c. 21E, § 5, however, does not import the attendant causation and fault elements of a common-law claim, because those who are subject to the provisions of § 5(a) are strictly liable to the Commonwealth without regard to their relative fault or culpability for the contamination in question.[3] This strict statutory liability under 21E is separate, independent, and supplemental to any common-law claims for strict liability. See Gregor I. McGregor, Mass. Environmental Law, Vol. II, §22.5.5, p. 22-46 (MCLE 2002). In determining the measure of damages under § 5, the Court should look to the common law, where the appropriate measure depends on whether the property damages are permanent or temporary.[4]

When the injury is permanent, the appropriate measure of damages is diminution of value determined by "the difference in the fair market value of the injured premises before and after

---

[3] Liability under M.G.L. 21E does not depend upon whether a person acted reasonably or even in compliance with the law. See Gregor I. McGregor, Mass. Environmental Law, Vol. II, §22.5.4(i), p. 22-42 (MCLE 2002), citing Massachusetts v. Pace, 616 F.Supp. 815 (D. Mass. 1985).
[4] Mystic has not alleged and does not pursue any claim for temporary damages under M.G.L. c. 21E, § 5.

#567408

the injury." <u>Black</u>, 45 Mass. App. Ct. at 466; <u>Belkus v. Brockton</u>, 282 Mass. 285, 288 (1933). In the case of environmental pollution and remediation, "permanent damages" available under § 5 would, thus, include diminution in value caused by "permanent" contamination (i.e., contamination that cannot reasonably be remediated) or permanent damages to the property after remediation efforts have been completed. Thus, any permanent damages can best be determined after the property has been remediated; at that time, any permanent damages can be assessed.

Such permanent damages under § 5 clearly differ from the recoverable costs outlined in §§ 4 and 4A, which provide recovery for the temporary damages to the site; that is, the costs to cleanup the contaminated site. Section 5 makes no provision for recovery of costs for remediation efforts and focuses only on those permanent damages that the property may suffer after such efforts are complete. But § 4A allows an owner of contaminated property to establish a polluter's liability for the cost of a remediation plan, <u>before</u> undertaking the actual remediation. The statute states, in relevant part, that:

> Any person. . . who. . . who has undertaken, <u>is undertaking, or intends to undertake a necessary and appropriate response action</u>… may notify any person he reasonably believes is liable [for such contamination]… of the notifier's intent to take such response action… and that the notifier requests the person to whom the notice is being sent to either itself perform or participate in the performance of the response action… or to make contribution… or pay its equitable share of the costs of such response action…

M.G.L. c. 21E, § 4A (emphases added). Section 4A provides that the property owner does not need to have already incurred such remediation costs before bringing suit; rather, the owner may sue for <u>projected</u> costs before starting the work. The language in the statute – that one who intends to undertake remediation may seek contribution – indicates that future remediation costs are recoverable before they are incurred. Section 4A creates a procedure to encourage prompt resolution of liability and cost allocation and reducing litigation. <u>See</u> Gregor I. McGregor, Mass. Environmental Law, Vol. II, §22.5.5(h), p. 22-57 (MCLE 2002).

---

#567408

In <u>Black v. Coastal Oil</u>, 45 Mass. App. Ct. 461, 465 (1998), the Massachusetts appeals court explained a key difference between §§ 5 and 4.  The Court stated "that a 'person liable for cleanup under §5 can sue other liable parties under §4 for reimbursement of cleanup costs already paid, but cannot sue under §5(a)(5)(iii) to recover costs not yet incurred." <u>Id.</u> at 464 (citations omitted).  The Court explained that "[o]nly after the addition of G.L. c. 21E, §4A…has a private party who is liable under §5 been able to seek contribution toward <u>future</u> response costs <u>before commencing cleanup</u>…" <u>Id.</u> (emphasis added).  In addition, the Court in <u>Mailman's Steam Carpet Cleaning Corp. v. Lizotte</u>, 415 Mass. 865, 874 n.8 (1993) stated that § 4A "provides detailed procedures by which a <u>private party who is liable under §5, and intends to undertake a future cleanup action, may obtain contribution before commencing cleanup from others also liable</u>.  Prior to the addition of this section, a private party was limited to bringing an action for reimbursement of cleanup costs under §4." (Emphasis added.)  Conversely, § 4 allows a plaintiff to recover the already incurred "reasonable costs" of a "necessary and appropriate" response action.  Recovery of response costs under § 4 is in addition to any permanent property damages allowed under § 5.  <u>See</u> Gregor I. McGregor, Mass. Environmental Law, Vol. II, §22.5.5(b), p. 22-41 (MCLE 2002).

Here, the recovery Mystic seeks at trial is twofold: (1) reimbursement of already incurred response costs under § 4A; and (2) a declaratory judgment that Pharmacia is liable for all necessary and appropriate future remediation costs under § 4A with respect to the contamination at the site attributable to its previous chemical operations.  Pharmacia has attempted to muddy the waters on these very comprehensible and determinable issues by injecting irrelevant issues of common-law causation, assumption of the risk, and equitable allocation – none of which are applicable in this situation.  As established above, for the contamination below the "tunnel

muck" cap, there can be no doubt that Pharmacia is liable for all the response costs to date and any future remediation costs.

