UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>    Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| PHARMACIA CORPORATION<br>and MONSANTO COMPANY,<br>    Defendants. | )<br>)<br>)<br>) |
| PHARMACIA CORPORATION and<br>MONSANTO COMPANY,<br>    Third-Party Plaintiffs, | )<br>)<br>)<br>) |
| v. | )<br>) |
| MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>    Third-Party Defendant. | )<br>)<br>)<br>) |
| PHARMACIA CORPORATION,<br>    Third-Party Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| BOSTON EDISON COMPANY,<br>    Third-Party Defendant. | )<br>)<br>) |
| v. | )<br>) |
| BOSTON EDISON COMPANY,<br>    Fourth-Party Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL,<br>    Fourth-Party Defendants. | )<br>)<br>) |

**CIVIL ACTION NO.
04-10180 NMG**

**DEFENDANT PHARMACIA'S REVISED AND REDUCED OBJECTIONS TO
PLAINTIFF MYSTIC LANDING, LLC AND THIRD-PARTY DEFENDANT MODERN
CONTINENTAL CONSTRUCTION CO., INC.'S
LIST OF EXHIBITS TO BE INTRODUCED AT TRIAL**

In accordance with this Court's January 25, 2006 Memorandum and Order, Defendant Pharmacia Corporation ("Pharmacia") has conferred with Plaintiff Mystic Landing, LLC ("Mystic") and Third-Party Defendant Modern Continental Construction Co. Inc. ("Modern") in order to reduce the number of exhibits in dispute. Accordingly, Pharmacia respectfully submits a revised list of objections to the List of Exhibits To Be Introduced at Trial filed by Plaintiff Mystic Landing, LLC and Third-Party Defendant Modern Continental Construction Co., Inc. Preceeding its revised list of objections, Pharmacia provides the Court with cogent explanations for its continuing objections to a selection of Mystic and Modern's proposed exhibits.

## EXPLANATION OF OBJECTIONS

Although Pharmacia objects to a number of Mystic and Modern's proposed trial exhibits, Pharmacia's objections are based, for the most part, on four grounds: (1) Mystic and Modern attempt to offer into evidence reports prepared by their experts that are hearsay and do not fit within any of the hearsay exceptions; (2) Mystic and Modern attempt to offer into evidence new expert materials that suggest that Mystic and Modern's expert will attempt to offer entirely new, as of yet undisclosed, expert opinions well after the permissible time for disclosure of expert testimony; (3) Mystic and Modern attempt to offer into evidence invoices of costs that were not timely disclosed, that are irrelevant in that they represent costs claimed to have been incurred by Modern, a party which has not set forth any claim for damages, and the majority of which have not been explained by supporting explanatory data as directed by the Court; and, (4) Mystic and Modern seek to offer evidence of anticipated future response costs and development plans that is not relevant to the apportionment of liability among the parties, which all parties agree is the subject of this suit. Because the vast majority of Pharmacia's objections are based on these four grounds, this Court can rule on nearly all of Pharmacia's objections by making a determination

as to each of these issues.  For the reasons set forth below, this Court should find in Pharmacia's favor on each of these issues.

## I. Mystic's Experts' Reports Should Be Excluded From Evidence As Hearsay

Mystic and Modern's experts' Reports are written assertions that Mystic and Modern intend to offer into evidence to prove the truth of the matter asserted and thus constitute hearsay. Such reports do not fit within any of the hearsay exceptions listed in Fed. R. Evid. 803 or 804. Nor have the parties agreed that expert witness testimony should be introduced in written rather than in oral form.  While Mystic and Modern's experts may testify at trial as to their analyses and opinions, their expert reports cannot be introduced into evidence by Mystic and Modern to prove the truth of the matters they assert.  Accordingly, Mystic and Modern's experts' reports and related documents (Items 1, 7, 30, 35-38, 52, 109, 127, 128) should be excluded from evidence.

## II. Several of Mystic and Modern's Proposed Exhibits Suggest Untimely, Yet To Be Disclosed Expert Opinions Will Be Offered At Trial

Mystic and Modern's list of proposed exhibits includes twenty-five items not produced during discovery, suggesting that Mystic and Modern's environmental expert, Dr. Richard Hughto, will attempt to offer new, as yet undisclosed, expert opinions.  Although each of the items are described as having been "contained in Hughto Expert Report" or "to supplement Hughto Expert Report," the items were not contained in Dr. Hughto's report, nor was their existence disclosed to Pharmacia until January 3, 2006.  Dr. Hughto has not supplemented his Expert Report or Expert Rebuttal Report to provide an opinion based on these items since reports were exchanged, nor, as of the date of this filing have Mystic and Modern disclosed to Pharmacia any opinions Dr. Hughto has derived from such items or provided Pharmacia with underlying information necessary for Pharmacia to prepare a response to these new items. Accordingly, the Court should exclude the items and preclude testimony by Dr. Hughto related

thereto, or, at a minimum, require that the new opinions be disclosed forthwith, permit an examination of Dr. Hughto and allow Pharmacia's expert to testify as to the subject matters covered by the proposed exhibits and to rebut any related opinions offered by Dr. Hughto.

