UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>        Plaintiff,<br>  v.<br><br>PHARMACIA CORPORATION,<br><br>        Defendant. | CIVIL ACTION No. 04-10180 NMG |
| PHARMACIA CORPORATION ,<br>        Third-Party Plaintiff,<br>  v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>  CO., INC.,<br>        Third-Party Defendant. | |
| PHARMACIA CORPORATION,<br>        Third-Party Plaintiff,<br>  v.<br><br>BOSTON EDISON COMPANY,<br>        Third-Party Defendant. | |
| BOSTON EDISON COMPANY,<br>        Fourth-Party Plaintiff,<br>  v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>  and MARY O'DONNELL,<br>        Fourth-Party Defendant. | |

**POST TRIAL BRIEF OF**
**<u>DEFENDANT PHARMACIA CORPORATION</u>**

B3191721.2

## INTRODUCTION

At the end of trial, it appeared there were few factual issues in dispute. It was undisputed that Mystic and Modern contributed to the contamination at the site, in some places at levels exceeding the "upper concentration limits" that require remediation independent of any other considerations. It was also undisputed that Pharmacia contributed to the contamination at the site, though Mystic was not able to show that Pharmacia's contribution was more than de minimis. It was further undisputed that entities that Mystic chose not to sue also contributed to the contamination at the site. Mystic did not challenge the fact that it purchased the property with full knowledge of the contamination and at a discount, though there was mild protest that the amount of the discount received by Mystic was more on the order of $10,000,000, rather than the $17,000,000 documented by the evidence. Lastly, Modern and Mystic's non-compliance with the law went unchallenged.

It also appears undisputed that a traditional application of equitable factors to this dispute would result in an overwhelmingly large share of future response costs to be assessed to Modern and Mystic. It can only be for this reason that Mystic devoted virtually its entire closing to the proposition that the Court is somehow precluded from carrying out its obligation to employ equitable factors to apportion future response costs. The contention rests entirely on a reading of Chapter 21E that is contrary to the express words of the statute and unsupported by precedent. Section 5(b) of the statute was never intended to protect parties who use their property as an illegal solid waste facility, contaminate their own property and the neighboring rivers through careless and illegal industrial activity, flout their obligations under the environmental laws and still reap large and undeserved gains.

Mystic and Modern apparently did not stumble onto this idea until the weeks before trial. Prior to the January 13, 2006 Pre-Trial Conference, and a related February 6, 2006 filing, Mystic's Supplemental Pre-Trial, Mystic freely acknowledged that the Court has the equitable power to apportion response costs.  See Plaintiff's [Superseded January 12, 2006] Proposed Rulings of Law par. 1 (stating that the plaintiffs are seeking recovery in contribution) and par 6 ("…courts have equitable power to hold that a party that purchased property with knowledge of its contamination should also bear a portion of the clean up cost, especially if the purchaser received a discount in the purchase price due to the contamination…")  Moreover, Mystic and Modern explicitly acknowledged the absence of any supporting precedent for its newly-asserted interpretation of Section 5(b) in its Supplemental Pre-trial, where it stated: "The [5(b)]issues raised by Mystic are ones of first impression before the Court, with no decisions on point interpreting M.G.L. c. 21E, §5(b), the key provision at issue." Mystic's Supplemental Pre-Trial at 7.  Mystic and Modern's reference to passing dicta in  Magistrate Karol's unpublished decision in Olin Corp. v. Fisons PLC et al, CA No. A 93-11166-MLW, 1995 WL 811961 (D. Mass 1995) only emphasizes the accuracy of that acknowledgment.  Olin had nothing to do with the issues presented by Mystic and all parties in that matter agreed that liability would be equitably apportioned among the parties.

**ARGUMENT**

**I.      Pharmacia, Mystic And Modern Are All Liable Parties Under M.G.L. c. 21E For Contamination Of The Site.**

It is beyond debate that Pharmacia, Mystic and Modern are each "liable parties" under M.G.L. c. 21E ("Chapter 21E") §5.  Pharmacia is liable under Chapter 21E § 5(a)(2) because it was a person "who at the time of storage or disposal of any hazardous material owned or

operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material." Pharmacia has admitted to de minimus releases of hazardous materials during the period 1929 to 1983.

