UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>    Plaintiff,<br>  v.<br><br>PHARMACIA CORPORATION,<br><br>    Defendant. | |
| PHARMACIA CORPORATION ,<br>    Third-Party Plaintiff,<br>  v.<br><br>MODERN CONTINENTAL CONSTRUCTION CO., INC.,<br>    Third-Party Defendant. | CIVIL ACTION No. 04-10180 NMG |
| PHARMACIA CORPORATION,<br>    Third-Party Plaintiff,<br>  v.<br><br>BOSTON EDISON COMPANY,<br>    Third-Party Defendant. | |
| BOSTON EDISON COMPANY,<br>    Fourth-Party Plaintiff,<br>  v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>and MARY O'DONNELL,<br>    Fourth-Party Defendant. | |

**DEFENDANT PHARMACIA CORPORATION'S CORRECTED REQUESTED
CONCLUSIONS OF LAW**

B3192265.1

I.  **Pharmacia, Mystic and Modern are all Liable Parties Under M.G.L. c. 21E for Contamination of the Site**

1. Pharmacia, Mystic and Modern are each "liable parties" under M.G.L. c. 21E ("Chapter 21E") §5.

2. Pharmacia is liable under Chapter 21E § 5(a)(2) because it was a person "who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material." Pharmacia has admitted to de minimus releases of hazardous materials during the period 1929 to 1983. Finding of Fact ("FOF") 39-41, 111.

3. Mystic and Modern are both liable for contamination at the Property on several grounds.

4. First, Mystic and Modern are both liable under Chapter 21E § 5(a)(1) because Mystic is the current owner, and Modern, the current operator of the Property. FOF 50-53, 107.

5. Second, Mystic and Modern are liable under Chapter 21E § 5(a)(2) because the facts confirm they are persons "who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material." FOF 50-62, 71-76, 141-146.

6. Third, as a result of Modern's use of the Property for the purposes of carrying out its highway construction contracts that resulted in the transport, storage, and disposal of contaminated soil and debris on the site, Modern is liable pursuant to clause 3 of Section 5(a) as

a person "who by contract, agreement, or otherwise, directly or indirectly, arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material." FOF 50-62, 71-76, 141-146.

7. As a result of its transport, storage and disposal of contaminated soil and debris on the Site, Modern is liable pursuant to clause 4 of Section 5(a) as persons "who, directly, or indirectly, transported any hazardous material to transport, disposal, storage or treatment vessels or sites from or at which there is or has been a release or threat of release of such material." FOF 141-146.

8. Through their responsibility for the careless and illegal acts of themselves, their employees and subcontractors, Mystic and Modern are liable pursuant to clause 5 of Section 5(a) as persons "who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site." FOF 50-62, 71-76, 141-146.

9. Liability under Section 5(a) is for costs of responding to contamination at a site and not merely for costs of responding to contamination caused by particular releases by the liable party. Therefore, because there was storage and disposal of hazardous materials during Mystic and Modern's ownership and operation and there has been "a" release from the site, Section 5(a)(2) makes them "liable parties" even if they were not the proximate "cause" of all of the releases for which Pharmacia seeks contribution. Section 5(a)(2) provides that "<u>any</u> person who at the time or storage or disposal of <u>any</u> hazardous material owned or operated any <u>site</u> upon which such hazardous material was stored or disposed of and from which there has been <u>a</u> release…shall be liable without regard to fault…for.. costs…relative to <u>such</u> release." (emphasis added). Thus, all this is necessary to be liable for a "site" under Section 5(a)(2) is (1) that

Mystic and Modern own or operate a site where hazardous materials were stored or disposed and (2) that there has been a release from the site.  There is no requirement that the release from the site in question emanate from the storage or disposal activities.  See Sheehy v. Lipton Industries, Inc., 24 Mass. App. Ct. 188, 190-191, 197, 507 N.E.2d. 781, 782-783 (1987) (a former owner liable on the basis that hazardous materials were stored during the period of its ownership, without any finding that such storage led to the release that caused any contamination.).  See also Griffith v. New England Telephone and Telegraph Co., 420 Mass. 365, 369, 649 N.E.2d. 766 (contrasting liability under §5(a)(5) where a plaintiff must establish that the defendant caused the release and that the release caused the contamination" and liability in other section of 5(a) where "mere evidence of site operation and ownership" suffices.)

