UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br><br>        Plaintiff,<br>  v.<br><br>PHARMACIA CORPORATION,<br><br>        Defendant.<br><br>PHARMACIA CORPORATION ,<br><br>        Third-Party Plaintiff,<br>  v.<br><br>MODERN CONTINENTAL CONSTRUCTION CO., INC.,<br><br>        Third-Party Defendant. | CIVIL ACTION No. 04-10180 NMG |

**DEFENDANT PHARMACIA CORPORATION'S OPPOSITION TO MYSTIC LANDING'S MOTION FOR TIME WITHIN WHICH TO FILE ITS APPLICATION FOR ATTORNEYS' FEES AND COSTS AND PHARMACIA CORPORATION'S MOTION FOR ATTORNEYS' FEES AND COSTS**

After years spent asserting unreasonable demands that precluded settlement of this matter, Mystic Landing LLC ("Mystic") now unreasonably seeks relief from a filing deadline set forth in the Federal Rules of Civil Procedure in order to assert a claim for its attorneys' fees pursuant to M.G.L. c. 21E §4A. Not only is this filing too late, it is futile. Mystic is not entitled to fees because Pharmacia Corporation's ("Pharmacia's") conduct at all times complied with the letter and spirit of M.G.L. c. 21E. In contrast, Mystic's unrelenting failure to negotiate in good faith and insistence on more in settlement than it had any prospect of recovering at trial, and

B3223850.2

certainly much more than it actually recovered at trial, mean that if fees are to be awarded to either party, they should be awarded to Pharmacia. If the Court elects to grant Mystic's motion for permission to file late, then Pharmacia hereby moves for its costs and fees as well.

## FACTS

From the very beginning of this dispute, Mystic demanded that Pharmacia pay dramatically more than its fair and appropriate contribution. At the outset, Mystic demanded far more that it could recover at trial -- never less than 100 percent of all "response costs," which are potentially recoverable under M.G.L. c. 21E, plus additional costs of development, which are not. Mystic's unreasonable demands were compounded by its refusal to provide reasonably requested information plainly relevant to the dispute. Despite these violations of Chapter 21E §4A, Pharmacia met with Mystic on several occasions before the action was filed, continued to try to resolve the matter, and offered to repurchase the property and pay 100 percent of future response costs. Mystic rejected this offer without counteroffer.

After filing suit against Pharmacia and Monsanto in 2003, Mystic continued to refuse to provide information; in one instance, its improper conduct resulted in Mystic's being sanctioned by the Court. Its unreasonable settlement demands also did not change. Indeed, at no time prior to the week before trial did Mystic ever offer to accept anything less than 100 percent of response costs, and at no time before or during the trial did it drop its demands to recover "development costs," which by definition and by the findings of the Court, see June 5, 2006 Memorandum of Decision ("Decision") at 22, are not recoverable. In contrast, Pharmacia offered as much as 100 percent of response costs for all contamination identified by Mystic that required remediation. This offer was rejected out of hand.

The Decision awarded Mystic much less than it had demanded in settlement. Depending on the amount of the final response costs, Mystic would be entitled to between 50 percent and

something less than 90 percent of response costs, other than sediment costs, which were not awarded.  Decision at 22-23.  In fact, the award to Mystic is roughly the same, or in many scenarios, significantly less than what Pharmacia had offered in settlement.

## ARGUMENT

**I. Mystic Is Not Entitled To Pursue Its Claims for Attorneys' Fees and Even if the Demand Had Been Timely Filed Mystic Is Not Entitled to Those Fees**

   **A. Mystic's Motion for Leave to Late-File a Motion for Attorneys' Fees and Costs Is Untimely.**

Mystic failed to present its request for attorneys' fees in a timely manner.  Fed. R. Civ. P. 54(d)(2)(B) provides that a motion for attorneys' fees "must be filed no later than 14 days after entry of judgment" unless a statute or order of the court indicates otherwise.  Fed. R. Civ. P. 54(d)(2)(B).  Because M.G.L. c. 21E §4A does not provide for a specific time period for filing, and the Court's order is silent, Fed. R. Civ. P. 54(d)(2)(B) controls.[1]  Because the Court issued its Decision on June 5, the 14 day period expired on June 19, two days before Mystic moved for an extension of time to file.

