<u>ATTACHMENTS</u>


PART 1 -


EXHIBITS: D-225, D-226, D-228, D-229, D-231, D-232, D-233, D-240, D-241, D-242, D-245





**FOLEY HOAG**
ATTORNEYS AT LAW

Adam P. Kahn
Boston Office
617.832.1206
apk@foleyhoag.com

October 12, 2001

**By Hand and Certified Mail, Return Receipt Requested**



Gerald J. Petros, Esq.
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109-1775

Re:    ***Response to August 27, 2001 Demand Letter Pursuant to***
***M.G.L. Chapter 21E, Section 4A Mystic Landing, LLC Site***
***Everett and Boston Massachusetts***

Dear Mr. Petros:

This office represents Pharmacia Corporation ("Pharmacia") through its attorney in fact, Solutia Inc. ("Solutia") with respect to the above-referenced demand letter ("Demand") from Mystic Landing, LLC ("Mystic") pertaining to the property located off Chemical Lane in Everett and Boston, Massachusetts (the "Site").

As an initial matter, I note that your client has unreasonably refused to respond to previous written requests for information regarding site conditions, future site use, identified contamination, and other information critical to evaluate this claim. Mystic's failure to provide that information has significantly hampered Pharmacia's attempt to evaluate the information in the Demand and to prepare this response. See, e.g., Brent Gilhousen's letter to you dated June 1, 2001 requesting, *inter alia* all environmental reports, test data or other documents representing the presence of oil or hazardous materials on the site, information regarding property use, proposed or existing investigation and remediation plans. Your letter of June 8, 2001 indicated that by July 8, 2001 your client would be in a position to share such information, but to date we have no concrete information about future use. Moreover, even though Pharmacia has provided Mystic with additional information regarding the Site as requested by Mystic, Pharmacia has even now received no reports from Mystic, only a condensed lawyer's summary of test data.

Although Pharmacia has not been provided with the information it previously requested and needs to fully evaluate this claim, Pharmacia has responded in good faith,

16/342408.3

BOSTON  /  One Post Office Square  /  Boston, Massachusetts 02109  /  TEL: 617.832.1000  /  FAX: 617.832.7000
WASHINGTON, DC  /  1747 Pennsylvania Ave., NW / Suite 1200 / Washington, DC 20006 / TEL: 202.223.1200 / FAX: 202.785.6687
Foley, Hoag & Eliot LLP                                                                                                    www.foleyhoag.com

MONS1 0001250

Gerald J. Petros, Esq.
October 12, 2001
Page 2

but reserves its rights to modify, amend or supplement this response as information becomes available to it.

## I.    Mystic's Liability for Costs to be Incurred at the Site

Mystic's demand that Pharmacia bear the full share of costs is patently unreasonable and contrary to established equitable allocation principles. Mystic purchased the Site with full knowledge of the contamination at a substantial discount and now proposes an unreasonable, unnecessary, and inappropriate remediation plan. Under those circumstances, and based on its understanding of the information provided thus far, Pharmacia is not willing to offer to share in those expenses.

A.    Mystic purchased the Site with full knowledge of the contamination for far less than its "clean" value and is now attempting to enrich itself at Pharmacia's expense.

Chapter 21E was not intended to create a profit center for owners of contaminated property. Mystic's dealings with the prior owner of the Site and with Pharmacia show that Mystic seeks to be unjustly and improperly enriched under the auspices of Chapter 21E.

Mystic was well aware of the contamination and bought with full knowledge of that contamination. Its knowledge came from materials provided by Solutia at Mystic's request, from publicly available files at the DEP, from the land use restrictions prohibiting the very use that Mystic now apparently wants to make on the Site, and from other sources. Armed with that knowledge, Mystic paid almost nothing for this large parcel and now seeks to recover all of the costs of remediation.

As indicated in documents recorded by Mystic on the Suffolk and Middlesex County Registry of Deeds, Mystic paid $300,000 for this approximately 36 acre site. By any stretch of the imagination, this price reflects a dramatic discount from the true value of the Site.[1]

In March 1999, Mystic's affiliate, Modern Continental Construction Co./Obayashi (assignor of the Option Agreement pursuant to which Mystic purchased the Site) recorded a Mortgage of Real Estate on the Middlesex and Suffolk County land records. The Mortgage recited that the Option Agreement under which Mystic ultimately purchased the Site had a value of $8 million. Accepting that recital as true, Mystic purchased the Site at least $7.7 million under fair market value, a discount of

---

[1] Although beyond the scope of a response required under §4A, it is abundantly clear that Mystic's purchase of the Site at this reduced price and with full knowledge of the contamination present thereon precludes any viable claim for property damage under §5.

16/342408.3

MONS1 0001251

Gerald J. Petros, Esq.
October 12, 2001
Page 3

over 96%, which appears to be attributable to the presence of environmental contamination[2]. To avoid an unjustified windfall, Mystic should be required to bear at least the first $7.7 million in necessary and appropriate response costs simply on the basis of the discount alone and without regard to other equitable factors.

Although Modern Continental's averment of the market value of the Site may be the best indicia of its value, under any cognizable theory Mystic purchased the Site at a dramatic discount. Based on assessors' data, Mystic paid less than 6% of the assessed value of the Site. The Boston section of the Site alone was assessed at $820,800, and the Everett portion was assessed at $4,657,800, for a total of $5,478,600. Prior sales data further confirm the magnitude of the discount obtained by Mystic.

By demanding full cleanup costs from Pharmacia now, Mystic is seeking a double recovery -- first a reduction in price from the prior owner and second a reimbursement of costs that have already been figured into Mystic's purchase price. If the Site were remediated to residential standards at Pharmacia's expense, Mystic would reap a windfall. The 4A process was never intended to accomplish that result.

B.    Mystic's proposed remediation program is neither "necessary" nor "appropriate" and the associated costs would not be recoverable under Chapter 21E.

Under M.G.L. c. 21E §4, only those response costs that are "necessary" and "appropriate" may be recovered. On its face, the Demand proposes a cleanup that is neither necessary nor appropriate. If Mystic wants to turn its back on rational, reasonable remediation techniques, it can do so, but it cannot expect another party to fund that effort.

Even the minimal, secondhand information in the Demand documents that the claimed costs are neither necessary nor appropriate, and thus would not be recoverable under Chapter 21E. The Demand asserts that Mystic expects to remove all soil from the Site that contains oil or hazardous materials above the Method 1 "S-1" soil standards listed in the Massachusetts Contingency Plan ("MCP"), 310 CMR 40.0000. Those standards are not applicable to most commercial or industrial uses, and indeed are not even required for many residential uses. At a site that has never been used for residential purposes, is surrounded by non-residential uses, is zoned for industrial use (and where residential uses are not permitted under Everett or Boston zoning codes) and which is encumbered by a recorded restriction prohibiting residential (or even commercial) use, such an approach is manifestly unnecessary and inappropriate.

---

[2] Pharmacia specifically denies that the contamination at the Site should have reduced the Site's market value by anything approaching $7.7 million; however, it appears that Mystic was able to obtain a reduction of at least that amount from the seller.

16/342408.3

MONS1 0001252

Gerald J. Petros, Esq.
October 12, 2001
Page 4

In selecting the Method 1 S-1 standard as its cleanup benchmark, Mystic has also ignored or overlooked major components of the MCP, such as the Method 3 risk assessment, which may further obviate the need for all or most of the remediation proposed, even if the Site were to be used for residential purposes.  Again, if Mystic wants to proceed in that fashion, it cannot expect another to bear the cost.

