<u>ATTACHMENTS</u>

PART 2 -

EXHIBITS: D-247, D-248, D-249, D-250, D-251

# Hinckley, Allen & Snyder LLP   *Attorneys At Law*

28 STATE STREET ☐ BOSTON, MASSACHUSETTS 02109-1775
617 345-9000 ☐ FAX 617 345-9020 ☐ www.haslaw.com

## FACSIMILE TRANSMITTAL SHEET

**FROM:** **Doreen M. Zankowski, Esq.**

**DATE:** **April 12, 2004**

NUMBER OF PAGES TRANSMITTED
(INCLUDING COVER SHEET) **2**

If you did not receive the indicated number of pages or if any pages are illegible, please call us immediately at: **(617) 345-9000 Ext. 4000**

CLIENT: <u>110580</u>          MATTER: <u>114009</u>

**CONFIDENTIALITY NOTICE**

This facsimile transmission and the accompanying documents contain legally privileged confidential information. The information is intended only for the use of the recipient named below. If you are not an intended recipient, you are hereby notified that any disclosure, copying, distribution, or exploitation of, or the taking of any action in reliance on, the contents of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify us immediately by telephone to arrange for the return of the original documents to us at our expense.

**TO:** **Adam P. Kahn, Esq.**

**FIRM:** **Foley Hoag**

**RE:** **Mystic Landing, LLC and Monsanto/Solutia/Pharmacia**

**PHONE NUMBER:**

**FAX NUMBER:** **617-832-7000**

☐ URGENT    ☐ PER OUR DISCUSSION    ☐ AS REQUESTED    ☐ PLEASE CALL TO DISCUSS    ☐ PLEASE SEE BELOW

NOTES/COMMENTS:



DEFENDANT'S EXHIBIT 247

28 STATE STREET ☐ BOSTON, MASSACHUSETTS 02109-1775 ☐ 617 345-9000 ☐ FAX 617 345-9020
1500 FLEET CENTER ☐ PROVIDENCE, RHODE ISLAND 02903-2393 ☐ 401-274-2000 ☐ FAX 401-277-9600
43 NORTH MAIN STREET, 2ND FLOOR ☐ CONCORD, NEW HAMPSHIRE 03301 ☐ 603 225-4334 ☐ FAX 603 224-8350

**HinckleyAllenSnyder** LLP
ATTORNEYS AT LAW

28 State Street
Boston, MA 02109-1775
TEL: 617.345.9000
FAX: 617.345.9020
www.haslaw.com

Doreen M. Zankowski, Esq.
dzankowski@haslaw.com

April 12, 2004

**Via Facsimile (617-832-7000)**

Adam Kahn, Esq.
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210-2600

RE:   **Mystic Landing, LLC v. Pharmacia Corporation et al.**
      **Civil Action No. 04-10180 RGS**

Dear Adam:

      Pursuant to Local Rule 16.1(c) and the Court's Notice of Scheduling Conference, we present the following proposal for settlement of this matter on behalf of our client Mystic Landing, LLC ("Mystic"):

1. Defendants Pharmacia Corporation, Solutia, Inc., and Monsanto Company (collectively, the "Defendants") shall pay Mystic $6,100,000 in full and final settlement of its claims against the Defendants; and

2. Subject to the parties rights under Mass. Gen. Laws c. 21E, Mystic, Defendants, and Third-Party Defendant Modern Continental Construction Co., Inc. shall simultaneously execute and exchange mutual general releases as to all past, present, and future claims and potential claims relating to the property located at Alford Street and Broadway, Everett, Massachusetts (the "Property").

This settlement proposal shall remain open until either Defendants reject it, or May 31, 2004, whichever occurs first. Please contact me if you have any questions or comments regarding the foregoing.

Very truly yours,

Doreen M. Zankowski

cc:   Gerald J. Petros, Esq.
      Katherine L. Ruff, Esq.

