UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>Defendant.<br><br>PHARMACIA CORPORATION,<br>Third-Party Plaintiff,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>Third-Party Defendant.<br><br>PHARMACIA CORPORATION,<br>Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY,<br>Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY,<br>Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL,<br>    Fourth-Party Defendants. | **CIVIL ACTION NO.**<br>**04-10180 NMG** |

**PLAINTIFF, MYSTIC LANDING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
ITS APPLICATION FOR ATTORNEYS' FEES AND COSTS**

In accordance with the Memorandum of Decision and Judgment of this Court dated June 5, 2006, and pursuant to M.G.L. c. 21E, §§ 4A(d), 5 and 15, Plaintiff Mystic Landing, LLC ("Mystic") hereby submits this Memorandum of Law in support of its Application for Attorneys' Fees and Costs. Plaintiff Mystic prevailed at trial of this matter, with the Court finding Defendant Pharmacia Corporation ("Pharmacia")[1] liable for 90% of Mystic's past response costs and liable for future remediation costs on a sliding scale that increases Pharmacia's portion and responsibility for funding such efforts as the remediation costs increase, with a maximum liability exposure of 90% of future remediation costs. Under clear statutory mandate, Mystic is entitled to reimbursement of its reasonable attorneys' fees and costs incurred in connection with the litigation. Despite Mystic's compliance with the statutory process outlined in Section 4A, Pharmacia failed both (1) to participate in resolution of the dispute in good faith, and (2) failed to perform or participate in the proposed response action and pay its equitable share of remediation, despite its clear responsibility for same, each of which grounds independently entitles Mystic to its attorneys' fees and costs.

As a result of Pharmacia's failure and neglect to negotiate in good faith or to acknowledge its clear liability resulting from contamination of the property over the course of its seventy-year chemical operations at the site, Mystic was left with no choice but to seek contribution and reimbursement via a complex, expensive, and time consuming litigation process. Environmental-liability litigation is contrary to the statutory goals of M.G.L. c. 21E; thus, the prevailing party, in this case Mystic, is entitled to reimbursement of the extensive attorneys' fees and costs incurred to prove the liability that was indisputable from the date of the initial notification to the potentially responsible party. Mystic expressly sought its fees and costs

---

[1] Mystic will refer to Pharmacia collectively throughout the memo as including and incorporating Pharmacia's predecessors in interest, including, but not limited to, Monsanto.

in connection with this matter via Count III of its Amended Complaint, filed on or about February 1, 2006.

Mystic is entitled to an award of its reasonable attorneys' fees and costs in the present case, because it carefully adhered to the 4A procedure. But, Pharmacia refused to participate in good faith or contribute to remediation despite its clear liability. As a result, Mystic was forced to proceed to trial, after which Pharmacia was found liable. Therefore, Mystic is entitled to recover its costs and attorneys' fees from Pharmacia in accordance with Section 4A(d) for Pharmacia's failures under the 4A process in violation of the spirit of 21E, that liable parties participate in a negotiation to remediation of their contaminated properties.

A.   **FACTUAL BACKGROUND OF THE DISPUTE**

   1.   **The 4A Process**

On or about May 11, 2001, counsel for Mystic had a telephone conversation and sent a letter to counsel for Solutia, Inc., regarding Mystic's intent to purchase the property and the information available indicating that contamination existed at the site resulting from Pharmacia's operations at the site. See Exhibit A to the Zankowski Affidavit. Pharmacia failed to respond to Mystic's initial notification, prompting Mystic to send a follow-up letter. See Exhibit B to the Zankowski Affidavit. Pharmacia responded with a request for information that exceeded the reasonable bounds of the exchange of information anticipated by the statute, e.g. purchase and sale documents and current and future intended use of the property; such documents are not related to Pharmacia's liability and past contamination of the property and do not address Mystic's response costs. See Exhibit C to the Zankowski Affidavit. Mystic responded on or about June 8, 2001 that it was in the process of gathering information and that a formal 4A notification letter would follow, but that Mystic was seeking to open a line of communication as

intended under the statutory scheme. See Exhibit D to the Zankowski Affidavit. Pharmacia's counsel further responded on or about June 27, 2001, refusing to participate in any discussion until provision of purchase and sale documents and citing to the restrictions in the deed from Pharmacia to Boston Edison Co. See Exhibit E to the Zankowski Affidavit. Even after counsel for Mystic provided extensive legal analysis as to why the deed restrictions did not apply to Mystic, counsel for Pharmacia proceeded to raise this as a just another one of its "smoke and mirror" defenses in a case where liability was clear with regard to Pharmacia's contamination of the site. The continued use of baseless defenses by Pharmacia required Mystic to expend attorneys' fees and costs, when these resources should have been devoted toward a site cleanup, and returning the property to a future productive use.

