UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br><br>        Plaintiff,<br>  v.<br><br>PHARMACIA CORPORATION,<br><br>        Defendant.<br><br>PHARMACIA CORPORATION ,<br><br>        Third-Party Plaintiff,<br>  v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>  CO., INC.,<br><br>        Third-Party Defendant. | CIVIL ACTION No. 04-10180 NMG |

### DEFENDANT PHARMACIA CORPORATION'S OPPOSITION TO MYSTIC LANDING'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

Plaintiff Mystic Landing LLC ("Mystic") seeks an unprecedented result without legal or factual basis. Although section 4A of chapter 21E of the Massachusetts General Laws has been in force for approximately 14 years, Mystic has not identified a single reported case in which attorneys' fees have been awarded to a plaintiff. Confronted with Mystic's excessive demands, Pharmacia Corporation ("Pharmacia") responded in a way no court has suggested should oblige it to pay its adversary's fees. Rather, conduct like Mystic's unbending insistence on demanding more than the law permitted it to recover and its intransigent refusal to produce documents recognized by Pharmacia and the Court as pertinent to its claim have led the courts to award fees

B3230973.3

against unreasonable plaintiffs.  Any award of fees entered here should be in favor of Pharmacia against Mystic.

## FACTS

This statement of the pertinent facts summarizes that set forth in Pharmacia's June 30, 2006 "Opposition to Mystic Landing's Motion for Time Within Which to File its Application for Attorneys' Fees and Costs and Pharmacia Corporations' Motion for Attorneys' Fees and Costs" ("Pharmacia's Application") (Docket No. 183) at 2-3 and 6-15[1] and is supported by the Affidavits of Gerald M. Rinaldi ("Rinaldi Aff."), appended hereto as Attachment 1, and Elisabeth DeLisle ("DeLisle Aff."), filed herewith, by documents annexed to the Zankowski Affidavit, filed in support of Mystic's Application ("Zankowski Aff."), and by the Affidavit of Adam P. Kahn ("Kahn Aff."), filed with Pharmacia's Application.

A.  <u>Negotiations Prior to Mystic's Filing the Lawsuit</u>

From the outset, Mystic's intent was to reap a profit from the contamination on the Property.  The clearest statement of this intent came to light when Mystic produced a final box of documents — requested and ordered to be produced a year previously — on April 5, 2006, the week before trial.  In that box was an email from Charles F. Madden, Jr., son of a Modern Continental officer, a former Modern Continental employee, a broker/developer for Mystic, and a joint venturer with Mary O'Donnell.  That email documented the results of a discussion with Peter Grela, Modern's chief financial officer, and was sent on May 5, 2001, less than a week before the initial demand to Pharmacia on May 11, 2001.  DeLisle Aff., Exh. A.  Under the

---

[1] That document contained references to numerous exhibits that were introduced at trial, and attached exhibits marked for trial but withheld by stipulation of the Parties and with the agreement of the Court because they pertained to the issue of attorney's fees.  After this motion was filed on June 30, the Court advised Pharmacia that it no longer wished to retain the exhibits and returned them to Pharmacia.  The returned exhibits and new documents relevant to this filing are included as attachments to the Affidavit of Elisabeth DeLisle, or as attachments to the Affidavit of Doreen Zankowski, filed with Mystic's Application.

heading "Update and Action Items (All items per discussion with P. Grela 5/4, late afternoon)", Madden stated "[a]ction is underway due to Modern's near term commencement of a large mixed use project." As the "Monsanto objectives," Madden reported Modern's goal: "Receive payment <u>in excess of cost</u> for site remediation…." (emphasis added).

