## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>Defendant.<br><br>PHARMACIA CORPORATION,<br>Third-Party Plaintiff,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>Third-Party Defendant. | **CIVIL ACTION NO.**<br>**04-10180 NMG** |
| PHARMACIA CORPORATION,<br>Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY,<br>Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY,<br>Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL,<br>     Fourth-Party Defendants. | |

## PLAINTIFF, MYSTIC LANDING, LLC'S OPPOSITION TO PHARMACIA
## CORPORATION'S MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff Mystic Landing, LLC ("Mystic") opposes Pharmacia Corporation's ("Pharmacia") Motion for Attorneys' Fees and Costs.[1]  Pharmacia's Motion is rife with misstatements of fact and with mischaracterizations of the exchanges that took place both during the M.G.L. c. 21E, § 4A process and later during the course of litigation.  Pharmacia continues its willful blindness to its clear and strict liability, as now determined by the Court, seeking the imposition of fees and costs against the prevailing Plaintiff.  Pharmacia further seeks to obfuscate its responsibility for the payment of Mystic's attorneys' fees and redirect this Court from the proper review of the 4A process by focusing on events that occurred during litigation but which are irrelevant to the fact that Pharmacia refused to participate in the 4A pre-litigation process in good faith.  Indeed, Pharmacia's back-of-the-hand dismissal of Mystic's 4A request, forced Mystic into this expensive and time-consuming litigation, thereby entitling Mystic to reimbursement for its attorneys' fees and costs.

Although Pharmacia now purportedly prefers to "spend its efforts working with Mystic,"[2] it is Pharmacia's own actions and failures during the 4A process and the ensuing litigation that required Mystic to "encroach[] on the Court's time and resources." The resultant costs of doing so should be reimbursed to Mystic as the prevailing Plaintiff.  Pharmacia has established no grounds under M.G.L. c. 21E, § 4A(f) showing that Mystic failed to engage in the 4A process in good faith or urged an unreasonable position with respect to Pharmacia's liability.  As the Court is aware from the extensive briefing that occurred throughout the litigation, Mystic's position and the essential facts upon which its claim was based never changed or wavered; indeed, further

---

[1] Based upon this Court's July 6, 2006 Order granting Mystic's Request for Time to Prepare its Application for Attorneys' Fees and Costs, Section I of Pharmacia's brief is moot and will not be addressed herein.

[2] Although Pharmacia now purports to seek cooperation with Mystic, it has yet to make payment of the 90% of Mystic's past response costs awarded by the Court despite verbal and written requests by Mystic's Counsel for it to do so.  See Affidavit of Doreen M. Zankowski in Support of this Opposition at ¶ 5.

testing and analysis only strengthened its resolve about Pharmacia's ultimate liability. It cannot now be said, after Mystic has been awarded 90% of its past response costs and an increasing proportion of its remediation costs based upon the ultimate cost of the clean-up, that Mystic's position was unreasonable or that Pharmacia was, in fact, the prevailing party. As stated in the Court's Memorandum of Decision, Paragraphs 34 of the Conclusions of Law: "Pharmacia ultimately caused not more than 90% of the Property's contamination… ." Given the favorable outcome to Mystic, it is inconceivable that Pharmacia now claims that Mystic's position as to Pharmacia's liability was unreasonable or advanced in bad faith.

Perhaps Pharmacia intends its use of the word "prevail" to be interpreted as successfully forcing a company in its wind-down mode of operations (Modern) to litigate another party's clear, strict liability in the federal courts. The result is a judgment that requires Pharmacia to substantially finance Mystic's remediation efforts. All this occurred years after Pharmacia rebuffed Mystic's attempts to negotiate and resolve the dispute after it first acquired the property. Pharmacia's dilatory and noncooperative tactics have frustrated and hampered the purpose of M.G.L. 21E. Indeed, Pharmacia has sought to evade paying the piper for its years of using the property as a chemical manufacturing plant, even though it willingly and knowingly dumped contaminated materials on the property for decades, all resulting in the contamination of these lands. Pharmacia now has the audacity to request that it be reimbursed for such tactics. Pharmacia's Motion for attorneys' fees and costs should be denied by the Court and Mystic should be made whole for having to litigate what was Pharmacia's known and historically documented liability from the very beginning.

A.    **PHARMACIA IS NOT ENTITLED TO ATTORNEYS' FEES OR COSTS**

The process created by M.G.L. c. 21E, § 4A is designed to encourage resolution of

environmental disputes *without* the need for expensive, time-consuming litigation.  See Frontier

Ins. Co. v. A. Anthony Tappe and Assoc., Inc., 2002 WL 1493746 at *4 (Mass. Super.

