UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>Defendant.<br><br>PHARMACIA CORPORATION,<br>Third-Party Plaintiff,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>Third-Party Defendant.<br><br>PHARMACIA CORPORATION,<br>Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY,<br>Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY,<br>Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL,<br>    Fourth-Party Defendants. | **CIVIL ACTION NO.**<br>**04-10180 NMG** |

**AFFIDAVIT OF JOHN H. PASTORE IN SUPPORT OF PLAINTIFF, MYSTIC LANDING, LLC'S OPPOSITION TO PHARMACIA CORPORATION'S MOTION FOR ATTORNEYS' FEES AND COSTS**

I, John H. Pastore, being of age and duly sworn do hereby state as follows:

1. I am the president of Modern Continental Companies, the managing partner of Mystic Landing, LLC ("Mystic") and have held this position since July 2002. I am also the president of Modern Continental Construction Company, Inc. ("Modern").

2. I make the following representations based upon my personal knowledge thereof.

3. This affidavit is filed in support of Plaintiff Mystic's Opposition to Pharmacia Corporation's ("Pharmacia") Motion for Attorneys' Fees and Costs.

4. During the course of settlement discussions with Pharmacia, Mystic never once demanded that Pharmacia fund any development costs of the property.

5. Mystic understood incremental soil handling costs, which were requested during settlement discussion, as those costs necessary for the remediation of the UCL areas, because those areas are beneath anywhere from 3 to 12 feet of clay cap and the materials in the interim may require special handling, containment, and/or disposal due to contamination not in excess of UCL levels.

6. At one point early in the analysis of the property, Mystic was provided with a draft remediation cost of $810,000 which represented continued use of the site as a lay-down yard and was gathered as part of placing the property as collateral for a loan. Mystic was later provided with a draft remediation cost of $17,600,000 which was an estimate for remediation in connection with the construction of a new Red Sox stadium at the property.

7. In spring of 2005, I received a telephone call from Pharmacia to discuss whether a possibility for settlement existed. I met with representatives of Pharmacia, without

counsel, wherein Pharmacia presented a PowerPoint slideshow on its position. Pharmacia suggested, *inter alia*, that it would appeal any adverse decision, that Modern would ultimately recovery no money as it supposedly had no response costs, that Modern would have to file ancillary actions to recover monies and ultimately Pharmacia would delay the litigation until at least 2007 which would impact Modern's ability to sell the property. It was my understanding of Pharmacia's settlement proposal that Pharmacia would clean up its contaminated soils and groundwater on the property to the MCP requirements and in connection with the final development plans, which I agreed in concept would be a fair settlement.

8. After the agreement in principle at the May 2005 settlement meeting, I received the draft settlement agreement presented by Pharmacia's attorneys which represented a whole different scenario than I understood the settlement to be. Pharmacia now insisted that the settlement only be as to identified UCL exceedance areas with no provision for unknown contamination and no provision for the incremental soil handling expenses necessary to access and clean up the contaminated soils below the clay cap of tunnel muck. Pharmacia further would not commit to a remediation of the groundwater. The settlement presented by Pharmacia after the May 2005 meeting was not what was agreed upon and accordingly, after failed attempts to agree upon a settlement document which represented the settlement I understood to have been reached, I rejected Pharmacia's offer. Pharmacia's consistent position was that it would not agree to a permanent closure of the site.

9. On the eve of trial Pharmacia again approached Mystic to open a dialogue on settlement. Similar to the last offer, Pharmacia would not commit to the remediation of all UCL

contaminated soils under the clay cap, and would only agree to clean-up those spots already identified by Mystic's consultants.

**FURTHER YOUR AFFIANT SAYETH NOT.**

**SIGNED UNDER THE PENALTIES OF PERJURY THIS 21st DAY OF July, 2006.**

/s/ John H. Pastore