**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MYSTIC LANDING, LLC,  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>PHARMACIA CORPORATION,  )<br>Defendant.  )<br>  )<br>PHARMACIA CORPORATION,  )<br>Third-Party Plaintiff,  )<br>  )<br>v.  )<br>  )<br>MODERN CONTINENTAL CONSTRUCTION  )<br>CO., INC.,  )<br>Third-Party Defendant.  )<br>PHARMACIA CORPORATION,  )<br>Third-Party Plaintiff,  )<br>  )<br>v.  )<br>  )<br>BOSTON EDISON COMPANY,  )<br>Third-Party Defendant.  )<br>  )<br>v.  )<br>  )<br>BOSTON EDISON COMPANY,  )<br>Fourth-Party Plaintiff,  )<br>  )<br>v.  )<br>  )<br>O'DONNELL SAND & GRAVEL, INC.  )<br>And MARY O'DONNELL,  )<br>    Fourth-Party Defendants.  )<br>  ) | **CIVIL ACTION NO.
04-10180 NMG** |

**AFFIDAVIT OF DOREEN M. ZANKOWSKI, ESQ. IN SUPPORT OF PLAINTIFF,
MYSTIC LANDING, LLC'S OPPOSITION TO PHARMACIA CORPORATION'S
MOTION FOR ATTORNEYS' FEES AND COSTS**

I, Doreen M. Zankowski, Esq. being of age and duly sworn do hereby state as follows:

1. I am a partner in the law firm of Hinckley, Allen & Snyder LLP ("HAS"), and have been a member in good standing of the bar of the Commonwealth of Massachusetts since 1991.

2. I represent Plaintiff Mystic Landing, LLC ("Mystic"), and Third-party Defendant Modern Continental Construction Co., Inc. ("Modern"), in the above-captioned matter and make the following representations based upon my personal knowledge thereof.

3. This affidavit is filed in support of Plaintiff Mystic's Opposition to Pharmacia Corporation's ("Pharmacia") Motion for Attorneys' Fees and Costs.

4. I have been involved in this matter and litigation since its inception and was involved throughout the M.G.L. c. 21E, § 4A notification and negotiation process and have first hand knowledge of the matters stated herein.

5. After receipt of the Memorandum of Decision dated June 6, 2006, I have twice requested, once verbally and a second time in writing, of Pharmacia's counsel to direct Pharmacia to make payment of the 90% of Mystic's past response costs awarded by the Court.

6. In compliance with Gen Laws c. 21E, § 4A(f), during the 4A process, I offered on behalf of Mystic to mediate the matter with Pharmacia.  It was my suggestion that the parties submit the dispute to a mediator skilled in environmental liability issued and familiar with M.G.L. c. 21E.

7. After consideration, Pharmacia's attorneys, on behalf of their client, rejected Mystic's offer to mediate.

8. During the course of the 4A process I attempted on numerous occasions to enter into a dialogue or discussion of Pharmacia's liability with its attorneys. Pharmacia refused to participate in a negotiation of liability, and never made a substantive offer during the 4A process other than the $300,000 to repurchase the property outright.

9. At no time during the 4A process did Pharmacia ever offer to provide Mystic with any of the voluminous documentation that Pharmacia so prominently discusses in its Opposition to Mystic's Motion for Attorneys' Fees and Costs. By offering such documentation, Pharmacia would have undoubtedly streamlined Mystic's expenses and continued environmental investigations to locate the contaminated soils, groundwater, and sediments at and around the property. Such contamination was the clear responsibility of Pharmacia and resulted from Pharmacia's releases and threatened releases of contaminants at the site.

10. Pharmacia was put on notice prior to the formal 4A process, as Mystic's attorneys sent a letter to Pharmacia notifying them about the pending sale of the property and the potential for Mystic seeking Pharmacia's assistance in cleaning up the contamination at the property.

11. During the 4A process, Pharmacia never once volunteered information as to its knowledge or operations at the property that caused the contamination and failed to assist or finance in any way the investigation into the scope of contamination at the property.

12. Without knowledge of the extent or types of contamination, Mystic was not in a position to allocate or apportion liability to anything less than Pharmacia's participation in remediating all contamination caused by its operations.

13. Apart from Pharmacia's offer to resolve the matter and purchase the property for $300,000, Pharmacia did not engage in any discussion about other various levels of liability or engage in a dialogue as to counter-offers to Mystic's demand.

14. When discussing settlement, I inquired as to what "known and identified UCL exceedance area cleanup" would entail, Pharmacia's counsel responded that only those areas then identified by Dr. Richard Hughto as definitely contaminated would be part of response costs that Pharmacia would entertain participating in.

15. In connection with attempts to settle the matter, I explained that this would not be an acceptable solution, as there were many more unknown areas of contamination that would require cleanup and Dr. Hughto all but guaranteed that fifty percent of future investigatory borings would show contamination that required additional cleanup under the statute.

16. During litigation, Pharmacia would not stipulate as to it being the successor-in-interest to the old Monsanto and further produced documents from Monsanto's offices in Woburn and Solutia's offices in St. Louis, leading to difficulty in identifying the appropriate party for liability purposes.

17. In spring of 2005, at the request of Modern's bonding company, I suggested to counsel for Pharmacia that business persons from both parties have a settlement discussion, which resulted in a telephone call from Pharmacia to Modern.

18. During the course of settlement discussions, it was never Mystic's position that Pharmacia pay 100% of the response costs; Mystic always sought only those response costs attributable to Pharmacia's contamination, which such was always stated to be understood as existing exclusively below the clay cap.  Mystic did, however, consistently

#595901                                              4

insist that Pharmacia's offer include the incremental soil handling costs that would be reasonably necessary to access and remediate Pharmacia's contamination, to which Pharmacia consistently refused to acknowledge as a response cost

**FURTHER YOUR AFFIANT SAYETH NOT.**

**SIGNED UNDER THE PENALTIES OF PERJURY THIS 21st DAY OF July, 2006.**

/s/ Doreen M. Zankowski

#595901                                  5