## <u>EXHIBIT A</u>

**From:**       Zankowski, Doreen M.
**Sent:**       Wednesday, August 02, 2006 10:54 AM
**To:**         Fonte, Gina A.
**Subject:**    FW: Mystic v. Pharmacia


Please look into his reply for me.

 -----Original Message-----
From:        Kahn, Adam [mailto:APK@foleyhoag.com]
Sent: Tuesday, August 01, 2006 06:10 PM Eastern Standard Time
To:     Zankowski, Doreen M.
Cc:     Flanders, Robert G.; Stevens, John; Delisle, Elisabeth
Subject:     RE: Mystic v. Pharmacia

Doreen,

In accordance with 28 USC 1961, post-judgment interest is calculated from the date of the
entry of the judgment at the applicable federal rate.  For a judgment entered on June 5,
2006, the applicable federal rate is 5.03%.  See
http://www.mad.uscourts.gov/Common/interestpj.pdf.  Pharmacia will add interest at the
5.03% rate to the judgment amount based on an anticipated payment date of August 5, 2006.
We will need the W-9 if there is any hope of making that date.

Pharmacia disagrees that Mystic is entitled to prejudgment interest on the response costs.
Mystic requested that the Court enter a judgment against Pharmacia for response costs in
the amount of $223,861.20, see Mystic's Revised Request for Findings of Fact and
Conclusions of Law at 33, and the Court awarded Mystic 90% of those costs.  Mystic did not
request that the Court award it pre-judgment interest, id., and neither the Court's
Memorandum of Decision nor the Judgment make any such award.

Under this analysis, we are planning to send a check in the amount of $203,164.11.

Adam

Adam P. Kahn
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA  02210
(t) 617-832-1206/(f) 617-832-7000
akahn@foleyhoag.com


-----Original Message-----
From: Zankowski, Doreen M. [mailto:dzankowski@haslaw.com]
Sent: Thursday, July 27, 2006 1:21 PM
To: Kahn, Adam
Cc: Flanders, Robert G.
Subject: RE: Mystic v. Pharmacia


Dear Adam:

I received your July 26, 2006 e-mail, stating that Pharmacia Corporation wishes to make
payment in accordance with the Court's Order dated June 5, 2006 and inquiring as to the
rate of interest.

While I agree that the 12% rate of interest set by the Commonwealth applies, I disagree
that interest begins to accrue as of June 5, 2006, the date of judgment.  Mystic Landing
is entitled to prejudgment interest on the response costs.  It is Mystic Landing's
position that the interest on the response costs began to accrue when the costs were
incurred by Mystic Landing or at the very latest as of the date Mystic Landing provided
notice to Pharmacia Corporation under M.G.L. c. 21E §4A on August 27, 2001.

Mystic Landing incurred significant response costs in 2001, 2002, 2003, 2004, 2005 and 2006 before a judgment issued in this case.  The Court has ordered that Pharmacia Corporation must pay 90% of the response costs incurred as of April 7, 2006 which as of that date totaled $223,861.20.  To conclude that Mystic Landing is not entitled to prejudgment interest on its response costs would result in a windfall to Pharmacia Corporation. Essentially Pharmacia Corporation would be receiving the benefit of an interest free loan over those years.

Mystic Landing's position is that it is entitled to recover prejudgment interest on the remediation costs from the date the costs were incurred.  To the extent you disagree, please provide me with the basis for your position.

Thank you.

Doreen

Doreen M. Zankowski, Esq.
HinckleyAllenSnyderLLP
28 State Street, Boston, MA 02109
Phone: (617) 378-4222 (direct dial)
Fax: (617) 345-9020
dzankowski@haslaw.com
http://www.haslaw.com


NOTICE REGARDING CONFIDENTIALITY AND ATTORNEY/CLIENT PRIVILEGE

This electronic transmission, including any and all attachments, contains confidential information from the law firm of Hinckley, Allen & Snyder LLP.  It also may be privileged pursuant to the Attorney/Client Privilege, which is claimed to the maximum extent permitted by law.  The information is for the exclusive use of the addressee(s) named herein.  Disclosure, copying, distribution, or use of the contents of this transmission by anyone other than by the intended recipient(s) is prohibited.  If you have received this in error, please notify me by reply e-mail and delete the original transmission.

Further Notice:  Pursuant to IRS Circular 230 please be advised that, to the extent this communication contains any tax advice it is not intended to be, was not written to be, and can not be used by any taxpayer for the purpose of avoiding penalties under U.S. federal tax law.



-----Original Message-----
From: Kahn, Adam [mailto:APK@foleyhoag.com]
Sent: Wednesday, July 26, 2006 5:43 PM
To: Zankowski, Doreen M.
Cc: Flanders, Robert G.
Subject: RE: Mystic v. Pharmacia


I am targeting a payment on or about August 5, 2006.  The payment will include statutory interest between the time of the judgment and the time of the payment.

Regards,

Adam

Adam P. Kahn
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA  02210
(t) 617-832-1206/(f) 617-832-7000
akahn@foleyhoag.com

2

```
-----Original Message-----
From: Zankowski, Doreen M. [mailto:dzankowski@haslaw.com]
Sent: Tuesday, July 25, 2006 2:14 PM
To: Kahn, Adam
Cc: Flanders, Robert G.
Subject: RE: Mystic v. Pharmacia
```

Adam:

My client has requested that the check be made out to Modern Continental Construction Co., Inc.  Please send it to my attention.