### 1. Mystic is entitled to a declaration that it is entitled to the recovery of its incurred costs and recovery of future response and remediation costs.

Although no part of § 4A or the remainder of 21E ever explicitly states that a liable defendant shall pay the costs of future remediation before they have been incurred, this result appears to be the clear implication of the statutory language. No reported case law addresses the issue of when the liable defendant shall be required to pay for the remediation costs. But, the Hon. Patrick F. Brady, and Stephen D. Anderson, Esq., write in Volume 1, Chapter 9, Section 9.13.1 of MCLE's "Massachusetts Superior Court Civil Practice Jury Instructions" (2001), that a plaintiff under Section 4A can get "a declaratory judgment for future costs." Indeed, the language of § 4A permits the court to fashion an award whereby the defendant is ordered to fund an environmental remediation escrow account, which the plaintiff can use to pay for the cost of any cleanup efforts. Public policy strongly supports such a result as well, particularly when, as here, the property owner may lack the resources to incur all the costs of the cleanup, and thus reimbursement of cleanup costs may not be a practical option.

### 2. If any windfall exists with respect to the property, it is Pharmacia that has reaped the benefits therefrom.

Pharmacia suggests that Mystic's claims are "little more than a barely disguised attempt to seize a windfall by a landowner who knowingly purchased contaminated property." As demonstrated above, however, such alleged equitable factors as Mystic's knowing purchase of contaminated property at a price reflective of such contamination do not supply a legal basis to reduce Pharmacia's liability in this action. To do so would turn the public policy of strict liability underlying M.G.L. c. 21E on its head. "Simply put, G.L. c. 21E was drafted in a comprehensive fashion to compel the prompt and efficient cleanup of hazardous material and to

#567408

-11-

ensure that costs and damages are borne by the appropriate responsible parties." Taygeta v. Varian, 436 Mass. at 223. As the Taygeta court stated, the primary purpose of 21E is:

> "to respond to environmental contamination and to recover response costs from persons responsible for the contamination…A second significant purpose of 21E is to enable private persons 'to obtain a certain measure of compensation for loss resulting from environmental damage."

Id. (citing Textron, 416 Mass. at 335).

Moreover, this is not a case in which Mystic is seeking full recovery of a purchase price from the seller after inking a deal in which buyer got a "discount" for the property equal to the cost of remediation, thereby giving the plaintiff a duplicative damages award.[5] Mystic seeks Pharmacia's contribution to the remediation required to correct the decades of pollution caused by its hazardous material operations, spills, releases, and activities upon the site. Such a cleanup is in the public's best interest. Disallowing full cost recovery because the purchaser of the property knew about the contamination at the time of purchase and/or paid a lower price reflective of such contamination, would be counter to the clear goal, embodied in 21E, of encouraging private parties to buy contaminated party and hold the polluters liable for the cleanup costs. It would also eviscerate the strict liability regime of c. 21E.

Were any party to receive a windfall in this case, it would only occur if the Court lets a known and admitted polluter to absolve itself from or reduce its strict liability for such cleanup costs. Pharmacia asks the Court to do just that, by allowing it to contaminate property and then pass off the resultant cleanup costs to one or more subsequent owners, ignoring the legislative mandate that such polluters should pay for the cost to remediate the property they polluted. Such a result would be contrary to the intent and clear directive of M.G.L. c. 21E. Thus, Pharmacia

---

[5] See e.g. Smith Land & Improvement Corporation v. Celotex Corporation, 851 F.2d 86, 90 (3rd Cir. 1988); Allegheny International, Inc. et. al. v. Allegheny International, Inc., 158 BR 361, 381-384 (1993)

#567408

should be declared liable to pay for 100% of the cleanup costs for the pollution it caused to the site.

                                    MYSTIC LANDING, LLC AND MODERN
                                    CONTINENTAL CONSTRUCTION CO.

                                    By its attorneys:

                                    /s/ Doreen M. Zankowski
                                    _____
                                    Robert G. Flanders (BBO #170820)
                                    Doreen M. Zankowski (BBO #558381)
                                    Jeremy Blackowicz (BBO #650945)
                                    Hinckley, Allen & Snyder LLP
                                    28 State Street
                                    Boston, MA  02109-1775
                                    (617) 345-9000

DATED:  February 6, 2006

#567408

## CERTIFICATE OF SERVICE

I, Doreen M. Zankowski, hereby certify that on this 6th day of February 2006, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

John M. Stevens, Esq.
Adam P. Kahn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210

Mark S. Granger, Esq.
Douglas B. Otto, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Howard G. Guggenheim
P.O. Box 736
Scituate, MA 02066

/s/ Doreen M. Zankowski
_____