Rule 26(a)(2) requires that a party provide, as part of its expert disclosure, a report written by the expert containing "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and,] any exhibits to be used as a summary of or support for the opinions". Fed. R. Civ. P. 26(a)(2)(B). "The purpose of the expert disclosure rules is 'to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004). Such disclosure must be made at the time directed by the court or at least 90 days before the date the case is to be ready for trial, or, in the case of rebuttal reports, within 30 days after the disclosure made by the other party. Fed. R. Civ. P. 26(a)(2)(C). In the ordinary case, the sanction for late disclosure of an expert opinion is exclusion. *See, e.g., Poulis-Minott*, 388 F.3d at 358 ("'The required sanction in the ordinary case . . . is mandatory preclusion.'").

Even if preclusion could be avoided by supplementation, Mystic and Modern have not yet disclosed the opinions Dr. Hughto will offer regarding the new items it would introduce or how they relate to his previously disclosed opinion and rebuttal opinion. It appears possible that he may rely on certain items (Proposed Exhibits 24 - 26 and 28 - 29) to rebut Pharmacia's expert's opinion regarding Modern's contamination of the Property. Any rebuttal opinion is long overdue.[1] *See Finley v. Marathon Oil Co.*, 75 F.3d 1225 (7th Cir. 1996) (excluding expert rebuttal evidence disclosed more than 30 days after opponent's expert disclosure). Several other

---

[1] Any rebuttal opinion was due September 19, 2005, or, at the latest, thirty days following Pharmacia's expert disclosure. *See* Fed. R. Civ. P. 26(a)(2)(C).

items (Proposed Exhibits Items 22, 32 - 34, 40 - 51) appear to relate to new soil, groundwater and sediment sampling, the results of which were provided to Pharmacia long after the time for service of expert and rebuttal reports.[2]  This information, by its nature, must form the basis for an entirely new opinion by Dr. Hughto as to these topics.  Allowing such information to be introduced into evidence or discussed at trial would prejudice Pharmacia.

     Nor should Mystic and Modern be permitted to hide behind the excuse that such information is "of a very recent vintage" and therefore could not have been disclosed at the appropriate time.  The new information is the result of sampling that, had they observed the disclosure requirements set forth in the Federal Rules and the Court's orders, Mystic and Modern could have conducted well in advance of the time set for service of expert reports.[3]  Because they did not do so, the new data and any expert opinions based thereon should be excluded.  Mystic has controlled the timing of this case from the outset and should not be allowed to rely on coincidences of timing it has itself created to Pharmacia's detriment.  At a minimum, Mystic and Modern should disclose those opinions and their basis forthwith and Pharmacia should be permitted to examine Mystic and Modern's expert and have its own experts testify in rebuttal.

---

[2] It is worth noting that Mystic and Modern have continued in their attempts to inundate Pharmacia with additional information as close to trial as possible, providing Pharmacia with additional sampling results dated January 31, 2006, February 6, 2006 and February 9, 2006 on February 17, 2006.  In addition, the information that has been provided has been incomplete, failing to provide boring logs (and in the case of the more recently produced documents, sampling site plans) or a narrative description, essential for Pharmacia's experts to make any sense of the results provided.  Despite requests that these materials be provided to Pharmacia, Mystic and Modern have failed to produce such information.

[3] At no time was Pharmacia informed when additional sampling was being conducted, nor were its experts invited to observe the sampling activities.  Additionally, Mystic and Modern's attorneys have flatly refused to confirm in writing that Mystic and Modern have provided Pharmacia with copies of all sampling data and associated documentation that may exist despite several written requests that they do so.  For example, in a January 10, 2006 letter, counsel for Mystic wrote in response to one of those requests: "to the extent you are requesting documents that were generated after the close of discovery, we object to your request.  Simply, the discovery period has expired."  This suggests that Mystic and Modern may be disclosing to Pharmacia only the information that supports Mystic's case while failing to disclose additional information that may not be helpful to them.  Mystic and Modern's failure to so confirm is inexcusable.

### III. Evidence Detailing Costs Incurred by Modern Should Be Excluded Because They Are Not Relevant and Were Not Timely Disclosed

While recognizing that in its Memorandum and Order of January 25, 2006, the Court denied Pharmacia's Motions to foreclose presentation of evidence of previously incurred damages, Pharmacia reasserts its objections to such exhibits based on the terms of the Memorandum and Order. Specifically, while it denied Pharmacia's motions the Court indicated that "it will not tolerate any further noncompliance with legitimate discovery requests," and, accordingly, ordered that "Mystic [] produce forthwith any additional documents related to such costs or be foreclosed from offering evidence of incurred response costs at trial." *Memorandum and Order* of January 25, 2005 at 12. Despite numerous requests by Pharmacia, Mystic and Modern failed to comply with this Court's order to produce documents forthwith, delaying weeks before ultimately producing after our written request, on March 6, 2006 documents (some of which were redacted) to which Mystic and Modern have clearly long had access (in some cases since 2001) but failed to previously produce. What has been produced - even belatedly - is inadequate; no additional documentation has been provided for sixteen of the twenty-eight invoices sought to be introduced, and although somewhat detailed information has been provided for eight of the invoices, the information provided for the four remaining invoices is entirely unhelpful.[4]