Mystic and Modern are both liable for contamination at the Property on several grounds. First, Mystic and Modern are both liable under Chapter 21E § 5(a)(1) because Mystic is the current owner, and Modern, the current operator of the Property. Second, Mystic and Modern are liable under Chapter 21E § 5(a)(2) because the facts confirm they are persons "who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material" because storage and disposal during their ownership and operation included the operation of the facility as an illegal solid waste facility and releases of oil, lead, PAHs and other compounds through sloppy and illegal handling of their industrial operations. Third, as a result of Modern's use of the Property for the purposes of carrying out its highway construction contracts that resulted in the transport, storage, and disposal of contaminated soil and debris on the site, Modern is liable pursuant to clause 3 of Section 5(a) as a person "who by contract, agreement, or otherwise, directly or indirectly, arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material." Those same actions mean that Modern is liable pursuant to clause 4 of Section 5(a) as a person "who, directly, or indirectly, transported any hazardous material to transport, disposal, storage or treatment vessels or sites from or at which there is or has been a release or threat of release of such material." Lastly, through their responsibility for the careless and illegal acts of themselves, their employees and subcontractors, Mystic and Modern are liable pursuant to

clause 5 of Section 5(a) as persons "who otherwise caused or [are] legally responsible for a release or threat of release of oil or hazardous material from a vessel or site."

    Liability under Section 5(a) is for costs of responding to contamination at a site and not merely for costs of responding to contamination caused by particular releases by the liable party. Therefore, because there was storage and disposal of hazardous materials during Mystic and Modern's ownership and operation and there has been "a" release from the site, Section 5(a)(2) makes them "liable parties" even if they were not the proximate "cause" of all of the releases for which Pharmacia seeks contribution.  Section 5(a)(2) provides that  "<u>any</u> person who at the time or storage or disposal of <u>any</u> hazardous material owned or operated any <u>site</u> upon which such hazardous material was stored or disposed of and from which there has been <u>a</u> release…shall be liable without regard to fault…for.. costs…relative to <u>such</u> release." (emphasis added).   Thus, all that is necessary to be liable for a "site" under Section 5(a)(2) is (1) that Mystic and Modern own or operate a site where hazardous materials were stored or disposed and (2) that there has been a release from the site.   There is no requirement that the release from the site in question emanate from the storage or disposal activities.  See <u>Sheehy v. Lipton Industries, Inc</u>., 24 Mass. App. Ct. 188, 190-191, 197, 507 N.E.2d. 781, 782-783, 786 (1987) (a former owner liable on the basis that hazardous materials were stored during the period of its ownership, without any finding that such storage led to the release that caused any contamination.). See also <u>Griffith v. New England Telephone and Telegraph Co.</u>, 420 Mass. 365, 369, 649 N.E.2d. 766, 769 (contrasting liability under §5(a)(5) where a plaintiff must establish that the defendant caused the release and that the release caused the contamination" and liability in other clauses of § 5(a) where "mere evidence of site operation and ownership" suffices).

The identification of liable parties in Section 5(a) clauses (1) through (4) of Chapter 21E replicates the identification of liable parties under §107 of CERCLA.[1]  Accordingly, decisions interpreting CERCLA are instructive.  Cash Energy, Inc. v. Weiner, 768 F. Supp. 892 (D. Mass 1991) (noting similarity of liability schemes); Commonwealth v. Boston Edison, Co., 444 Mass. 324, 346 n. 21, 828 N.E.2d 16, 33 (2005); Martignetti v. Haigh-Farr, Inc. , 425 Mass. 294, 301 n.12, 630 N.E.2d 1131, 1137 n.. 12 (1997) ("CERCLA and M.G.L. c. 21E have similar objectives and overlap in coverage.  To the extent that there are similarities in language and structure, it is desirable to arrive at similar interpretations, to achieve consistency in application and to discourage 'forum shopping.'").

Under Section 107 of CERCLA, for a party to be held liable for future response costs, it need only be shown that a site is a "facility", there was an actual or threatened "release" of a "hazardous substance" from the Site, the release or threatened release resulted in or will result in "response costs" being incurred and the defendant is within one of the four categories of liable parties described in Section 107 of CERCLA, 42 U.S.C. §  9607(a)(1)-(4).  See In re Hemingway Transport, Inc., 993 F.2d 915, 931 (1st Cir. 1993); Dedham Water Co. v. Cumberland Farms Dairy, Inc., 889 F.2d 1146, 1150 (1st Cir. 1989);  U.S. v. Davis, 882 F. Supp. 1217, 1220 (1995); U.S. v . Davis, 31 F. Supp. 2d 45, 50-51 (D.R.I. 1998), aff'd in relevant part 261 F.3d 1 (1st Cir. 2001).  Mystic and Modern meet all of these criteria.