10. The identification of liable parties in Section 5(a) clauses (1) through (4) of Chapter 21E replicates the identification of liable parties under §107 of CERCLA.[1] Accordingly, decisions interpreting CERCLA are instructive. Cash Energy, Inc. v. Weiner, 768 F. Supp. 892 (D. Mass 1991) (noting similarity of liability schemes); Commonwealth v. Boston Edison, Co., 444 Mass. 324, 346 n. 21, 828 N.E.2d 16, 33 (2005); Martignetti v. Haigh-Farr, Inc. , 425 Mass. 294, 301  n.12, 630 N.E.2d 1131, 1137 n.. 12 ("CERCLA and M.G.L. c. 21E have similar objectives and overlap in coverage.  To the extent that there are similarities in language

---

[1] Section 107(a) of CERCLA, 42 U.S.C. 9607, is the equivalent of Section 5(a) of Chapter 21E and holds liable:

(1) the owner or operator of a vessel or a facility (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or incineration facilities...selected by such person, from which there is a release or threatened release which causes the incurrence of response costs, of a hazardous substance….

and structure, it is desirable to arrive at similar interpretations, to achieve consistency in application and to discourage 'forum shopping.'").

11.     Under Section 107 of CERCLA, for a party to be held liable for future response costs, it need only be shown that a site is a "facility", there was an actual or threatened "release" of a "hazardous substance" from the Site, the release or threatened release resulted in or will result in "response costs" being incurred and the defendant is within one of the four categories of liable parties described in Section 107 of CERCLA, 42 U.S.C. § 9607(a)(1)-(4).  See In re Hemingway Transport, Inc., 993 F.2d 915, 931 (1st Cir. 1993); Dedham Water Co. v. Cumberland Farms Dairy, Inc., 889 F.2d 1146, 1150 (1st Cir. 1989);  U.S. v. Davis, 882 F. Supp. 1217, 1220 (1995); U.S. v . Davis, 31 F. Supp. 2d 45, 50-51 (D.R.I. 1998), aff'd in relevant part 261 F.3d 1 (1st Cir. 2001).  Mystic and Modern meet all of these criteria.

12.     The term "liable parties" under Section 107 of CERCLA has been broadly construed.  There is no requirement that a party's wastes cause or will cause the incurrence of the response costs in question nor is there a minimum quantity of waste that needs to be contributed to the site.  Acushnet Co. v. Mohasco Corp., 191 F.3d 69, 76 (1st Cir. 1999); ; Amoco Oil Co. v. Borden, Inc., 889 F.2d 664. 670 n 8 (5th Cir. 1989).  Indeed, it is not even necessary to show that a party's waste remains at the Site.  United States v. Wade, 577 F. Supp. 1326, 1332 (E.D. Pa. 1983).

**II.     The Court Must Equitably Apportion The Liability Of The Parties**

   **A.     M.G.L. c. 21E §4 Requires An Equitable Apportionment Among Mystic, Modern, And Pharmacia**

13.     Because both Pharmacia on the one hand and Mystic and Modern on the other are liable under Section 5,  the claims between them will be adjudicated pursuant to Section 4. Mailman's Steam Carpet Cleaning Corp. v. Lizotte, 415 Mass. 865, 873, 616 N.E. 2d 85, 90

(1993); Martignetti v. Haigh-Farr, Inc., 425 Mass. 294, 308, 680 N.E.2d 1131, 1141 (1997); Commonwealth v. Boston Edison Co., 444 Mass. 324, 346 n. 20 828 N.E.2d 16, 33 (2005).

14. Under Section 4 each party is liable to the other for its equitable share of the response costs. That section provides as follows:

> Any person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action. *If two or more persons are liable pursuant to section five for such release or threat of release, each shall be liable to the others for their equitable share of the costs of such response action*. (emphasis added)

Liability under M.G.L. c. 21E §4 is several, not joint and several. Martignetti v. Haigh-Farr, Inc., 425 Mass. 294, 308, 680 N.E.2d 1131, 1141 (1997). Thus, Pharmacia may not be held liable for more than its equitable share of the costs of response.

**B.     Chapter 21E §5(b) does not affect the authority and obligation of the Court under Section 4 to apportion liability for the site equitably among the parties.**

15. The second paragraph of Chapter 21E section 5(b) does not divest the Court of its obligation to apportion response costs equitably. The second paragraph of Section 5(b) provides as follows:

> No person who is liable <u>solely</u> pursuant to clause (1) of paragraph (a) and who did not own or operate the site at the time of the release or threat of release in question and did not cause or contribute to such release or threat of release shall be liable to any person who is liable pursuant to clauses (2), (3), (4), or (5) of said paragraph, except that any such person liable solely pursuant to clause (1) of paragraph (a) shall be liable to the commonwealth as set forth in paragraph (d).