Mystic's conclusory assertion that the 14 day period in Fed. R. Civ. P. 54(d)(2)(B) is "inapplicable" is incorrect.  That time frame applies universally except when the "substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial."  Fed. R. Civ. P. 54(d)(2)(A).  Under ch. 21E, § 4A(d), attorneys' fees are not an element of damages (which, for Section 4 claims would be "Response Costs"), rendering Fed. R. Civ. P. 54(d)(2)(A) inapplicable.  Attorneys' fees constitute an element of damages primarily when the opposing parties have contractually stipulated the payment of such fees in the event of

---

[1] The fourteen day period was added as part of the 1993 amendments after considerable evaluation of the need for prompt and predictable filings.  *See* Fed. R. Civ. P. 54, advisory committee's note (emphasizing opposing party notification, the court's opportunity to resolve fee issues shortly after trial, and ability for the court to make a ruling on fees in time for appellate review as reasons for imposing time limit).

subsequent litigation. See, e.g., Equitable Life Assurance v. Softex Prods., 2006 U.S. Dist. LEXIS 21655, at *4-6 (D.P.R. 2006) (declining to apply Fed. R. Civ. P. 54(d)(2)(B) when the contract between opposing parties clearly stipulated payment of attorneys' fees in the event of litigation). Obviously, no contract stipulating attorneys' fees exists between Mystic and Pharmacia. See Bryan M. v. Litchfield Sch. Dist., 2005 U.S. Dist. LEXIS 35731, at *3-5 (D.N.H. 2006) (allowing motion under Fed. R. Civ. P. 54(d)(2)(B) because attorneys' fees were "collateral to the main cause of action" and, therefore, not an element of damages that plaintiff was required to prove at trial).

Mystic's emphasis on the lengthy history of negotiations under ch. 21E §4A(d) and the "voluminous" accumulation of attorneys' fees to justify its request for permission to file late is also misplaced. Fed. R. Civ. P. 54(d)(2)(B) does not require that the motion be entirely supported by all evidence at filing, but rather allows the movant simply to "specify the judgment and the statute, rule, or other grounds entitling the moving party to the award" and "provide a fair estimate of the amount sought." Fed. R. Civ. P. 54(d)(2)(B). That task could easily have been performed within the time allowed.

### B. The Court Should Deny Mystic's Motion to Late-File a Claim for Attorneys' Fees Because the Claim Would be Futile.

The sole consequence of allowing Mystic's motion to file late would be to waste the Court's time because even if it had made a timely filing, Mystic would not be entitled to recover its attorneys' fees. Pharmacia is unaware of any reported decision where attorneys' fees have ever been awarded to plaintiffs under M.G.L. c. 21E §4A.[2] See, e.g., Buddy's Inc. v. Town of Saugus, 816 N.E.2d 134, 62 Mass. App. Ct. 256 (2004) (denying award of attorneys' fees to

---

[2] Awards under M.G.L. c. 21E §15 are treated differently, but are not available to Mystic, nor has Mystic made a claim under that provision. See Hill v. Metropolitan District Commission, 787 N.E. 2d 526, 439 Mass. 266 (2003) (stating that claims for attorneys' fees under Section 4A and Section 15 are separate and distinct).

B3223850.2                                        - 4 -

third-party plaintiff who was awarded 70 percent of response costs even though third party defendant allegedly did not respond to third party plaintiff's notice and demand letter and did not participate in global negotiations when invited to do so); Hill v. Metropolitan District Commission, 787 N.E. 2d. 526, 439 Mass. 266 (2003) (upholding denial of plaintiff's attorneys' fee claims where judge did not find bad faith); Newly Weds Foods, Inc. v. Westvaco Corporation, 2002 WL 1923864 (Mass. Super. 2002) (denying plaintiff's request for attorneys' fees even though defendant was found 75 percent liable for response costs).  Indeed, in the very few reported decisions awarding attorneys' fees under §4A, fees were awarded to defendants like Pharmacia when the plaintiff has behaved unreasonably.  See Merit Oil of Massachusetts, Inc. v. Baer, No. 97188, 2000 WL 1474119 at *12 (Mass. Super. 2000) (awarding defendant attorneys' fees under Section 4A for plaintiff's failure to disclose information reasonably requested by an opposing party).