Based on the limited information provided by Mystic, it is entirely possible that the Site will not require any soil excavation whatsoever to comply with the MCP, much less the wholesale excavation program proposed in the Demand[3].  The Demand summarizes the results apparently obtained by Rizzo Associates.  It identifies arsenic, lead, and other metals at the site, but the average concentration of no metal exceeds the Upper Concentration Limit (UCL) specified in the MCP.  Similarly, extractable petroleum hydrocarbons (EPH) were reportedly detected in a number of samples, but the concentrations appear well below the UCLs, and depending on the type of EPH detected (information not provided in the Demand), concentrations may even be well below the average residential standard.  Volatile petroleum hydrocarbons (VPH) were found in only 2 of 45 samples.  Although the Demand asserts that polycyclic aromatic hydrocarbons (PAHs) were detected above "Method 1 S1/GW-2 standards," the only specific concentration cited (for Methylnaphthalene) was below that standard.  Moreover, the Demand states further that the PAHs resulted from ash or cinders, which would exclude those PAHs from regulation under the MCP and 21E entirely.

The groundwater results, even as reported in the Demand, similarly do not justify the massive remediation efforts proposed at the Site.  Indeed, from the information presented, it appears that an appropriate remediation program for the Site would cost far less than the discount Mystic extracted from the prior owner of the property.  As such, Mystic should be required to bear those costs.[4]

C.      Mystic has unclean hands.

The Demand makes no mention of the fact that Mystic or its affiliates at Modern Continental have controlled the site for some time and conducted substantial industrial activities there.  Mystic has provided no information regarding those activities, but Pharmacia believes they are of the type that may cause or exacerbate contamination.  For example, the Demand makes reference to costs to excavate the "tunnel muck layer" at a

---

[3]  Assuming solely for the sake of argument that Mystic is an "innocent party", Mystic's costs -- and therefore its demand -- would be further reduced as a result of the substantial tax benefits from the remediation identified in the Demand.  Under Massachusetts law, Mystic may be entitled to a state tax credit of up to 50% of the total remediation cost.  Mystic may also be able to avail itself of other federal tax benefits.

[4]  Apart from future response costs, Mystic's claim that it has expended in excess of $90,000 for response actions is a bald attempt to seek to have Pharmacia to pay for Mystic's due diligence on the Site.  As far as can be determined from the Demand, Mystic has not drafted or submitted a single document to the DEP or otherwise sought any permission to conduct any response actions at the Site.

16/342408.3

MONS1 0001253

Gerald J. Petros, Esq.
October 12, 2001
Page 5

cost of $150,000. The "tunnel muck layer" -- whatever that may be -- was certainly not created by Pharmacia and may well be substantially more expensive than the $150,000 referenced in the Demand to remove and may by its mere placement have exacerbated existing contamination. The Demand also does not evaluate the contribution of other owners or operators of the Site, but rather asserts without substantiation that Pharmacia's predecessors caused all of the contamination.

In addition, during the time that Modern Continental has had a relationship with the Site, the Site has not been in compliance with the provisions of Chapter 21E and the MCP. For example, a Phase II report should have been submitted to the Massachusetts DEP more than a year ago, but has not. Mystic's affiliates had substantial control over the Site during that period, yet failed to ensure the Site complied with the very statute it now seeks to enforce against Pharmacia. (In contrast to Mystic's record of environmental compliance at the Site, the Demand does not even allege that Pharmacia's activities at the Site contravened any environmental law.)

II.  **Further information or documentation required to fully evaluate Mystic's claim.**

Nearly four months ago, Pharmacia requested a number of items from you so that it could evaluate this then-anticipated claim. To date, we have received only the most general statements through your office. At this time we re-assert our demand and need for that information. Had it been provided when requested, it may have been possible to have a more detailed response at this time. Pharmacia renews its request for this information and has attached a copy of Brent Gilhousen's letter of June 1, 2001 to this letter for your convenience. In addition, in light of the allegations in the Demand, Pharmacia also requests the following information: (1) property appraisals known to or in the possession of Mystic or its affiliates; (2) all reports and test data pertaining to the environmental condition of the Site, and not merely a summary of those reports; (3) detailed development proposals, including the amount of soil that would otherwise need to be excavated or removed as part of development; (4) identities of individuals who worked for Modern Continental (or affiliates) at the Site; (5) all documents evidencing legal and financial arrangements between and among Modern Continental (and affiliates) and Mary O'Donnell or O'Donnell Sand and Gravel as those documents pertain to the Site.

16/342408.3

**MONS1 0001254**

Gerald J. Petros, Esq.
October 12, 2001
Page 6

## Conclusion

Upon receipt of the information to which Pharmacia is legally and equitably entitled pursuant to Chapter 21E Section 4A, Pharmacia is more than willing to confer in good faith to determine whether the dispute between the parties can be resolved.   After Pharmacia receives this information, I will contact you promptly so that the parties can arrange for such a meeting.

Very truly yours,

Adam P. Kahn

APK:pag
Enclosure

16/342408.3

MONS1 0001255

28 STATE STREET
BOSTON, MASSACHUSETTS 02109-1775
617 345-9000

FAX: 617 345-9020

# HINCKLEY, ALLEN & SNYDER LLP
*Attorneys at Law*

Doreen M. Zankowski, Esq.
E-Mail: dzankowski@haslaw.com

November 16, 2001

Adam P. Kahn, Esq.
Foley Hoag LLP
One Post Office Square
Boston, Massachusetts  02109



CERTIFIED MAIL/RETURN RECEIPT

Re:  Mystic Landing, LLC Alford Street and Broadway, Everett and Boston, Massachusetts
     Pharmacia/Solutia/Monsanto Letter of October 12, 2001

Dear Mr. Kahn:

As you know, Hinckley, Allen & Snyder LLP represents Mystic Landing, LLC
("Mystic") in its M.G.L. Chapter 21E, Section 4A demand to Pharmacia Corporation
("Pharmacia"), in connection with the release of hazardous material or oil ("OHM") at the
property located at Alford Street and Broadway, Everett and Boston, Massachusetts (the "Site").
Pursuant to M.G.L. Chapter 21E, Section 5, Pharmacia is liable to Mystic for all damages
resulting from the release of OHM.

The purpose of this letter is to respond, in part, to your October 12, 2001 letter wherein
Pharmacia continues to raise immaterial issues in order to avoid or delay conferring in good
faith, with Mystic, in an effort to resolve all disputes that exist with respect to participation in, or
funding of, the response action, or other liability issues associated with release of OHM at the
Site. The issues that are not specifically addressed in this letter would be best addressed in a
meeting between the parties.  As we stated in our August 27, 2001 letter, Mystic's representatives
are willing to meet with you and your client to discuss Site remediation and development
activities for the Site.

In addition to information that will be provided at the proposed meeting, Mystic will
continue to provide Pharmacia with information about the Site that is in Mystic's possession.  In
response to one of your initial comments, wherein you suggest that Mystic has not responded to
requests for information regarding site conditions, future site use, identified contaminants, and
other information critical to evaluate the claim, we must respond that this comment is without
merit and is merely another attempt at a delay.  First, Monsanto owned this site for many years
and has direct knowledge of its activities and related contamination.  Further, our August 27,

#369519

HINCKLEY, ALLEN & SNYDER LLP

Adam P. Kahn, Esq.
Page 2
November 16, 2001

2001 letter included detailed information about site contamination issues, as well as all necessary and required information to effectively provide Pharmacia with Notice pursuant M.G.L. 21E, Section 4A. Notwithstanding the foregoing, included with this letter is a copy of the Rizzo Associates Report, dated June 19, 2001, and an addendum thereto dated August 10, 2001. As you will see, Rizzo states unequivocally that the OHM at the Site is due to Monsanto's past activities, thus dispelling your theory that Mystic has unclean hands. The "tunnel muck layer" that you reference in your letter was clean, uncontaminated material. As a matter of fact, the so-called tunnel muck layer may actually have served to control the migration of Monsanto's contaminants from or around the Site. Your numerous references to the tunnel muck layer are made in a vacuum with no understanding that the tunnel muck layer was actually an environmentally prudent stop gap for the Site.