#481135 v1

1500 Fleet Center, Providence, RI 02903-2393 TEL: 401.274.2000 FAX: 401.277.9600
43 North Main Street, Concord, NH 03301-4934 TEL: 603.225.4334 FAX: 603.224.8350



# Settlement Meeting

**Mystic Landing v. Monsanto and
Pharmacia v. Modern Continental**

Confidential Settlement Communication

May 27, 2005

# Two introductory concepts

- Everything said here is in the context of settlement only, i.e.:
  - Monsanto will not use what Modern says here in the litigation; and
  - Modern will not use what Monsanto says here in the litigation

- For purposes of this meeting:
  - Modern Continental Construction Co. and Mystic Landing LLC = "Modern"
  - Monsanto Company and Pharmacia Corporation = "Monsanto"

May 27, 2005

Confidential Settlement Communication

2

# Interests

- Monsanto's
  - Final resolution of liability
  - Pay only what is appropriate
  - Minimize transaction costs

- Modern's Presumed Interests
  - Maximize value and marketability of Property by answering environmental concerns of prospective bidders
  - Minimize transaction costs

May 27, 2005

Confidential Settlement Communication

3

# Litigating the case to conclusion is not the best way to resolve the dispute

# Modern's Alternative to Settlement

- Between now and February 2006, high transaction costs—hundreds of thousands of dollars

- A judgment Modern views as favorable will likely result in appeal, stretching into 2007. Modern hopes to have property sold by then.

- Modern has litigation exposure

  – Modern will bear a share of costs

    • Modern's own operations are documented to have caused contamination

    • Modern has not complied with Massachusetts cleanup rules

    • Modern has not been able to document that it paid more than $300,000 for the property, a significant discount reflecting the presence of contamination

  – Many of Modern's claimed costs are not recoverable response costs.

May 27, 2005

Confidential Settlement
Communication

5

# Modern's Alternative to Settlement (continued)

- The court may well not resolve which of the future costs will be recoverable, but rather leave it to another tribunal after the costs are incurred. This means dispute drags on for even more time.

- If Modern gets a final favorable judgment (in 2007), it still doesn't get any money, since it has not incurred response costs and does not intend to incur any. Based on current facts, there is no way a successful conclusion of litigation for Modern can recover the transaction costs in cash.

- Developers are generally not interested in "buying a lawsuit" or purchasing property enmeshed in litigation; instead will simply reduce their cash offer to Modern.

May 27, 2005

Confidential Settlement
Communication

6

7

# Monsanto's Alternative to Settlement

- Between now and February 2006, high transaction costs
- Even if Monsanto "prevails", since Modern is not cleaning up the property, Monsanto faces risk of suits from future owners

Confidential Settlement Communication

May 27, 2005

# Monsanto's Settlement Proposal

1. Monsanto commits to taking certain steps after property is sold, contingent on purchaser cooperation

2. Monsanto and Modern will "market" Monsanto's commitments to prospective purchasers to maximize value of offers to Modern

3. Modern dismisses lawsuit, but all rights are preserved in the event sale does not go through or purchaser is not interested in the offer and would rather litigate

May 27, 2005

Confidential Settlement Communication

8

# Monsanto's Commitments

- neutralize low pH groundwater in southern end of Property

- stabilize or otherwise address metals that exceed "upper concentration limits" in the "hot spots" identified by Rizzo in soil and groundwater

- Prepare the necessary paperwork for this work under Massachusetts cleanup rules, and document the completion of the work

- Do this work in coordination with a purchaser's redevelopment efforts

May 27, 2005

Confidential Settlement Communication

9

# Monsanto's Commitments (continued)

- Monsanto will agree not to enforce its deed restriction prohibiting the use of the property for anything other than industrial purposes.

- Monsanto will attempt to convince Boston Edison to not enforce the identical restriction, which Edison placed on the property when it sold it to O'Donnell.

May 27, 2005

Confidential Settlement Communication

10

# Developer's Reciprocal Commitments

- Developer agrees not to sue Monsanto

- Developer agrees to Activity and Use Limitation. The AUL can allow residential and commercial uses, subject to certain customary limitations

  – e.g., soil management plan, health and safety plan for utility workers.

- Developer will cooperate with Monsanto's implementation of its remedial commitments.

May 27, 2005

Confidential Settlement Communication

11

# Marketing Proposal

- Monsanto and Modern will cooperate to produce a confidential marketing proposal setting forth the commitments.

- Monsanto will cooperate with Modern to formalize Monsanto's commitments to a purchaser.

- Monsanto will consider "backing up" its commitments with insurance policy, subject to availability.

May 27, 2005

Confidential Settlement Communication

12

# Litigation "Freeze"

- Modern and Monsanto file joint motion to dismiss litigation without prejudice, i.e., it can be refiled at any time

- Monsanto and Modern will agree to a tolling agreement, and that discovery taken in case can be used if case refiled, so no meaningful additional transaction costs if the litigation needs to recommence.