As a result in the breakdown of communications between Mystic and Pharmacia, Mystic sent its formal Section 4A notification on or about August 27, 2001 in which it detailed its investigations and analysis concerning the contamination at the property and provided Pharmacia with clear information and evidence regarding Pharmacia's liability for the contamination of the property, which was consistent with Pharmacia's historical operations. Pharmacia's historical operations clearly included the use of arsenic and arsenic-based products, which are the primary contaminants at the site, driving remediation of soil, groundwater, and potentially the sediments. See Exhibit F to the Zankowski Affidavit. Despite Mystic's comprehensive presentation of its facts, analysis, and allegations of Pharmacia's liability, Pharmacia's response, nearly forty-six (46) days later, ignored the strict liability of M.G.L. c. 21E and asserted certain inapplicable equitable considerations to refuse liability. See Exhibit G to the Zankowski Affidavit. Pharmacia further demanded documents beyond the bounds of the Section 4A process, which were not reasonably related to its liability for past contamination. See id.

On or about November 16, 2001, Mystic again tried to open the negotiation process anticipated under Section 4A, responding to certain of Pharmacia's groundless assertions and agreeing to provide certain additional information. See Exhibits H and I to the Zankowski Affidavit. Pharmacia's failure to participate in good faith was further evidenced by its continued demand for documents not directly relevant to its liability for contamination, which introduced further delay and unnecessary acrimony in the process. See Exhibits J, K and L to the Zankowski Affidavit. Mystic continued to adhere to the 4A process in good faith, as documented in a letter dated April 8, 2002 from Mystic's counsel to Pharmacia's counsel, providing information as to the analysis and results of sampling and plans concerning reasonable and necessary future remediation efforts. All of this data tied the contamination to Pharmacia's historical operations. See Exhibit M to the Zankowski Affidavit.

Despite all efforts by Mystic, Pharmacia's lack of good faith and its continued failure to negotiate about the remediation of the site, which is the clear purpose of the 4A process, was further manifested in its offer to purchase the property for a mere $300,000. Pharmacia proposed this amount in settlement of all claims of liability for environmental contamination, despite Pharmacia's knowledge that the consideration paid by Mystic/Modern for their use and ultimate ownership of the property involved millions of dollars with a value that was many multiples of that. See Exhibits N, O and P to the Zankowski Affidavit. Mystic continued to provide information about its remediation and development plans, as to which Pharmacia continued to deny that it had any liability despite the clear evidence of same. See Exhibits Q and R to the Zankowski Affidavit. Mystic's provision of remediation estimates brought the Section 4A process to a close on or about December 22, 2003, as Pharmacia continued to delay and press for

further documentation not reasonably related to its liability and response actions taken by Mystic. See Exhibits S, T, U, V and W to the Zankowski Affidavit.

Pharmacia also significantly delayed the 4A process with requests for information and arguments outside the bounds of its otherwise clear liability. Pharmacia's actions during Mystic's attempt to avoid litigation over the environmental liability evidence a clear lack of good faith and obfuscation and frustration of the statutory purpose of M.G.L. c. 21E. In short, Mystic adhered to the 4A process, but Pharmacia failed to do so. Because the Section 4A procedures promote the interest of the Commonwealth in encouraging parties to settle environmental liability suits without litigation, as well as enabling parties who are jointly liable for environmental response actions to obtain a certain measure of compensation from each other, Mystic is entitled to an award of its attorneys' fees and costs in this matter.

2. **The Litigation**

Mystic filed its action in the Suffolk Superior Court on or about December 5, 2003 seeking to hold Pharmacia liable for Mystic's past response costs and for its share of future remediation costs that would be required due to Pharmacia's historical contamination of the property. Notwithstanding the abundance of evidence presented by Mystic in the 4A process concerning Pharmacia's own knowledge of the contamination and the existence of samples from the site linking particular contaminants to Pharmacia's chemical operations, Pharmacia refused to accept any liability. As a result, discovery ensued.