In light of this stated objective, it is not surprising that, even though Mystic's August 27, 2001 Section 4A demand letter asserted that the cleanup would cost at least $17,600,000, discovery later revealed that on May 15, 2001, Mystic's experts at Rizzo Associates had prepared for Hinckley a remediation cost estimate of only $810,000, roughly 5 percent of the demanded amount. Zankowski Aff., Exh. F; DeLisle Aff., Exh. B. Mystic apparently being dissatisfied with that number, Rizzo Associates produced -- one week later -- a cost estimate of $17,500,000 to support the demanded figure of $17,600,000. DeLisle Aff., Exh. C. Of course, as set forth in more detail in Pharmacia's Application at 7, the trial documented that neither Mystic nor Pharmacia expect the costs of the remediation to approach, even remotely, the demanded sum. On behalf of Pharmacia, Mr. Collins estimated the remediation costs to be $1,500,000 to $2,500,000 (Trial Transcript Day 3 at 18-19); on behalf of Mystic, Dr. Hughto estimated the costs, based on information available as of December 2005, to be $2,447,846 to $8,654,106[2]. DeLisle Aff., Exh. D.

Unaware at the time of Mystic's determination to obtain a windfall, Pharmacia participated in negotiations in good faith in an effort to reach an agreement to participate in the performance of response actions on an equitable basis or pay its equitable share of response costs. As a necessary step in determining what that equitable share might be, beginning in June

---

[2] The latter figure included several items that Pharmacia will dispute are response costs if claimed, including approximately $2.6 million for disposal of soil during construction that would not otherwise require removal. It also included approximately $2.5 million for sediments, the response costs for which were not awarded to Mystic.

2001, Pharmacia made repeated requests for information it needed to evaluate the claim of the initially unidentified party represented by Hinckley, Allen and Snyder LLP ("Hinckley"). *See, e.g.* Rinaldi Aff., ¶¶ 4-5; Zankowski Aff., Exhs. C and E.  Pharmacia's requests for information were met with rejections, no responses or incomplete responses.  Rinaldi Aff. ¶¶ 6-7; Zankowski Aff., Exhs. G and J; Pharmacia's Application at 8-9.

In addition to seeking information, Pharmacia sent a detailed response to Mystic's August 27, 2001 Section 4A demand letter in October 2001, within the 45 day time frame provided by Section 4A.  Zankowski Aff., Exh. G.  That response contained both renewed requests for information, as Pharmacia was entitled to make pursuant to § 4A, and a substantive response, identifying three basic concerns, each of which the Court determined were relevant at trial: the fact that Mystic purchased with knowledge and at a discount; concerns that the portions of the $17,600,000 response costs demanded were not for recoverable response costs, and concerns that Mystic and/or Modern contributed to contamination at the Site.  *See* Conclusions of Law ¶ 23, 36, and 37.

Although Mystic's response to the information requests in Pharmacia's §4A response was plainly inadequate, Pharmacia nevertheless met in good faith with Mystic in February 2002. *See* Pharmacia's Application at 8-9; Zankowski Aff. Exh. K; Rinaldi Aff. ¶¶ 9-13.  At the meeting, Pharmacia again reiterated its requests for information and was advised that Mystic sought payment of 100 percent of all environmental-related costs to develop the property for a new baseball stadium for the Red Sox and that it intended to remove contaminated soils whether or not that soil was required to be removed by regulation. *Id.*

Although Mystic continued to refuse to provide requested information, in May 2002 Pharmacia made an offer to repurchase the Property for the $300,000 price stated in the deed for

the property[3] and to assume 100 percent of the costs of site remediation. *See, e.g.,* DeLisle Aff., Exh E, F; Rinaldi Aff., ¶ 13; Zankowski Aff., Exh. N. When Mystic summarily rejected this offer and again refused to provide the documents to substantiate its claim that it paid more than $300,000 for the property in June 2002, Pharmacia promptly responded, again requested those documents and indicated that it would be open to reasonable alternative settlement proposals. Zankowski Aff., Exh. O; Zankowski Aff., Exh. P. Despite that offer, Pharmacia did not hear from Mystic for three months. Rinaldi Aff. ¶ 13.