2002)(Section 4A is "a sensible implementation of the sound public policy of encouraging

remediation and avoiding litigation).  To achieve the statutory goal and the clear intent of this

legislation, Section 4A envisions a process whereby a party's failure to negotiate in good faith or

to pay for a share of the required remediation when such liability is clear results in an award of

attorneys' fees and costs in favor of the party that initiated the 4A process and succeeded upon

that basis at trial.  See Zecco, Inc. v. The Travelers, Inc., 938 F.Supp. 65, 66 (1996).  Section 4A

was enacted to provide incentives for parties to mediate outside of court and to settle

environmental liability suits without formal litigation.  See Massachusetts Hardware and Supply

Co., Inc. v. Salamome, 1998 WL 1247994 (Mass. Super. 1998).

It cannot be disputed that Mystic initiated the 4A process and ultimately succeeded on its

claims establishing Pharmacia's liability; the underlying theory, facts, sampling, analysis, and

historical evidence did not change from the outset of the 4A process to the final judgment.

Although Pharmacia alleged - to which Mystic agreed and stipulated - that Modern Continental

Construction Co., Inc.'s ("Modern") operations resulted in certain contamination above the clay

cap of tunnel muck for which Pharmacia was not responsible, Pharmacia's counterclaim and

third-party claims did not extinguish its liability for the below the cap contamination, but only

raised certain equitable factors that would operate to reduce the amount of its ultimate and

undeniable liability for remediation and response costs pertaining to the entire site.

It is simply beyond the pale for Pharmacia now to seek fees under M.G.L. c. 21E, §

4A(f)(1 & 3) based upon Mystic's purported lack of good faith or its asserted unreasonable belief

in Pharmacia's liability.  During the 4A process, Pharmacia never once admitted that it was

liable for any portion of the response costs or future remediation costs.  Pharmacia delayed the

4A process with unreasonable requests for documentation that, similarly, did not challenge its

liability, but only operated to raise equitable issues relating to the ultimate amount of its liability.

This Court, in its Memorandum of Decision, Paragraph 29, noted that Pharmacia delayed the 4A

process by failing "to negotiate an agreement with Mystic after Mystic instituted the notification

procedure pursuant to Chapter 21E, § 4A in 2001."  Notably, Pharmacia has not demonstrated its

own good faith or sought to support the fact that it submitted a bad faith offer to repurchase

property – worth many millions of dollars – for a mere $300,000 in alleged satisfaction of

Mystic's claim during the 4A process.  In short, Pharmacia frustrated the 4A process through

uncooperative behavior and unreasonable demands, which actions interfered with Mystic's

intention of resolving the dispute without litigation.  Pharmacia's offer to purchase the property

from Mystic for $300,000 was clearly not a good faith gesture and just another attempt by

Pharmacia to frustrate the 4A process.

Gen Laws c. 21E, § 4A(f) provides that:

"If the court finds that (1) the plaintiff did not participate in negotiations or dispute
resolution in good faith; (2) the plaintiff had no reasonable basis for asserting that the defendant
was liable, or (3) the plaintiff's position with respect to the amount of the defendant's liability
pursuant to the provisions of this chapter was unreasonable, it shall award litigation costs and
reasonable attorneys' fees to the defendant."

In order for a plaintiff or third-party plaintiff to recover fees, it must be shown, *inter alia,* that

the complainant was "successful" in obtaining a finding that the other party was liable.  M.G.L.

c. 21E, § 4A(d); Buddy's, Inc. v. Town of Saugus, 62 Mass. App. Ct. 256, 261 (2004).  It would

be inconsistent and contrary to the statutory purposes to permit an unsuccessful Defendant,

against whom a finding of liability has entered, to recover fees and costs under 4A(f). Pharmacia's actions do not demonstrate that it succeeded in finding Mystic liable at trial or that Mystic's claim was so unfounded, based upon unreasonable positions or lack of good faith. It would be prudent to read the all the provisions of 4A permitting the award of attorneys' fees together to render meaning to 4A(f) that requires the party seeking fees and costs to be the prevailing party. Pharmacia was not a "successful" or prevailing party as envisioned by Section 4A that would entitle it to attorneys' fees or costs pursuant to M.G.L. c. 21E, § 4A(f) and accordingly, its claim for fees and costs must be denied.