When should we expect the check?

Thanks,

Doreen

Doreen M. Zankowski, Esq.
HinckleyAllenSnyderLLP
28 State Street, Boston, MA 02109
Phone: (617) 378-4222 (direct dial)
Fax: (617) 345-9020
dzankowski@haslaw.com
http://www.haslaw.com


NOTICE REGARDING CONFIDENTIALITY AND ATTORNEY/CLIENT PRIVILEGE

This electronic transmission, including any and all attachments, contains confidential information from the law firm of Hinckley, Allen & Snyder LLP.  It also may be privileged pursuant to the Attorney/Client Privilege, which is claimed to the maximum extent permitted by law.  The information is for the exclusive use of the addressee(s) named herein. Disclosure, copying, distribution, or use of the contents of this transmission by anyone other than by the intended recipient(s) is prohibited.  If you have received this in error, please notify me by reply e-mail and delete the original transmission.

Further Notice:  Pursuant to IRS Circular 230 please be advised that, to the extent this communication contains any tax advice it is not intended to be, was not written to be, and can not be used by any taxpayer for the purpose of avoiding penalties under U.S. federal tax law.

```
-----Original Message-----
From: Kahn, Adam [mailto:APK@foleyhoag.com]
Sent: Tuesday, July 25, 2006 11:50 AM
To: Zankowski, Doreen M.
Subject: RE: Mystic v. Pharmacia
```

To whom should the check be made out to?

```
-----Original Message-----
From: Zankowski, Doreen M. [mailto:dzankowski@haslaw.com]
Sent: Wednesday, July 19, 2006 12:57 PM
To: Kahn, Adam
Cc: Flanders, Robert G.
Subject: Mystic v. Pharmacia
```

Good Afternoon Adam:

Since the appeal period has expired, when can Mystic expect its 90% reimbursement for the incurred costs as the Judge ordered?

Please let me know as soon as possible.

Thank you.

Doreen

Doreen M. Zankowski, Esq.
HinckleyAllenSnyderLLP
28 State Street, Boston, MA 02109
Phone: (617) 378-4222 (direct dial)
Fax: (617) 345-9020
dzankowski@haslaw.com
http://www.haslaw.com <http://www.haslaw.com/>

NOTICE REGARDING CONFIDENTIALITY AND ATTORNEY/CLIENT PRIVILEGE

This electronic transmission, including any and all attachments, contains confidential
information from the law firm of Hinckley, Allen & Snyder LLP.  It also may be privileged
pursuant to the Attorney/Client Privilege, which is claimed to the maximum extent
permitted by law.  The information is for the exclusive use of the addressee(s) named
herein. Disclosure, copying, distribution, or use of the contents of this transmission by
anyone other than by the intended recipient(s) is prohibited.  If you have received this
in error, please notify me by reply e-mail and delete the original transmission.

Further Notice:  Pursuant to IRS Circular 230 please be advised that, to the extent this
communication contains any tax advice it is not intended to be, was not written to be, and
can not be used by any taxpayer for the purpose of avoiding penalties under U.S. federal
tax law.

United States Treasury Regulations require us to disclose the following: Any tax advice
included in this document and its attachments was not intended or written to be used, and
it cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

This email message and any attachments are confidential and may be privileged. If you are
not the intended recipient, please notify Foley Hoag LLP immediately -- by replying to
this message or by sending an email to postmaster@foleyhoag.com -- and destroy all copies
of this message and any attachments without reading or disclosing their contents. Thank
you.

For more information about Foley Hoag LLP, please visit us at www.foleyhoag.com.

## **EXHIBIT B**

# FOLEY
# HOAG LLP
ATTORNEYS AT LAW



John M. Stevens
Boston Office
617.832.1159
jstevens@foleyhoag.com

August 11, 2006

**BY HAND**

Doreen Zankowski, Esq.
Hinckley Allen Snyder LLP
28 State Street
Boston, MA 02109

> Re:    Mystic Landing, LLC v. Pharmacia

Dear Doreen:

In accordance with John Pastore's letter of July 31, 2006, requesting that payment be made to Modern Continental Construction Co., Inc., enclosed please find a check in the amount of $203,164.11. This amount represents 90% of the response costs paid by or billed to Mystic or Modern as of April 7, 2006, plus post-judgment interest at the federal rate.

Please let me know if you have any questions.

Sincerely,

John M. Stevens

JMS:mh

B3240978.1

# Monsanto Company   NON NEGOTIABLE

1801151787

Accounts Payable Inquiries 314-694-2099, 800 N. Lindbergh, St. Louis, MO 63167

08/09/2006

Vendor Number: 519391

| Invoice Number | Date | Gross Amount | Discount/Wthld | Net Amt | Comments |
|---|---|---|---|---|---|
| MILLER072606 | 07/26/2006 | 203,164.11 | 0.00 | 203,164.11 | PAST REMEDIAL COSTS AT MYSTIC LANDING |
| Sum Total | | 203,164.11 | 0.00 | 203,164.11 | |

REMITTANCE ADVICE:  The attached check is in full payment of invoices or other charges listed.