In addition, and as described in further detail in Pharmacia's earlier motions, such evidence is not relevant because, according to contradictory sworn affidavits of Mystic's president, the invoices do not show expenditures by Mystic but rather are either invoices "paid for by Modern Construction or [that] will be paid by Modern Construction," s*ee* Affidavit of John H. Pastore of Nov. 7, 2005 at 10, or, at best, show expenditures of approximately

---

[4] It is clear from what additional information has been provided that, as anticipated, thousands of dollars worth of the claimed costs constitute litigation-related costs rather than recoverable response costs.

$16,674.00 by Mystic. *See* Affidavit of John N. Pastore of Dec. 1, 2005 at 7. To the extent that the invoices were paid for by Modern, they are irrelevant because, as this Court has recognized "Modern 1) has stated no claims in the instant action, 2) has not been joined as a party-plaintiff and 3) as a third-party defendant to claims brought by Pharmacia, has not availed itself of the opportunity or obligation to bring compulsory counterclaims against the defendant." *Memorandum and Order* of January 25, 2005 at 8.

**IV.     Mystic and Modern's Proposed Exhibits Regarding Future Costs and Development Plans Should Be Excluded on Relevance Grounds**

While in its Memorandum and Order of January 25, 2006 this Court denied Pharmacia's Motion In Limine to Foreclose Presentation of Evidence on Anticipated Future Response Costs without prejudice, it stated that, although Mystic was not prevented as a matter of law from introducing such evidence, "Mystic is forewarned that such evidence will be excluded at trial unless shown to be relevant." This Court recognized that "evidence of expected, future response costs . . . may be unnecessary." In order to conserve judicial resources, as well as the resources of the parties, Pharmacia believes that exhibits presented at trial should be related to issues put before the Court for determination. Because exhibits regarding anticipated future response costs, as well as exhibits regarding potential future development plans, are in no way relevant to the issue of the apportionment of liability among the parties, which all parties agree is the subject of this suit, Pharmacia requests that such evidence be excluded.

**REVISED LIST OF OBJECTIONS**

| Exhibit No. | Description | Objection |
|---|---|---|
| 1. | Expert Report of Richard J. Hughto, Ph.D., P.E., LSP ("Hughto Expert Report"), dated September 12, 2005 | Hearsay |
| 2. | [Withdrawn] | |
| 3. | Aerial Photograph of Site contained in Hughto Expert Report | |

| Exhibit No. | Description | Objection |
|---|---|---|
| 4. | Aerial Photograph of Site (1952) contained in Hughto Expert Report | |
| 5. | Merrimac Chemical Company, Inc. Aerial Photograph (1931) contained in Hughto Expert Report | |
| 6. | Historical Monsanto Site Plan contained in Hughto Expert Report | |
| 7. | Table 1: Primary Eastern Parcel Products Manufactured, Raw Materials, and Waste Products contained in Hughto Expert Report | Hearsay |
| 8. | Timeline of Site Ownership Chart contained in Hughto Expert Report | |
| 9. | Monsanto Company 1978 Closed Disposal Areas Diagram contained in Hughto Expert Report | |
| 10. | Historic Monsanto Waste Disposal Locations Diagram contained in Hughto Expert Report | |
| 11. | Monsanto Company Elevated Concentrations of Sulfate Diagram contained in Hughto Expert Report | |
| 12. | Monsanto Company Elevated Concentrations of Sulfur Diagram contained in Hughto Expert Report | |
| 13. | Monsanto Company Elevated Concentrations of EP Soluble Lead Diagram contained in Hughto Expert Report | |
| 14. | Monsanto Company Elevated Concentrations of Aluminum and Iron Diagram contained in Hughto Expert Report | |
| 15. | Historic Site Contamination Quantified Prior to 2000 Diagram contained in Hughto Expert Report | |
| 16. | Aerial Photograph of Site contained in Hughto Expert Report | |
| 17. | Outline of MCP Process contained in Hughto Expert Report | |
| 18. | Site Plan with Rizzo Associates Sampling Locations contained in Hughto Expert Report | |
| 19. | [Withdrawn] | |
| 20. | Letter from M. James Feeney (Monsanto Co.) to J.W. Cox (Boston Edison Co.) regarding Proposed Property Sale to Boston Edison Co., dated January 22, 1982, contained in Hughto Expert Report | |
| 21. | Site Plan-UCL Soil Exceedance Areas Diagram contained in Hughto Expert Report | |
| 22. | Site Plan-UCL Soil and RCS-1 Exceedance Areas Diagram contained in Hughto Expert Report | Und. Exp. Op.[5] |