---

[1] Section 107(a) of CERCLA, 42 U.S.C. 9607, is the equivalent of Section 5(a) of Chapter 21E and holds liable:

(1) the owner or operator of a vessel or a facility (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or incineration facilities...selected by such person, from which there is a release or threatened release which causes the incurrence of response costs, of a hazardous substance....

The term "liable parties" under Section 107 of CERCLA has been broadly construed. There is no requirement that a party's wastes cause or will cause the incurrence of the response costs in question nor is there a minimum quantity of waste that needs to be contributed to the site. Acushnet Co. v. Mohasco Corp., 191 F.3d 69, 76 (1st Cir. 1999); Amoco Oil Co. v. Borden, Inc., 889 F.2d 664. 670 n 8 (5th Cir. 1989). Indeed, it is not even necessary to show that a party's waste remains at the Site. United States v. Wade, 577 F. Supp. 1326, 1332 (E.D. Pa. 1983).

## II. The Court Must Equitably Apportion The Liability Of The Parties

### A. M.G.L. c. 21E §4 Requires An Equitable Apportionment Among Mystic, Modern, And Pharmacia.

It is black letter law in Massachusetts that, because both Pharmacia on the one hand and Mystic and Modern on the other are liable under Section 5, the claims between them will be adjudicated pursuant to Section 4. Mailman's Steam Carpet Cleaning Corp. v. Lizotte, 415 Mass. 865, 873, 616 N.E. 2d 85, 90 (1993); Martignetti, 425 Mass. at 308, 680 N.E.2d 1141; Commonwealth v. Boston Edison Co., 444 Mass. at 346 n. 20 828 N.E.2d at 33. Under Section 4 each party is liable to the other for its equitable share of the response costs. That section provides as follows:

> Any person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action. *If two or more persons are liable pursuant to section five for such release or threat of release, each shall be liable to the others for their equitable share of the costs of such response action.* (emphasis added)

Liability under M.G.L. c. 21E §4 is several, not joint and several. Martignetti, 425 Mass. at 308, 680 N.E.2d at 1141. Thus, Pharmacia may not be held liable for more than its equitable share of the costs of response.

B.  **Chapter 21E §5(b) Does Not Affect The Authority And Obligation Of The Court Under Section 4 To Apportion Liability For The Site Equitably Among The Parties.**

The second paragraph of Chapter 21E section 5(b) does not divest the Court of its obligation to equitably apportion response costs. Mystic and Modern rely on the second paragraph of Section 5(b), which provides as follows:

> No person who is liable <u>solely</u> pursuant to clause (1) of paragraph (a) and who did not own or operate the site at the time of the release or threat of release in question and did not cause or contribute to such release or threat of release shall be liable to any person who is liable pursuant to clauses (2), (3), (4), or (5) of said paragraph, except that any such person liable solely pursuant to clause (1) of paragraph (a) shall be liable to the commonwealth as set forth in paragraph (d).

(emphasis added). Clause 1 of section 5(a) imposes liability on the current owner and operator of a site from or at which there is or has been a release or threat of release of oil or hazardous material merely by reason of that status. The second paragraph of section 5(b) says only that someone who is liable <u>solely</u> by reason of that status and, therefore, did not contribute to contamination of a site is not liable in contribution to someone who did contribute to the contamination. However, Mystic and Modern are liable not "solely" pursuant to § 5(a)(1), but also pursuant to clauses (2), (3), (4), and (5). Thus, the provision on which they rely is inapplicable to them because their liability is not due simply to their status as owner and operator of the Property, but is also because they are culpable for contamination at the Property.

Mystic and Modern also do not qualify and, indeed, have not even claimed to qualify for benefits conferred in certain circumstances by the first paragraph of Section 5(b), which provides as follows:

> Any person otherwise liable for any costs or damages set forth in subclauses (i), (ii), (iii), and (iv) of paragraph [5](a) who establishes by a preponderance of the evidence that only a portion of such costs or damages is attributable to a release or threat of release of such oil or hazardous material for which he is included as a

party under clauses (1), (2), (3), (4), or (5) of said paragraph (a) shall be required to pay only for such portion.