(emphasis added). Clause 1 of section 5(a) imposes liability on the current owner and operator of a site from or at which there is or has been a release or threat of release of oil or hazardous material merely by reason of that status. The second paragraph of section 5(b) says only that someone who is liable <u>solely</u> by reason of that status and, therefore, did not contribute to contamination of a site is not liable in contribution to someone who did contribute to the

contamination. However, Mystic and Modern are liable not "solely" pursuant to clause (1) of section 5(a), but also pursuant to clauses (2), (3), (4), and (5). Thus, this provision is inapplicable to Modern and Mystic.

16. Whether or not the contamination caused by Mystic and Modern is isolated from the contamination that otherwise existed on the Property is irrelevant. By virtue of their liability under Section 5(a)(2), (3), (4), and/or (5), both are liable for all contamination at the site, subject only to equitable apportionment under Section 4.

17. Mystic and Modern also do not qualify for benefits conferred in certain circumstances by the first paragraph of Section 5(b), which provides as follows:

> Any person otherwise liable for any costs or damages set forth in subclauses (i), (ii), (iii), and (iv) of paragraph [5](a) who establishes by a preponderance of the evidence that only a portion of such costs or damages is attributable to a release or threat of release of such oil or hazardous material for which he is included as a party under clauses (1), (2), (3), (4), or (5) of said paragraph (a) shall be required for only for such portion.

This paragraph is not relevant here because it does not deal with claims for response costs between private parties, which are governed by Section 4 of Chapter 21E. See Commonwealth v. Boston Edison, 444 Mass. 324, 338, 828 N.E.2d. 16, 28 (2005). Rather, it applies only to "costs or damages set forth in clauses (i), (ii), (iii), and (iv) of paragraph 5(a), the liability for which is joint and several. Subclauses (i) and (ii) relate to claims asserted by the Commonwealth, which are not at issue here; subclause (iii) to a claim for property damage, which is no longer at issue here; and subclause (iv), to liability of "good Samaritans" acting at the request of DEP, which has never been an issue.

**III.     Application Of The Equitable Factors To The Facts**

   **A.     The Equitable Factors To Be Applied By The Court.**

   18.   In an action for contribution among liable parties, courts apportion liability equitably among the parties. See Martignetti v. Haigh-Farr, Inc., 425 Mass. 294, 314-315, 680 N.E.2d 1131, 1144-1145 (1997) (in contribution case, jury was properly instructed to "consider any factors appropriate to balance the equities in the totality of the circumstances.").

   19.   CERCLA precedent is pervasive authority for an allocation under Chapter 21E. Martignetti v. Haigh-Farr, Inc., 425 Mass. 294, 301 n.12, 630 N.E.2d 1131, 1137 n.. 12

   20.   Courts faced with equitable allocation issues under the comparable Section 113 of CERCLA, 42 U.S.C. § 9613, have concluded that they have broad discretion to balance the equities in the interests of justice. United States v. R. W. Meyer, Inc., 932 F.2d 568, 572 (6th Cir. 1991). Allocation is a highly fact-intensive process that depends upon the particular circumstances of each case. See Environmental Trans. Sys., Inc. v. ENSCO, Inc., 969 F.2d 503, 509 (7th Cir. 1992) ("In any given case, a court may consider several factors, a few factors, or only one determining factor . . . depending on the totality of the circumstances presented to the court."); U.S. v. Davis, 31 F. Supp. 2d 45, 60-61 (D.R.I. 1998), aff'd in relevant part 261 F.3d. 1 (1st Cir. 2001); O'Neil v. Picillo, 883 F.2d 176, 183 (1st Cir. 1989) (court is "free to allocate responsibility according to any combination of equitable factors it deems appropriate").