If the motion is allowed, and Mystic files for its fees, Pharmacia would demonstrate at hearing through testimony and documents that it complied in all respects with the requirements of M.G.L. c. 21E §4A.  That evidence will show that Pharmacia acted reasonably and in full compliance with the provisions of Section 4A, including evidence that it made offers to pay for 100 percent of required response costs at the Site, as well as other offers intended to facilitate the sale and ultimate redevelopment of the property.  Pharmacia's full response will be made upon submission of the Mystic's claim, if the Court allows it to be pursued.  However, some of the information about Mystic's conduct is evident from Pharmacia's contingent cross-demand for an award of attorneys' fees, set forth below.

**II.    In the Event the Court Allows An Inquiry Into An Award of Attorneys' Fees, It is Pharmacia, not Mystic, that is Entitled to Such Fees.**

Although Pharmacia would much prefer to spend its efforts working with Mystic to fashion an appropriate remedy instead of further encroaching on the Court's time and resources, in the event that the Court determines that any party is entitled to file its claims for attorneys' fees under M.G.L. c. 21E ("Chapter 21E"), then Pharmacia hereby requests an award of its attorneys' fees and costs.

Pursuant to Section 4A(f)(1&3) of Chapter 21E, a defendant in an action to recover response costs will be awarded its litigation costs and attorneys' fees where the plaintiff has failed to negotiate in good faith or has taken an unreasonable position as to the amount of the defendant's liability.[3]  Here, the evidence will show that Pharmacia is entitled to recover its fees because Mystic both failed to negotiate in good faith and took unreasonable positions as to the amount of Pharmacia's liability.

  **A.    Facts and Procedural History Supporting Pharmacia's Request for Attorneys' Fees.**

  1.  <u>Mystic's Demands Prior to The Initiation of Litigation Were Excessive, Inadequately Supported, and Beyond Any Award that Could or Actually Was Awarded by the Court</u>.

The initial demand to Pharmacia came via letter from the law firm of Hinckley Allen and Snyder ("Hinckley") on May 11, 2001, weeks before Mystic purchased the property. Ex. D-57[4].

---

[3] That section reads "[i]f the court finds that (1) the plaintiff did not participate in negotiations or dispute resolution in good faith … or (3) the plaintiff's position with respect to the amount of the defendant's liability pursuant to the provisions of this chapter was unreasonable, it shall award litigation costs and reasonable attorneys' fees to the defendant."

[4] Exhibit Numbers refer to Exhibits introduced at trial, or to Exhibits that were numbered for trial but withheld by stipulation of the Parties and with the agreement of the Court because they pertained to the issue of attorneys' fees, and not to the substance of the dispute.  Exhibits not previously provided to the Court are attached as Exhibits hereto.  Pursuant to the stipulation of the parties, in the event the Court agrees to consider Mystic's claim for attorneys' fees -- which Pharmacia hereby opposes -- Pharmacia reserves the right to request and would seek to introduce additional information and provide live witness testimony regarding the fees at issue and the conduct of the parties.

That letter did not identify the buyer but demanded that Pharmacia conduct all remediation on behalf of Hinckley's unidentified client. On June 1, 2001, Solutia, Inc. then attorney-in-fact to Pharmacia, responded to Hinckley, requesting basic information about the Site, including requests for technical reports, cleanup cost estimates, and the expected future use of the Site. Ex. D-59. Mystic did not provide any of the requested information. Instead, on August 27, 2001, Mystic issued a formal demand letter under Section 4A ("4A Demand"). Ex. 62.

The 4A Demand was an exercise in hyperbole. First, it asserted that the remediation would require a wholesale stripping of soil across the entire site to a depth of approximately 10 feet. Second, it stated that the planned remediation would not include an Activity and Use Limitation (AUL). Third, it estimated the cost of responding to contamination at $17,600,000. Lastly, it demanded that Pharmacia pay "all" of those costs.