Your letter contains numerous smoke screens in an attempt to delay the inevitable resultant liability of Pharmacia. Your contention that Pharmacia is not responsible for Site remediation because Mystic allegedly purchased the Site at a discount is without any basis in law or fact. Neither Mystic's purchase price, or any potential tax benefit, will serve to shield your client from liability under M.G.L. 21E. Moreover, your comment that a Phase II report should have been submitted to MA DEP more than a year ago simply does not make sense -- Mystic did not own the Site a year ago and therefore was not required to submit the Phase II report. Finally, your comment that Mystic's proposed remediation program is neither necessary nor appropriate is a conclusion that is essentially meaningless and will serve your client no benefit with regard to its liability for Site cleanup costs.

I ask that you and your consultants review the enclosed report and addendum and contact either Gerry Petros or me to arrange a meeting. Any further delays will result in Mystic filing suit and seeking its litigation costs and attorneys' fees as allowed by M.G.L. 21E. Pursuant to the Statute, the parties should confer, in good faith, on or before, December 11, 2001 in an effort to resolve all disputes regarding the Site remediation.

Very truly yours,

Doreen M. Zankowski

DMZ/jds

cc:   G. Petros, Esq.
      J. Lewin, Esq.
      A. Gottlieb, Esq.

#369519



**HINCKLEY, ALLEN & SNYDER LLP**

*Attorneys at Law*

28 STATE STREET
BOSTON, MASSACHUSETTS 02109-1775
617 345-9000
FAX: 617 345-9020

*Doreen M. Zankowski, Esquire*
*E-mail: dzankowski@haslaw.com*

January 11, 2002

VIA FACSIMILE -- LETTER ONLY:  (617) 832-7000
AND FIRST CLASS MAIL

Adam P. Kahn, Esquire
Foley, Hoag & Eliot, LLP
One Post Office Square
Boston, Massachusetts  02109



Re:    Mystic Landing LLC, Everett, Massachusetts Property
       Monsanto/Solutia/Pharmacia Responses to Section 4A Demand

Dear Adam:

        The purpose of this letter is to request once again that Monsanto/Solutia meet
with representatives of Mystic Landing, LLC and its counsel to discuss the future
development of the Everett site and to discuss planned remediation activities.  As I
mentioned to you in our telephone conversations of November 29, 2001, Mystic Landing
is readily willing to have its environmental consultants from Rizzo Associates available
to answer any questions you or your client may have regarding the information contained
in Mystic's Section 4A demand, the Rizzo reports previously provided, or any other
questions relating to the environmental investigation and the remediation cost estimates.

        The Section 4A letter sent to you on August 27, 2001 had detailed information
concerning the contaminants at the site. The Rizzo reports contain detailed results of
groundwater and soil sampling activities.  To continue to say that we have not provided
you with sufficient information is simply a delay tactic.  Additionally, you could have
obtained information readily available at Massachusetts DEP.  We provided you with
copies of the Rizzo reports, more than fifty (50) days ago, yet, we still have not heard any
substantive comments from you.  You have certainly been provided with sufficient
information to understand that your client has serious liability exposure for the
contamination problems at the site.

        In addition to your delay tactics that are simply cloned as requests for further
information, you continue to raise as an issue, the property purchase price.  As you are
very well aware, the purchase price of the property is totally irrelevant for our

HINCKLEY, ALLEN & SNYDER LLP
Adam P. Kahn, Esquire
January 11, 2002
Page 2

discussions. What Mystic paid for the property does not change in any way Monsanto/Solutia's liability under MGL 21E. I am sure you are well versed in the contaminants at the Mystic site, as they are identical to the contamination problem at the neighboring mall site. Monsanto/Solutia conceded liability for the diversified site. It should not be a mystery that Monsanto/Solutia is responsible for the site contamination at the Mystic site.

Notwithstanding the foregoing, enclosed with this letter is all of the environmental documentation that Mystic has in its possession concerning the Everett site. In order to faciliate your review, and circumvent any further delays on your part, I have researched and located another environmental report prepared by Consulting Engineers & Scientists, Inc. (CE&S) on behalf of the former Site owner, O'Donnell Sand & Gravel, Inc. A copy of the CE&S report is enclosed. In addition, a copy of the July 13, 2001 letter prepared by Goldman Environmental Consultants is also enclosed.

As you will see, the information provided is immaterial and should not have resulted in your continued delays. We will, however, give you another thirty (30) days to review the information and establish a meeting with you. If we do not hear from you within the next thirty days, we will file suit.

Your continued delay will only serve to harm your client, as Mystic Landing's only recourse will be to file suit, and we will seek our court costs and attorneys' fees.

Please let me know if you have any questions.

Very truly yours,

Doreen M. Zankowski

DMZ:lmm
Enclosures
110580/115353
376330



# FOLEY
# HOAG
### ATTORNEYS AT LAW

Adam P. Kahn
Boston Office
617.832.1206
akahn@foleyhoag.com

January 22, 2002



*VIA FACSIMILE and U.S. MAIL*
*(617) 345-9020*

Doreen M. Zankowski, Esq.
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775

     Re:    *Mystic Landing LLC: Response to Your Letter of January 11, 2002*

Dear Doreen:

     With regard to your latest letter, any delay in scheduling a meeting has resulted solely from the refusal by Mystic Landing LLC ("Mystic") to provide information that has been reasonably and repeatedly requested by Solutia to evaluate Mystic's $17 million demand. If the cost estimate is at all meaningful, it must have been based on an assumed remediation and redevelopment plan, neither of which we have seen even in preliminary form.[1]

     Additionally, and without reiterating all of the points made in our previous letters, the circumstances surrounding Mystic's purchase of the property are entirely relevant to the ultimate resolution of Mystic's demand. In the absence of contradiction from you, Solutia will assume that its factual analysis regarding Mystic's purchase of the property presented in our letter of October 12, 2001 is correct and will rely on it in evaluating Mystic's claim.

     Solutia believes that any future meeting would be more productive if Mystic would share details about redevelopment and remediation plans (even if preliminary in scope) in advance of the meeting. Nevertheless, Solutia is willing at this time to meet with representatives of Mystic, including at a minimum you or Mr. Petros, a representative of Rizzo Associates, and an individual (employed by Mystic or one of its

---

[1] Indeed, similar relevant and material issues were raised to Mystic in the letter from Goldman Environmental Consultants ("GEC") attached to your January 11, 2002 correspondence to me. The GEC letter refers to an earlier GEC letter dated July 3, 2001. We have not been provided with a copy of that letter and renew our request here for <u>all</u> documents pertaining to the environmental condition of the property or the remediation plans, including the July 3, 2001 letter. We are entitled to those documents under the §4A process and again urge you to provide them to us now.