- Monsanto will agree that discovery by Modern can be used by a purchaser, if the purchaser wants to litigate against Monsanto

May 27, 2005

Confidential Settlement
Communication

13

# Advantages of Settlement

- <u>Attractive to developers, which maximizes sale price.</u>

  - With Monsanto's commitments, the property becomes a very typical urban site to which developers are accustomed.

  - Developers are not interested in inheriting a piece of litigation; they would rather have a commitment to clean up from a financially secure entity like Monsanto

  - If the developer would rather litigate than accept the Monsanto commitments, it can pick up where Modern leaves off, using the "litigation freeze" agreements

May 27, 2005

Confidential Settlement
Communication

14

# Advantages of Monsanto's Proposal (continued)

- ## Save the transaction costs:

  – Judge Gorton is pushing the trial schedule, and is not likely to be amenable to delays in trial.

  – A judgment for Mystic will not yield dollars for Mystic, since Mystic has no "response costs"; actual payment may require a wholly separate action.

  – Mystic agrees to dismiss litigation without prejudice, i.e., it can refile at any time.

  – Monsanto agrees to tolling agreement, preservation of discovery, and binding effect of existing decisions in case, so Mystic can refile easily.

May 27, 2005

Confidential Settlement Communication

15

16

Confidential Settlement
Communication

May 27, 2005

17

Confidential Settlement
Communication

May 27, 2005

18

Confidential Settlement
Communication

May 27, 2005

# Expected Questions

# Why won't Monsanto Clean Up Now?

- <u>Physical:</u>  Property is in active use, and remediation and use would conflict for both.

- <u>Cost and Marketability:</u>  Cleanup is done cheaper and better in coordination with a specific development plan.  Cheaper for Monsanto, more attractive to developer.
  - Modern itself planned cleanup only in conjunction with development

- <u>Liability:</u>  Monsanto only wants to do cleanup once, and does not want "loose ends" with the new owners.

May 27, 2005

Confidential Settlement
Communication

20

# Why won't Monsanto pay cash to Modern to settle?

- Modern does not intend to conduct the cleanup, so payments to Modern do not extinguish Monsanto's liability to future owners, but just go to Modern's creditors

- Modern's financial condition means that it cannot offer a meaningful indemnity or other protection to Monsanto

- Monsanto would look at a package that includes indemnifications and contribution protection from Bank of America, St. Paul/Travelers or other financial institution with an interest in Modern.

May 27, 2005

Confidential Settlement Communication

21

# Why is Monsanto only offering to clean up the two identified issues?

- These are the only items identified by Rizzo as necessary

- Other work is a development cost, not a necessary response cost, and used only to obtain a higher and better use of the property.

- Monsanto adds other value to the deal

May 27, 2005

Confidential Settlement
Communication

22

# What is Monsanto offering that is not obtainable in litigation?

- Offering to pay 100% of costs of specified items. Monsanto's share of these necessary response costs would be less than 100% in litigation because (1) Modern contaminated the property (2) Modern has not complied with cleanup rules and (3) Modern purchased the property at a discount

- Court cannot order Monsanto (or Edison) to release the deed restrictions that prevent commercial/residential development. Monsanto can release its claim, and will attempt to get Edison to do the same.

- Monsanto is making the commitment now, rather than being subject to a judgment that won't be final for 2 more years

- Reduced transaction costs

May 27, 2005

Confidential Settlement
Communication

23

24

# Next Steps

Confidential Settlement
Communication

May 27, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MYSTIC LANDING, LLC,
                    Plaintiff,
        v.

PHARMACIA CORPORATION, SOLUTIA INC.
   and MONSANTO COMPANY,
                    Defendants.

CIVIL ACTION No. 04-10180 NMG

PHARMACIA CORPORATION and
   MONSANTO COMPANY,
                    Third-Party Plaintiffs,
        v.

MODERN CONTINENTAL CONSTRUCTION
   CO., INC.,
                    Third-Party Defendant.

PHARMACIA CORPORATION,
                    Third-Party Plaintiff,
        v.

BOSTON EDISON COMPANY,
                    Third-Party Defendant.

BOSTON EDISON COMPANY,
                    Fourth-Party Plaintiff,
        v.

O'DONNELL SAND & GRAVEL, INC.
   and MARY O'DONNELL,
                    Fourth-Party Defendant.