Discovery in this case resulted in a heavy burden upon Plaintiff, charged with establishing the indisputable liability of Pharmacia, via a required review of Pharmacia's documents regarding its chemical operations at the property dating back nearly one hundred years. See Zankowski Affidavit at ¶5. On or about the same time as production of the

documents began, Pharmacia served Mystic with a "Privilege Log" spanning 406 pages, containing 3696 documents and dating back to a March 8, 1911 legal invoice to the Cochran Chemical Co. from its attorneys. See id. While scope of documentation withheld by Pharmacia was impressive, the actual production of documents occurred on or about April 4-7, 2005 in St. Louis, Missouri, with a room containing in excess of 200 boxes of documents which were responsive, in part, to Mystic's *reduced* scope of document request. See id. The purported "index" to the St. Louis documents contained 459 pages listing the contents of folders and boxes, although this index was not linked in any discernable fashion to the documents as they were boxed and produced. See id. The production of such documents occurred in a haphazard fashion consisting of mixed boxes with no organization, rhyme, or reason to the documents contained therein. See id. The initial document production was further supplemented with at least another 40 boxes produced to Mystic in Boston with an accompanying 17 page "Privilege Log" containing 148 withheld documents. See Zankowski Affidavit at ¶6. The sheer volume of documents produced and the resultant time expended by Mystic's counsel and by its expert, Dr. Richard Hughto, to review and analyze same, solely in support of proving Pharmacia's liability, consequently increased the attorneys' fees and costs associated with the required diligence in pursuing Pharmacia.

  Pharmacia further deemed it necessary to depose both Mystic and Modern Continental Construction pursuant to Rule 30(b)(6), consisting of Deponents Robert Shepard, Peter Grela and Max Marino. See Zankowski Affidavit at ¶7. It is notable that Mystic and Modern Continental's deponents have no bearing upon Pharmacia's strict liability for its past contamination of the property and their knowledge was only of use to Pharmacia for its purported equitable factors to limit such liability.

Motion practice throughout this litigation was extensive and duplicative, due to Pharmacia's tactics, which served only to increase the efforts and attorneys' fees and costs involved in opposing same. Furthermore, Mystic was required to submit reply briefs to clarify Pharmacia's continued obfuscation of the issues relating to its clear liability. Pharmacia moved on multiple occasions for:

- Judgment on the Pleadings;
- multiple Motions for Summary Judgment on behalf of Pharmacia and Monsanto;
- Motion to Foreclose Evidence of Damages;
- Opposition to Amendment of Complaint to conform to evidence;
- Motion in Limine to Foreclose Evidence of Property Damage;
- Motion in Limine to Foreclose Evidence of Future Response Costs;
- Motion in Limine to Foreclose Evidence of Past Response Costs; and
- extensive Oppositions to Trial Exhibits.

The Motion practice required by Pharmacia's dilatory actions and uncooperative litigation resulted in significant duplication of effort, as Pharmacia sought similar relief in numerous formats. Such action by Pharmacia resulted in increased efforts and resultant attorneys' fees and costs by Mystic.

The outcome of the case has shown that Mystic's efforts were not in vain and produced a successful result, albeit via an unnecessarily expensive and time consuming litigation. The actions taken by Pharmacia in pursuing a *Stalingrad* defense[2] had the predictable result of

---

[2] The "Stalingrad" defense was best described in X-IT Products v. Walter Kidde Portable Equipment, 227 F.Sup.2d 494, 549 (E.D.Va.2002). "This is a case where there was no real defense so attorneys for the Defendant had no choice but to fight every inch of the way. Objections, motions, and obfuscation was the defense. It was the only defense possible. Truth was the enemy. Stalingrad was saved by the Russians in World War II by literally wearing out the Germans, and this type of defense by lawyers in the last half of the last century came to be known as the Stalingrad defense. Wear the opponents out. Fight for every step… the battle became irreconcilable. Thus, rancor

#589025                                   8

increasing the transactional costs to Mystic in pursuing the liability that was otherwise clear and such action should not be rewarded.