In August 2002, Mystic provided a reduced cost estimate (dropping the demand from $17,000,000 to a range of $6.8 to $10.7 million). Zankowski Aff. Exh Q. In September 2002, Pharmacia offered to meet with Mystic to attempt to resolve the matter, even though it still had not received other information it had requested. Rinaldi Aff. ¶¶ 14-15. Due to Mystic's scheduling issues, that meeting did not occur until November 2002. At the meeting, Mystic persisted in demanding 100 percent of response costs, plus costs that were development costs and not response costs, such as a proposed expense in excess of $1 million for removal of soil so clean that it met unrestricted residential standards. Rinaldi Aff. ¶¶ 14-18. Pharmacia again requested documents regarding the transaction with Mystic and was told that Mystic would consider the request. Rinaldi Aff. ¶ 19. In December 2002, Pharmacia reminded Mystic that it was awaiting a response. DeLisle Aff., Exh. G.

Mystic did not respond until June 2003, when it finally indicated that the documents would be provided pursuant to a confidentiality agreement that it would prepare. It failed to produce a draft of that agreement until October 10, 2003, nearly 11 months after the parties' last

---

[3] In a letter dated January 22, 2002, four months before the offer, Solutia had informed Mystic that, having not received any documentation contradicting the $300,000 purchase price stated in the deed, it would rely on the information contained in the deed in evaluating Mystic's claim. Zankowski Aff., Exh. L. No such documentation was supplied by Mystic.

meeting. DeLisle Aff., Exh. H. Then, while Pharmacia believed the parties were actively working towards finalizing the confidentiality agreement pursuant to which Mystic would finally provide the documents that Pharmacia had been seeking for more than two years, on December 5, 2003, Mystic filed suit without informing Pharmacia. Zankowski Aff. Exhs. U,V and W; Rinaldi Aff. ¶¶ 20-22.

Throughout the 4A negotiation process, Pharmacia participated in discussions and took a number of initiatives to resolve this matter without resort to litigation. However, at no point prior to initiating litigation did Mystic: (1) indicate any willingness to entertain an offer other than payment by Pharmacia of 100 percent of all past and future response costs; (2) acknowledge that any fraction of the demanded costs might be non-recoverable development costs and not response costs; (3) provide the requested transactional information; or, (4) provide information about its own activities on the Site, activities the Court later determined contributed to the contamination of the Property. *See* Conclusions of Law ¶¶ 5-6, 30. Indeed, Mystic's final offer prior to the time litigation commenced in earnest was to demand that 100 percent of projected response costs and development costs be paid in advance. *See, e.g.,* Zankowski Aff., Exh. S; DeLisle Aff., Exh. I.

### B.  Negotiations after the Commencement of Litigation

Despite Mystic's intransigence, after suit was filed, in May 2005, Pharmacia offered to conduct 100 percent of necessary actions for all of the areas identified at that time as requiring remediation by Mystic's expert. An executive representing Pharmacia provided a detailed explanation of the basis for the offer at a meeting held in Boston. DeLisle Aff., Exh. J. Mystic rejected that offer and countered with a demand that would have excused Mystic from any obligation to minimize response costs by such means as placing a reasonable and customary

Activity and Use Limitation restriction on the Property and would have committed Pharmacia to paying all incremental development costs, regardless of amount and whether they were required to be incurred by regulation. DeLisle Aff., Exh K. Pharmacia made additional settlement offers shortly before trial, offering to pay substantial percentages of response costs. These offers were also rejected. Kahn Aff., ¶¶4, 6. Only during trial did Mystic agree to consider accepting in settlement an amount less than 100 percent of response costs, and it never dropped its demand that Pharmacia pay for a majority of development costs. *See* Kahn Aff. at ¶¶ 6-9; Pharmacia's Application at 12.

The Court ultimately awarded Mystic an amount that in almost any remediation scenario is less than the reduced demand Mystic put forward during trial and in many scenarios less than what Pharmacia offered at various points during the negotiations and litigation. *See* Pharmacia's Application at 13. In issuing its decision, the Court credited each of the reasons and concerns cited by Pharmacia in its initial response to Mystic's 4A letter, and which were repeatedly characterized by Mystic as specious, frivolous, or irrelevant: Mystic's contribution to contamination at the Site, Mystic's knowledge of contamination and purchase of the property at a discount, and the want of any legal basis for recovering costs other than response costs.