In compliance with Gen Laws c. 21E, § 4A(f) Mystic offered during the 4A process to mediate the matter with Pharmacia. See Zankowski Aff. at ¶ 6. With Mystic's approval, counsel for Mystic suggested to counsel for Pharmacia that the matter be mediated with a mediator skilled in environmental liability and M.G.L. 21E issues. See Zankowski Aff. at ¶ 6. Although Pharmacia's attorneys considered the offer, they ultimately rejected the idea. See Zankowski Aff. at ¶ 7. The offer to mediate clearly goes to the heart of Gen Laws c. 21E, § 4A(f), wherein the Plaintiff is required to participate in dispute resolution. Further, Mystic had evidence that Pharmacia was indeed a liable party under the Statute – reports provided by O'Donnell Sand & Gravel to Mystic and Modern, prepared by third-party environmental engineers, clearly stated that Monsanto (Pharmacia's predecessor) contaminated the property with, *inter alia,* lead and arsenic. Mystic's demands on Pharmacia were never unreasonable as they were always based on a specific development scenario and were always premised on the clear and strict liability of Pharmacia, coupled with what is an allowed remediation cost under M.G.L. 21E. At no time did Mystic demand that Pharmacia's liability extend beyond what is clearly stated in the Statute.

1.      **Entitlement to Fees under M.G.L. c. 21E, § 4A does not take into account conduct after initiation of litigation**

Further to the foregoing, should the Court be inclined to review Pharmacia's Motion notwithstanding the fact that it was not a successful claimant, Pharmacia inappropriately relies upon purported acts or positions of Mystic taken after the initiation of litigation. "Section 4A encourages parties to settle environmental liability suits *without formal litigation proceedings*." Zecco, Inc. v. The Travelers, Inc., 938 F.Supp. 65, 66 (1996)(emphasis added). Accordingly, analysis under Section 4A is limited to inquiry and review of compliance with the 4A procedures and conduct of the parties prior to the initiation of litigation. See Frontier Ins. Co. v. A. Anthony Tappe and Assoc., Inc., 2002 WL 1493746 at *4 (Mass. Super. 2002)(noting the "pre-suit requirements" of 4A). Negotiation after the filing of the lawsuit is not considered in connection with a defendant's request for fees and costs under Section 4A(f). Newly Weds Foods, Inc. v. Westvaco Corp., 2002 WL 1923864 at *3 (Mass. Super. 2002)("the Legislature contemplated pre-suit negotiation"). The purposes of 21E and 4A in particular are to encourage quick and efficient response actions with a minimum of negotiation, which must occur before the litigation may be filed. Buddy's, Inc. v. Town of Saugus, 62 Mass. App. Ct. 256, 262 (2004).

The focus of Section 4A is particularly on pre-litigation procedures and on the provisions of 4A(d) and (f). Accordingly, the Court should look to the parties' acts and compliance with the 4A procedures prior to the institution of litigation because the statutory goal is to avoid expensive and time-consuming litigation and to reward those parties who are forced to secure judicial resolution when the other party fails to act in good faith or acknowledge its clear liability. See id.

Thus, applying the appropriate standard of review renders large portions of Pharmacia's Motion irrelevant to a determination of whether a party is entitled to attorneys' fees and costs

under Section 4A.  Pharmacia's allegations about Mystic's alternate theories of liability, various litigation matters, and the parties' settlement negotiations undertaken once litigation was initiated are simply not part of the 4A review process for making a determination as to Mystic's entitlement to its attorneys' fees and costs.  During the 4A process, it became abundantly clear that Pharmacia was dragging its feet in order to have Mystic possibly miss its filing deadlines with respect to asserting and protecting its rights in litigation.  At no time during the 4A process did Pharmacia ever express any good faith desire to enter into fruitful discussions and negotiations about how best to cleanup the property.  Pharmacia continued to stall the process by asserting its typical *Stalingrad* defense tactics, hoping to deflect the focus from its clear and strict liability.  Thus, it never entered into meaningful and appropriate negotiations to resolve the matter before the litigation ensued.

> **2.      Pharmacia has failed to demonstrate that Mystic did not negotiate in good faith or took an unreasonable position**

Although Mystic expressly denies that Pharmacia has the right to seek attorneys' fees or that any inquiry into settlement negotiations after the process concluded would be appropriate, without waiving the foregoing, Mystic will address the misstatements and mischaracterizations of facts that Pharmacia relies upon in seeking its fees and costs.

In connection with the exchange of reasonable information during the 4A process, the statute envisions clarification, not rebuttal.  See Frontier Ins. Co. v. A. Anthony Tappe and Assoc., Inc., 2002 WL 1493746 at *5 (Mass. Super. 2002).  "The… good faith negotiations foreseen in §4A(b) need not be too extensive…."  Zecco, Inc. v. The Travelers, Inc., 938 F.Supp. 65, 68 (1996).  Pharmacia was not denied any relevant and material information necessary to evaluate Mystic's claim, as it had in its own files all the documentation indicating the presence of the contamination it caused.  C.f. Merit Oil of Massachusetts, Inc. v. Baer, 2000 WL

14774119, at *12 (Mass. Super. 2000)(plaintiff did not even establish owner or operator status under M.G.L. c. 21E). Although Mystic attempted on numerous occasions to enter into a dialogue or discussion of Pharmacia's liability, Pharmacia refused to participate, never making any substantive offer during the 4A process other than the $300,000 to repurchase the property outright. See Zankowski Aff. at ¶ 8.