---

CHECK HAS A GREEN BACKGROUND • WATERMARK • MICRO PRINT ON BACK • DO NOT CASH IF ALL ARE NOT PRESENT

**MONSANTO**

# Monsanto Company
Accounts Payable Inquiries 314-694-2099
800 N. Lindbergh, St. Louis, MO 63167

62-20/311

1801151787

DATE 08/09/2006

VOID IF NOT CASHED WITHIN SIX MONTHS

PAY TO THE ORDER OF   MODERN CONTINENTAL CONSTRUCTION
COMPANY INCORPORATED
600 MEMORIAL DRIVE
CAMBRIDGE MA  02139

*******203,164.11*

THIS AMOUNT *TWO HUNDRED THREE THOUSAND ONE HUNDRED SIXTY FOUR********************************************** USD AND 11/100

PAYABLE AT   CITIBANK DELAWARE
ONE PENNS WAY
19720 NEW CASTLE, DE 19720

by _Jewell K. Greve_

by _____
Authorized Signatures

⑈1801151787⑈  ⑆031100209⑆      38545751⑈

## EXHIBIT C

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**
                                                     **SUPERIOR COURT**
                                                     **DEPARTMENT OF THE TRIAL COURT**
                                                     **CIVIL ACTION NO.**

|  |  |
|---|---|
| MYSTIC LANDING, LLC,              ) | **03-1965** |
|                        ) |  |
| Plaintiff,                      ) |  |
|                        ) |  |
| v,                         ) |  |
|                        ) |  |
| PHARMACIA CORPORATION, SOLUTIA, INC.,) |  |
| and MONSANTO COMPANY,          ) |  |
|                        ) |  |
| Defendants.                   ) |  |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND COMPENSATORY RELIEF

### INTRODUCTION

       This is an action for Declaratory Judgment and compensatory relief in which Plaintiff

Mystic Landing, LLC, seeks relief requiring Defendants Pharmacia Corporation, Solutia, Inc.,

and Monsanto Company to either pay for all costs of the plaintiff's response action or other

liability related to a certain contaminated parcel of real property pursuant to the provisions of

Mass. Gen. Laws c. 21E, § 4A.

### PARTIES

    1.     Plaintiff Mystic Landing, LLC ("Mystic") is a limited liability corporation with a

usual place of business at 600 Memorial Drive, Cambridge, Middlesex County, Massachusetts.

    2.     Defendant Pharmacia Corporation ("Pharmacia") is a Missouri corporation, with a

principal place of business at 800 N. Lindbergh Blvd., St. Louis, Missouri, and is conducting

business in the Commonwealth of Massachusetts. Pharmacia is the corporate successor-in-

interest to Solutia, Inc., which, in turn was the corporate successor-in-interest to Monsanto

Company.

3.    Defendant Solutia, Inc. ("Solutia") is a Missouri corporation, with a principal place of business at 575 Maryville Centre Dr., St. Louis, Missouri.

4.    Defendant Monsanto Company ("Monsanto") is a Missouri corporation, with a principal place of business at 800 N. Lindbergh Blvd., St. Louis, Missouri.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to M.G.L. c. 223A, § 3(a), because the defendants are transacting business within the Commonwealth of Massachusetts.

6.    Venue is proper because a substantial portion of the property at issue is located in Everett, Middlesex County, Massachusetts.

## FACTS

7.    This action concerns a certain parcel of real property located at Alford Street and Broadway, Everett, Massachusetts (the "Site").

8.    In or about 1943, Monsanto acquired the Site, and began operating a large-scale chemical manufacturing plant.

9.    The Monsanto chemical manufacturing plant produced, *inter alia*, sulfuric acid and phthalic anhydride, and Monsanto stored and used large quantities of oil at the Site.

10.    Monsanto also owned and operated a chemical manufacturing plant on the parcel of land that abutted the Site on the northwest property line (the "Gateway Property").

11.    In or about 1983, Monsanto sold the Site to Boston Edison Company ("Edison").

12.    In or about 1995, Edison conducted a limited subsurface investigation of the Site consisting of excavating test pits and collecting soil samples for laboratory analysis. The results of the analysis of the soil samples collected from the test pits indicated the presence of elevated concentrations of certain metals and petroleum hydrocarbons.

13.    As a result of this investigation, Edison submitted a Release Notification Form ("RNF") to the Commonwealth of Massachusetts, Department of Environmental Protection ("DEP") on January 18, 1996.

14.    In or about 1996, Edison sold the Site to O'Donnell Sand & Gravel, Inc., which, in turn, sold the Site to Mary O'Donnell ("O'Donnell").

15.    In December 1996, O'Donnell conducted an additional subsurface investigation, which included the installation and sampling of seven (7) boring/monitoring wells. In at least four (4) of the wells, lead and arsenic were found in concentrations in excess of reportable concentrations.