---

[5] Undisclosed Expert Opinion

| Exhibit No. | Description | Objection |
|---|---|---|
| 23. | Area of Low pH Groundwater Diagram contained in Hughto Expert Report | |
| 24. | Site Plan with Locations of Section Lines Diagram contained in Hughto Expert Report | Und. Exp. Op. |
| 25. | Geologic Cross-Sections A-A, B-B Diagram contained in Hughto Expert Report | Und. Exp. Op. |
| 26. | Geologic Cross-Sections A-A, B-B with Contaminated Interval Diagram contained in Hughto Expert Report | Und. Exp. Op. |
| 27. | Woodard & Curran Aerial Photograph with Soil Sample Locations contained in Hughto Expert Report | |
| 28. | Woodard & Curran Aerial Photograph with Tunnel Muck Thickness contained in Hughto Expert Report | Und. Exp. Op. |
| 29. | Woodard & Curran Aerial Photograph with Tunnel Muck Thickness (with chart) contained in Hughto Expert Report | Und. Exp. Op. |
| 30. | Table 2: Summary of Primary Soil and Groundwater Contaminants and Their Sources contained in Hughto Expert Report | Hearsay |
| 31. | Location of Waste Disposal and Observed Contamination Diagram contained in Hughto Expert Report | |
| 32. | Site Plan with Rizzo Associates Sampling Locations Diagram contained in Hughto Expert Report | Und. Exp. Op. |
| 33. | Mystic River Sediment Sample Locations by: Menzie Cura & Assoc. contained in Hughto Expert Report | Und. Exp. Op. |
| 34. | Site Plan: Metals Impacted Groundwater Diagram contained in Hughto Expert Report | Und. Exp. Op. |
| 35. | Draft AUL Language-Mystic Landing Site contained in Hughto Expert Report | Hearsay, Und. Exp. Op., Relevance |
| 36. | Table 3: Summary of Estimated Remediation Costs contained in Hughto Expert Report | Hearsay, Relevance |
| 37. | Summary of Estimated Remediation Costs Using Data Available Through December 2005 Table to supplement Hughto Expert Report | Hearsay, Und. Exp. Op., Relevance |
| 38. | Estimated Cost for Soil Disposal During Construction Chart to supplement Hughto Expert Report | Hearsay, Und. Exp. Op., Relevance |
| 39. | Summary of Contamination Conditions Requiring Remediation Table to supplement Hughto Expert Report | Und. Exp. Op. |
| 40. | Table 1: Soil Analytical Data-Mystic River (SED Sample) to supplement Hughto Expert Report | Und. Exp. Op. |
| 41. | Table 1: Soil Analytical Data (mg/kg) (CES Sample) to supplement Hughto Expert Report | Und. Exp. Op. |

| Exhibit No. | Description | Objection |
|---|---|---|
| 42. | Table 1: Groundwater Analytical Data to supplement Hughto Expert Report | Und. Exp. Op. |
| 43. | Table 2: Lims 93815 Soil Analytical Data to supplement Hughto Expert Report | Und. Exp. Op. |
| 44. | Table 3: Groundwater Analytical Data, dated December 2005 to supplement Hughto Expert Report | Und. Exp. Op. |
| 45. | Con-Test Analytical Laboratory-Analytical Summary Report, dated December15, 2005 to supplement Hughto Expert Report | Und. Exp. Op. |
| 46. | Con-Test Analytical Laboratory-Analytical Summary Report, dated December 15, 2005 to supplement Hughto Expert Report | Und. Exp. Op. |
| 47. | Con-Test Analytical Laboratory-Analytical Summary Report, dated December 19, 2005 to supplement Hughto Expert Report | Und. Exp. Op. |
| 48. | Con-Test Analytical Laboratory-Analytical Summary Report, dated December 22, 2005 to supplement Hughto Expert Report | Und. Exp. Op. |
| 49. | Con-Test Analytical Laboratory-Analytical Summary Report, dated December 27, 2005 to supplement Hughto Expert Report | Und. Exp. Op. |
| 50. | Alpha Analytical Laboratories Certificate of Analysis (Laboratory Job #L0515324)-Reported on December 22, 2005 to supplement Hughto Expert Report | Und. Exp. Op. |
| 51. | Alpha Analytical Laboratories Certificate of Analysis (Laboratory Job #L0515482)-Reported on December 23, 2005 to supplement Hughto Expert Report | Und. Exp. Op. |
| 52. | SUMMARY CHART, showing 1) these particular hazardous materials, 2) their CAS Numbers, 3) each environmental study, from 1980 to 2001, in which the contamination was found, and 4) whether the contaminants were discovered in groundwater, soil or both on the Site prepared by Richard J. Hughto | Hearsay |
| 53. | Rizzo Associates, Environmental Studies Phase II: Field Investigation Report, dated June 19, 2001 | |
| 54. | Rizzo Associates, Environmental Studies Limited Subsurface Investigation Report, dated August 10, 2001 | |
| 55. | Laboratory Report prepared by Spectrum Analytical, Inc., dated June 7, 2005 | |
| 56. | Laboratory Report prepared by Spectrum Analytical, Inc., dated June 10, 2005 | |
| 57. | Laboratory Report prepared by Spectrum Analytical, Inc., dated June 16, 2005 | |
| 58. | Analytical Results prepared by ProScience Analytical Services, Inc., dated June 22, 2005 | |