This paragraph is not relevant here because it does not deal with claims for response costs between private parties, which are governed by Section 4 of Chapter 21E.  See Commonwealth v. Boston Edison, 444 Mass. at 338, 828 N.E.2d. at 28  (Purpose of first paragraph of 5(a) is to create defense against joint and several liability for claims brought by the Commonwealth; when two or more parties are liable for response costs, costs are apportioned pursuant to Section 4.)   Rather, it applies only to "costs or damages set forth in clauses (i), (ii), (iii), and (iv) of paragraph 5(a)", the liability for which is joint and several.  Subclauses (i) and (ii) relate to claims asserted by the Commonwealth, which are not at issue here; subclause (iii) to a claim for property damage, which is no longer at issue here; and subclause (iv), to liability of "good Samaritans" acting at the request of DEP, which has never been an issue here.

The combination of the section 5(a)'s imposition of liability for all response costs associated with all contamination at a site on all liable parties and the restriction of eligibility for the benefits of Section 5(b) to those truly innocent liable parties not associated by ownership or operation with any release of contamination at the site need not and will not produce harsh results for a liable party who made only a small, distinct contribution to contamination of a site. The reason is that courts are to apportion liability among liable parties according to equitable factors.  If a liable party made only a limited, distinct contribution to contamination of a site and no other equitable factors weigh against it, then a court is likely to allocate a small share of costs to that party.  Here, of course, as the evidence shows, Mystic and Modern made significant contributions to contamination of the Site, far in excess of those shown to have been made by Pharmacia, and every other equitable factor weighs significantly against them.

In sum, the answer to the question posed by the Court after the close of evidence as to whether it mattered if Mystic and Modern's contamination were "isolated" from other contamination on the Property is that isolation would not limit Mystic's and Modern's liability. Based on the plain language of the second paragraph of Section 5(b), the issue of "isolation" is irrelevant, except to the extent the Court considers it in allocating equitably the costs of response pursuant to Section 4.  The only place where "isolation" is ever relevant with respect to liability under Section 5 is in the first paragraph of Section 5(b), which is also plainly inapplicable to the dispute at hand because it does not relate to privately incurred response costs.  However, as to the subsidiary question posed by the Court as to whether, if isolation did matter, which party bore the burden of showing isolation, if a party in some other action were to try to take advantage of the provisions of the first paragraph of Section 5(b), that paragraph places the burden squarely on the party trying to prove separation of releases.  In any event, in light of Mr. Collins' unrefuted testimony about the absence of a confining layer in certain locations, the mixing of surface and subsurface soils, the absence of testing documenting the separation, the permeable nature of the "tunnel material" and the absence of any tunnel material whatsoever in the sediments mean that Mystic and Modern would not be able to carry their burden even if it were material.  Mystic and Modern's citation to John Beaudette, Inc. v. J.P. Noonan Transp., Inc., 419 Mass. 311, 644 N.E.2d 218 (1995) in closing arguments is not apposite. Beaudette was apparently decided under the prior version of Chapter 21E, which did not contain a provision in section 4 allowing equitable apportionment (complaint filed in 1989, statute amended in 1992 to add equitable apportionment).  The establishment of that provision alters the burdens of proof and allocation of damages between two liable parties and thus renders the portions of Beaudette relating to burden of proof irrelevant.

**III.    Application Of The Equitable Factors To The Facts**

   **A.    The Equitable Factors To Be Applied By The Court.**

In an action for contribution among liable parties, courts apportion liability equitably among the parties.  See Martignetti, 425 Mass. at 314-315, 680 N.E.2d at 1144-1145 (1997) (in contribution case, jury was properly instructed to "consider any factors appropriate to balance the equities in the totality of the circumstances.").

Courts faced with equitable allocation issues under the comparable Section 113 of CERCLA, 42 U.S.C. § 9613, have concluded that they have broad discretion to balance the equities in the interests of justice.  United States v. R. W. Meyer, Inc., 932 F.2d 568, 572 (6th Cir. 1991). Allocation is a highly fact-intensive process that depends upon the particular circumstances of each case.  See Environmental Trans. Sys., Inc. v. ENSCO, Inc., 969 F.2d 503, 509 (7th Cir. 1992) ("In any given case, a court may consider several factors, a few factors, or only one determining factor . . . depending on the totality of the circumstances presented to the court."); U.S. v. Davis, 31 F. Supp. 2d 45, 60-61 (D.R.I. 1998), aff'd in relevant part 261 F.3d. 1 (1st Cir. 2001); O'Neil v. Picillo, 883 F.2d 176, 183 (1st Cir. 1989) (court is "free to allocate responsibility according to any combination of equitable factors it deems appropriate").