   21.   Among the factors courts have considered in the CERCLA context for allocating responsibility between parties are: (1) each party's relative contribution to contamination at the Site; (2) whether a party paid a reduced purchase price on account of environmental contamination, or otherwise purchased the Property with knowledge, Smith Land & Improvement Corp. v. Celotex Corp., 851 F.2d 86, 90 (3rd Cir. 1988), cert. denied, 488 U.S. 1029 (1989), Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 673 (5th Cir. 1989); BTR Dunlop,

Inc. v. Rockwell Int'l Corp., 1992 U.S. Dist. LEXIS 9474 at *4, 1992 WL 159203 (N.D. Ill. 1992) (purchaser's knowledge of contamination a "clearly relevant" factor)  (3) whether allowing recovery of all cleanup costs might produce an impermissible double recovery and improperly require the defendant polluter to pay for the same harm twice, Western Properties Service Corp. v. Shell Oil Co., 358 F.3d 678, 691 (9th Cir. 2004); (4) whether one party will receive substantial benefits from the clean up, BCW Associates, Ltd. v. Occidental Chemical Corp., 1988 WL 102641 (E.D. Pa. 1988); (5) whether the plaintiff exacerbated the contamination by disposing of its own materials on the property during its ownership, Bethlehem Iron Works, Inc. v. Lewis Industries, 1996 WL 557592 (E.D. Pa. 1996); (6) whether the parties have cooperated with authorities and otherwise complied with law, Central Maine Power, Co. v. F.J. O'Conner Co., 838 F. Supp. 641, 646 (D. Me. 1993).

### B.     Application Of The Equitable Factors.

22.     With respect to contamination, Mystic and Modern were shown to be responsible for releases of hazardous materials that will require the incurrence of response costs; no evidence tied Pharmacia's conduct to any specific release requiring response costs.  FOF 39-49, 50-62.

23.     Significant costs may be incurred as a result of contamination by entities not named as defendants to this lawsuit.  FOF 31-38; 41-45.  The Court will allocate the share of those absent entities equitably between the parties in light of the other principles sets forth in these rulings of law. Martignetti v. Haigh-Farr, Inc., 425 Mass. 294, 680 N.E.2d 1131 (1997)

24.     Mystic and Modern knew of the contamination when they acquired interests in the Property, purchased the property at a very substantial discount from its value "clean" and will realize the entire benefit of the cleanup; Pharmacia fully disclosed the existence of

contamination, accepted a detriment from the contaminated state of the Property and will receive no benefit from its remediation. FOF 77-117.

25. Mystic and Modern violated a number of the environmental laws in various respects, including operating and allowing the operation of an unpermitted illegal solid waste storage facility at the Site, releasing and allowing the release of oil and hazardous materials during the course of Modern's operations on the Site and failing to comply with mandates governing the assessment and cleanup of contamination at the Site. FOF 131-146. The Court finds that Mystic and Modern's non-compliance is a significant equitable factor in of itself.

26. The Court also finds that the non-compliance has exacerbated the cost of remediation, which makes the weight of this factor even more significant. Specifically, as a result of delays in initiating site investigation and cleanup activities, the Property is subject to stricter cleanup standards, which went into effect in April 2006 increasing the overall cost of remediation by $750,000 to $1,400,000. See 310 CMR 40.0996 (eff. as of April 3, 2006) FOF 136-140. (Lowering upper concentration limits for lead and arsenic). In addition, Mystic and Modern's actions have eliminated the availability of a 25% tax credit, which could have offset the cost of the remediation. See M.G.L. c. 62 §6(j), c. 63 §32 and §38Q (divesting right of 25% to 50% tax credit for entities who are liable for reasons other than being a current owner, for entities who are subject to enforcement actions, and for entities that do not "commence and diligently pursue" a cleanup action). FOF 138. Using Mystic's December 2005 cleanup cost estimates of approximately $2.5 to approximately $8.6 million, Mystic's loss of the Brownfields Act credit could have increased the overall cost of remediation by a further $600,000 to $2,150,000.

27.     Any release caused by Pharmacia occurred prior to 1975, when manufacturing operations ceased on the East Side, and prior to the passage of Chapter 21E or CERCLA.  Thus, the releases were not illegal when they occurred.  In addition, Pharmacia remediated the portion of its former manufacturing facility (the "West Side" or "Gateway Parcel') at great expense and in compliance with the environmental laws.  FOF 118-127.  Pharmacia's compliance with environmental law does not eliminate Pharmacia's liability for the releases, but it will be considered as an equitable factor.

### C.     Past Costs Claimed By Mystic.

28.     Although Mystic has claimed the recovery of approximately $132,000 in past costs, it is not entitled to the award of any such costs.