As demonstrated at trial, this demand was an unreasonable position as to the amount of Pharmacia's liability. Dr. Hughto agreed in testimony that the remediation will require no wholesale stripping of soils and will employ an AUL. E.g., Ex. 35, Ex. 220, Decision at 7. And, the expected costs of the remediation will not even remotely approach the demanded sum; on behalf of Pharmacia, Mr. Collins estimated the remediation costs to be $1,500,000 to $2,500,000 (Trial Transcript Day 3 at 18-19); Dr. Hughto, on behalf of Mystic, estimated the costs, based on information available as of December 2005 to be $2,447,846.00 to $8,654,106[5]. Ex. 37.

The exaggerated nature of the demand was known at the time it was made. According to documents obtained in discovery (*after* the Court granted Pharmacia's Motion to Compel), on May 15, 2001, Mystic's experts at Rizzo Associates proffered a remediation cost estimate of

---

[5] The latter figure included several items that Pharmacia will dispute are response costs if claimed, including approximately $2.6 million for disposal of soil during construction that would not otherwise require removal. It also included approximately $2.5 million for sediments, the response costs for which were not awarded to Mystic.

$810,000 to Hinckley. Ex. D-151. After Mystic was apparently dissatisfied with that number, Rizzo Associates produced -- one week later -- a cost estimate more than 20 times higher, to support the demanded figure of $17,600,000. Ex. D-152. The 4A Demand also made no reference to the heavy industrial activity ongoing at the Site, which the Court found contributed to the contamination. Decision at 5, 11, 19.

Pharmacia timely responded to the 4A Demand letter on October 12, 2001. Ex. D-225. As permitted by Section 4A, that letter requested additional information. M.G.L. c. 21E §4A(a). That letter reiterated requests made four months earlier by Solutia that the technical information and remedial costs estimates underlying the demand be provided to Pharmacia. The letter also requested information regarding the circumstances of the purchase of the Property, since the deed, Ex. 71, recited consideration of $300,000, which was a dramatic discount against the Property's "clean" fair market value. Decision at 4-5.

Mystic provided very little of the information requested. Its November 16, 2001 response contained some but not all of the technical reports in Mystic's possession. Ex. D-226. See Ex. D-153 (December 6, 2001 letter from Adam Kahn to Doreen Zankowski identifying missing reports). It contained no substantiation of the $17,600,000 demand. Id. It contained no information regarding any purchase price paid in excess of $300,000. Id. Indeed, throughout the negotiation process, Mystic steadfastly refused to provide any information about the circumstances of the purchase. See, e.g., January 11, 2002 letter from Doreen Zankowski to Adam Kahn, Ex. D-228 ("[a]s you are very well aware, the purchase price of the property is totally irrelevant for our discussions."); January 22, 2002 letter from Adam Kahn to Doreen Zankowski, Ex. D-229 (again requesting information about purchase price, noting the absence of technical reports, again requesting cost estimates, and proposing a meeting to resolve these

issues); March 18, 2002 letter from Doreen Zankowski to Adam Kahn, Ex. D-231 (indicating that additional information has yet to be provided and again declining to provide documents about the transaction pursuant to which Mystic acquired the property). In the Decision, the Court agreed with Pharmacia that circumstances of the purchase were relevant to the allocation of responsibility. Id. at 4-5, 16-18.

Despite Mystic's continuing refusal to provide essential information, on May 6, 2002, Pharmacia offered to repurchase the Property for the price disclosed in the documentary record as having been paid by Mystic and to relieve Mystic of all responsibility for site remediation, except for contamination caused by Mystic. Ex. D-232. This offer was rejected out of hand without counteroffer by Mystic via letter dated May 31, 2002. Ex D. 240. Mystic's letter states that the offer was rejected because it was

> premised on what you continue to erroneously believe was Mystic's purchase price for the property. The $300,000 you continue to refer to was merely consideration paid by Mystic to exercise an option to purchase the Site. *As you are well aware*, Mystic paid millions of dollars for the property.

(italics in original). Of course, Pharmacia knew no such thing, because Mystic refused to provide the documents that pertained to the transaction. On June 12, 2002, Pharmacia again made an attempt to obtain the information that Mystic asserted was fatal to Pharmacia's position. See Ex. D-241. That attempt was rebuffed.