16/346989.1

BOSTON / One Post Office Square / Boston, Massachusetts 02109 / TEL: 617.832.1000 / FAX: 617.832.7000
WASHINGTON, DC / 1747 Pennsylvania Ave., NW / Suite 1200 / Washington, DC 20006 / TEL: 202.223.1200 / FAX: 202.785.6687
Foley, Hoag & Eliot LLP                        www.foleyhoag.com

Doreen M. Zankowski, Esq.
Hinckley, Allen & Snyder LLP
January 22, 2002
Page 2

affiliates) familiar with the redevelopment plans at the property. Specifically, Solutia expects to discuss the status of Mystic's redevelopment plans and remediation strategy, as well as other issues relevant to our good faith effort to determine whether this matter can be resolved without litigation. Representatives of Solutia are available to meet in Boston on February 6, February 7, and February 21, 2001, but we will need to schedule any meeting by the end of this week to coordinate travel schedules. If these dates are not workable, please suggest other dates later in February or March.

Please contact me when you receive this letter to finalize the date and time of the meeting, confirm meeting attendees, and verify that Mystic will at that time be prepared to discuss the status of redevelopment and remediation plans.

Very truly yours,

Adam P. Kahn

APK:pag

28 STATE STREET
BOSTON, MASSACHUSETTS 02109-1775
617 345-9000

FAX: 617 345-9020

# HINCKLEY, ALLEN & SNYDER LLP

*Attorneys at Law*

**Doreen M. Zankowski, Esq.**
**dzankowski@haslaw.com**

March 18, 2002

VIA FACSIMILE  (617) 832-7000 And First Class Mail

Adam P. Kahn, Esq.
Foley Hoag
One Post Office Square
Boston, MA   02109

> Re:    Additional Information Discussed at Meeting of February 6, 2002
>          Mystic Landing, LLC -- Everett/Boston Former Monsanto Property

Dear Adam:

In response to your March 12, 2002 letter, please be advised that you will be receiving most of the information your requested within the next few weeks. I do not, however, believe that we agreed to provide you with information about the transaction between O'Donnell and Mystic Landing regarding the lease and purchase of the site. Attorney Gottlieb and Peter Grela explained the situation to you at the meeting, however, I do not believe that Mystic is willing to share the transaction documents with you as they do not have any bearing on Mystic's demand to Solutia/Pharmacia/Monsanto.

I will check with my client about their willingness to share the transactional information and let you know if their position changes.

In the meantime, please let me know if you have any questions.

Very truly yours,

Doreen M. Zankowski

DMZ:lmm
385822

DEFENDANT'S
EXHIBIT
261

1500 FLEET CENTER   □   PROVIDENCE, RHODE ISLAND 02903-2393   □   401 274-2000   □   FAX: 401 277-9600
14 SOUTH STREET   □   CONCORD, NEW HAMPSHIRE 03301-3744   □   603 225-4334   □   FAX: 603 224-8350



# FOLEY HOAG
### ATTORNEYS AT LAW

Adam P. Kahn
Boston Office
617.832.1206
akahn@foleyhoag.com

May 6, 2002

**<u>Confidential Settlement Communication</u>**

**<u>Via Fax and U.S. Mail</u>**

Doreen M. Zankowski, Esq.
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109-1775

      Re:    *Mystic Landing LLC:  Confidential Settlement Offer*

Dear Doreen:

      I have been authorized to make the following offer, which is made expressly in the context of settlement and on the understanding that the offer does not constitute an admission of any fact or liability for the claims asserted by Mystic Landing LLC ("Mystic").

      In exchange for full and complete releases of all claims that Mystic has or may have against Monsanto, Solutia, Pharmacia, or any related entity, Solutia is willing to purchase the Mystic property in Boston and Everett for $300,000, the amount Mystic paid for the property only a few months ago.  Solutia, as the new owner of the site, would conduct any remediation required by law and would not look to Mystic or its affiliates to contribute to the site remediation, except to the extent that Mystic or its affiliates caused or contributed to the contamination.

      This offer, if accepted, is subject to final confirmation in a form of a more detailed settlement and release agreement.  It will remain open until May 31, 2002, unless it is withdrawn earlier in writing by Solutia.

                    Very truly yours,

                    Adam P. Kahn



16/351059.1

BOSTON  /  One Post Office Square  /  Boston, Massachusetts 02109  /  TEL: 617.832.1000  /  FAX: 617.832.7000
WASHINGTON, DC  /  1747 Pennsylvania Ave., NW  /  Suite 1200  /  Washington, DC 20006  /  TEL: 202.223.1200 / FAX: 202.785.6687
Foley, Hoag & Eliot LLP                    www.foleyhoag.com

# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

Adam P. Kahn
Boston Office
617.832.1206
akahn@foleyhoag.com

December 16, 2002

*VIA FACSIMILE and U.S. MAIL*
*(617) 345-9020*

Doreen Zankowski, Esq.
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109-1775

Re:    *Mystic Landing:  Transaction Documents with O'Donnell*

Dear Doreen:

At our meeting of November 25, 2002, you indicated that Modern Continental/Mystic Landing would consider providing the transaction documents between Mystic Landing/Modern Continental (or affiliates) and Mary O'Donnell/O'Donnell Sand and Gravel (and affiliates).  Solutia has agreed that any such documents may be provided under a confidentiality agreement.  I called you last week to ascertain the status of those documents and did not receive any reply.  Solutia again requests those documents, or at least a response to our request.

Because of the importance of these documents, in the event they are not received by Wednesday, December 18, Solutia sees no value in proceeding with the agreed scheduled call on December 20.  Solutia would be willing to reschedule that call promptly after receipt of the requested materials.

Please advise me how your client wishes to proceed.

Very truly yours,

Adam P. Kahn

APK:pag



16/359736.1

BOSTON  /  155 Seaport Boulevard  /  Boston, Massachusetts 02210  /  TEL: 617.832.1000  /  FAX: 617.832.7000
WASHINGTON, DC  /  1747 Pennsylvania Ave., NW  /  Suite 1200  /  Washington, DC 20006  /  TEL: 202.223.1200 / FAX: 202.785.6687
Foley Hoag LLP·                                                                                                    www.foleyhoag.com

28 STATE STREET
BOSTON, MASSACHUSETTS 02109-1775
617 345-9000

FAX: 617 345-9020

# HINCKLEY, ALLEN & SNYDER LLP

*Attorneys at Law*

Doreen M. Zankowski, Esq.
*dzankowski@haslaw.com*

May 31, 2002

<u>CONFIDENTIAL SETTLEMENT COMMUNICATION</u>

VIA FACSIMILE (617) 832-7000 AND FIRST CLASS MAIL



Adam P. Kahn, Esq.
Foley Hoag
155 Seaport Boulevard
Boston, Massachusetts  02210

Re:    Mystic Landing, LLC:  Response to Confidential Settlement Offer

Dear Adam:

In response to your offer letter of May 6, 2002, Mystic Landing, LLC ("Mystic") rejects your client's, Solutia/Monsanto/Pharmacia's ("Solutia") offer of $300,000 to settle all of the claims Mystic has against Solutia regarding the Alford Street property located in Everett and Boston, Massachusetts.  The Alford Street site ("Site") is highly contaminated with constituents that mirror the operations of Monsanto when the Site was owned and operated by Monsanto, and the contamination issues are identical to the situation on the neighboring property (the Mall), which Monsanto assumed full liability for its cleanup.

Your logic is flawed in that Solutia's offer to settle for $300,000 is premised on what you continue to erroneously believe was Mystic's purchase price for the property. The $300,000 you continue to refer to was merely consideration paid by Mystic to exercise an option to purchase the Site. *As you are well aware*, Mystic paid millions of dollars for the property.