## **STIPULATION OF DISMISSAL**

It is hereby stipulated, consented and agreed by and among the parties pursuant to

Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure that the action, including all

counterclaims, cross-claims, third-party claims and fourth-party claims, is dismissed without

prejudice, ~~with all rights of appeal waived~~ and with each party to bear her or its own costs and

attorneys' fees <u>and subject to the Agreement to preserve rights in pending litigation, dated</u>

_____, and attached as Exhibit A.

                                                    By their attorneys,

---
Robert G. Flanders (BBO No. 170820)
Doreen M. Zankowski (BBO No. 558381)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 345-9000
  Attorneys for Mystic Landing, LLC

---
John M. Stevens (BBO No. 480140)
Adam P. Kahn (BBO No. 561554)
Elisabeth M. DeLisle (BBO No. 658067)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
(617)  832-1000
  Attorneys for Monsanto Company

---
Robert G. Flanders (BBO No. 170820)
Doreen M. Zankowski (BBO No. 558381)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 345-9000
  Attorneys for Modern Continental
  Construction Co., Inc.

---
John M. Stevens (BBO No. 480140)
Adam P. Kahn (BBO No. 561554)
Elisabeth M. DeLisle (BBO No. 658067)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
(617)  832-1000
  Attorneys for Pharmacia Corporation

---
Douglas B. Otto (BBO No. 555269)
Jill K. Hauff (BBO No. 653886)
Morrison Mahoney LLP
250 Summer Street
Boston, Massachusetts  02210
(617)  737-8873

-Attorneys for Boston Edison Company

---
Howard G. Guggenheim (BBO No. 214150)
P. O. Box 736
Scituate, Massachusetts  02066
(781)  264-3717 ·
  Attorney for O'Donnell Sand &
  Gravel, Inc.

---
Howard G. Guggenheim (BBO No. 214150)
P. O. Box 736
Scituate, Massachusetts  02066
(781)  264-3717

B3043812.1

Attorney for Mary O'Donnell

Dated:   June __, 2005

*Privileged and Confidential/FH Draft 6/1/05*

[~~Monsanto~~ Pharmacia's Letterhead]

**To:** **Prospective Purchasers of "Mystic Landing" who have read and signed a confidentiality/non-use stipulation**

**cc:** **Modern Continental Construction Co., Cushman & Wakefield**

**From: Monsanto Company and Pharmacia Corporation**

Cushman and Wakefield has prepared a Confidential Offering Brochure relating to the property known as Mystic Landing, located in Everett and Boston, Massachusetts ("the Property"). The Property is owned by an affiliate of Modern Continental <u>Construction Co., Inc.</u> ("Modern"). ~~Decades ago,~~ Pharmacia Corporation (formerly known as Monsanto Company) ("~~Monsanto~~<u>Pharmacia</u>") used the Property for <u>chemical</u> manufacturing purposes. ~~In an attempt t~~<u>T</u>o address certain ~~historic~~ environmental issues at the Property in a cooperative and cost effective manner, ~~Monsanto~~ <u>Pharmacia</u> ~~is willing to discuss with prospective purchasers of the Property certain actions that Monsanto will be willing to take, and to commit to taking those actions, in exchange for reciprocal commitments from the ultimate purchaser~~<u>remediate the Property and</u> ~~commit to~~ achiev<u>ing</u> a <u>p</u>Permanent <u>S</u>solution <u>and Site closure pursuant to all applicable laws, rules and regulations, including without limitation MGL 21E and the Massachusetts Contingency Plan. Existing and all foreseeable future uses will be considered in the development of the Permanent Solution.</u>

~~The~~ <u>Pharmacia's</u>~~'~~ ~~actions~~<u>remediation commitment</u> ~~are as follows~~<u>includes but is not limited to the following</u>:

1.     Neutralizing <u>or eliminating</u> ~~certain acidic~~ groundwater <u>contamination</u> ~~in the southern end of~~<u>on or adjacent to</u> the <u>P</u>property <u>(if such adjacent contamination is a result of leaching from the property)</u>;

2.     Stabilizing<u>, otherwise treating, and,</u>~~/~~or excavating <u>and removing from the Property</u> ~~two defined~~ areas of elevated metals concentration <u>and other contaminants</u> in soil~~, also in the southern end of the Property~~;

<u>3.     Completing all assessment and remediation of the sediments of the Mystic River necessary to achieve a Permanent Solution;</u>

~~and~~

4.     ~~3.~~     <u>C</u>~~C~~ompleting all required and necessary remediation to achieve a <u>P</u>permanent <u>S</u>solution, as defined in the Massachusetts Contingency Plan<u>; and</u>



5.      ——43.——Documenting Monsanto's Pharmacia's aforementioned activities consistent with the requirements of the Massachusetts Contingency Plan[1].