**B.    AN AWARD OF FEES IS MANDATORY**

The purposes of Chapter 21E are to "compel prompt and efficient cleanup of hazardous material" and enable private parties "to obtain a certain measure of compensation for loss resulting from environmental damage." Sheehy v. Lipton Indus., Inc., 24 Mass. App. Ct. 188, 197 (1987). Under clear statutory mandate, "the Court *shall* award the plaintiff its litigation costs and reasonable attorneys' fees if the plaintiff shows, and the court finds, that the person against whom the civil action is brought is liable and:

> (1) failed without reasonable basis to make a timely response to a notification pursuant to this section, *or*
> (2) did not participate in negotiations or dispute resolution in good faith, *or*
> (3) failed without reasonable basis to enter into or carry out an agreement to perform or participate in the performance of the response action on an equitable basis or pay its equitable share of the costs of such response action or of other liability pursuant to the provisions of this chapter, where its liability was reasonably clear...."

M.G.L. c. 21E, § 4A(d)(emphasis added). The United States District Court for the District of Massachusetts has considered the policy behind Section 4A and stated that "Section 4A encourages parties to settle environmental liability suits without formal litigation proceedings." Zecco, Inc. v. The Travelers, Inc., 938 F.Supp. 65, 66 (1996).

The process of Section 4A contemplates pre-suit negotiation, exchanges of certain information regarding liability, and response actions to encourage resolution amongst potentially liable parties without the need for litigation. Newly-Weds Foods, Inc. v. Westvaco Corp., 2002 WL 1923864 (Mass. Super 2002). The principal objective of 21E is the efficient clean-up of

---

and accusations became the byword.... fighting on ridiculous matters became paramount. This in turn caused undue rancor. Argumentum ad Hominum became the key and flavored the entire case and continues to do so." See id.

contaminated sites, to which Section 4A was added in 1992 to facilitate. Buddy's, Inc. v. Town of Saugus, 62 Mass. App. Ct. 256, 258 (2004).

If the negotiation process fails and litigation ensues, the Court *shall* award attorney's fees to the prevailing party in specified circumstances. See id. Even a party adjudged partially responsible may recover awards of attorney's fees and costs. See id, citing Martignetti v. Haigh-Farr, Inc., 425 Mass. 294, 322 (1997). Section 4A provides the incentive for parties to secure judicial resolution and clean-up of contaminated properties in the form of more extensive grounds for the award of attorney's fees and costs when amicable resolution cannot be achieved. Buddy's, Inc. v. Town of Saugus, 62 Mass. App. Ct. 256, 262 (2004).

### C.  MYSTIC COMPLIED WITH THE 4A PROCESS

The various subsections of § 4A may be summarized as follows: § 4A(a) establishes a notification process to be used by claimants to send written demand to other potentially responsible parties, as well as a time frame and process for the recipients' response; § 4A(b) requires the notifying party to provide information reasonably requested by the responding party and creates a framework for the optional use of alternative dispute resolution; § 4A(c) provides that only after notice has been given and related procedures carried out, may a person commence a civil action for reimbursement, contribution, or equitable allocation--except that the notification process is optional if a person already joined as a party wishes to file a third-party claim, cross claim, or counterclaim; and § 4A(d) addresses damages in private party actions, including the award, in appropriate circumstances, of litigation costs and attorney's fees. Buddy's, Inc. v. Town of Saugus, 62 Mass. App. Ct. 256, 258-59 (2004); Sanitoy, Inc. v. Ilco Unican Corp., 413 Mass. 627, 633 (1992). The 4A Process is intended to provide the potentially responsible party with the facts and legal theories of the underlying claim under M.G.L. c. 21E.

Merit Oil of Massachusetts, Inc. v. Baer, 2000 WL 14774119, at *11 (Mass. Super. 2000).

Notably, with regard to the provision of documents to the responding party, the "notifier shall provide additional information or documentation <u>reasonably</u> requested by the responder concerning <u>the basis of the responder's alleged liability or the response action</u> or both." Thus, the 4A process is not a substitute for formal discovery or a means for the potentially responsible party to engage in a fishing expedition as to the transactions underlying the property transfer to its current owner. The facts of this matter do not show that Mystic ignored Pharmacia's *reasonable* requests for information regarding the alleged liability and facts upon which such claims were based. Mystic took all reasonable and necessary steps to take part in negotiations and resolution in good faith prior to filing of the litigation. Pharmacia was not denied any information necessary to evaluate Mystic's claim, as it had in its own files all documentation indicating the presence of contamination. C.f. Merit Oil of Massachusetts, Inc. v. Baer, 2000 WL 14774119, at *12 (Mass. Super. 2000). Pharmacia's actions show a clear intent to frustrate the purpose of the Section 4A process, seeking what essentially amounted to full discovery, even though the requested documents did not relate to its clear liability for past contamination or to reasonable response actions and remediation plans. Not once during the 4A process did Pharmacia provide any documentation or information to Mystic to assist Mystic in its investigations of contamination at the site. The discovery process yielded numerous documents that enabled Mystic to direct its consultants, Rizzo Associates, in its sampling and investigatory activities, all leading to the discovery of numerous UCL exceedance areas.