C.   The Conduct of the Litigation

Mystic's conduct of the litigation mirrored its unreasonable demands in negotiation. Its assertions that Pharmacia engaged in uncooperative litigation tactics and "pursu[ed] a *Stalingrad* defense", thus increasing the costs of litigation, are simply without merit. The primary "infraction" identified by Mystic was that the task of reviewing the documents Pharmacia produced in the manner that they were maintained in the ordinary course of business as expressly

authorized by Rule 34(b) and accompanied by a detailed index was more time consuming than Mystic wished. DeLisle Aff., ¶4.

The volume of documents produced was a consequence of the breadth of Mystic's discovery requests. For example, one of Mystic's requests was as follows:

> Request No. 6: All documents… which refer to, reflect or discuss any processing, production, activities and/or operations of Monsanto that took place on the Property between 1943 and 1983 and involved the use, handling, transportation, and/or storage of any petroleum products, hazardous substances or chemicals…

DeLisle Aff., Exh. L. This request was repeated in Request No. 15[4], without the limitation on time period or operator as to the nearby Gateway Property. In crafting a request demanding every document referring to operations involving the use of chemicals at two properties that had been used for decades as a chemical plant, Mystic had to have expected a voluminous production. Indeed, Pharmacia informed Mystic well in advance of Mystic's review that the production would be extensive. While Mystic's Application refers to the "reduced" scope of its document requests, Mystic, in fact, refused to narrow its requests except for the elimination of a single request that sought "[a]ll documents …to or from Pharmacia, Solutia, and/or Monsanto . . . which refer to, reflect or discuss the Property and/or the Gateway Center." Mystic's Application at 7; DeLisle Aff., Exh. M. It is simply absurd for Mystic to complain that Pharmacia's comprehensive index, which it had no obligation to provide, contained too much information. *See* Mystic's Application at 7.

Equally absurd is Mystic's complaint that Pharmacia's took multiple 30(b)(6) depositions. *See* Mystic's Application at 7. The same three witnesses (chosen by Mystic and

---

[4] Mystic also sought all documents related to the long and costly investigation and cleanup of the Gateway Property, apparently in an attempt to support its claim that contaminants from the Gateway Property were migrating to and causing contamination on the Property. These requests required the production of a large volume of documents. Mystic was unsuccessful in finding any support for this baseless claim and eventually stipulated to its dismissal.

Modern) served as 30(b)(6) witnesses for both Mystic and Modern, thus avoiding duplication of effort. The aggregate time of those three depositions was approximately 6.5 hours. The topics on which Pharmacia sought testimony pertained to plans for remediation and use of the site, as well as the equitable factors the court considered to be relevant in assigning a significant share of the responsibility to Mystic and Modern. *See* DeLisle Aff., Exh. N; Decision, Conclusions of Law at ¶¶ 23-26, 35-36. These were also the only depositions taken by Pharmacia during the entire lawsuit.

It is the same with Mystic's objections to the various motions filed by Pharmacia. In almost every instance, the position taken by Pharmacia in its motion ultimately prevailed. For example, the parties ultimately stipulated to the dismissal of Monsanto as a defendant of Mystic's common law claims (Docket No. 103), and Mystic's property damage claim was dismissed as a matter of law. *See Mystic Landing, LLC v. Pharmacia Corp.*, 417 F. Supp. 2d 120, 124-26 (D. Mass. 2006). Pharmacia was forced to bring multiple motions as a result of Mystic's refusal to abandon frivolous claims without a fight and its failure to cooperate in discovery.

## ARGUMENT

**I. Mystic Is Not Entitled to Recover Attorneys' Fees and Costs Under M.G.L. c. 21E, § 4A**

The statute provides that a court may award attorneys' fees and costs to a plaintiff in a cost recovery action if the defendant is found to be liable and if the defendant,

> (2) did not participate in negotiations or dispute resolution in good faith; or,

> (3) failed without reasonable basis to enter into or carry out an agreement to perform or participate in the performance of the response action on an equitable basis or pay its equitable share of the costs of such response action or of other liability pursuant to the provisions of this chapter, where its liability was reasonably clear.