Pharmacia received substantially the essence of Mystic's case prior to litigation and no documentation obtained via discovery in litigation altered the fact that Pharmacia's historical operations resulted in no more than 90% of the contamination of the property. See Memorandum of Decision, Findings of Fact, at ¶30. This Court, in its Memorandum of Decision, dated June 5, 2006, noted that Pharmacia failed "to negotiate an agreement with Mystic after Mystic instituted the notification procedure pursuant to Chapter 21E, § 4A in 2001." Memorandum of Decision, Rulings of Law, at ¶29. This Court had the benefit of evidence on this issue and ruled that Pharmacia inhibited the 4A process and thus, failed to negotiate in good faith. Moreover, although it has been held that taking an aggressive and optimistic position on settlement is not evidence of bad faith or beyond the outer reaches of reasonableness, Newly Weds Foods, Inc. v. Westvaco Corp., 2002 WL 1923864 at *4 (Mass. Super. 2002), in this case, Pharmacia did not participate in negotiations in good faith or assist in the investigation of the property. Thus, Mystic had no choice but to rely upon the potential levels of contamination and costs of remediation based upon Mystic's limited sampling, analysis, and comparison to Pharmacia's level of contamination at the adjacent site, and limited reports obtained from O'Donnell Sand & Gravel.

At no time during the 4A process did Pharmacia ever offer to provide Mystic with any of the voluminous documentation that Pharmacia so prominently discusses in its Opposition to

#595370v1                                    9

Mystic's Motion for Attorneys' Fees and Costs. By offering such documentation, Pharmacia would have undoubtedly streamlined Mystic's expenses and continued environmental investigations to locate the contaminated soils, groundwater, and sediments at and around the property. Such contamination was the clear responsibility of Pharmacia and resulted from Pharmacia's releases and threatened releases of contaminants at the site. See Zankowski Aff. at ¶ 9. The so-called signature contaminants at the property were consistent and traceable to Pharmacia's operations – arsenic and lead are clearly and scientifically linked to the chemical manufacturing and operations of Pharmacia at the property.

a.    Mystic's demands prior to litigation were not unreasonable

Pharmacia was on notice from the initiation of the 4A process that its liability was reasonably clear. Actually, Pharmacia was even put on notice prior to the formal 4A process beginning, as Mystic's attorneys sent a letter to Pharmacia notifying them about the pending sale of the property and the potential for Mystic seeking Pharmacia's assistance in cleaning up the contamination at the property. See Zankowski Aff. at ¶ 10. Indeed, the Court ultimately found that Pharmacia's historical chemical operations caused 90% of the contamination at the property, establishing the reasonableness with which Mystic pursued Pharmacia. Memorandum of Decision, Rulings of Law, at ¶30. As this Court found, testing on behalf of Pharmacia in 1979, 1980 and 1983 revealed contamination in the groundwater. Memorandum of Decision, Findings of Fact, at ¶6. Similarly, Pharmacia was aware of the significant contamination caused by its chemical operations in Everett, when it remediated the western parcel of the property at a cost in excess of $30 million. See id. at ¶¶ 28-30. Pharmacia's only defense focused not on any defense to its own past contaminating actions, but to invoke equitable factors that would serve only to reduce any award in Mystic's favor. Thus, by its own trial strategy, Pharmacia acknowledged

that its liability was clear; however, it never, in good faith, agreed during the 4A process that it had contaminated the site and was therefore responsible to participate in its cleanup. This was not a difficult case in the sense that Pharmacia had relevant and important points which cast doubt on its contamination of the property. Cf. Newly Weds Foods, Inc. v. Westvaco Corp., 2002 WL 1923864 at *3 (Mass. Super. 2002).

Pharmacia mischaracterizes the substance of Mystic's settlement demands in an attempt to create some evidence of unreasonableness. Pharmacia never once volunteered information as to its knowledge or operations at the property that caused the contamination and failed to assist or finance in any way the investigation into the scope of contamination at the property. See Zankowski Aff. at ¶ 11. Without knowledge of the extent or types of contamination, Mystic was not in a position to allocate or apportion liability to anything less than Pharmacia's participation in remediating all contamination caused by its operations. Zankowski Aff. at ¶ 12. Apart from Pharmacia's offer to resolve the matter and purchase the property for $300,000, Pharmacia did not engage in any discussion about other various levels of liability or engage in a dialogue as to counter-offers to Mystic's demand. See Zankowski Aff. at ¶ 13. Without Pharmacia's participation in the "give and take" of a reasonable negotiation, Mystic was left with no choice but to stand by its offer, which was not unreasonable given Pharmacia's refusal to participate in negotiation as envisioned by the statute. Further, Mystic, at the time of the 4A process, did not have any information that would lead it to believe that Modern, by virtue of using the property as a construction laydown and staging area, would have contributed in any significant manner to the extensive, documented, contamination of soil, groundwater, and possibly sediments at the property. Indeed, evidence at trial merely showed that Modern used the site for the storage and culling of construction debris – and such debris did not significantly