16.    In or about June 2001, O'Donnell sold the Site to Mystic.

17.    In April and May of 2001, Rizzo Associates, on behalf of Mystic, conducted additional subsurface investigations of the Site. These investigations included the installation of thirty-one (31) shallow soil borings, ten (10) of which were completed as groundwater monitoring wells; the excavation of fifteen (15) test pits; and the collection and laboratory analysis of soil and ground water samples.

18.    The soil analysis revealed elevated concentrations of arsenic, mercury, naphthalene, and selected polycyclic aromatic hydrocarbons ("PAHs").

19.    The ground water analysis revealed elevated concentrations of dissolved lead, arsenic, and cadmium.

20.    On information and belief, the source of the metals contamination in the soil and ground water is related to the previous use of the Site and the Gateway Property as chemical manufacturing facilities.

21.    On information and belief, the source of the elevated areas of PAHs identified at the Site is likely the placement of fill materials containing ash and cinders or residual contamination resulting from the former storage of crude oil at the Site.

22.    On information and belief, the fill materials used by Monsanto also caused low pH ground water, which, in turn, caused elevated metals concentrations, with the low pH groundwater causing leaching of the metals in the fill and resulting in the high dissolved metals concentrations.

23.    The Site is classified as a Tier II Disposal Site under the Massachusetts Contingency Plan (the "MCP").

24.    In order to achieve regulatory closure pursuant to the MCP, a licensed site professional must determine that conditions at the Site pose No Significant Risk ("NSR") to public safety, human health, and the environment. In order to determine NSR for the Site without the use of an Activity and Use Limitation ("AUL"), concentrations of soil contaminants need to be reduced to levels below the MCP Method 1 S1/GW-2 and S-1/GW-3 cleanup standard.

25.    Pursuant to Mass. Gen. Laws. c. 21E, §5(a), "any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material . . . shall be liable, without regard to fault . . . to any person for damage to his real or personal property incurred or suffered as a result of such release or threats of release."

26.    On or about August 27, 2001, Mystic notified Pharmacia, pursuant to Mass. Gen. Laws c. 21E, § 4A(a)(i), of the response actions necessary to reduce the concentrations of soil, ground water and sediment contaminants at the Site, and the nature and amount of Pharmacia's potential liability.

27.    Pharmacia has failed and refused to offer reasonable contribution, reimbursement or an equitable share to Mystic, or to participate in the performance of the response action or in the discharge of liability pursuant to Chapter 21E.

465534                                4

28.    Mystic has satisfied all conditions precedent to the filing of this action.

## COUNT I
## DECLARATORY JUDGMENT

29.    Paragraphs 1 through 28 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

30.    As the former owner/operator of the Site at the time of the release of oil and hazardous material to the soil, ground water, and sediments, the defendants are responsible for all of the response costs and other damages related to the contamination of the Site pursuant to Mass. Gen. Laws c. 21E, § 5.

31.    Pursuant to Mass. Gen. Laws c. 231A *et seq.*, an actual controversy exists between Mystic and the defendants with respect to whether the defendants are responsible for contribution, reimbursement or an equitable share of the response costs pursuant to Mass. Gen. Laws c. 21E, § 4A.

## COUNT II
## CONTRIBUTION

32.    Paragraphs 1 through 31 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

33.    As the former owner/operator of the Site at the time of the release of oil and hazardous material to the soil, ground water, and sediments, the defendants are responsible for all of the response costs and other damages related to the contamination of the Site pursuant to Mass. Gen. Laws c. 21E, § 5.

34.    Pursuant to Mass. Gen. Laws c. 21E, § 4A, the defendants are responsible for contribution, reimbursement or an equitable share of the response costs incurred by Mystic in the remediation of the Site in an amount in excess of Six Million Dollars ($6,000,000.00).

## COUNT III
## NEGLIGENCE

35.    Paragraphs 1 through 34 of this Complaint are incorporated by reference in this

Paragraph as if set forth in full herein.

36.     The defendants negligently released oil and hazardous material to the soil, ground water, and sediments at the Site and the Gateway Property during their use as chemical manufacturing facilities.

37.     The defendants' negligent release of oil and hazardous material to the soil, ground water, and sediments at the Site and the Gateway Property caused low pH ground water on the Site, which, in turn, caused elevated metals concentrations, with the low pH groundwater causing leaching of the metals in the fill and resulting in the high dissolved metals concentrations on the Site.

38.     The defendants have failed and refused to remediate the known contamination at the Site.

39.     As a direct and proximate result of the defendants' negligent release of oil and hazardous material to the soil, ground water, and sediments at the Site and the Gateway Property, Mystic has incurred in excess of One Hundred Thousand Dollars ($100,000.00) in investigation and analysis costs, and will be forced to incur additional remediation costs to achieve regulatory closure pursuant to the MCP.

## COUNT IV
## CONTINUING NUISANCE

40.     Paragraphs 1 through 39 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

41.     The defendants released oil and hazardous material to the soil, ground water, and sediments at the Gateway Property during its use as a chemical manufacturing facility.

42.     These releases at the Gateway Property resulted in an ongoing source of groundwater contamination that continues to cause damage to the Site.

43.     These releases at the Gateway Property caused a substantial and unreasonable interference with the use and enjoyment of the Site by Mystic.

465534                                    6

44.     The damage to the Site resulting from the nuisance created by the defendants has caused and will continue to cause Mystic to suffer damages.