| Exhibit No. | Description | Objection |
|---|---|---|
| 59. | Analytical Results prepared by ProScience Analytical Services, Inc., dated July 19, 2005 | |
| 60. | Letter from F.M. Lee (Boston Edison Co.) to Richard Chalpin (MA Dept. of Environ. Quality Engineering) regarding Monsanto Site, dated October 17, 1985 | Incomplete; no objection to complete document (Pharmacia #46) |
| 61. | Monsanto Co. Plan entitled "Closed Disposal Areas." (EVE 1615691) | |
| 62. | Letter from Gerald Petros, Esq. to Mr. Fred Hassan, Richard T. Collier, Esq. and Adam P. Kahn, Esq., dated August 27, 2001 | |
| 63. | Preliminary Assessment-Waterfront Development Everett and Boston, Massachusetts prepared by Environmental Science and Services, Inc., dated April 12, 2002 | |
| 64. | Monsanto Co. Memorandum from P.B. Hodges, B.W. Eley and A.F. Pier to F.J. Holzapfel regarding Environmental Assessment Sale of 34 Acres-Everett Plant, dated October 24, 1973 | |
| 65. | Monsanto Co. Memorandum from J.H. Waldbeser to R.G. Cooper regarding Sale of Everett Property to Boston Edison with Attachment of Draft Summary of Site History and Environmental Status, Sale of Everett Plant, East Side Property, dated November 19, 1981 | |
| 66. | From Irving A. Newcomer to R.E. Cummings regarding Everett Plant, East Side Assessment, dated June 3, 1980 | |
| 67. | Monsanto Company 2004 Annual Report | Hearsay, Relevance |
| 68. | Quitclaim Deed from Monsanto Co. to Boston Edison Co., dated June 20, 1983 | |
| 69. | Quitclaim Deed from Boston Edison Co. to O'Donnell Sand & Gravel, Inc., dated March 6, 1995 | |
| 70. | Quitclaim Deed from O'Donnell Sand & Gravel, Inc. to Mary O'Donnell, dated September 25, 1995 | |
| 71. | Quitclaim Deed from Mary O'Donnell to Mystic Landing, LLC, dated June 21, 2001 | |
| 72. | Option Agreement between Mary O'Donnell and Modem Continental Construction Co., Inc./Obayashi, a Joint Venture, dated May 1, 1996 | |
| 73. | First Amendment to the Option Agreement between Mary O'Donnell and Modem Continental Construction Co., Inc./Obayashi, a Joint Venture, dated March 17, 1999 | |
| 74. | Notice of Option Agreement between Mary O'Donnell and Modem Continental Construction Co., Inc./Obayashi, a Joint Venture, dated March 17, 1999 | |

| Exhibit No. | Description | Objection |
|---|---|---|
| 75. | Subcontract Agreement between Modem Continental Construction Co., Inc./Obayashi, a Joint Venture and Mary O'Donnell Construction Co., Inc., dated April 5, 1996 | |
| 76. | Amendment to Subcontract Agreement between Modem Continental Construction Co., Inc./Obayashi, a Joint Venture and Mary O'Donnell Construction Co., Inc., dated March 17, 1999 | |
| 77. | Commercial Lease from Mary O'Donnell to Mary O'Donnell Construction Co., Inc., dated May 1, 1996 | |
| 78. | Assignment and Assumption of Rights and Obligations Agreement between Modem Continental Co., Inc./Obayashi, a Joint Venture and Mystic Landing, LLC, dated June 19, 2001 | |
| 79. | Assignment of Notice of Option Agreement between Mary O'Donnell and Modem Continental Co., Inc./Obayashi, a Joint Venture, dated June 21, 2001 | |
| 80. | Rizzo Associates Invoice No. 51647 for $4,072.11, dated March 26, 2001 | Undisclosed, Relevance |
| 81. | Rizzo Associates Invoice No. 52031 for $29,935.14, dated April 26, 2001 | Undisclosed, Relevance |
| 82. | Rizzo Associates Invoice No. 52330 for $16,106.44, dated May 21, 2001 | Undisclosed, Relevance |
| 83. | Rizzo Associates Invoice No. 52909 for $26,372.51, dated June 29, 2001 | Undisclosed, Relevance |
| 84. | Rizzo Associates Invoice No. 53376 for $8,793.48, dated August 15, 2001 | Undisclosed, Relevance |
| 85. | Rizzo Associates Invoice No. 53836 for $769.93, dated November 14, 2001 | Undisclosed, Relevance |
| 86. | Rizzo Associates Invoice No. 54480 for $511.24, dated September 20, 2001 | Undisclosed, Relevance |
| 87. | Rizzo Associates Invoice No. 55233 for $691.85, dated January 15, 2002 | Undisclosed, Relevance |
| 88. | Rizzo Associates Invoice No. 55762 for $3,393.85, dated February 14, 2002 | Undisclosed, Relevance |
| 89. | Rizzo Associates Invoice No. 56170 for $1,773.23, dated March 21, 2002 | Undisclosed, Relevance |
| 90. | Rizzo Associates Invoice No. 56915 for $2,067.73, dated May 15, 2002 | Undisclosed, Relevance |
| 91. | Rizzo Associates Invoice No. 57454 for $4,684.61, dated June 21, 2002 | Undisclosed, Relevance |
| 92. | Rizzo Associates Invoice No. 580381 for $318.32, dated August 13, 2002 | Undisclosed, Relevance |