Among the factors courts have considered in the CERCLA context for allocating responsibility between parties are:  (1) each party's relative contribution to contamination at the Site; (2) whether a party paid a reduced purchase price on account of environmental contamination, or otherwise purchased the Property with knowledge, Smith Land & Improvement Corp. v. Celotex Corp., 851 F.2d 86, 90 (3rd Cir. 1988) , cert. denied, 488 U.S. 1029 (1989),  Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 673 (5th Cir. 1989);  BTR Dunlop, Inc. v. Rockwell Int'l Corp., 1992 U.S. Dist. LEXIS 9474 at *4, 1992 WL 159203 (N.D. Ill.

1992) (purchaser's knowledge of contamination a "clearly relevant" factor)  (3) whether allowing recovery of all cleanup costs might produce an impermissible double recovery and improperly require the defendant polluter to pay for the same harm twice, Western Properties Service Corp. v. Shell Oil Co., 358 F.3d 678, 691 (9th Cir. 2004); (4) whether one party will receive substantial benefits from the clean up, BCW Associates, Ltd. v. Occidental Chemical Corp., 1988 WL 102641 (E.D. Pa. 1988); (5) whether the plaintiff exacerbated the contamination by disposing of its own materials on the property during its ownership, Bethlehem Iron Works, Inc. v. Lewis Industries, 1996 WL 557592 (E.D. Pa. 1996); and  (6) whether the parties have cooperated with authorities and otherwise complied with law, Central Maine Power, Co. v. F.J. O'Conner Co., 838 F. Supp. 641, 646 (D. Me. 1993).

### B.     Application Of The Equitable Factors

As set forth in detail in Pharmacia's requests for findings of fact, all of the pertinent equitable factors favor Pharmacia.  Mystic and Modern were shown to be responsible for releases of hazardous materials that will require response costs; no evidence tied Pharmacia's conduct to any specific release requiring the expenditure of response costs.  Mystic and Modern knew of the contamination when they acquired interests in the Property, structured those transactions in a manner calculated to produce large windfall profits and will realize the entire benefit of the cleanup; Pharmacia accepted a detriment from the contaminated state of the Property and will receive no benefit from its remediation.  Mystic and Modern flouted the environmental laws, increasing the costs of response greatly and rendering expenses incurred before January 2006 ineligible for recovery as appropriate response costs; Pharmacia complied fully with the environmental laws at great expense with respect to the portion of its former manufacturing facility it was given responsibility for remediating.

### C.   Relevance Of Testimony Regarding Future Response Costs.

After conclusion of the evidence, the Court asked the parties the relevance of testimony pertaining to estimates of future response costs.  Such testimony is relevant in three regards.  First, the amount of the estimated future response costs is relevant to the court's equitable determination regarding whether Mystic will obtain a windfall.  In this instance, it documents a windfall, because the amount of the "discount" in the purchase price paid by Mystic significantly exceeds even the highest estimate presented by Dr. Hughto.  Second, it is relevant to quantify the amount of harm caused by Mystic's violation of law and unwarranted and unexcused delay in commencing cleanup.  That harm could amount to $1.35 to $3.5 million, between the loss of the brownfields credit and the increased remediation costs resulting from the delay.  Lastly, the testimony was relevant to identify categories of claimed "response costs" which should not be recoverable in the future.

Under M.G.L. c. 21E § 4, Mystic may recover only Pharmacia's equitable share of response costs once they have been incurred and adjudged to be "necessary and appropriate." Many of the costs claimed by Mystic as future response costs are not "necessary and appropriate" "response costs" at all, but planned expenditures to improve the Property. Decisions construing the federal CERCLA statute, which are persuasive in interpreting Chapter 21E, see Martignetti, 425 Mass at 301 n. 12, 680 N.E. 2d at 1137, make clear that current owners cannot turn the problem of contamination into an opportunity to improve their property and recover the costs of doing so from a former owner.  See, e.g., G.J. Leasing Co., Inc. v. Union Elec. Co., 54 F.3d 379, 386 (7th Cir. 1995).  At a minimum the costs associated with "soil disposal during construction" and "additional considerations" as shown on Dr. Hughto's exhibits

are plainly associated with the improvement and redevelopment of the property and are thus not recoverable "necessary and appropriate" response costs.

By its attorneys,

/s/ John M. Stevens
John M. Stevens (BBO # 480140)
Adam P. Kahn (BBO # 561554)
Elisabeth M. DeLisle (BBO #658067)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts   02210
Tel:  (617)  832-1000
Fax:  (617) 832-7000
jstevens@foleyhoag.com

Dated:    April 20, 2006