29.     Under M.G.L. c. 21E §4:

> Any person who undertakes a *necessary* and *appropriate response action* regarding the release or threat of release or oil or hazardous material shall be entitled to reimbursement …for the *reasonable costs of such response action.*  (Emphasis added).

30.     Mystic is the only party to have asserted a claim against Pharmacia for recovery of past response costs.  However Mystic has not actually paid any environmental-related costs ("response costs" or otherwise), with the possible exception of a single unidentified invoice, for which no evidence of payment by Mystic was made.

31.     Costs incurred by Third-party Defendant Modern are not recoverable.   As this Court found in its January 25, 2006 Memorandum and Order at 7-8, denying Third-Party Defendant Modern's motion for summary judgment,

> Modern 1) has stated no claims in the instant action, 2) has not been joined as a party-plaintiff and 3) as a third party defendant to claims brought by Pharmacia, has not availed itself of the opportunity or the obligation to bring compulsory counterclaims

> against the defendant. Consequently, Modern has no standing to seek summary judgment with respect to Pharmacia's liability.

That Modern may have a claim against its wholly controlled entity Mystic -- a claim for which no documentary evidence was provided -- does not affect this decision.

32.     Mystic is also not entitled to reimbursement for past costs because, as a matter of law, they are not "necessary and appropriate" costs of response, since it is undisputed that the costs were not incurred in compliance with the Massachusetts Contingency Plan. Rather, it appears that the costs represent some combination of due diligence prior to the acquisition of the property in June 2001, actions taken in violation of the MCP between June 2001 and early 2006, and efforts to further the plaintiff's litigation claim, none of which can be characterized as "necessary and appropriate costs."

**IV.    Future Response Costs**

33.     Under M.G.L. c. 21E § 4, Mystic may recover only Pharmacia's equitable share of response costs once they have been incurred and adjudged to be "necessary and appropriate." Many of the costs claimed by Mystic as future response costs are not "necessary and appropriate" "response costs," but planned expenditures to improve the Property. Decisions construing the federal CERCLA statute, which are persuasive in interpreting Chapter 21E, see Martingetti, make clear that current owners cannot turn the problem of contamination into an opportunity to improve their property and recover the costs of doing so from a former owner. See, e.g., G.J. Leasing Co., Inc. v. Union Elec. Co., 54 F.3d 379, 386 (7th Cir. 1995); City of Detroit v. Simon, 247 F.3d 619, 630 (6th Cir. 2001), ("[t]o require former occupants to assume liability for cleanup costs going beyond the level necessary to make the property safe for industrial use would be to provide an unwarranted windfall to the beneficiary of the cleanup.");

M.R. (Vega Alta), Inc. v. Caribe General Electric Products, Inc., 31 F. Supp. 2d 226, 233 (D. Puerto Rico 1998) ("CERCLA does not recognize a claim to recover costs beyond those needed to make the Site safe for its current use.  We have no jurisdiction over Plaintiffs' claim to the extent that it seeks to recover costs beyond those that are presently 'necessary' within the meaning of the Act.");  Southfund Partners III v. Sears, Roebuck and Co., 57 F. Supp. 2d 1369 (N.D. Ga. 1999); Yellow Freight System, Inc. v. ACF Industries, Inc., 909 F. Supp. 1290, 1299 (E.D. Mo. 1995).

34. At a minimum the costs associated with "soil disposal during construction" and "additional considerations" as shown on Dr. Hughto's exhibits are plainly associated with the improvement and redevelopment of the Property and are thus not recoverable "necessary and appropriate" response costs.   FOF 154.

**V.     Conclusion**

35. Mystic is not entitled to reimbursement of any claimed past costs.

36.  Pharmacia is liable for 15% of future necessary and appropriate response costs associated with remediating the soil, sediments,  and groundwater at the Property.

37. Any application for reimbursement of future response costs will be reviewed in the context of  these conclusions of law.

- 14 -

                                                By its attorneys,

                                                /s/ John M. Stevens
                                                John M. Stevens (BBO # 480140)
                                                Adam P. Kahn (BBO # 561554)
                                                Elisabeth M. DeLisle (BBO #658067)
                                                Foley Hoag LLP
                                                155 Seaport Boulevard
                                                Boston, Massachusetts   02210
                                                Tel:  (617)  832-1000
                                                Fax:  (617) 832-7000
                                                jstevens@foleyhoag.com

Dated:    April 20, 2006

B3192265.1