Mystic's refusal to provide the transaction documents continued to act as a bar for settlement. In a November 2002 meeting, Mystic agreed to consider providing the documents pursuant to a confidentiality agreement, a concept to which Pharmacia readily agreed. See Ex. D-233 (December 16, 2002 letter from Adam Kahn to Doreen Zankowski); Ex. D-245 at 2. Unfortunately, Mystic did not provide a draft of the confidentiality agreement until October 2003 (Ex. D-242); that agreement was not finalized prior to Mystic's filing of the litigation in

December 2003. See Ex. D242. Thus, despite Pharmacia's request for those documents in 2001, they were not provided until they were produced in discovery. Mystic's unjustified failure to provide the reasonably requested documents in itself is a violation of Section 4A and constitutes a clear violation of Mystic's duty to negotiate in good faith. Merit Oil of Massachusetts, Inc. v. Baer, No. 97188, 2000 WL 1474119 at *12 (Mass. Super. 2000) (noting that a party violates Section 4A(f)(1) when it fails to disclose information reasonably requested by an opposing party).

At no point prior to initiating litigation did Mystic ever (1) extend an offer other than Pharmacia's payment of 100 percent of all past and future response costs, (2) acknowledge that any fraction of the demanded costs might not be recoverable "response costs," (3) provide the requested transactional information, or (4) provide information about its own activities on the Site, activities this Court later determined contributed to the contamination of the Property. Of course, during the entire period of the 4A process, Mystic spent money on lawyers and forced Pharmacia to do the same, but did not comply with the Massachusetts Contingency Plan.

    2.    <u>Mystic's Complaint Contained Numerous Baseless Legal Theories, and Mystic's Settlement Demands Were Unreasonable and Unsupported</u>.

Mystic's December 2003 complaint was as overbroad and overreaching as its demands in the 4A process. To begin with, it asserted claims against not just Pharmacia, but also Monsanto Company ("Monsanto"), and maintained those claims even after Monsanto documented that it could not have participated in any events alleged in the complaint. Mystic eventually gave up and voluntarily dismissed that claim by stipulation to the Court dated November 8, 2005 (Docket No. 103), but not before Monsanto had to incur substantial legal fees. Similarly, Mystic brought a series of common law claims sounding in trespass, nuisance, and negligence. These claims, too, were dismissed by stipulation on October 24, 2005 (Docket No. 96), after Pharmacia was

forced to spend significant fees defending those claims. These latter claims were primarily based on claims that contamination from the so-called Gateway Parcel was impacting the Site; Mystic dropped these claims after demanding (and receiving) extensive discovery in a failed attempt to prove them. Lastly, Mystic pursued a claim for property damage. Defense of this claim required Pharmacia not only to incur legal fees, but also to engage a real estate expert. The Court dismissed Mystic's property damage claim on a motion for summary judgment. <u>Mystic Landing v. Pharmacia</u>, 417 F. Supp. 120 (D. Mass. 2006). Each of these aborted claims unnecessarily and unreasonably increased the cost of litigation for Pharmacia.

Even when stripped of demands other than the statutory claim for response costs, Mystic's settlement posture in litigation was unreasonable. In April 2004, when prompted for a settlement offer, Mystic demanded an up front payment of all estimated future response costs (plus a 25 percent contingency), an amount Mystic then calculated at $6,100,000. <u>See</u> Ex. D-158; Ex. D-247. Of course, as the Court and -- ultimately -- Mystic acknowledged, the Court would have no authority to award response costs before they were incurred. <u>See</u> Decision at 22. In this way, Mystic demanded in settlement a result far better than what it could achieve at trial. Mystic's demands for up front payment was particularly concerning to Pharmacia because Mystic had not manifested any commitment to clean up the Site, and its apparent financial instability created a risk that any payment by Pharmacia's money would be used, not to clean up the Site, but to pay other creditors.

In the spring of 2005, Pharmacia again initiated settlement discussions. Pharmacia's settlement analysis and proposal is set forth in Ex. D-248. In sum, Pharmacia offered to conduct 100 percent of necessary response costs for all of the areas identified by Mystic at that time as

requiring remediation.  It appropriately declined to pay for or conduct activities that were not necessary or appropriate "response costs."