When we last spoke, we agreed that when Solutia was provided with Rizzo Associates' remediation estimates for the proposed ballfield, as well as the mixed-use development scenario, the parties would meet soon thereafter in a further attempt to resolve the matter.  Please be advised that I will be forwarding you the remediation

HINCKLEY, ALLEN & SNYDER LLP

Adam P. Kahn, Esq.
May 31, 2002
Page 2

estimates next week.  I suggest that we set aside a time to meet during the week of June
17, 2002.  Let me know if this will work with Solutia's and your schedules.

Mystic continues to reserve all of its legal rights and remedies with regard to this
matter.

I look forward to hearing from you.

Very truly yours,

Doreen M. Zankowski

DMZ:lmm

396198
110580.114009



**FOLEY HOAG** LLP

ATTORNEYS AT LAW

Adam P. Kahn
Boston Office
617.832.1206
akahn@foleyhoag.com

June 12, 2002

**Confidential Settlement Communication**
**Via Facsimile and U.S. Mail**

Doreen M. Zankowski
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109



     Re:    *Mystic Landing, LLC: Your Letter of May 31, 2002*

Dear Doreen:

     I was disappointed to receive your letter of May 31, 2002 rejecting Solutia's settlement offer. The offer as presented would relieve your client of 100% of the remediation-related costs at the site (excluding costs caused or exacerbated by your client or its affiliates) as well as reimburse your client for the entire purchase price for the property.

     Your letter asserts without corroboration that I am "well aware" that Mystic paid "millions" for the property. I am aware of no such fact. Although Solutia made repeated requests for documents relating to the transaction between Mystic and Mary O'Donnell, Mystic refused that request. More importantly, I am not aware of any document that could substantiate the assertion in your letter. The quitclaim deed between Ms. O'Donnell and Mystic states that the property was transferred "in full consideration of $300,000, receipt of which is hereby acknowledged." Contrary to the assertion in your letter, neither this deed nor any other document we were able to locate on the land records contains any reference whatsoever to any additional consideration paid by Mystic "to exercise an option to purchase the site." Moreover, I assume the stated sales price is correct, given that it is a criminal violation in Massachusetts to knowingly fail to state the true and full sales price in the deed, and thereby underpay the deed excise tax due. If you have any contrary information, I again urge you to bring it to my attention so that Solutia can consider it during these settlement negotiations.

     Solutia would still be willing to work with you to determine whether an amicable resolution to this matter can be achieved. To that end, Solutia hereby extends its offer for an additional sixty days from today. If its offer remains unacceptable to Mystic, Solutia would consider reasonable alternative proposals from Mystic.

16/352223.1

BOSTON  /  155 Seaport Boulevard  /  Boston, Massachusetts 02210  /  TEL: 617.832.1000  /  FAX: 617.832.7000
WASHINGTON, DC  /  1747 Pennsylvania Ave., NW  /  Suite 1200  /  Washington, DC 20006  /  TEL: 202.223.1200  /  FAX: 202.785.6687
Foley Hoag LLP                                                                                         www.foleyhoag.com

Doreen M. Zankowski
June 12, 2002
Page 2

     In terms of timing, Solutia's representative, Gerald Rinaldi, is unavailable most of the remainder of June, including the week of June 17 during which you proposed another meeting, as well as the first two weeks of July. I will be out of the office on vacation from July 19 through July 26. Given these schedules and the fact that we have not received the follow-up estimate from Rizzo Associates referenced in your May 31 letter, we will not be able to meet the week of June 17. If we receive the Rizzo estimate in the reasonably near future, then we will work diligently to try to arrange a mutually convenient time to speak in August. Please advise as to when we should expect the Rizzo estimate and the availability of you or your client in August.

                        Very truly yours,

                        Adam P. Kahn

APK:pag

OCT 10 2003 16:44 FR H A S BOSTON 30 3        TO 98327000        P.01

# Hinckley, Allen & Snyder LLP    *Attorneys At Law*

28 STATE STREET □ BOSTON, MASSACHUSETTS 02109-1775
617 345-9000 □ FAX 617 345-9020 □ www.haslaw.com

## FACSIMILE TRANSMITTAL SHEET

FROM:   **Doreen M. Zankowski, Esq.**

DATE:   **October 10, 2003**

NUMBER OF PAGES TRANSMITTED
(INCLUDING COVER SHEET)        7

*If you did not receive the indicated number of pages or if any pages are illegible, please call us immediately at:*   **(617) 345-9000 Ext. 4000**

CLIENT: <u>110580</u>        MATTER: <u>114009</u>

**CONFIDENTIALITY NOTICE**

This facsimile transmission and the accompanying documents contain legally privileged confidential information. The information is intended only for the use of the recipient named below. If you are not an intended recipient, you are hereby notified that any disclosure, copying, distribution, or exploitation of, or the taking of any action in reliance on, the contents of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify us immediately by telephone to arrange for the return of the original documents to us at our expense.

TO:        **Adam P. Kahn, Esq.**

FIRM:      **Foley Hoag**

RE:        **Mystic Landing, LLC**

PHONE
NUMBER:

FAX
NUMBER:   **617-832-7000**

□ URGENT        □ PER OUR DISCUSSION        □ AS REQUESTED        □ PLEASE CALL TO DISCUSS        □ PLEASE SEE BELOW

NOTES/COMMENTS:



28 STATE STREET □ BOSTON, MASSACHUSETTS 02109-1775 □ 617 345-9000 □ FAX 617 345-9020
1500 FLEET CENTER □ PROVIDENCE, RHODE ISLAND 02903-2393 □ 401-274-2000 □ FAX 401-277-9600
43 NORTH MAIN STREET, 2ND FLOOR □ CONCORD, NEW HAMPSHIRE 03301□ 603 225-4334 □ FAX 603 224-8350

28 STATE STREET
BOSTON, MASSACHUSETTS 02109-1775
617 345-9000
FAX: 617 345-0020

# HINCKLEY, ALLEN & SNYDER LLP

*Attorneys at Law*

*D. M. Zankowski, Esq.*
*dzankowski@haslaw.com*

October 10, 2003

Confidential
Settlement Purposes Only

VIA FACSIMILE (617) 832-7000 AND
FIRST CLASS MAIL

Adam P. Kahn, Esq.
Foley Hoag
155 Seaport Boulevard
Boston, MA 02210

Re:   Mystic Landing, LLC and Monsanto/Solutia/Pharmacia
      Alford Street, Everett, MA Property

Dear Adam:

Attached please find a Confidentiality and Non-Disclosure Agreement ("Agreement") that should be signed by your client prior to Modern Continental Construction Co., Inc. ("Modern") and/or Mystic Landing, LLC providing the documents you requested relating to the Lease and Purchase and Sale Agreement for the Alford Street property.

Once you return an executed copy of the Agreement, I will forward the relevant documents to you. As I have suggested in the past, we should schedule a meeting with you and representatives of Modern to discuss the documents.

Please let me know if you have any questions.

Very truly yours,

Doreen M. Zankowski

DMZ/mle
Attachment

## CONFIDENTIALITY
## AND
## NON-DISCLOSURE
## AGREEMENT

THIS CONFIDENTIALITY AGREEMENT (the "Agreement") is made and entered into as of this _____ day of _____, 2003, by and between Monsanto Corporation, Solutia, Inc., and Pharmacia Corporation, including its attorneys (hereinafter referred to as the "Recipient") having offices at _____, and Mystic Landing, LLC, having offices at 600 Memorial Drive, Cambridge, MA 02139 (hereinafter referred to as "Mystic"). Whenever used herein, the terms "Monsanto" or "Recipient" shall also be deemed to include any parent, subsidiary or entity affiliated with such entity.