Monsanto Pharmacia would conduct those actions after the Property is sold, and likely in conjunction with the purchaser's redevelopment of the Property.

In addition to the above-listed commitments as part of achieving a Permanent Solution, Pharmacia will be responsible for the following costs that may be incurred during the course of property development:

1.      The additional costs of management of contaminated soils that are encountered during the course of Property development. This is to include regulatory requirements and the additional costs of disposal that are the result of the soil being contaminated;

2.      The additional costs of management of groundwater that is handled during the course of Property development. This is to include regulatory requirements and the additional costs of treatment and/or disposal;

3.      The additional costs of management of contaminated soil and sediment along and adjacent to the Property shoreline to the extent that such soil and sediment is to be handled during the course of Property development;

4.      To the extent that any use restriction proposed for or placed on the Property results in measures that add expense to the Property development (e.g., vapor barriers, soil or synthetic covers, or other measures); and

5.      Any costs that are incurred to maintain a Permanent Solution in the event that conditions are discovered during the course of Property development that alter any Permanent Solution previously established for the Property.

In exchange for these commitments, Monsanto Pharmacia expects the purchaser to (i) commit cooperate with Monsanto Pharmaciato minimize the costs of Monsanto's undertakings, (ii)if necessary and acceptable to the Purchaser agree to impose a deed restriction on the Property typical of the restrictions on hundreds of other properties in Massachusetts, and whichand such deed restriction would still allow the uses described in the Offering Brochure and other similar uses (Comment:  Modern needs to review), (iii) agree not to sue Monsanto for the environmental condition of the Property, and (iv) formalize these and other mutually acceptable commitments of the parties in an enforceable agreement.

This memorandum is not an offer by Monsanto to conduct any particular action, or an admission of Monsanto's fault or liability for conditions existing on the Property.  Any obligations accepted or assumed by Monsanto Pharmacia or a prospective purchaser shall be

---

[1] Pharmacia and its consultants will work cooperatively with the prospective purchaser and Modern and share copies of all information and documents regarding the Property.  Pharmacia will allow the Purchaser and Modern the opportunity to review and comment on any and all remediation plans and clean-up activities.

reflected only in an agreement executed by ~~Monsanto~~ Pharmacia and the prospective purchaser setting forth in detail the respective rights and obligations of the parties.

~~Monsanto~~ Pharmacia will be pleased to meet with prospective purchasers of the Property to discuss the specifics of its proposal in more detail. Interested parties should contact Modern ~~or Cushman & Wakefield,~~ who will arrange the meeting.

<u>Add indemnification language protecting Modern, Mystic and related entities.</u>



## AGREEMENT TO PRESERVE RIGHTS IN PENDING LITIGATION

This Agreement To Preserve Rights In Pending Litigation (the "Agreement") is ~~entered into~~effective as of June 10, 2005, by and among Pharmacia Corporation (hereinafter referred to as "Pharmacia"), Monsanto Company (hereinafter referred to as "Monsanto"), Mystic Landing, LLC (hereinafter referred to as "Mystic") and Modern Continental Construction Co., Inc.,(hereinafter referred to as "Modern") (collectively, the "Parties"). Whenever used herein, the terms "Pharmacia," "Monsanto," "Mystic" or "Modern" shall also be deemed to include any parent, subsidiary or entity affiliated with such entity.

WHEREAS, the Parties are parties to an action captioned "Mystic Landing, LLC v. Pharmacia Corporation, et al., Civil Action No. 04-10180 NMG (D. Mass.)" (the "Lawsuit") which relates to a parcel of property located at Alford Street and Broadway in Everett, Massachusetts (the "Property"); and

WHEREAS, the Parties now desire to discontinue the Lawsuit while preserving certain rights to maintain claims asserted in the Lawsuit, ~~and~~ to use discovery conducted in the Lawsuit in certain subsequent proceedings, and to stay any statute of limitations that may be applicable to the Parties claims;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein set forth, the Parties agree as follows:

1.      The Parties agree to take, as soon as practicable, all steps necessary to have the Lawsuit dismissed without prejudice, including, without limitation, filing a stipulation of dismissal in the form attached hereto as Exhibit "A."