1.   **Mystic is Entitled to Attorneys' Fees and Costs Under §4A(d)(2)**

Section 4A(d) provides that an award of attorneys' fees is mandatory if Mystic established and the Court found that Pharmacia, as a liable party: ... (2) did not participate in

negotiations or dispute resolution in good faith… ." M.G.L. c. 21E, § 4A(d). A successful Plaintiff may recover fees and costs if *any* one of the three elements under Section 4A(d) is demonstrated. Buddy's, Inc. v. Town of Saugus, 62 Mass. App. Ct. 256, 261 (2004).

"The… good faith negotiations foreseen in §4A(b) need not be too extensive, and the consequences for failing to… [negotiate] inadequately – liability for attorneys' fees – can be imposed only after an actual suit has been filed." Zecco, Inc. v. The Travelers, Inc., 938 F.Supp. 65, 68 (1996). This Court, in its Memorandum of Decision, dated June 5, 2006, noted that Pharmacia failed "to negotiate an agreement with Mystic after Mystic instituted the notification procedure pursuant to Chapter 21E, § 4A in 2001." Memorandum of Decision, Rulings of Law, at ¶29. This Court had the benefit of evidence on this issue and ruled that Pharmacia inhibited the 4A process and thus, failed to negotiate in good faith. The exhibits attached to the Zankowski Affidavit show that Mystic went above and beyond the statutory good faith negotiations to avoid litigation even though Pharmacia's liability was strict and clear. Throughout the process Pharmacia delayed and argued tangential matters concerning its liability. The lack of good faith could not be any more evident than the offer to purchase the property for $300,000 --- especially given the amount of the Judgment in Mystic's favor. Extensive discussions occurred between counsel before the insulting $300,000 offer was tendered. Counsel for Mystic provided information that supported the conclusion that the appropriate amount of consideration paid was in the millions of dollars. Pharmacia clung to its misguided and purposeful belief that Mystic purchased the site for a mere $300,000 and thus, offered this sum as a "good faith" measure. Mystic summarily rejected the offer and explained, in detail, its reasons therefore.

This is not a case in which Pharmacia was limited in its ability to respond as a result of administrative burdens or inconclusive evidence. C.f. Hill v. Metropolitan Dist. Comm'n, 439 Mass. 266, 277-78 (2003)(denying Plaintiff attorney's fees and costs due in part to the delayed responses resulting from bureaucracy and the lack of conclusive evidence of groundwater contamination from the Defendant's activities). Contrast Pharmacia's own knowledge and evidence presented by Mystic during the 4A process and trial.

As a result of Pharmacia's refusal to participate in good faith negotiation, where it sought only to delay the 4A process with tangential and unreasonable requests for information (as noted by the Court in its Memorandum of Decision), Mystic was left with no choice but to expend the time, resources, and money to institute the litigation to compel Pharmacia to take part in cleaning up the property it contaminated.

2. **Mystic is Entitled to Attorneys' Fees and Costs Under §4A(d)(3)**

Section 4A(d) also provides a second, independent basis for a mandatory award of attorneys' fees if Mystic established and the Court found that Pharmacia, as a liable party: ...(3) failed without reasonable basis to enter into or carry out an agreement to perform or participate in the performance of the response action on an equitable basis or pay its equitable share of the costs of such response action or of other liability pursuant to the provisions of this chapter, where its liability was reasonably clear..." M.G.L. c. 21E, § 4A(d); Buddy's, Inc. v. Town of Saugus, 62 Mass. App. Ct. 256, 261 (2004).