M.G.L. c. 21E, §4A(d). Under the statute, fees and costs may be awarded to a plaintiff, a defendant, and/or a claimant where the opposing party, among other things, fails to participate in negotiations in good faith, fails without a reasonable basis to participate on an equitable basis or pay its equitable share or takes an unreasonable position regarding the amount of liability. However, Mystic cites no reported decision where attorneys' fees have ever been awarded to plaintiffs under M.G.L. c. 21E § 4A[5], and Pharmacia is unaware of any such decision. Indeed, the very few reported decisions awarding attorneys' fees under § 4A involve fee awards to defendants when plaintiffs behaved unreasonably. *See Merit Oil of Massachusetts, Inc. v. Baer*, No. 97188, 2000 WL 1474119 (Mass. Super. 2000) (awarding defendant attorneys' fees under § 4A for plaintiff's failure to disclose information reasonably requested by an opposing party). Here, Pharmacia manifestly met its obligation to participate in discussions in good faith and the ultimate failure of the parties to reach an agreement is due overwhelmingly to the unreasonable, aggressive and arbitrary actions of Mystic.

      **A.**     **Pharmacia Participated in Negotiations in Good Faith.**

          **1.**     **Pharmacia's attempts to obtain information from Mystic were reasonable and sanctioned by statute, and Mystic's failure to provide that information was unreasonable.**

Pharmacia's requests for information during the pre-litigation communications mandated by Section 4A were authorized by statute and reasonable in scope. Section 4A outlines specific procedures through which the recipient of a § 4A demand letter may request additional information from the notifier. It provides that a recipient's response to a demand letter may

---

[5] *See, e.g., Buddy's Inc. v. Town of Saugus*, 816 N.E.2d 134, 62 Mass. App. Ct. 256 (2004) (denying award of attorneys' fees to third-party plaintiff who was awarded 70 percent of response costs even though third party defendant allegedly did not respond to third party plaintiff's notice and demand letter and did not participate in negotiations when invited to do so); *Hill v. Metropolitan District Commission*, 787 N.E. 2d 526, 439 Mass. 266 (2003) (upholding denial of plaintiff's attorneys' fee claims where judge did not find bad faith); *Newly Weds Foods, Inc. v. Westvaco Corporation*, 2002 WL 1923864 (Mass. Super. 2002) (denying plaintiff's request for attorneys' fees where defendant was found 75 percent liable for response costs).

"request any further information or documentation the responder needs to fully evaluate the notifier's claim." In addition, § 4A(b) provides that, when the parties confer following the notifier's receipt of the response, "[u]pon request by the responder, the notifier shall provide additional information or documentation reasonably requested by the responder concerning the basis of the responder's alleged liability or the response action or both." Because Section 4A specifically provides for requests for additional information, making such a request by definition cannot violate the statute, and indeed a failure of a notifier to respond to a recipient's requests for information itself constitutes a failure to participate in the § 4A process in good faith. 2000 WL 1474119 at *11.

The importance of this pre-suit exchange of information has not gone unnoted. For example, in awarding fees and costs under § 4A to a defendant in a cost recovery action, the court in *Merit Oil*, 2000 WL 1474119, *12 (Mass. Super. 2000), stated as follows:

> The importance of this pre-suit exchange of information is manifest . . . But this comprehensive legislative scheme is frustrated where . . . a "responder" makes a reasonable request for information from a "notifier" and receives an inadequate response. Such a reply is not "participat[ing] in negotiations or dispute resolution in good faith," and instead insures that negotiations or dispute resolution will take place, if at all, following the filing of the suit, because only through discovery will the "responder" be able to obtain the information that it sought but did not receive.

As the Court found in *Merit Oil*, the obligation to provide information is manditory and cannot be met by providing a lawyer's summary of the information. *Id.* In *Merit Oil*, when the plaintiff declined to provide information substantiating its assertion that the defendant was responsible for contaminating a property other than conclusory assertions in a lawyer's summary, the court found that the defendant's subsequent refusal to participate in negotiations "could hardly be held against it" and that the plaintiffs refusal to provide the information constituted bad faith negotiations meriting the award of attorneys fees to the plaintiffs. 2000 WL 1474119 at *12