contribute to contamination at the property. Testimony and evidence at trial showed that Modern did indeed fully comply with its Administrative Consent Order with the Massachusetts Department of Environmental Protection and met or exceeded all of the cleanup requirements in said Order, including, without limitation, removal and disposal of the soils under the construction debris stockpiles.

Contrary to Pharmacia's assertions, it never once offered 100% of the response costs necessary to remediate its contamination. Instead, it always sought to settle and resolve the matter with finality based only upon then known and identified UCL exceedance areas. When counsel for Mystic inquired as to what "known and identified UCL exceedance area cleanup" would entail, Pharmacia's counsel responded that only those areas then identified by Dr. Richard Hughto as definitely contaminated would be part of response costs that Pharmacia would entertain participating in. See Zankowski Aff. at ¶ 14. Mystic's counsel explained that this would not be an acceptable solution, as there were doubtless many more as yet unknown areas of contamination that would require cleanup and Dr. Hughto all but guaranteed that fifty percent of future investigatory borings would show additional contamination that would require additional cleanup under the statute. See Zankowski Aff. at ¶ 15.

Pharmacia further seeks to fabricate Mystic's purported unreasonableness by resorting to undefined semantics, referring to Mystic's supposed demands for payment of its "development costs." In connection with the settlement discussions held between the parties, however, Mystic never once demanded that Pharmacia fund any of its potential development costs of the property. See Affidavit of John H. Pastore at ¶ 4 (hereinafter "Pastore Aff."). Incremental soil handling costs are those costs necessary for the remediation of the UCL areas, because those areas are beneath anywhere from 3 to 12 feet of clay cap and the materials in the interim may require

special handling, containment, and/or disposal due to contamination not in excess of UCL levels. See Pastore Aff. at ¶ 5.  Contrary to Pharmacia's assertion, such costs involved in the incremental soil handling are necessary in connection with the clean-up of the property, and thus, are reasonable, necessary, and reimbursable response costs.  Due to the nature of the property, storage or burial of non-UCL exceeding soils on-site during remediation of the UCL exceeding soils is not a realistic possibility.  Rather, reasonable and necessary handling and/or removal costs for such contaminated soils will be required in order to clean-up the property.

Mystic's actions cannot be found to be unreasonable based upon its ultimate success at trial and based upon Pharmacia's actions in frustrating and delaying the 4A process.  Mystic simply could not unilaterally resolve the matter during the 4A process without the willing cooperation of Pharmacia, which it never received.

    b. <u>Mystic negotiated with Pharmacia in good faith</u>

Given that "Pharmacia spent approximately $3 million to assess the contamination of the western parcel and another $30 million to remediate it," Mystic's position with regard to Pharmacia's liability for the adjoining property was not unreasonable or advanced in bad faith. See <u>Memorandum of Decision</u>, dated June 5, 2006, Findings of Fact at ¶ 30.  The estimates for remediation of the site were calculated to be not less than $1.5 million nor more than $15 million – the variation was due to divergent development plans and the unknown quantity of contamination present under the clay cap.  See <u>Memorandum of Decision</u>, dated June 5, 2006, Findings of Fact at ¶ 32.

Pharmacia attempts to manufacture lack of good faith by pointing to Mystic's differing development scenarios and valuations of the property.  For example, Pharmacia makes an issue of the remediation cost of $810,000 which contrasts with the figure of $17,600,000 provided one

week later – ignoring the fact that both of these figures addressed wildly different development scenarios, one being the continued use of the site as a lay-down yard and use of same as collateral for a loan and the other for the construction of a new Red Sox stadium.  Pastore Aff. at ¶ 6.  The various development scenarios and the divergent costs associated therewith do not in any way demonstrate bad faith; in fact, they demonstrate that Mystic shared a multitude of information with Pharmacia to establish a cooperative atmosphere within which to agree to remediation in connection with different development scenarios for the property.

Pharmacia seeks to have this Court find that Pharmacia's demands for documents pertaining to the purchase of the property evidence Mystic's bad faith or its refusal to participate in the 4A process; however the reality is quite to the contrary.  Mystic appropriately refused to permit Pharmacia's fishing expedition into aspects of Mystic's ownership which had nothing to do with Pharmacia's liability or its contamination of the property.  Rather than operate as a bar to Pharmacia's settlement, the refusal to produce documents not related or required by 4A only affects the degree of Pharmacia's liability and does not stand as a bar to Pharmacia engaging Mystic in resolution of the matter or provide any basis to dispute its liability for the contamination.