## COUNT V
## TRESPASS

45.     Paragraphs 1 through 44 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

46.     The defendants released oil and hazardous material to the soil, ground water, and sediments at the Gateway Property during its use as a chemical manufacturing facility.

47.     These releases at the Gateway Property resulted in an ongoing source of groundwater contamination that continues to cause damage to the Site.

48.     These releases at the Gateway Property resulting in the ongoing source of groundwater contamination that continues to cause damage to the Site constitutes a continuing trespass on the Site.

49.     The damage to the Site resulting from the continuing trespass by the defendants has caused and will continue to cause Mystic to suffer damages.

## COUNT VI
## ATTORNEYS' FEES AND COSTS

50.     Paragraphs 1 through 49 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

51.     As the former owner/operator of the Site at the time of the release of oil and hazardous material to the soil, ground water, and sediments the defendants are responsible for all of the response costs and other damages related to the contamination of the Site pursuant to Mass. Gen. Laws c. 21E, § 5.

52.     Mystic did not contribute to, or cause, the release of the hazardous materials at the Site necessitating its response actions.

53.     After receipt of notice from Mystic pursuant to Mass. Gen. Laws c. 21 E, § 4A,

the defendants failed without reasonable basis to enter into or carry out an agreement to perform
or participate in the performance of the response action on an equitable basis or pay its equitable
share of the costs of such response action or of other liability pursuant to the provisions of
Chapter 21E, where its liability was reasonably clear.

54.     Mystic is entitled, therefore, to its litigation costs and reasonable attorneys' fees
incurred in this action.

**WHEREFORE**, Mystic requests that the Court enter the following relief:

1.     Declare that the defendants are responsible to provide contribution or
reimbursement or to pay their equitable share of the costs of Mystic's response action or other
liability related to the Site pursuant to the provisions of Mass. Gen. Laws c. 21E, § 4A in amounts
which will be made to appear, together with interest thereon and costs;

2.     Enter judgment in favor of Mystic and against the defendants for all response
costs incurred by Mystic in connection with the Site, plus interest and costs;

3.     Award Mystic its attorneys' fees and costs incurred in this action; and

4.     Award such other relief as this Court deems meet and just.

Respectfully submitted,

**MYSTIC LANDING, LLC**

By its attorneys,

Gerald J. Petros, Esq.
BBO No. 558437
Doreen M. Zankowski, Esquire
BBO No. 558381
Lauren Timoney Upton, Esquire
BBO No. 565122
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
Dated:                               (617) 345-9000

| CIVIL ACTION COVER SHEET | | Trial Court of Massachusetts Superior Court Department County: *Middlesex* |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| *Mystic Landing, LLC* | *Pharmacia Corp., Solutia, Inc., and Monsanto Company* |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE    *(617) 345-9000* | ATTORNEY (if known) |
|---|---|
| *Doreen M. Zankowski, Hinckley Allen & Snyder* *28 State Street, Boston, MA 02109* Board of Bar Overseers number:: *558381* | |

## Origin code and track designation

Place an x in one box only:

☒ 1. FO1 Original Complaint
☐ 2. FO2 Removal to Sup.Ct. C.231, s.104
   (Before trial) (F)
☐ 3. FO3 Retransfer to Sup.Ct. C.231, s. 102C (X)

☐ 4. FO4 District Court Appeal c. 231, s. 97 & 104 (After trial) (X)
☐ 5. FO5 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
☐ 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| *B21* | *Environmental* | *(A)* | ( ) Yes    (X) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses — $
   2. Total Doctor expenses — $
   3. Total chiropractic expenses — $
   4. Total physical therapy expenses — $
   5. Total other expenses (describe) — $
   
   Subtotal $

B. Document lost wages and compensation to date — $
C. Documented property damages to date — $
D. Reasonably anticipated future medical and hospital expenses — $
E. Reasonably anticipated lost wages — $
F. Other documented items of damages (describe) — $

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$

TOTAL $

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claims(s):
*Action for declaratory judgment and compensation relief in which Plaintiff seeks relief requiring Defendants to either pay all costs of Plaintiff's response action or other liability related to contaminated Parcel of real property pursuant to MGLA c. 21E, §4A.*    TOTAL $    *6,000,000*

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record    DATE: 12 04 2003

AOTC-6 mtc005- 11/99
A.O.S.C. 1-2000

**EXHIBIT D**

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MYSTIC LANDING, LLC,<br>    Plaintiff,<br><br>v.<br><br>PHARMACIA CORPORATION,<br>    Defendant.<br><br>PHARMACIA CORPORATION<br>    Third-Party Plaintiff,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION<br>CO., INC.,<br>    Third-Party Defendant. | **CIVIL ACTION NO.**<br>**04-10180 NMG** |
| PHARMACIA CORPORATION<br>    Third-Party Plaintiff,<br><br>v.<br><br>BOSTON EDISON COMPANY<br>    Third-Party Defendant.<br><br>v.<br><br>BOSTON EDISON COMPANY<br>    Fourth-Party Plaintiff,<br><br>v.<br><br>O'DONNELL SAND & GRAVEL, INC.<br>And MARY O'DONNELL<br>    Fourth-Party Defendants. | |

## PLAINTIFF'S AMENDED COMPLAINT
## FOR DECLARATORY JUDGMENT
## AND COMPENSATORY RELIEF

## INTRODUCTION

This is an action for Declaratory Judgment and compensatory relief in which the Plaintiff

Mystic Landing, LLC ("Mystic"), seeks relief requiring the Defendant Pharmacia Corporation

("Pharmacia") to pay all response action costs incurred by Mystic and intended to be incurred

pursuant to M.G.L. Chapter 21E, § 4A related to a certain contaminated property located in

Everett, Massachusetts (the "Property" or "Site").