| Exhibit No. | Description | Objection |
|---|---|---|
| 93. | Rizzo Associates Invoice No. 580920 for $309.00, dated September 23, 2002 | Undisclosed, Relevance |
| 94. | Rizzo Associates Invoice No. 581166 for $1,910.66, dated October 16, 2002 | Undisclosed, Relevance |
| 95. | Rizzo Associates Invoice No. 581594 for $206.00, dated November 13, 2002 | Undisclosed, Relevance |
| 96. | Rizzo Associates Invoice No. 581957 for $2,935.50, dated December 18, 2002 | Undisclosed, Relevance |
| 97. | Rizzo Associates Invoice No. 583972 for $1,828,25, dated June 21, 2003 | Undisclosed, Relevance |
| 98. | Rizzo Associates Invoice No. 584591 for $2,266.00, dated August 13, 2003 | Undisclosed, Relevance |
| 99. | Rizzo Associates Invoice No. 588929 for $2,382.69, dated September 28, 2004 | Undisclosed, Relevance |
| 100. | Rizzo Associates Invoice No. 589369 for $7,147.52, dated November 1, 2004 | Undisclosed, Relevance |
| 101. | Rizzo Associates Invoice No. 50001074 for $3,551.63, dated December 31, 2004 | Undisclosed, Relevance |
| 102. | Rizzo Associates Invoice No. 50002590 for $1,545.00, dated January 28, 2005 | Undisclosed, Relevance |
| 103. | Rizzo Associates Invoice No. 50003170 for $352.19, dated February 27, 2005 | Undisclosed, Relevance |
| 104. | Rizzo Associates Invoice No. 50005077 for $1,211.06, dated April 29, 2005 | Undisclosed, Relevance |
| 105. | Rizzo Associates Invoice No. 50008870 for $29,834.05, dated July 15, 2005 | Undisclosed, Relevance |
| 106. | Rizzo Associates Invoice No. 50011802 for $2,411.59, dated September 9, 2005 | Undisclosed, Relevance |
| 107. | Rizzo Associates Invoice No. 50016260 for $26,065.21, dated November 15, 2005 | Undisclosed, Relevance |
| 108. | Rizzo Associates Invoice No. 50017106 for $2,868.18, dated November 27, 2005 | Undisclosed, Relevance |
| 109. | Expert Report of David P. Bouchard, MAI, Steven R. Foster, MAI, Lincoln Property Company ("Bouchard Expert Report"), dated September 12, 2005 | Hearsay, Relevance, Incomplete; no objection on "completeness" ground if complete report is offered |
| 110. | Photograph of View Southerly Along Alford Street (Route 99) contained in Bouchard Expert Report | |

| Exhibit No. | Description | Objection |
|---|---|---|
| 111. | Photograph of View Northerly Along Broadway (Route 99) contained in Bouchard Expert Report | |
| 112. | Photograph of View of Horizon Way from Route 99 contained in Bouchard Expert Report | |
| 113. | Photograph of View Along Horizon Way Towards Route 99 contained inBouchard Expert Report | |
| 114. | Photograph of View Southerly Across the Site contained in Bouchard Expert Report | |
| 115. | Photograph of View Northerly Across the Site contained in Bouchard Expert Report | |
| 116. | Photograph of View Northerly Across the Site II contained in Bouchard Expert Report | |
| 117. | Photograph of View Southerly Across the Site II contained in Bouchard Expert Report | |
| 118. | Photograph of View Along the Back Boundary, Railroad Retail Development contained in Bouchard Expert Report | |
| 119. | Photograph of View Westerly Along the Mystic River contained in Bouchard Expert Report | |
| 120. | Photograph of View Southerly Across Mystic River contained in Bouchard Expert Report | |
| 121. | Photograph of View Southerly Towards the Power Plant contained in Bouchard Expert Report | |
| 122. | Photograph of View Along the Waterfront contained in Bouchard Expert Report | |
| 123. | Photograph of View Along the Waterfront II contained in Bouchard Expert Report | |
| 124. | Photograph of View of the Property from Across the Mystic River contained in Bouchard Expert Report | |
| 125. | Photograph of View Easterly Along the Mystic River contained in Bouchard Expert Report | |
| 126. | Site Constraints Plan, Drawing No. 2 prepared by Environmental Science Services, Inc., dated April 11, 2002 contained in Bouchard Expert Report | |
| 127. | Emerging Trend: Transforming Buildings from Office to Residential Chart contained in Bouchard Expert Report | Hearsay, Relevance |
| 128. | Expert Report of Crosby/Schlessinger/Smallridge, LLC ("CSS Expert Report"), dated September 12, 2005 | Hearsay, Relevance |
| 129. | New Development-Option 1 Diagram contained in CSS Expert Report | Relevance |