Mystic rejected Pharmacia's offer to pay 100 percent of the costs of remediating all conditions identified by Mystic.  <u>See</u> Exs. D-249 - D-251 (Mystic's markup of Pharmacia's settlement proposal).  Mystic's response was to demand that Pharmacia assume not only the 100 percent of response costs, but also costs that Mystic explicitly recognized as being above and beyond the costs of achieving a permanent solution.  These costs primarily consisted of costs associated with "management" of soils, sediments, and groundwater during property development.

Shortly before trial, Pharmacia again made a settlement offer.  The offer was conveyed orally on April 5, 2006.  Pharmacia offered to pay 66.7 percent of known and unknown response costs at the Site (other than contamination above the so-called tunnel muck area), except for any sediment costs, for which Pharmacia offered 25 percent.  In response, on April 6, Mystic again demanded 100 percent of response costs at the Site (including sediments, but excluding contamination above the so-called tunnel muck area), <u>plus</u> 66.7 percent of "development related" incremental soil handling costs, a cost which by definition would not be recoverable in litigation, and which Dr. Hughto estimated could cost several million dollars.  <u>See</u> Ex. 37.  Trial commenced on April 10, 2006.  On April 14, Mystic revised the offer to either 80 or 85 percent of response costs, but retained the demand that Pharmacia pay 66.7 percent of development related incremental soil handling costs.  Thus, it was not until after the first day of trial that Mystic ever offered anything other than 100 percent of future response costs, and at no time did Mystic drop its demand for "development related costs," a cost that by definition was not

recoverable. The course of negotiations is set forth in greater detail in the Affidavit of Adam P. Kahn, attached hereto.

How the Court's Decision compares precisely to any of these final proposals cannot be determined until the total of response costs is known, but the Court's award is under almost any conceivable situation less than the demand of Mystic, and under many circumstances, less than the final offer of Pharmacia. If the response costs are approximately equal to Mr. Collins' estimate ($1,500,000 - $2,500,000[6]), Pharmacia will bear approximately 55-58 percent of future response costs; if they are equal to Dr. Hughto's estimate as of December 2005 (approximately $2.5 to $8.6 million), Pharmacia would bear approximately 58-78 percent of the response costs[7]. Even if the total costs equaled $15 million, the highest figure referenced in the Decision, Pharmacia's share would be 83 percent. Thus, Mystic will recover significantly less than it ever offered in settlement, even during trial, especially in light of the Decision as it pertains to sediments, and confirmation of the non-recovery of costs other than response costs.

3. <u>Apart from Mystic's Unreasonable Settlement Demands, Mystic's Unreasonable Conduct in Litigation Significantly Exacerbated the Cost of the Litigation</u>.

Mystic's unreasonable refusal to provide information, and headstrong insistence on pursuing baseless claims and "scorched earth litigation" continued well after the filing of the complaint. In addition to its relentless pursuit of baseless (and ultimately dismissed) claims described in the previous section, Mystic engaged in the twin tactics of dramatically overbroad discovery requests on the one hand, and an utter failure on its part to comply with its own discovery obligations. For example, Mystic demanded that Pharmacia provide all documents

---

[6] A figure that reflects the April 2006 changes to the Massachusetts Contingency Plan.

"relating to chemicals" at a site that had been used as a chemical factory for a century. Its request extended not just to the Site, but also to the Gateway Parcel. This sweeping request required Pharmacia to produce hundreds of boxes of documents, and ultimately, at Mystic's demand to produce a privilege log over 400 pages in length. This privilege log alone cost Pharmacia tens of thousands of dollars to produce.[8]

In contrast, Mystic was consistently dilatory in its production of documents. The Court sanctioned Mystic for its non-compliance with discovery requirements in April, 2005 (Docket No. 72), and was forced to order Mystic to comply with discovery requirements again in January, 2006 (Docket No. 154). Indeed, the record will show that despite the Court's continued intervention, Mystic never fully complied with its discovery obligations. These actions both made settlement more difficult and increased the legal fees that Pharmacia was forced to incur. For example, Mystic did not provide information regarding its extended negotiations with DEP over Mystic's operation of an illegal solid waste facility, referenced at page 5 of the Decision, until days before the existence of those negotiations were made public via a DEP press release. It did not provide information regarding response costs until specifically ordered to do so by the Court. It did not provide boring logs and field notes (some of which dated back to sampling performed in 2001) which showed the intermixing of surface and subsurface soils until the eve of trial. It did not provide certain information regarding the circumstances of the purchase of the Property, which was considered by the Court in its Decision at 16-17, until the week before trial

---

[7] As noted in footnote 5, Dr. Hughto's upper estimate includes at least $2.6 million in construction costs and $2.5 million in sediment costs. It does not reflect increased soil removal costs associated with the April 2006 changes to the MCP.