In consideration of the mutual promises and covenants herein stated, and each act performed or to be performed hereunder, the parties hereto hereby agree as follows:

1.    Confidential Information.  All documents in the possession, custody or control of Mystic containing confidential technical or commercial, financial or proprietary business information which are produced by Mystic to the Recipient, including, but not limited to, lease and purchase and sale information concerning the Mystic Landing Property, Everett, Massachusetts, and other information relating thereto, will be designated as "Confidential." The term "Confidential Information" shall include all such confidential technical and commercial, financial or proprietary business information of Mystic.

2.    Information Not Subject to this Agreement.  The term "Confidential Information" shall not include information which is:

(a)    is in the public domain or becomes part of the public domain by publication or otherwise through no act or failure to act on the part of Recipient;

(b)    is known to Recipient prior to disclosure by Mystic, and Recipient can establish such prior knowledge by competent documentation or other competent evidence, including, without limitation, immediate disclosure of such prior knowledge; or

(c)    is disclosed to Recipient by a third party, and such disclosure is not in violation of any confidentiality agreement with or obligation to Mystic.

3.    Recipient's Covenants.  Recipient, on behalf of itself and its affiliates, officers, employees, attorneys and agents (collectively, "Representatives"), covenants and agrees that:

(a)    Recipient shall not disclose, directly or indirectly, or make available all or any portion of the Confidential Information to any third party, and Recipient shall not,

without the prior written consent of Mystic, use, copy, photograph, reproduce or transcribe in any manner whatsoever, in whole or in part, all or any portion of any Confidential Information for any purpose other than solely in connection with the provision of goods or services to Mystic by Recipient.

(b)     Recipient shall not reveal to others any Confidential Information except to the extent that it is necessary to disclose such information to its Representatives having a demonstrated need to know such information for the sole purpose of carrying out an agreed upon activity by Mystic and Recipient.   All such Representatives of Recipient shall be informed by Recipient of the confidential nature of such information and shall agree (in the case of non-employees, in writing) to be bound by the terms and conditions of this Agreement prior to receiving such Confidential Information.   No other use or disclosure of the Confidential Information shall be made by Recipient without the prior written consent of Mystic or Modern Continental Construction Co., Inc.

(b)     The Recipient agrees that it shall use the Confidential Information solely for the purposes of carrying out an agreed upon activity by Mystic and Recipient and for no other purpose; *provided, however, that* Confidential Information may be disclosed by counsel for a Party to the following:

(i)     counsel and members, associates and employees of the firm of which counsel are members;

(ii)     in-house counsel for Recipient and those persons usually employed by Recipient for the purpose of providing necessary clerical and office support to such in-house counsel, provided all of the foregoing persons are directly involved in oversight of the dispute (including without limitation pre-litigation or litigation pursuant to the process prescribed by Mass. Gen. Laws. Ch. 21E, § 4A and further provided that each such person first agrees in writing to be bound by the provisions of this Agreement;

(iii)     present employees of Recipient who are given access to the documents by counsel for said Recipient as is necessary for the purposes of carrying out an agreed upon activity by Mystic and Recipient and/or for the dispute between Mystic and Recipient, and for no other purpose, *provided that* each such person first agrees in writing to be bound by the provisions of this Agreement;

(iv)     former employees of Recipient who are given access to the documents by counsel for Recipient as is necessary for the purposes of any dispute between Mystic and Recipient and for

2

no other purpose, *provided that* each such former employee first agrees in writing to be bound by the provisions of this Agreement;

(v)    the Court;

(vi)   stenographic personnel and court reporters providing services in any dispute between Mystic and Recipient;

(vii)  outside experts retained by Recipient for purposes of carrying out an agreed upon activity by Mystic and Recipient and/or for any dispute between Mystic and Recipient, *provided that* each such expert agrees in writing to be bound by the provisions of this Agreement;

(viii) any witness or deponent who may or actually does give testimony in any dispute between Mystic and Recipient, *provided that:* (i) such witness or deponent is listed on the face of the Confidential document; is the originator, author, or an identified recipient of such Confidential document; or has personal knowledge concerning such Confidential document; or has personal knowledge regarding the subject matter of the Confidential document; (ii) such witness or deponent is an officer, director, or employee of Mystic or Recipient; (iii) Mystic consents in writing to the disclosure of the Confidential material to such witness or deponent; or (iv) the Court orders such disclosure;

(ix)   Recipient's insurer or the insurer's in-house counsel, *provided that* each such person agrees in writing to be bound by the provisions of this Agreement; and

(x)    any other person to whom Mystic agrees, in writing, that disclosure may be made, or to whom a Court determines that disclosure must be made.

Disclosure to any other persons is strictly prohibited unless ordered by the Court.

(c)    If Recipient (a) is subpoenaed in another proceeding; (b) is served with a demand in another action to which it is a party; or (c) is served with any other legal process for the purpose of obtaining the disclosure of the Confidential Information, the Recipient shall give prompt written notice of its receipt of such subpoena, demand or legal process to Mystic so as to allow Mystic at least 10 days, or such lesser time as such

3

subpoena, demand or legal process specifies for production, to intercede and protect its rights. Provided that such notice is given, nothing herein shall be construed as requiring the Recipient or anyone else covered by this Agreement to challenge or appeal any order requiring production of any Confidential Information, or to subject itself to any penalties for non-compliance with any subpoena, demand or legal process, or to seek any relief from the Court.

(d)     Recipient acknowledges that the documents related to the Confidential Information are extremely voluminous. Given the volume and location of the documents involved and the proposed method of production, there exists a possibility that Mystic may inadvertently produce documents which would otherwise be subject to a claim of privilege against discovery. For purposes of this Agreement, "Privilege" or "Privileged" shall include, but not be limited to, documents constituting attorney/client communications and documents representing attorney work product and/or documents prepared in anticipation of litigation as defined under applicable law. Recipient agrees that such inadvertent production of documents subject to a claim of privilege (whether or not said document(s) is(are) identified on any privilege log prepared by Mystic or counsel) shall not be construed as or operate as a waiver of any privilege with respect to such documents or other documents subject to a claim of privilege. Accordingly, the inadvertent production of originals or copies of documents, which would otherwise be subject to any privilege against discovery shall not constitute a waiver of Mystic's right to assert any privilege with respect to such documents or other documents subject to a claim of privilege.

(e)     In the event that any Confidential or Privileged material is, either intentionally or inadvertently, disclosed to someone not authorized to receive such material under this Agreement, or if a person so authorized breaches any of his or her obligations under this Agreement, counsel of record of the Recipient immediately shall disclose the unauthorized disclosure or breach to Mystic's counsel of record, and also shall use his or her best efforts to obtain the return of all copies of the Confidential or Privileged material and to any prevent further disclosures of the same. Nothing herein is intended to limit any rights either Mystic or Recipient may have, independent of this Agreement, under applicable law to assert or challenge any Privilege asserted with respect to any document or information.

(f)     Upon Mystic's request, Recipient shall immediately destroy or return to Mystic all copies of any documents or other tangible, magnetic or digital media containing Confidential Information, regardless of whether such material was furnished to Recipient by Mystic or was developed by Recipient.