2.      One or more of the Parties may commence an action in which it or they assert the claims set forth in the complaint or the counterclaim in the Lawsuit at any time on or after the Termination Date of this Agreement, as hereinafter defined.

3.      In any subsequent action in which any of the claims set forth in the complaint or the counterclaims in the Lawsuit are asserted by a Party or by Mystic's ~~immediate~~ successors in title to the Property ("Transferee"), each of the Parties agrees that its responses to discovery in the Lawsuit, including depositions, document productions and interrogatory answers, may be used as if that discovery had been conducted in said subsequent action.

4.      Nothing herein shall limit the Parties from further discovery in any subsequent action or actions.

5.      In any action in which the claims set forth in the complaint or the counterclaim in the Lawsuit are asserted, each of the Parties agrees that, as to those claims,  it will not plead or otherwise assert as a defense or bar that the period between December 5, 2003 (hereinafter the "Tolling Date") and the Termination Date, as hereinafter defined, (such period hereinafter referred to as the "Tolling Period"), is or should be considered in determining whether any statute or contract of limitations or repose, the defenses of laches and estoppel or other defense

534921

DRAFT

based on the lapse or passage of time is a defense or bar; provided, however, that if the plaintiff in such subsequent action is the Transferee, said agreement shall become effective upon the written agreement by said Transferee that said period shall not be considered in determining whether any defense based upon the passage or lapse of time is a defense or bar to any counterclaim asserted by ~~Monsanto or Pharmacia~~any or all of the Parties.

5~~6~~. Nothing in this Agreement shall be construed as an acknowledgment by any of the Parties that any claim, counterclaim or third-party claim was or was not barred by any statute or contract of limitations or repose, laches, estoppel or other defense based on the lapse of passage of time, as of the date those claims, counterclaims or cross-claims were filed in the Lawsuit.

6~~7~~. This Agreement shall not operate as, nor be construed to be or contain, an admission of any fact or liability by any Party. The Parties hereto acknowledge that all of the Parties' alleged defenses and rights under the subject or applicable law are expressly reserved. Neither this Agreement nor any action taken hereunder shall be offered or received in evidence in any action or proceeding as an admission of liability or wrongdoing of any nature on the part of any of the Parties.

8.~~7.~~ Nothing in this Agreement shall be construed to preclude any of the Parties or the Transferee from commencing, at any time they may choose, a suit asserting any claims, counterclaims or cross-claims which have been asserted in the Lawsuit, provided that the Party or Transferee gives written notice of termination in accordance with Paragraph ~~9~~10 of this Agreement.

9.~~8.~~ This Agreement may be modified, amended, supplemented or extended only by a written instrument signed by all the Parties hereto.

~~9~~10. The Termination Date of this Agreement shall be a date that is the earlier of (i) thirty (30) days after actual receipt of written notice of termination by the Parties from the terminating party or (ii) one year from the effective date hereof.

Notice shall be addressed,

if to Pharmacia and/or Monsanto:

Jeffrey Klieve
Monsanto Company
800 N. Lindbergh Boulevard
St. Louis, MO 63167

DRAFT

with a copy to:

                  Adam P. Kahn, Esq.
                  Foley Hoag LLP
                  155 Seaport Boulevard
                  Boston, MA  02210

————     if to Mystic and/or Modern:

                  John Pastore
                  Modern Continental Construction Co., Inc.
                  600 Memorial Drive
                  Cambridge, MA  02139

          with a copy to:

                  Doreen M. Zankowski, Esq.
                  Hinckley, Allen & Snyder, LLP
                  28 State Street
                  Boston, Ma  02109.

    ~~10~~11.  This Agreement may be executed in counterparts, each of which shall be deemed an original.

    ~~11~~12.  This Agreement shall inure to the benefit of, and be binding upon, the Parties and their successors and assigns.

    13.      This Agreement shall be governed in accordance with the laws of the Commonwealth of Massachusetts.

     IN WITNESS WHEREOF, Pharmacia, Monsanto, Mystic and Modern have executed this Agreement as of the date first above written.

PHARMACIA CORPORATION         By: _____

By:_____    Title:_____

Title:_____    Date:_____

Date:_____

                               MYSTIC LANDING, LLC

MONSANTO COMPANY            By: _____

DRAFT

Title:_____

Date:_____

MODERN CONTINENTAL
CONSTRUCTION CO., INC.

By:_____

Title:_____

Date:_____