Pharmacia was on notice that its liability was reasonable clear. Indeed, the Court ultimately found that Pharmacia's historical chemical operations caused 90% of the contamination at the property. Memorandum of Decision, Rulings of Law, at ¶30. Mystic's underlying theories and facts did not change during the course of litigation, on the contrary, they

were bolstered by the historical documentation gathered from Pharmacia's extensive files and the additional sampling and analysis conducted by its expert, Dr. Richard Hughto. As this Court found, testing on behalf of Pharmacia in 1979, 1980 and 1983 revealed contamination in the groundwater. Memorandum of Decision, Findings of Fact, at ¶6. Similarly, Pharmacia was aware of the significant contamination caused by its chemical operations in Everett, when it remediated the western parcel of the property at a cost in excess of $30 million. See id. at ¶¶ 28-30. Pharmacia's only defense focused not on any defense to its own past contaminating actions, but to invoke equitable factors that would serve only to reduce any award in Mystic's favor. Thus, by its own trial strategy, Pharmacia acknowledged that its liability was clear; however, it never, in good faith, agreed, during the 4A process, that it contaminated the site and was therefore responsible to participate in its cleanup.

Given the evidence presented to the Court, it cannot be said that at the time of the 4A process, Pharmacia's liability was not reasonably clear. Pharmacia never once offered to pay for or take any part in a response action or remediation plan; its only tactic was to stall the process and to make bogus low-ball offers to repurchase the property in exchange for a release from liability. Pharmacia's actions clearly require an award of attorneys' fees and costs to Mystic under either Section 4A(d)(3), because it failed to participate in the remediation and response action despite clear evidence of its liability. By its refusal, Pharmacia required Mystic to pursue this litigation.

D. **ALTERNATIVELY, THE COURT MAY AWARD ATTORNEYS' FEES AND COSTS TO MYSTIC PURSUANT TO M.G.L. c. 21E, § 15**

Section 15 of Chapter 21E provides: "In any suit by Massachusetts residents to enforce the requirements of this chapter, or to abate a hazard related to oil or hazardous materials in the environment, the court may award costs, including reasonable attorney and expert witness fees,

to any party other than the commonwealth who advances the purposes of this chapter." Indeed the section expressly applies to "any suit by Massachusetts residents to enforce the requirements of this chapter [21E]." G.L. c. 21E, § 15; Sanitoy, Inc. v. Unican Corp., 413 Mass. 627, 632 (1992). A principal purpose of M.G.L. c. 21E is to allow both the Commonwealth and private individuals "to respond to environmental contamination and to recover response costs from persons responsible for the contamination." Guaranty- First Trust Co. v. Textron, 416 Mass. 332, 335 (1993). Another statutory purpose is "to enable private individuals to obtain a certain measure of compensation for loss resulting from environmental damage." Curran v. Massachusetts Turnpike Authority, 1994 WL 879685, at * 6 (1994).

A plaintiff that is liable only as a result of being the current owner or operator and not equitably responsible for contamination, may recover fees under Section 15. Martignetti v. Haigh-Farr, Inc., 425 Mass. 294, 320 (1997)(construing §15 and §4A to avoid conflict between the statutory provisions). This Court found that Mystic is liable as the present owner and as the owner at the time that hazardous material was released. Memorandum of Decision, Rulings of Law at ¶ 5. Mystic was not found to have contributed or released any of the contaminants directly. Although Mystic's sole member was found to have contributed to the contamination, its contribution was comparatively slight as contrasted to Pharmacia's, as reflected in the Court's findings with respect to percentage of liability. Accordingly, to the extent that this Court determines that Mystic is ineligible to recover its attorneys' fees and costs under Section 4A, this court has the discretion to award attorneys' fees and costs to Mystic under Section 15. Mystic did not release or cause the contamination at the property and it advanced the purposes of Chapter 21E by bringing liable parties to Court and obtaining a finding of liability to assist and

encourage the remediation of contaminated properties in Massachusetts.

E.   **PLAINTIFF'S REQUESTED FEES AND COSTS ARE REASONABLE**

An award of attorneys' fees and costs under M.G.L. c. 21E must comport with Massachusetts case law that requires an award of attorneys' fees (regardless of the source of authority for the award) be reasonable. Black v. Coastal Oil New England, 57 Mass. App. Ct. 696, 698 (2003). Proportionality of the fees to the amount recovered is not mandatory; the Court must only embrace the concept of "reasonableness" of the fee. See id. Similarly, there is no statutory offset in fees because the Plaintiff did not recover under all asserted, but ultimately unsuccessful, claims. See id. at 701. Likewise, the fee award should not be reduced as a result of violations of the Massachusetts Contingency Plan. Id. "21E litigation can be complex, almost certainly involving engineering, environmental and legal specialists to be done correctly, and the stakes for the parties may be significant… the trial of these cases may be lengthy." Merit Oil of Massachusetts, Inc. v. Baer, 2000 WL 14774119, at *12 (Mass. Super. 2000).