The conduct of the plaintiff in *Merit Oil* is indistinguishable from the conduct of Mystic. Pharmacia's requests were entirely reasonable, as documented by the Court's decision, which specifically considered information that should have been provided in response to the requests made by Pharmacia but was not produced until long after the lawsuit was filed. Statements in letters from counsel describing projected remediation and claiming to have paid a purchase price greater than that recited on the deed were no substitute. Mystic's unjustified failure to provide the reasonably requested documents in itself is a violation of Section 4A and constitutes a violation of Mystic's duty to negotiate in good faith. *Merit Oil of Massachusetts, Inc. v. Baer*, 2000 WL 1474119 at *12 (Mass. Super. 2000)

Even if Mystic's lack of cooperation were not fatal to Mystic's claims for attorneys fees, it was entirely reasonable for Pharmacia to base its settlement proposals on the limited information that Mystic did provide or that Pharmacia was able to obtain elsewhere, such as the purchase price stated in the deed and information about Mystic and Modern's operations on the Site. In that context, Pharmacia's offer in 2002 of 100 percent of all current and future response costs, plus a refund of the purchase price, was certainly in good faith. After the filing of suit, Pharmacia's other offers (all of which were rejected) were made in equally good faith.

### B.    Pharmacia had a Reasonable Basis for Not Entering Into an Agreement to Pay a Share of the Response Costs.

Pharmacia had an entirely reasonable basis for not having reached agreement to pay an equitable share of response costs. An agreement requires reasonable accommodations by both parties, and Mystic manifested no willingness to make any accommodations. Rather, it insisted throughout on receiving a payment that would exceed the full amount of projected response costs and refused to acknowledge the relevance of factors believed by Pharmacia and ultimately found

by the Court to have an important bearing on the amount of Pharmacia's equitable share. Mystic's unreasonable intransigence manifested itself in five different ways.

First, Mystic's demands for payment were vastly inflated. They exceeded both the amount of response costs predicted by Mystic in 2001 and the amount projected by Mystic's expert, Dr. Hughto, at trial. Mystic's intentionally inflated demands are precisely the type of posturing that the 4A process is intended to discourage. The statute expressly provides that demands of this nature are grounds for awarding attorneys' fees not to Mystic but to Pharmacia. *See* §4A(f).

Second, while it demanded that Pharmacia bear 100 percent responsibility for the response costs, Mystic knew but never admitted that it and its controlling parent were actively contributing to contamination on the Property. Mystic and Modern became aware of an investigation by the Department of Environmental Protection and the presence of contamination attributable to its operations no later than October 2002. *See* DeLisle Aff., Exh. O. Yet at no time during the Section 4A process did Mystic disclose documents showing that the DEP was in the process of bringing an enforcement action against Modern. These documents were ultimately disclosed to Pharmacia well into litigation, long after Mystic had supposedly produced all pertinent documents, long after the Court had sanctioned Mystic for discovery misconduct, and only after Mystic's 30(b)(6) witness, Max Marino, made allusions to the documents in his deposition of September 13, 2005.

Third, from the first demands in 2001 to Mystic's last settlement position during trial, Mystic steadfastly insisted on recovering costs that were development costs, not response costs. Mystic's demands ranged from 100 percent of those costs at all points prior to trial to 67 percent in a demand made during trial. *See* Kahn Aff. at ¶¶ 6-9. Demands for payment of costs in

excess of response costs recoverable under Chapter 21E precluded the settlement contemplated by the statute, which is supposed to be an allocation of response costs between Pharmacia and Mystic.

Fourth, even if Mystic's demands had been limited to recoverable response costs, Mystic refused to entertain any offer less than 100 percent of response costs until after trial began. Rinaldi Aff. ¶22; Kahn Aff. ¶¶ 6, 9. In light of the discount that Mystic received, the contamination caused by Mystic, and Mystic's noncompliance with environmental laws, this position was manifestly unreasonable. The Court's award of substantially less than 100 percent documents this conclusion.