Pharmacia has presented no basis to conclude that Mystic negotiated in bad faith.  The length of the 4A process in this case evidences the multiple attempts by Mystic to appease Pharmacia and productively move the 4A process forward.  Unfortunately Pharmacia's unreasonable and dilatory demands delayed the process such that Mystic was left with no choice but to file suit prior to the expiration of the statute of limitations.  Mystic shared all reasonable evidence necessary for Pharmacia to understand the basis for its liability and the potential development and remediation scenarios that Mystic was then pursuing.  This Court should not

establish a precedent that suggests a party's attempts to negotiate the amount of a contaminating

party's liability in connection with the owner's uncertain development and remediation needs is

bad faith, as such actions were undertaken by Mystic in the interest of balancing the best use of

the property with the necessary and reasonable remediation required to achieve whatever

development might be feasible.

     c.   <u>Mystic took reasonable and appropriate steps in litigation that were not
unreasonable or in bad faith</u>

Pharmacia asserts that Mystic's litigation strategies should give rise to an award of

attorneys' fees and costs to Pharmacia.  Despite the fact that an award of fees and costs under 4A

does not take into account matters after the institution of litigation, Mystic hereby rebuts

Pharmacia's false and unnecessarily inflammatory remarks about the history of settlement

negotiations after the filing of this lawsuit.  Mystic asserted alternate theories of common-law

liability in its Complaint.  Such counts were included in good faith, based upon Mystic's belief at

the time that there was a potential that past contamination from the adjacent site had impacted

and contaminated the property at issue.  After discovery and investigation, Mystic voluntarily

dismissed the common law counts when discovery revealed that these claims did not enjoy the

same degree of evidentiary support as did its statutory claims.  Such action was taken in the best

interests of the client and in accordance with the ethical and procedural rules governing assertion

of such claims.  Similarly, Pharmacia's historical ownership and subsequent inter-company

transfers of its liability for contamination at the property resulted in clouding the ownership issue

and masking who was the proper defendant until after discovery occurred.  The confusion as to

the appropriate liable party was evidenced by the production of Pharmacia's documents from

Monsanto's offices in Woburn and from Solutia's offices in St. Louis.  <u>See</u> Zankowski Aff. at ¶

16.  Further, this issue could have been very easily and efficiently handled if Pharmacia would

have stipulated that it was indeed the successor in interest to the so-called old Monsanto. During

a hearing in front of this Court, it was asked if Pharmacia would stipulate to this fact, and

counsel for Pharmacia refused to do so.

After the institution of litigation and pursuant to Local Rule 16.1, in April 2004 Mystic

was required to forward a settlement demand. Based upon Pharmacia's refusal to engage in

negotiation under the 4A process, Mystic relied upon its knowledge of the potential

contamination and the remediation estimates and comparisons to the adjacent site in preparing a

demand for $6,100,000. It is ludicrous for Pharmacia to claim that this offer was unreasonable

or in bad faith, because it was advanced in connection with the local Rules of Civil Procedure

and put forth in good faith. Given the outcome of the trial and the expected remediation costs,

the offer was certainly quite reasonable.

Discovery in this case was complex, as environmental litigation invariably is, with

Pharmacia producing documents dating back nearly one-hundred years. See Merit Oil of

Massachusetts, Inc. v. Baer, 2000 WL 1474119 (Mass. Super. 2000)(noting that environmental

litigation is complex, involving engineering, environmental and legal specialists). Although

Pharmacia ignores its own burdensome discovery tactics, it suggests that Mystic's discovery

requests were overbroad, ignoring the fact that Pharmacia refused to stipulate to liability,

ownership, chemicals manufactured at the site, or any other matter, resulting in Mystic having no

choice but to seek those documents to support its claims and establish liability – including those

that would be necessary to establish what chemicals were manufactured at Pharmacia's chemical

factory. It is remarkable that Pharmacia seeks to use its own *Stalingrad* defense tactics as

evidence of Mystic's overbroad discovery; had Pharmacia cooperated with Mystic to narrow the

dispute to a simple determination of Pharmacia's extent of liability – rather than challenging the

very fact that its known, chemical manufacturing processes contaminated the property – Mystic would not have been forced to seek the voluminous documents necessary to establish the essential elements of Pharmacia's operations at the property.