## PARTIES

1.      Mystic is a limited liability corporation with a usual place of business at 600

Memorial Drive, Cambridge, Middlesex County, Massachusetts.

2.      Formally named the Monsanto Company, Pharmacia is a Delaware corporation,

with a principal place of business in Peapack, New Jersey, and is conducting business in the

Commonwealth of Massachusetts. Pharmacia is the corporate successor to Monsanto Company

("Monsanto"). During its ownership and operation of the Site Pharmacia was called the Monsanto

Company.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332

because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest

and costs, and is between citizens of different states.

4.      This Court has personal jurisdiction over Pharmacia because it has engaged in

business in the Commonwealth of Massachusetts.

5.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial portion of the

property at issue is located in this judicial district.

## FACTS

6.      The Site is located at Alford Street and Broadway in Everett, Massachusetts.

7.      In 1929, Pharmacia, named Monsanto at the time, acquired the Site, on which it operated a large-scale chemical manufacturing plant until 1983.

8.      The Pharmacia chemical manufacturing plant produced, *inter alia*, sulfuric acid and phthalic anhydride, and Pharmacia stored and used large quantities of oil at the Site.

9.      Pharmacia also owned and operated a chemical manufacturing plant on the parcel of land that abuts the Site on the northwest property line, the "Gateway Property".

10.     In 1983, Pharmacia sold the Site to Boston Edison Company ("Edison").

11.     In 1995, Edison conducted a limited subsurface investigation of the Site consisting of excavating test pits and collecting soil samples for laboratory analysis. The results of the analysis of the soil samples collected from the test pits indicated the presence of elevated concentrations of certain metals and petroleum hydrocarbons.

12.     As a result of this investigation, Edison submitted a Release Notification Form ("RNF") to the Commonwealth of Massachusetts, Department of Environmental Protection ("DEP") on January 18, 1996.

13.     In or about 1996, Edison sold the Site to O'Donnell Sand & Gravel, Inc., which, in turn, sold the Site to Mary O'Donnell ("O'Donnell").

14.     In December 1996, O'Donnell conducted an additional subsurface investigation, which included the installation and sampling of seven (7) boring/monitoring wells. In at least four (4) of the wells, lead and arsenic were found in concentrations in excess of reportable concentrations.

15.    During the course of 1995 through 1996, O'Donnell used the Site as a storage location for tunnel muck excavated during the construction of a new outfall discharge shaft and tunnel under Boston Harbor for the Massachusetts Water Resources Authority's new wastewater treatment facilities. The muck consisted of clean, uncontaminated glacial till and tunnel rock which served as a low permeability cap (i.e. clay cap) that isolated the soils and groundwater from the Monsanto manufacturing era from the surface soils during and after the period of the tunnel muck storage up to the current time.

16.    In or about June 2001, O'Donnell sold the Site to Mystic.

17.    In April and May of 2001, Rizzo Associates ("Rizzo"), on behalf of Mystic, conducted additional subsurface investigations of the Site. These investigations included the installation of thirty-one (31) shallow soil borings, ten (10) of which were completed as groundwater monitoring wells; the excavation of fifteen (15) test pits; and the collection and laboratory analysis of soil and groundwater samples. In December 2005 and January 2006, Rizzo conducted an additional forty-five (45) soil borings and installed an additional ten (10) groundwater monitoring wells, sampled river sediments, and analyzed the soil groundwater and sediments for contaminants.

18.    The soil and sediment analysis revealed elevated concentrations of arsenic, mercury, naphthalene, and selected polycyclic aromatic hydrocarbons ("PAHs").

19.    The ground water analysis revealed elevated concentrations of dissolved lead, arsenic, and cadmium.

20.    The source of the metals contamination in the soil and groundwater was Pharmacia's use of the Site and the Gateway Property as chemical manufacturing facilities.

21.    The source of the elevated areas of PAHs identified at the Site was the placement of fill materials containing ash and cinders or residual contamination resulting from the former storage of crude oil at the Site.

22.    The fill materials used by Pharmacia also caused low pH groundwater, which, in turn, caused elevated metals concentrations, with the low pH groundwater causing leaching of the metals in the fill and resulting in the high dissolved metals concentrations.

23.    The Site is classified as a Tier II Disposal Site under the Massachusetts Contingency Plan (the "MCP").

24.    In order to achieve regulatory closure pursuant to the MCP, a licensed site professional must determine that conditions at the Site pose No Significant Risk ("NSR") to public safety, human health, and the environment. In order to determine NSR for the Site without the use of an Activity and Use Limitation ("AUL"), concentrations of soil contaminants need to be reduced to levels below the MCP Method 1 S1/GW-2 and S-1/GW-3 cleanup standard.