| Exhibit No. | Description | Objection |
|---|---|---|
| 130. | New Development-Option 2 Diagram contained in CSS Expert Report | Relevance |
| 131. | New Development-Option 3 Diagram contained in CSS Expert Report | Relevance |
| 132. | New Development-Option 4 Diagram contained in CSS Expert Report | Relevance |
| 133. | New Development-Option 5 Diagram contained in CSS Expert Report | Relevance |
| 134. | New Development-Option 6 Diagram contained in CSS Expert Report | Relevance |
| 135. | New Development-Option 7 Diagram contained in CSS Expert Report | Relevance |
| 136. | Deposition Transcript of Gerald Rinaldi ("Rinaldi Deposition"), dated September 8, 2005 | |
| 137. | Notice of Deposition to Pharmacia Corp. pursuant to Fed. R. Civ. P. 30(b)(6), dated April 20, 2005 (Rinaldi Deposition Exhibit 1) | |
| 138. | Monsanto Co. Memorandum from R.E. Cummings to R.S. Nelson and F.J. Holzapfel, dated July 21, 1980 (Rinaldi Deposition Exhibit 3) | |
| 139. | Internal Monsanto Co. Memorandum from J.H. Waldbeser to R.E. Cummings, dated August 4, 1980 (Rinaldi Deposition Exhibit 4) | |
| 140. | Dames & Moore, Hydrogeologic Survey, dated January 8, 1980 (Rinaldi Deposition Exhibit 5) | Incomplete; no objection to introduction of complete report, Pharmacia Exh. 10. |
| 141. | Letter from Barry J. Vroginday and Charles A. Rich (Dames & Moore) Monsanto Industrial Co. regarding Report, Hydrogeological Services, dated December 23, 1980 (Rinaldi Deposition Exhibit 6) | |
| 142. | Dames & Moore Report-Hydrogeologic Survey for the Eastern Property of Monsanto Industrial Chemicals Report, dated February 12, 1982 (Rinaldi Deposition Exhibit 7) | |
| 143. | Letter from M. James Feeney (Monsanto Co.) to J.W. Cox (Boston Edison Co.) regarding proposed Property Sale to Boston Edison Co., dated January 22, 1982 (Rinaldi Deposition Exhibit 8) | |
| 144. | Perkins Jordan Report "Site Contamination and Liability Audit on Monsanto Property," dated July 14, 1982 (Rinaldi Deposition Exhibit 9) | |

| Exhibit No. | Description | Objection |
|---|---|---|
| 145. | Letter from Consulting Richard R. DeBenedictis and Bennett Edgar (Engineers & Scientists, Inc.) to Ms. Lilla Dick (MA Dept. of Environ. Protection), dated March 27, 1996 (Rinaldi Deposition Exhibit 10) | |
| 146. | Phase I:. Initial Site Investigation Report, Alford, MA prepared by Consulting Engineers & Scientists, Inc., dated January 15, 1997 (Rinaldi Deposition Exhibit 11) | |
| 147. | Letter from Adam P. Kahn, Esq. To Doreen M. Zankowski, Esq. enclosing Woodard & Curran laboratory sampling results, dated October 13, 2004 (Rinaldi Deposition Exhibit 12) | |
| 148. | Exploration Location Plan prepared by GZA GeoEnvironmental, Inc., dated April 8, 1994 (Rinaldi Deposition Exhibit 13) | |
| 149. | Initial Site Evaluation Table (Rinaldi Deposition Exhibit 14) | |
| 150. | Index of Documents prepared by Monsanto (Rinaldi Deposition Exhibit 15) | |
| 151. | Inventory of Hazardous Materials prepared by Monsanto (Rinaldi Deposition Exhibit 16) | |
| 152. | Industrial Hygiene Materials List prepared by Monsanto (Rinaldi Deposition Exhibit 17) | |
| 153. | Monsanto Co. Drawing of Site, dated November 26, 1965 (Rinaldi Deposition Exhibit 18) | |
| 154. | Monsanto Co. Memorandum from R.J. Cushing to Henry Gott regarding Building Identification, dated January 18, 1989 (Rinaldi Deposition Exhibit 19) | |
| 155. | Plant Layout Map, dated November 3, 1977 (Rinaldi Deposition Exhibit 20) | |
| 156. | Material and Waste Handling from Discussions with Employees prepared by GZA GeoEnvironmental, Inc., dated July 1992 (Rinaldi Deposition Exhibit 21) | |
| 157. | Press Release No. 1: "The Everett Plant" to Monsanto Magazine, dated December 13, 1971 (Rinaldi Deposition Exhibit 22) | |
| 158. | Electronic Communication from E.S. Brimer to M.W. Hoots regarding Everett Site Meeting, dated July 6, 1992 (Rinaldi Deposition Exhibit 23) | |
| 159. | Response Action Outcome Statement for Monsanto Everett Site, Mystic View, Wells 5 and Tidal Flats Subareas Prepared by O'Reilly, Talbot & Okun Associates, dated July 1997 (Rinaldi Deposition Exhibit 24) | |
| 160. | Response Action Outcome Statement for Monsanto Everett Site, Fund Land Area Prepared by O'Reilly, Talbot & Okun Associates, dated July 1997 (Rinaldi Deposition Exhibit 25) | |