[8] Mystic responded to Pharmacia's request for a privilege log with a representation (also made to Court during the hearing on sanctions) that Mystic had not withheld any documents as privileged. Only later to did Mystic's attorney acknowledge that such representation was incorrect when made. Mystic ultimately produced a privilege log less than 10 pages in length.

at which point it was impracticable to conduct the relevant inquiries that would have flowed from those documents.

### B.  Fair Estimate of Legal Fees.

Under Fed. R. Civ. P. 54(d)(2)(B), Pharmacia hereby provides a "fair estimate of the amount sought." These costs are subject to minor adjustments, and the precise amount will be documented at the appropriate time through invoices and evidence of payment. Costs sought include payment of legal fees to Foley Hoag LLP by Solutia Inc. (during the 4A process at a time when it was acting as attorney-in-fact to Pharmacia) and by Monsanto Company (during the litigation, at a time when it was acting as attorney-in-fact to Pharmacia, and in its own right), and payment of expert witness and related fees to Woodard and Curran (which employed Pharmacia's primary expert, Mr. Collins) and to Bonz and Company (which employed the expert retained by Pharmacia to address the property damage claim subsequently dismissed by the Court). The total amount of these fees is approximately $1,553,257.29 and is summarized in Exhibit 1 to the Affidavit of Adam P. Kahn, attached hereto.

### III.  Request for Hearing.

In the event the Court allows a consideration of Mystic and Pharmacia's claims for attorneys' fees, it will be necessary to adduce additional testimony by witnesses to document the course of dealings among the parties, as well as the introduction of documents withheld from the filing of the case in chief. The documents were withheld by both parties because they contained confidential settlement communications.

## **CONCLUSION**

For the reasons stated herein, the Court should not consider Mystic's request for an award of attorneys' fees because any such request was not timely filed and because it will be futile in light of the Decision and the documented behavior of the parties. If the Court does decide to consider Mystic's claim, it should deny that claim because Pharmacia acted in compliance with the provisions of Section 4A. Instead, it should grant Pharmacia's claim for attorneys' fees due to Mystic's numerous continued violations of the letter and spirit of Section 4A.

By its attorneys,

/s/ Elisabeth M. DeLisle
John M. Stevens (BBO # 480140)
Adam P. Kahn (BBO # 561554)
Elisabeth M. DeLisle (BBO #658067)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
Tel:  (617) 832-1000
Fax:  (617) 832-7000
edelisle@foleyhoag.com

Dated:   June 30, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>    Plaintiff,<br> v.<br><br>PHARMACIA CORPORATION,<br><br>    Defendant. | CIVIL ACTION No. 04-10180 NMG |
| PHARMACIA CORPORATION ,<br>    Third-Party Plaintiff,<br> v.<br><br>MODERN CONTINENTAL CONSTRUCTION CO., INC.,<br><br>    Third-Party Defendant. | |

CERTIFICATE OF SERVICE

 I hereby certify that true and accurate copies of the following, which were filed via the Court's ECF system, will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 30, 2006:

  1. Defendant Pharmacia Corporation's Opposition To Mystic Landing's Motion For Time Within Which To File Its Application For Attorneys' Fees And Costs And Pharmacia Corporation's Motion For Attorneys' Fees And Costs;

B3224871.1

2. Affidavit of Adam P. Kahn; and

3. this Certificate of Service.

/s/ Elisabeth M. DeLisle
Elisabeth M. DeLisle (BBO #658067)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
Tel: (617) 832-1000
Fax: (617) 832-7000
edelisle@foleyhoag.com

Dated: June 30, 2006