(g)     Neither the execution of this Agreement nor the furnishing of any information hereunder shall be construed as granting expressly or by implication any

4

license in and to the Confidential Information. Mystic is the exclusive owner of the Confidential Information.

    4.    <u>Reasonable Precautions</u>. All reasonable precautions shall be taken by the parties hereto to insure compliance with the terms and conditions of this Agreement.

    5.    <u>Remedies</u>. The parties hereto acknowledge that any breach or violation of this Agreement may be difficult to calculate in pecuniary damages, therefore Mystic may avail itself of injunctive relief, specific performance or other equitable relief under this Agreement, and such remedies shall be cumulative or, and in addition to, any other remedies available at law or in equity.

    6.    <u>Admissability and Relevance of the Confidential Information</u>. Nothing in this Agreement shall constitute an admission that the materials produced by Mystic to Recipient do in fact contain commercial, financial or proprietary information, nor shall anything in this Agreement constitute any admission concerning the relevance, admissibility or authenticity of any document(s).

    7.    <u>Entire Agreement</u>. This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter of this Agreement and supersedes any and all prior agreements and understandings between the parties, whether written or oral, with respect to such subject matter. No change, alteration, waiver, or modification of this Agreement or of any covenant, condition, or limitation contained herein shall be effective unless made in writing and signed by both parties hereto.

    8.    <u>Governing Law</u>. The validity and interpretation of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

    IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.


RECIPIENT:               MYSTIC LANDING, LLC:


By:_____     By:_____
Its:_____     Its:_____


Date:_____         Date:_____


#458622

5



**FOLEY**
**HOAG** LLP
ATTORNEYS AT LAW

Adam P. Kahn
Boston Office
617.832.1206
akahn@foleyhoag.com

December 11, 2003

**For Settlement and Compromise Purposes Only/By Facsimile and U.S. Mail**

Doreen Zankowski, Esq.
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109-1775

                Re:    Confidentiality Agreement

Dear Doreen:

                <u>Confidentiality Agreement</u>

        I have left you several telephone messages in an attempt to address your comments on the Confidentiality Agreement without the delay and costs associated with further letters, but I have not heard back from you.  Therefore, I have attached a redline showing our proposed changes to the Confidentiality Agreement, marked to show changes from the version I transmitted to you on October 23. We have accepted some but not all of your suggested changes.

        We accept the deletion of references to third parties against whom Monsanto may have claims.  However, we do not accept your proposed modification to paragraph 3(c)(viii), specifically, the elimination of our right to provide documents to expert witnesses who might opine as to the meaning and import of the documents in question.

        We also do not accept the inclusion of your paragraph 3(e).  Contrary to the baseless accusation in your letter that the proposed deletion of these paragraphs suggests a bad faith intent on Solutia, we simply do not consent in advance to giving your client a tactical advantage in the event that your office carelessly produces privileged documents that should not have been produced in the first place.  Please note that we have not requested any documents that should be considered privileged, since we have only requested the transaction documents themselves.  With respect to paragraph 3 (f) (dealing with Solutia's unauthorized disclosure of documents), we have made certain changes to clarify what we understand to be the intent.

        With respect to your paragraph 3(g), we do not consent to Mystic's unilateral right to recall documents at any point in the litigation. We do consent to return of the

16/371853.1

Doreen Zankowski, Esq.
December 11, 2003
Page 2

documents when the claim is finally disposed. Finally, we consent only to the return of
the actual documents themselves; we will endeavor to delete references to the
documents where we can, but, as you well appreciate, factual information in disputes of
this magnitude are often intertwined with many other legal and factual issues, and it
would not be practicable to eliminate all reference to these materials.

Finally, you requested that we forward you the copy of Exhibit A. Exhibit A is
intended to be a list of the documents that Mystic plans to provide to Solutia pertaining
to the transaction between Mystic and Mary O'Donnell through which Mystic acquired
the property. Since we have no idea what those documents actually are, we cannot
prepare Exhibit A; Mystic simply should prepare an index of the transaction documents
it is producing, which will be the Exhibit. To the extent that additional documents are
identified that we agree should be covered by this Agreement, then we will agree to
amend Exhibit A accordingly.

The 4A Process

There is no basis for your accusation that Solutia somehow has been less than
forthcoming and consistent in this Section 4A process. It made requests for documents
that are objectively reasonable and has not expanded those requests in the two years
since the demand was first brought. The concern with the transaction documents, of
course, is entirely Mystic's doing: Mystic has asked us to accept on blind faith that it
paid millions more than the stated consideration for the property in the deed, and then
has unreasonably withheld the documents that it claims to support its position.

Solutia is also not responsible for the fact that we are two years into the 4A
process. Much of the past two years have been consumed by unexplained silences from
you or your client. For example, following our last meeting on November 25, 2002, at
which the transaction documents to be addressed by the confidentiality agreement was a
key topic of discussion, and at which your client agreed to consider providing the
documents in question, we heard nothing from you (despite several inquiries on our part)
until June, 2003, when you called and stated that you would provide the documents at
issue, subject to the confidentiality agreement that you were to prepare. I accepted that
arrangement. Four more months of silence then passed. No agreement was provided
until October 13, eleven months after the documents were first promised.

16/371853.1

Doreen Zankowski, Esq.
December 11, 2003
Page 3


Please be assured that Solutia has approached this process in good faith and is as
eager to see if this matter can be resolved in a fair and sensible matter.  I look forward to
hearing from you soon regarding the confidentiality agreement.  It would make sense to
provide the documents, allow us to review them, and to make final attempts to resolve
this matter without active litigation.

Very truly yours,

Adam P. Kahn


Enclosure

APK

16/371853.1

**CONFIDENTIALITY
AND
NON-DISCLOSURE
AGREEMENT**

THIS CONFIDENTIALITY AGREEMENT (the "Agreement") is made and entered into as of this __ day of ~~October~~ November, 2003, by and between Solutia Inc. (as attorney-in-fact for Pharmacia Corporation, formerly known as Monsanto Company, or "Monsanto"), (hereinafter referred to as the "Recipient") having offices at 575 Maryville Centre Drive, St. Louis, MO  63141 and Mystic Landing, LLC, having offices at 600 Memorial Drive, Cambridge, MA 02139 (hereinafter referred to as "Mystic").  Whenever used herein, the terms "Solutia" or "Recipient" shall also be deemed to include any parent, subsidiary or entity affiliated with such entity.

WHEREAS, Mystic has made a demand to Monsanto for response costs pursuant to M.G.L. ch. 21E, which Mystic alleges will be incurred at certain real property located in Boston and Everett, Massachusetts ("Claim");

WHEREAS Solutia has requested certain documents pertaining Mystic's purchase of the property at issue.  Solutia believes that it is entitled to such documents pursuant to M.G.L. ch. 21E, § 4A; and

WHEREAS Mystic has agreed to provide such documents, subject to certain agreements to maintain the confidentiality of those documents.

NOW THEREFORE, in consideration of the mutual promises and covenants herein stated, and each act performed or to be performed hereunder, the parties hereto hereby agree as follows:

1.     <u>Confidential Information</u>.  All documents identified on Exhibit A (as it may be amended) will be designated as "Confidential." The term "Confidential Information" shall include all such confidential technical and commercial, financial or proprietary business information of Mystic.

2.     <u>Information Not Subject to this Agreement</u>.  The term "Confidential Information" shall not include information which is:

(a) ~~is~~ in the public domain or becomes part of the public domain by publication or otherwise through no act or failure to act on the part of Recipient;

(b) ~~is~~ known to Recipient prior to disclosure by Mystic; or

(c) ~~is~~ disclosed to Recipient by a third party, and such disclosure is not in violation of any confidentiality agreement with or obligation to Mystic.