Judges have wide discretion in determining attorney fee awards which should be supported by the evidence and have some detail and analysis to support their conclusions. See Robbins v. Robbins, 19 Mass. App. Ct. 538, 541-42 (1985). The trial judge is in the best position to determine how much time was reasonably spent on a case and the fair value of an attorney's services in deciding upon the amount of a reasonable attorney's fee. See Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993). While a judge has wide discretion to determine an award of costs and fees, ultimately, the award amount should be "reasonable" and represent the fair market value of counsel's time reasonably spent on the case. See Hanover Insurance Co. v. Sutton, 46 Mass. App. Ct. 153, 176 (1999); Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993); Torres v. Attorney Gen., 391 Mass. 1, 16 (1984). Several factors bear on the Court's discretion,

"the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area and the amount of awards in similar cases." Linthicum v. Archambault, 379 Mass. 381, 388 (1979).

The complexity of the issues involved in environmental litigation, including the review of Defendant's discovery responses dating back nearly seventy-five years, the need for environmental sampling and expert opinion and analysis, and the ultimate success of Plaintiff in establishing liability are all factors to be weighed when determining a "reasonable" fee. See Black v. Coastal Oil New England, 57 Mass. App. Ct. 696, 700 (2003). "The Defendant, having chosen to litigate its liability for the contamination is scarcely in a position to object to a reimbursement to the plaintiff[] of expenses reasonably required to establish that liability." Id.

Mystic has incurred attorneys' fees in the total amount of $1,313,058.05 and costs in the amount of $70,587.69. See Zankowski Affidavit at ¶10. Mystic further incurred further expert fees and costs in connection with the matter of $28,860.00 for Crosby, Schlessinger Smallridge and $57,917.75 for the services of Lincoln Property Company. See Zankowski Affidavit at ¶11. Mystic is further entitled to recover the expert fees and litigation support costs of Dr. Richard Hughto in the amount $84,442.89 as presented in Mystic's Trial Exhibit 233. See id.

Mystic submits that, it is entitled to all costs and expert fees outlined above, totaling $241,808.33 and reasonable attorneys' fees in the amount of $1,116,099.34. See Zankowski Affidavit at ¶¶12-13. As detailed in the attached Affidavit of Doreen Zankowski, Mystic has reviewed its fees in connection with this matter and has reduced same to what it believes is a reasonable sum, given the nature of the case, the complexity of the work, and the ultimate successful outcome. See Zankowski Affidavit at ¶¶14-19. In coming to the requested amount,

Mystic has reduced fees for issued not directly related to the litigation, for duplication of effort, and for the fair market value of the services provided to Mystic in connection with this litigation. See id.; see also Denton v. Boilermakers Local 29, 673 F. Supp. 37, 52 (D. Mass. 1987); Grendel's Den Inc. v. Larkin, 749 F.2d 945,950 (1st Cir. 1984). To the extent that this Court requires further evidence of the services provided and fees incurred, Mystic would agree to an *in camera* submittal of its billing documentation detailing the work in question.

## CONCLUSION

For the foregoing reasons, and as further supported by the facts presented in the Affidavit of Doreen M. Zankowski, filed herewith, Mystic is entitled to recovery of its attorneys' fees and costs associated with litigating the clear liability of Pharmacia, which resulted, in part, from Pharmacia's lack of good faith negotiation during the Section 4A process. The fees and costs requested are reasonable and comport with the requirements as determined by the Courts for such fees.

Respectfully submitted,

**MYSTIC LANDING, LLC and**
**MODERN CONTINENTAL CONSTRUCTION CO., INC.**

By its attorneys:

/s/ Doreen M. Zankowski
Robert G. Flanders, Jr. (BBO #170820)
Doreen M. Zankowski (BBO #558381)
Jeremy Blackowicz (BBO #650945)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109-1775
(617) 345-9000

DATED: June 30, 2006

## CERTIFICATE OF SERVICE

I, Doreen M. Zankowski, hereby certify that on this 30th day of June 2006, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

John M. Stevens, Esq.
Adam P. Kahn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210

Mark S. Granger, Esq.
Douglas B. Otto, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Howard G. Guggenheim
P.O. Box 736
Scituate, MA 02066

/s/ Doreen M. Zankowski