Finally, Mystic's refusal to provide the information reasonably requested by Pharmacia during the 4A process made it difficult for Pharmacia to determine what its equitable share of response costs might be. This conduct continued unabated through the litigation. As the Court noted in its decision dismissing Mystic's property damage claim, "[t]his Court has previously sanctioned Mystic for its neglect of discovery obligations in this case. While the Court is disinclined to exclude relevant evidence from trial, it will not tolerate any further noncompliance with legitimate discovery requests." *Mystic Landing, LLC v. Pharmacia*, 417 F. Supp. 2d 120, 125 (D. Mass. 2006).

## II. Mystic May Not Recover Attorneys' Fees and Costs Under M.G.L. c. 21E, § 15

Massachusetts precedent makes clear that Mystic is not entitled to attorneys' fees under the so-called "citizen's suit" provision, M.G.L. c. 21E §15. It is black letter law that an award of attorneys' fees and costs pursuant to M.G.L. c. 21E, § 15 is available only to a party who is liable solely pursuant to M.G.L. 21E, § 5(a)(1) as a consequence of his status as the owner or operator of a site from or at which there is or has been a release of oil or hazardous material. *See, e.g., Martignetti v. Haigh-Farr Inc.* 680 N.E.2d 1131, 1148, 425 Mass. 294, 321 (1997) ("[o]nly a

party which has not contributed to, or caused, the release of hazardous materials necessitating its response actions can "advance[] the purposes" of G.L. c. 21E by bringing a § 4 claim, and therefore only such a party may be awarded attorney's fees and costs under § 15."); *Buddy's Inc. v. Town of Saugus*, 62 Mass. App. Ct. 256, 258 816 N.E.2d 134 (2004) ("§15…allows only 'innocent' parties to recover attorney's fees and costs").

Mystic is not an innocent party. The Court found in its Memorandum of Decision of June 5, 2006 that Mystic is also liable under § 5(a)(2) because it was "the owner at the time that hazardous material was released." *See* Conclusions of Law at ¶ 5. Because Mystic is liable under § 5(a)(2), it is foreclosed from recovering attorneys' fees and costs under § 15. Mystic cannot avoid this result by distinguishing between Mystic and Modern and noting that it was "Mystic's sole member [that] was found to have contributed to the contamination." Mystic Application at 15. Mystic is not innocent of an act performed by its sole member. Moreover, the Court explicitly determined that it was "appropriate in this case to treat Mystic and Modern as a single entity". S*ee* Decision, Conclusions of Law at ¶ 17.

### III.     Mystic's Fees Are Not Reasonable.

Although it is impossible to determine precisely what fees were incurred for which efforts, because no information other than the total legal fees alleged to have been incurred in this matter were provided, Mystic's assertion of baseless claims and its refusal to consider Pharmacia's several reasonable settlement offers proffered by Pharmacia, significantly increased the fees. If Mystic had been reasonable in its settlement posture, the great majority of its fees would have been avoided. When litigation ensued, Mystic's decision to pursue meritless claims that it or the Court ultimately dismissed and its insistence on the broadest possible documentary discovery all served to increase unnecessarily the costs to both parties. In any event, Mystic has not provided the Court or Pharmacia with sufficient information at this juncture to evaluate

whether specific fees are reasonable or recoverable. *See, e.g., Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir. 1986) (remanding award of attorneys' fees with instructions that plaintiff produce detailed, contemporaneous time records and noting that the disclosure of such records "allows the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent.").

### IV.     Request for Hearing.

In the event the Court does not deny the Mystic's application on the basis of this and related filings, Pharmacia will introduce additional testimony by witnesses to document the course of dealings among the parties, as well as introducing documents withheld from the filing of the case in chief.

### CONCLUSION

For the reasons stated herein, the Court should deny Mystic's request for an award of attorneys' fees. Instead, for the reasons set forth in Pharmacia's Application, it should grant Pharmacia's claim for attorneys' fees due to Mystic's numerous continued violations of Section 4A.

By its attorneys,

/s/ Elisabeth M. DeLisle
John M. Stevens (BBO # 480140)
Adam P. Kahn (BBO # 561554)
Elisabeth M. DeLisle (BBO #658067)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
Tel:  (617) 832-1000
Fax:  (617) 832-7000
edelisle@foleyhoag.com

Dated:  July 21, 2006