Mystic willingly narrowed its discovery requests when faced with Pharmacia's production in excess of 170 boxes of documents. Pharmacia did not provide an index for these documents until Mystic indicated it would seek the assistance of the Court in response to Pharmacia's mass-production of documents in a disorderly fashion. Although Mystic was sanctioned for difficulties it experienced in timely complying with its discovery responsibilities, it has been sanctioned for such conduct and the Order of the Court should not be deemed an unreasonable or bad faith action by Mystic because no such finding was every issued by the Court.

Pharmacia also suggests that Mystic's noncompliance with aspects of the Massachusetts Contingency Plan was a bad faith maneuver to hamper negotiations. The Court, however, found that any noncompliance with the MCP did not change the essential nature of the contamination and Mystic's response actions were necessary and appropriate. See Memorandum of Decision, dated June 5, 2006 at Rulings of Law ¶¶ 32-33. Ultimately, the Court agreed with Mystic's evaluation of Pharmacia's liability, awarding a substantial portion of past and future response costs to Mystic. Pharmacia's complaints about Mystic's discovery responses ring hollow as the documents it sought did not impact the ultimate ruling that Pharmacia was responsible for 90% of the contamination. See id. at ¶¶ 30, 34.

Pharmacia finally points to settlement discussions that took place during the course of litigation as alleged evidence of unreasonableness or bad faith. But it does so without providing the Court the complete story and aspects of the settlements discussed. In spring of 2005, at the

request of Modern's bonding company, counsel for Mystic suggested to counsel for Pharmacia that executives from both parties have a settlement discussion, which resulted in a telephone call from Pharmacia to Modern. See Zankowski Aff. at ¶ 17; Pastore Aff. at ¶ 7. The parties ultimately met without counsel, wherein Pharmacia presented its Exhibit D-248, settlement PowerPoint slideshow. See Pastore Aff. at ¶ 7. Pharmacia threatened appeal, suggested that Modern would ultimately recover no money as it supposedly had incurred no response costs; suggested that Modern would have to file ancillary actions to recover monies, and ultimately Pharmacia would delay the litigation until at least 2007, which would impact Modern's ability to sell the property – yet, all of this is presented by Pharmacia under a claim that it was Mystic acting unreasonably. Mr. Pastore ultimately understood the substance of the offer to be that Pharmacia would clean up its contaminated soils and groundwater on the property to the MCP requirements and in connection with Mystic's final development plans, to which Mr. Pastore and Pharmacia's representative agreed in concept would be a fair settlement. See Pastore Aff. at ¶ 7. However, the draft of the settlement agreement presented by Pharmacia's attorneys represented a whole different scenario than that understood by Mr. Pastore when the matter was discussed in principle. See Pastore Aff. at ¶ 8. Pharmacia's counsel insisted that the settlement only be as to identified UCL exceedance areas with no provision for the clean-up of additional areas that might be later identified as contaminated, and with no provision for the incremental soil handling expenses necessary to access and clean up the contaminated soils below the clay cap of tunnel muck. See Pastore Aff. at ¶ 8. Pharmacia further would not commit to a remediation of the groundwater. See Pastore Aff. at ¶ 8. The settlement presented by Pharmacia after the May 2005 meeting was not what was agreed upon and accordingly, after attempts by both parties' counsel to draft documents which represented their respective clients' positions, was rejected.

<u>See</u> Pastore Aff. at ¶ 8.  Most egregious in these settlement discussions was Pharmacia's

consistent position that it would not agree to a permanent closure of the site.  <u>See</u> Pastore Aff. at

¶ 8.

On the eve of trial, Pharmacia again approached Mystic to open a dialogue on settlement.

Similar to the last offer, Pharmacia would not commit to the remediation of all UCL

contaminated soils under the clay cap, and would only agree to clean-up those isolated sample

spots already identified by Mystic's consultants.  <u>See</u> Pastore Aff. at ¶ 9.  Most importantly,

Mystic never demanded that Pharmacia pay 100% of the response costs – which Pharmacia

consistently misstates in its brief – Mystic always sought response costs attributable to

Pharmacia's contamination, which were always stated to be understood as existing exclusively

below the clay cap.  <u>See</u> Zankowski Aff. at ¶ 18.  Pharmacia's April 2006 offer did not include

securing a permanent closure of the site.  Mystic insisted that Pharmacia's offer include the

incremental soil handling costs that would be reasonably necessary to access and remediate

Pharmacia's contamination, to which Pharmacia consistently refused to acknowledge as a

response cost.  <u>See</u> Zankowski Aff. at ¶ 18.