25.    Pursuant to Mass. Gen. Laws. c. 21E, § 5(a), "any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material . . . shall be liable, without regard to fault . . . to any person for damage to his real or personal property incurred or suffered as a result of such release or threats of release."

26.    Pursuant to Mass. Gen. Laws c. 21E, § 4A, "[a]ny person...who has undertaken, is undertaking, or intends to undertake a necessary and appropriate response action or who is or reasonably believes that he might be liable pursuant to section five may notify any person he

reasonably believes is liable pursuant to section five that the response action has been taken or is being taken or of the notifier's intent to take such response action or to seek contribution, reimbursement or equitable share from other persons..."

27.    On August 27, 2001, Mystic notified Pharmacia, pursuant to Mass. Gen. Laws c. 21E, § 4A(a)(i), of the response actions necessary to reduce the concentrations of soil, ground water and sediment contaminants at the Site, and the potential nature and amount of Pharmacia's liability.

28.    Pharmacia has failed and refused to offer reasonable contribution or reimbursement to Mystic, or to participate in the performance of the response action or in the discharge of liability pursuant to Chapter 21E.

29.    Mystic has satisfied all conditions precedent to the filing of this action.

## COUNT I
## DECLARATORY JUDGMENT

30.    Paragraphs 1 through 29 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

31.    As the former owner/operator of the Site at the time of the storage or disposal and release of oil or hazardous material to the soil, ground water, and sediments, Pharmacia is liable to pay for all of the response costs attributable to such releases that Mystic has incurred, caused to be incurred, is responsible for, and that it intends to incur in the future, pursuant to Mass. Gen. Laws c. 21E, §§ 4A and 5.

32.    An actual controversy exists between Mystic and the defendants with respect to the extent to which Pharmacia is responsible for contribution and reimbursement of the response costs that Mystic has incurred, or for which it is liable, and for those that it will incur in the future, pursuant to Mass. Gen. Laws c. 21E, §§ 4A and 5.

## COUNT II
## CONTRIBUTION AND REIMBURSEMENT

33.    Paragraphs 1 through 32 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

34.    As the former owner/operator of the Site at the time of the storage or disposal and release of oil or hazardous material to the soil, ground water, and sediments, Pharmacia is responsible for all of the response costs incurred and intended to be incurred with respect to the remediation of such contamination, pursuant to Mass. Gen. Laws c. 21E, § 4A.

35.    Pursuant to Mass. Gen. Laws c. 21E, § 4A, Pharmacia is responsible for reimbursement and contribution for the response costs that Mystic intends to incur in the future to remediate the releases and contamination at the Site for which Pharmacia is responsible.

36.    Pursuant to Mass. Gen. Laws c. 21E, § 4A, Pharmacia is responsible for reimbursement of the response costs incurred by Mystic to date, or for which it is liable, an amount which exceeds $150,000.00.

## COUNT III
## ATTORNEYS' FEES AND COSTS

37.    Paragraphs 1 through 36 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

38.    As the former owner/operator of the Site at the time of the storage or disposal and release of oil or hazardous material to the soil, ground water, and sediments, Pharmacia is responsible for all of the response costs attributable to the contamination of the Site during its over fifty years of ownership, pursuant to Mass. Gen. Laws c. 21E, § 4A and § 5.

39.    Mystic did not contribute to, or cause, the release of those hazardous materials at the Site, necessitating response actions to remediate the Site.

569310                                    7

40.    After receipt of the Notice from Mystic pursuant to Mass. Gen. Laws c. 21E, § 4A, Pharmacia failed without reasonable basis to enter into or carry out an agreement to perform or participate in the performance of a response action or pay the costs of such response action pursuant to the provisions of Chapter 21E, where its liability was reasonably clear.

41.    Mystic is entitled, therefore, to its litigation costs and reasonable attorneys' fees incurred in this action.

**WHEREFORE,** Mystic requests that the Court enter the following relief:

1.    Declare that Pharmacia is responsible to provide reimbursement and/or contribution to the costs intended to be incurred in connection with Mystic's future response actions at the Site, pursuant to the provisions of Mass. Gen. Laws c. 21E, § 4A, an amount in excess of $75,000,00;

2.    Declare that Pharmacia is responsible to provide reimbursement of and/or contribution to the incurred costs of the response actions that Mystic caused to be taken at the Site or that were taken at the Site for its benefit, pursuant to the provisions of Mass. Gen. Laws c. 21E, § 4A, together with interest thereon and costs;

3.    Award Mystic its attorneys' fees and costs incurred in this action; and

4.    Award such other relief as this Court deems just.

MYSTIC LANDING, LLC

By its attorneys:

/s/ Doreen M. Zankowski

_____

Robert G. Flanders, Jr., Esq. (BBO #170820)
Doreen M. Zankowski, Esq. (BBO #558381)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109-1775
(617) 345-9000
(617) 345-9020 (facsimile)

DATED:    February 1, 2006

## CERTIFICATE OF SERVICE

I, Doreen M. Zankowski, hereby certify that on this 1st day of February 2006, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