| Exhibit No. | Description | Objection |
|---|---|---|
| 161. | Response Action Outcome Statement for Monsanto Everett Site, Plasticizer Subarea Prepared by O'Reilly, Talbot & Okun Associates, dated July 1997 (Rinaldi Deposition Exhibit 26) | |
| 162. | Everett Plant History Chronology (Rinaldi Deposition Exhibit 27) | |
| 163. | GZA Phase II-Comprehensive Site Assessment Report, dated July 1994 (Rinaldi Deposition Exhibit 28) | |
| 164. | Monsanto Detailed Process Descriptions-Alcohol (1950) (Rinaldi Deposition Exhibit 29(a)) | |
| 165. | Monsanto Detailed Process Descriptions-Commercial Aluminum (1950) (Rinaldi Deposition Exhibit 29(b)) | |
| 166. | Monsanto Detailed Process Descriptions-Muriatic Acid, Bisulfate and Carbonizer (1950) (Rinaldi Deposition Exhibit 29(c)) | |
| 167. | Monsanto Detailed Process Descriptions-Nitric Acid (1950) (Rinaldi Deposition Exhibit 29(d)) | |
| 168. | Monsanto Detailed Process Descriptions-Sodium Metabisulfite (1950) (Rinaldi Deposition Exhibit 29(e)) | |
| 169. | Monsanto Detailed Process Descriptions-Sulfuric Acid Department (1950) (Rinaldi Deposition Exhibit 29(f)) | |
| 170. | Letter from Richard J. Chalpin (Massachusetts Dept. of Environ. Quality Engineering) to Francis M. Lee (Boston Edison Co.), dated June 26, 1985 (Rinaldi Deposition Exhibit 30) | |
| 171. | Handwritten Note with Attachment of February 22, 1996 Letter from Kingsley Nai (MA Dept. of Environ. Protection) to Mary O'Donnell, dated March 4, 1996 (Rinaldi Deposition Exhibit 31) | |
| 172. | Monsanto Co. Memorandum from R.J. Cushing to various Monsanto employees regarding Procedure E-124 Update, dated September 28, 1988 (Rinaldi Deposition Exhibit 32) | |
| 173. | Monsanto Co. Internal Document from W.L. Merman regarding Hazardous Spill Prevention and Clean-Up Plan, dated April 3, 1972 (reissued on July 10, 1974 and revised on January 2, 1975) (Rinaldi Deposition Exhibit 33) | |
| 174. | Letter from John W Duggan and Richard J. Chalpin (MA Dept. of Environ. Quality) to Richard J. Cushing (Monsanto Co.) regarding Scheduling of Remedial Measures at Monsanto Everett Facility, dated May 4, 1989 (Rinaldi Deposition Exhibit 34) | |
| 175. | Monsanto Co. Memorandum from J.P. Dushney to R.T. Allen regarding Site Assessment-Non-Monsanto Owned Land, dated May 13, 1986 (Rinaldi Deposition Exhibit 35) | |

| Exhibit No. | Description | Objection |
|---|---|---|
| 176. | Handwritten Note containing Attachment of Memorandum from David Chapman to Richard J. Chalpin (MA Dept. of Environ. Quality Engineering), dated July 29, 1995 (Rinaldi Deposition Exhibit 36) | |
| 177. | [Withdrawn] | |
| 178. | [Withdrawn] | |
| 179. | [Withdrawn] | |
| 180. | [Withdrawn] | |
| 181. | [Withdrawn] | |
| 182. | [Withdrawn] | |
| 183. | [Withdrawn] | |

By its attorneys,

 /s/  John M. Stevens
John M. Stevens (BBO No. 480140)
Adam P. Kahn (BBO No. 561554)
Elisabeth M. DeLisle (BBO No. 658067)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
Tel:  (617) 832-1000
Fax:  (617) 832-7000
jstevens@foleyhoag.com

Dated: March 13, 2006