3.     <u>Recipient's Covenants</u>.  Recipient, on behalf of itself and its affiliates, officers, employees, attorneys and agents (collectively, "Representatives"), covenants and agrees that:

16/371440.3

(a) Recipient shall not disclose, directly or indirectly, or make available all or any portion of the Confidential Information to any third party, and Recipient shall not, without the prior written consent of Mystic, use, copy, photograph, reproduce or transcribe in any manner whatsoever, in whole or in part, all or any portion of any Confidential Information for any purpose other than solely in connection with the resolution of the- Claim (including if necessary litigation of the Claim), and any litigation or claim by Recipient against third parties (e.g., insurers, indemnitors) arising out of or relating to the Claim.("Agreed Upon Activities").

(b) Recipient shall not reveal to others any Confidential Information except to the extent that it is necessary to disclose such information to its Representatives having a demonstrated need to know such information for the sole purpose of carrying out an Agreed Upon Activity by- Recipient. All such Representatives of Recipient shall be informed by Recipient of the confidential nature of such information and shall agree (in the case of non-employees, in writing) to be bound by the terms and conditions of this Agreement prior to receiving such Confidential Information. No other use or disclosure of the Confidential Information shall be made by Recipient without the prior written consent of Mystic or Modern Continental Construction Co., Inc.

(c) The Recipient agrees that it shall use the Confidential Information solely–for the purposes of carrying out an Agreed Upon Activity by Recipient and for no other purpose; provided, however, that Confidential Information may be disclosed by counsel for a Party to the following:

(i)     counsel and members, associates and employees of the firm of which counsel are members;

(ii)    in-house counsel for Recipient and those persons usually employed by Recipient for the purpose of providing necessary clerical and office support to such in-house counsel, provided all of the foregoing persons are directly involved in oversight of the dispute (including without limitation pre-litigation or litigation pursuant to the process prescribed by Mass. Gen. Laws. Ch. 21 E, § 4A) and further provided that each such person first agrees in writing to be bound by the provisions of this Agreement;

(iii)   present employees of Recipient who are given access to the documents by counsel for said Recipient as is necessary for the purposes of carrying out an Agreed Upon Activity by Recipient and/or for the dispute between Mystic and Recipient, and for no other purpose, provided that each such person first agrees in writing to be bound by the provisions of this Agreement;

(iv)    former employees of Recipient who are given access to the documents by counsel for Recipient as is necessary for the purposes of any dispute between Mystic and Recipient and for no other purpose, *provided that* each such former employee first agrees in writing to be bound by the provisions of this Agreement;

(v)     the Court;

(vi)    stenographic personnel and court reporters providing services in any dispute between Mystic and Recipient;

(vii)   outside experts retained by Recipient for purposes of carrying out an Agreed Upon Activity by Recipient and/or for any dispute between Mystic and Recipient, provided that each such expert agrees in writing to be bound by the provisions of this Agreement;

(viii)  any witness or deponent who may or actually does give testimony in any dispute between Mystic and Recipient (and those personnel as are necessary to assist any such witness or deponent in preparing to give such testimony), and provided that each such witness or deponent (or personnel who have assisted such witness or deponent) agrees in writing to be bound by the provisions of this Agreement, and provided further that (i) the subject matter of the testimony of the witness or deponent pertains to the subject matter of the Confidential Information: (ii) such witness or deponent is listed on the face of the Confidential document; is the originator, author, or an identified recipient of such Confidential document; or has personal knowledge concerning such Confidential document; or has personal knowledge regarding the subject matter of the Confidential document; (iii) such witness or deponent is an officer, director, or employee of Mystic or Recipient; (iv) Mystic consents in writing to the disclosure of the Confidential material to such witness or deponent; or (v) the Court orders such disclosure;

(ix)    Recipient's insurer or the insurer's in-house counsel, and third parties and counsel to third parties whom Recipient believes it may have rights to indemnification, or to entities whom Recipient may have claims in contribution, indemnity or otherwise arising out of or relating to the Claim provided that each such person agrees in writing to be bound by the provisions of this Agreement; and

(x)     any other person to whom Mystic agrees, in writing, that disclosure may be made, or to whom a Court determines that disclosure must be made.

Disclosure to any other persons is strictly prohibited unless ordered by the Court or authorized in writing by Mystic or Modern Continental Construction Co., Inc..

(d) If Recipient (a) is subpoenaed in another proceeding; (b) is served with a demand in another action to which it is a party; or (c) is served with any other legal process for the purpose of obtaining the disclosure of the Confidential Information, the Recipient shall give prompt written notice of its receipt of such subpoena, demand or legal process to Mystic so as to allow Mystic at least 10 days, or such lesser time as such subpoena, demand or legal process specifies for production, to intercede and protect its rights. Provided that such notice is given, nothing herein shall be construed as requiring

the Recipient or anyone else covered by this Agreement to challenge or appeal any order requiring production of any Confidential Information, or to subject itself to any penalties for non-compliance with any subpoena, demand or legal process, or to seek any relief from the Court.

(e)    In the event that any Confidential Information  is, either intentionally or inadvertently, disclosed by Recipient to someone not authorized to receive such material under this Agreement, or if a person so authorized breaches any of his or her obligations under this Agreement, upon obtaining knowledge of such disclosure or breach, Recipient immediately shall disclose the unauthorized disclosure or breach to Mystic's counsel of record, and also shall use its best efforts to obtain the return of all copies of the Confidential Information and to any prevent further disclosures of the same. Nothing herein is intended to limit any rights either Mystic or Recipient may have, independent of this Agreement, under applicable law to assert or challenge any Privilege asserted with respect to any document or information.

(e)(f)   Upon Mystic's request, after final resolution of Mystic's Claim and the resolution of any claims Recipient may make against third parties arising out of or relating to the Claim, Recipient shall immediately destroy or return to Mystic all copies of any Confidential Information

(f)(g)   Neither the execution of this Agreement nor the furnishing of any information hereunder shall be construed as granting expressly or by implication any license in and to the Confidential Information. Mystic is the exclusive owner of the Confidential Information.

4.    Reasonable Precautions.  All reasonable precautions shall be taken by the parties hereto to insure compliance with the terms and conditions of this Agreement.

5.    Remedies.  The parties hereto acknowledge that any breach or violation of this Agreement may be difficult to calculate in pecuniary damages, therefore Mystic may avail itself of injunctive relief, specific performance or other equitable relief under this Agreement, and such remedies shall be cumulative or, and in addition to, any other remedies available at law or in equity.

6.    Admissibility and Relevance of the Confidential Information.  Nothing in this Agreement shall constitute an admission that the materials produced by Mystic to Recipient do in fact contain commercial, financial or proprietary information, nor shall anything in this Agreement constitute any admission concerning the relevance, admissibility or authenticity of any document(s).

7.    Entire Agreement.  This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter of this Agreement and supersedes any and all prior agreements and understandings between the parties, whether written or oral, with respect to such subject matter. No change, alteration, waiver, or modification of this Agreement or of any covenant, condition, or limitation contained herein shall be effective unless made in writing and signed by both parties hereto.

8.     <u>Governing Law</u>.  The validity and interpretation of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

RECIPIENT:                              MYSTIC LANDING, LLC:


By:_____           By:_____
Its:_____          Its:_____

Date:_____           Date:_____