Upon review of the settlement and litigation process, it simply cannot be said that Mystic

acted unreasonably or in bad faith in its uphill battle against Pharmacia.  Pharmacia refused to

cooperate or stipulate to otherwise undisputed fact, but now complains that Mystic's need to

establish same was unreasonable.  Pharmacia refused to accept that Mystic only wanted

Pharmacia's contribution to cleaning up its contamination below the clay cap of tunnel muck and

would not accept the liability for its undisputed historical contamination and the presence of

signature pollutants from its 100 years of chemical operations in the soils and groundwater below

the clay cap.  Pharmacia employed a defense that sought to take advantage of a company in its

wind-down period and leverage the shortage of funds and personnel at Modern and Mystic to its advantage in litigation of Pharmacia's strict liability. It was undoubtedly not Mystic that was unreasonable or lacking in good faith throughout the 4A process and litigation. It appears that Pharmacia's strategy was to wait out what appeared to be Modern and Mystic's demise, leveraging Plaintiff's financial difficulties for an advantageous settlement with respect to the litigation and Pharmacia's clean-up obligations. No basis exists for the imposition of Pharmacia's attorneys' fees and costs against Mystic.

**B.    PHARMACIA'S REQUESTED FEES AND COSTS ARE UNREASONABLE**

If this Court determines that Pharmacia is entitled to an award of fees and costs, which Mystic vehemently denies, Pharmacia has failed to establish the reasonableness of its own costs. An award of attorneys' fees and costs under M.G.L. c. 21E must comport with Massachusetts case law that requires an award of attorneys' fees to be reasonable. Black v. Coastal Oil New England, 57 Mass. App. Ct. 696, 698 (2003). Judges have wide discretion in determining attorney fee awards, which should be supported by the evidence and have some detail and analysis to support their conclusions. See Robbins v. Robbins, 19 Mass. App. Ct. 538, 541-42 (1985). Ultimately, the award amount should be "reasonable" and represent the fair market value of counsel's time reasonably spent on the case. See Hanover Insurance Co. v. Sutton, 46 Mass. App. Ct. 153, 176 (1999); Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993); Torres v. Attorney Gen., 391 Mass. 1, 16 (1984). Several factors bear on the Court's discretion, "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area and the amount of awards in similar cases." Linthicum v. Archambault, 379 Mass. 381, 388 (1979).

There is no indication that Pharmacia has reduced its fees for issues not directly related to the litigation, or for duplication of efforts. See id.; see also Denton v. Boilermakers Local 29, 673 F. Supp. 37, 52 (D. Mass. 1987); Grendel's Den Inc. v. Larkin, 749 F.2d 945,950 (1st Cir. 1984). Similarly, Pharmacia has no right to seek attorneys' fees or costs related to its representation of Monsanto or Solutia, as those parties maintained no counterclaim against Mystic upon which they prevailed in a finding of liability. Mystic appropriately excised its costs associated solely with the representation of Modern; but Pharmacia has failed to excise its fees and costs attributable to Solutia and Monsanto. Ultimately, the Court must take into account the fact that Pharmacia was not the successful party, having a substantial judgment entered against it and it should reduce Pharmacia's request for fees accordingly. Mystic further suggests that the Court should further investigate Pharmacia's billing records to determine if there was unnecessary or excessive duplication of efforts, as Pharmacia has not indicated if it in fact accounted for same in determining its reasonable fee.

## CONCLUSION

For the foregoing reasons, and as further supported by the facts presented in the Affidavit of Doreen M. Zankowski, filed herewith, Mystic is entitled to recovery of its attorneys' fees and costs associated with litigating the clear liability of Pharmacia, which resulted, in part, from Pharmacia's lack of good faith negotiation during the Section 4A process. The fees and costs requested are reasonable and comport with the requirements as determined by the Courts for such fees. On the other hand, Pharmacia's request for fees is unjustified and should be denied.

Mystic agrees that the Court would benefit from oral argument on the matters presented herein. While the parties agreed to reserve entry of exhibits relating to attorneys' fees and costs until after the Court's decision, Mystic submits that in light of the various Affidavits submitted

under oath in connection with the parties' Motions for attorneys' fees and costs, in the interests

of judicial economy it is unnecessary for the Court's determination to entertain further testimony

from the numerous witnesses it had previously had before it during trial of this matter.


Respectfully submitted,


**MYSTIC LANDING, LLC and
MODERN CONTINENTAL CONSTRUCTION CO.,
INC.**

By its attorneys:


/s/ Doreen M. Zankowski
Robert G. Flanders, Jr. (BBO #170820)
Doreen M. Zankowski (BBO #558381)
Jeremy Blackowicz (BBO #650945)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109-1775
DATED:  July 21, 2006          (617) 345-9000

<u>**CERTIFICATE OF SERVICE**</u>

I, Doreen M. Zankowski, hereby certify that on this 21st day of July 2006, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

John M. Stevens, Esq.
Adam P. Kahn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts  02210

Mark S. Granger, Esq.
Douglas B. Otto, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Howard G. Guggenheim
P.O. Box 736
Scituate, MA 02066

/s/ Doreen M. Zankowski