John M. Stevens, Esq.
Adam P. Kahn, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA  02210

Mark S. Granger, Esq.
Douglas B. Otto, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Howard G. Guggenheim
P.O. Box 736
Scituate, MA 02066

/s/ Doreen M. Zankowski

_____

Doreen M. Zankowski

**EXHIBIT E**

### Analysis of Rizzo Associates Invoices
### Mystic Landing Project

Hughto                4/7/2006

| Invoice Number | Invoice Date | Total Amount | Response Costs | Litigation Support | Comment |
|---|---|---|---|---|---|
| 51647 | 3/26/2001 | $ 4,072.11 | $ 4,072.11 | $ - | |
| 52031 | 4/26/2001 | $ 29,935.14 | $ 29,935.14 | $ - | |
| 52330 | 5/21/2001 | $ 16,106.44 | $ 16,106.44 | $ - | |
| 52909 | 6/29/2001 | $ 26,362.51 | $ 26,362.51 | $ - | |
| 53376 | 8/15/2001 | $ 8,793.48 | $ 8,793.48 | $ - | |
| 53836 | 9/20/2001 | $ 769.93 | $ 769.93 | $ - | |
| 54480 | 11/14/2001 | $ 511.24 | $ 511.24 | $ - | |
| 55233 | 1/15/2002 | $ 691.85 | $ 691.85 | $ - | |
| 55762 | 2/14/2002 | $ 3,393.85 | $ 1,076.35 | $ 2,317.50 | Prep for and attend Monsanto meeting |
| 56170 | 3/21/2002 | $ 1,773.23 | $ 1,773.23 | $ - | |
| 56915 | 5/15/2002 | $ 2,067.73 | $ 2,067.73 | $ - | |
| 57354 | 6/21/2002 | $ 4,684.61 | $ 4,684.61 | $ - | |
| 580381 | 8/13/2002 | $ 318.32 | $ 318.32 | $ - | |
| 580920 | 9/23/2002 | $ 309.00 | $ 309.00 | $ - | |
| 581166 | 10/16/2002 | $ 1,910.66 | $ 1,910.66 | $ - | |
| 581594 | 11/13/2002 | $ 206.00 | $ 206.00 | $ - | |
| 581957 | 12/18/2002 | $ 2,935.50 | $ 2,935.50 | $ - | |
| 583972 | 6/21/2003 | $ 1,828.25 | $ 1,828.25 | $ - | |
| 584591 | 8/13/2003 | $ 2,266.00 | $ 2,266.00 | $ - | |
| 588929 | 9/28/2004 | $ 2,382.69 | $ - | $ 2,382.69 | Woodard observation and followup |
| 589369 | 11/1/2004 | $ 7,147.52 | $ 5,789.08 | $ 1,358.44 | Some Woodard observ & followup |
| 50001074 | 12/31/2004 | $ 3,551.63 | $ 3,551.63 | $ - | |
| 50002590 | 1/28/2005 | $ 1,545.00 | $ 1,545.00 | $ - | |
| 50003170 | 2/27/2005 | $ 352.19 | $ 352.19 | $ - | |
| 50005077 | 4/29/2005 | $ 1,211.06 | $ 1,211.06 | $ - | |
| 50008870 | 7/15/2005 | $ 29,834.05 | $ 11,224.41 | $ 18,609.64 | Expert Report work |
| 50011802 | 9/9/2005 | $ 2,411.59 | $ 2,411.59 | $ - | |
| Sub-total Paid | | $ 157,371.58 | $ 132,703.31 | $ 24,668.27 | |
| | | | | | |
| 50016260 | 11/15/2005 | $ 26,065.21 | $ 7,560.54 | $ 18,504.67 | Expert Report work |
| 50017106 | 11/27/2005 | $ 2,868.18 | $ 2,868.18 | | Field work |
| 50020064 | 1/6/2006 | $ 19,094.32 | $ 402.50 | $ 18,691.82 | |
| 50020068 | 1/6/2006 | $ 8,921.21 | $ 8,921.21 | | |
| 50022569 | 2/6/2006 | $ 20,874.44 | $ 20,874.44 | | |
| 50022568 | 2/6/2006 | $ 15,452.74 | $ 5,807.50 | $ 9,645.24 | |
| 50025550 | 3/10/2006 | $ 9,477.81 | $ 3,478.75 | $ 5,999.06 | |
| 50027101 | 3/29/2006 | $ 8,397.89 | $ 8,027.09 | $ 370.80 | |
| 50027882 | 4/7/2006 | $ 6,327.69 | $ 6,327.69 | | |
| 50027883 | 4/7/2006 | $ 24,892.44 | $ 24,892.44 | | |
| 50027884 | 4/7/2006 | $ 8,560.58 | $ 1,997.55 | $ 6,563.03 | |
| Sub-total Unpaid | | $ 150,932.51 | $ 91,157.89 | $ 59,774.62 | |
| | | | | | |
| TOTALS | | $ 308,304.09 | $ 223,861.20 | $ 84,442.89 | |

*Italicized invoice numbers unpaid as of 4/7/06*

PLAINTIFF'S EXHIBIT

233

ALL-STATE LEGAL®